BRIAN R. BLACKMAN (SBN 196996)
bblackman@blaxterlaw.com
J.T. WELLS BLAXTER (SBN 190222)
wblaxter@blaxterlaw.com
DAVID P. ADAMS (SBN 312003)
dadams@blaxterlaw.com
BLAXTER | BLACKMAN LLP
601 Montgomery Street, Suite 1110
San Francisco, California 94111
Telephone: (415) 500-7700

Attorneys for defendant
WHOLE FOODS MARKET, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SARA SAFARI, PEYMON KHAGHANI, and JASON ROSE, on behalf of themselves and all others similarly situated, and FARM FORWARD, on behalf of the general public,<br><br>Plaintiffs,<br><br>v.<br><br>WHOLE FOODS MARKET, INC., a Texas corporation,<br><br>Defendant. | Case No. 8:22-cv-01562-JWH (KESx)<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**<br><br>[*Declaration of Jay Warren in support of Motion to Dismiss, Request for Judicial Notice, and [Proposed] Order filed concurrently herewith*]<br><br>Date: December 9, 2022<br>Time: 9:00 AM<br>Place: 411 West Fourth Street<br>Courtroom 9D, 9th Floor<br>Santa Ana, California 92701<br><br>The Honorable John W. Holcomb<br><br>Complaint Filed: August 23, 2022<br>Trial Date: Not Set |

## NOTICE OF MOTION AND MOTION TO DISMISS

TO THE HONORABLE COURT, ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on December 9, 2022 at 9:00 AM, or as soon thereafter as counsel may be heard in Courtroom 9D of the above-entitled Court, located in the United States District Court, 411 West 4th Street, Santa Ana, California, defendant Whole Foods Market, Inc. ("WFMI"), will and hereby moves to dismiss the Complaint of plaintiffs Sara Safari, Peymon Khaghani, Jason Rose, and Farm Forward (collectively "Plaintiffs") pursuant to Federal Rules of Civil Procedure ("Fed. R. Civ. P.") 9(b), 12(b)(1), 12(b)(2) and 12(b)(6) on the following grounds:

1. Defendant WFMI moves for dismissal of the Complaint pursuant to Fed. R. Civ. P. 12(b)(2) on the grounds it is not subject to personal jurisdiction in California. WFMI is a Texas holding company that does not conduct any business in California and does not have contacts with California sufficient to subject it to either general or specific personal jurisdiction.

2. Defendant WFMI moves to dismiss Plaintiffs' claims under Fed. R. Civ. P. 12(b)(1) on the grounds that Plaintiffs lack Article III standing, and statutory standing under the UCL, FAL, and CLRA, to sue WFMI. Plaintiffs Safari, Khaghani and Rose have not alleged facts demonstrating they suffered a particularized harm as a result of WFMI's alleged actions. Plaintiff Farm Forward has not alleged facts demonstrating a diversion of resources based on WFMI's advertising statements. Finally, Plaintiffs lack standing to assert their claims on behalf of their proposed nationwide class because Plaintiffs lack standing to bring claims under the laws of states in which Plaintiffs do not reside and did not purchase products.

3. Defendant WFMI moves to dismiss Plaintiffs' fraud claims under Fed. R. Civ. P. 9(b) and 12(b)(6). Plaintiffs have not sufficiently alleged the when, why or how of their false advertising and fraud claims.

4. WFMI moves to dismiss Plaintiffs' claim for unjust enrichment because California does not recognize a separate claim for unjust enrichment and because it is otherwise derivative of Plaintiffs false advertising and fraud claims, which fail for the reasons set forth above.

1   This Motion is made following the conferences of counsel pursuant to Civil L.R. 7-3 which
2   took place on September 19, 2022.

3   This Motion is based upon this Notice of Motion and Motion, the attached Memorandum of
4   Points and Authorities, the accompanying Declaration to Jay Warren and Request for Judicial
5   Notice, all other pleadings, papers, records and documentary materials on file in this action, and
6   such further evidence and argument as the Court may allow at the hearing on this Motion.

7

8   Dated:  October 21, 2022                          BLAXTER | BLACKMAN LLP

9                                           By

10                                                  /s/ *Brian R. Blackman*
11                                              BRIAN R. BLACKMAN
                                               Attorneys for Defendant
12                                          WHOLE FOODS MARKET, INC.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

I.   INTRODUCTION .................................................................................... 1

II.  SUMMARY OF ALLEGATIONS AND FACTS ..................................... 2

    A.   Defendant WFMI ......................................................................... 2

    B.   Plaintiffs and Their Claims .......................................................... 3

        1.   The Individual Plaintiffs....................................................... 3

        2.   Farm Forward ....................................................................... 3

        3.   Plaintiffs' Claims................................................................. 4

III. LEGAL ARGUMENT ............................................................................. 5

    A.   The Court Lacks Personal Jurisdiction Over WFMI....................... 5

        1.   Governing Statutory and Constitutional Principles of Personal Jurisdiction. ....................................................... 5

        2.   WFMI Is Not Subject to the Court's General Jurisdiction............ 6

        3.   WFMI Is Not Subject to the Court's Specific Jurisdiction. ......... 6

    B.   Plaintiffs Fail to Plead the Necessary Facts to Establish Their Standing to Assert the Alleged Claims.......................................... 8

        1.   The Individual Plaintiffs Have Not Alleged a Particularized or Concrete Injury..................................... 9

        2.   Farm Forward Lacks Standing to Assert its FAL and UCL Claims. .......... 11

        3.   Plaintiffs Lack Standing to Assert Nationwide Class Claims. ................... 14

    C.   Plaintiffs' Fraud Claims Fail For Lack of Particularity ......................... 15

    D.   Plaintiffs' Claim for Unjust Enrichment Fails ..................................... 18

IV.  CONCLUSION ....................................................................................... 19

1

2

## **TABLE OF AUTHORITIES**
## **FEDERAL CASES**

Page

3

4

*Am. Diabetes Ass'n v. U.S. Dep.'t of the Army*
938 F.3d 1147 (9th Cir. 2019) ............................................................ 11

5

*Amba Mktg. Sys. v. Jobar Int'l*
551 F.2d 784 (9th Cir. 1977) ............................................................... 5

6

7

*Augustine v. Talking Rain Beverage Co., Inc.*
386 F. Supp. 3d 1317 (S.D. Cal. 2019) ............................................. 14

8

9

*Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*
223 F.3d 1082 (9th Cir. 2000) ............................................................. 6

10

*Barrett v. Optimum Nutrition*
2022 WL 2035959 (C.D. Cal. Jan. 12, 2022) .................................... 18

11

12

*Birdsong v. Apple*
590 F.3d 955 (9th Cir. 2009) ............................................................... 8

13

14

*Calvert v. Huckins*
875 F. Supp. 674 (E.D. Cal. 1995) ...................................................... 7

15

*Cantrell v. City of Long Beach*
241 F.3d 674 (9th Cir. 2001) ............................................................... 8

16

17

*Cetacean Community v. Bush*
386 F.3d 1169 (9th Cir. 2004) ............................................................. 8

18

19

*Colwell v. Dept. of Health & Human Servs.*
558 F.3d 1112 (9th Cir. 2009) ............................................................. 8

20

*Daimler AG v. Bauman*
571 U.S. 117 (2014) ........................................................................ 5, 6

21

22

*Eat Right Foods, Ltd. v. Whole Foods Mkt., Inc.*
2014 WL 12027447 (W.D. Wash. Sept. 15, 2014) .............................. 7

23

24

*Fed. Deposit Ins. Corp. v. British-Am. Ins. Co.*
828 F.2d 1439 (9th Cir. 1987) ............................................................. 5

25

*Friends of the Earth v. Sanderson Farms, Inc.*
992 F.3d 939 (9th Cir. 2021) ............................................................. 11

26

27

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*
528 U.S. 167 (2000) ............................................................................ 8

28

*Glencore Grain v. Shivnath Rai Harnarain*
   284 F.3d 1114 (9th Cir. 2002) ................................................................. 6

*Goes Int'l, AB v. Dodur, Ltd.*
   2015 WL 5043296 (N.D. Cal. Aug. 26, 2015)........................................ 6

*Goodyear Dunlop Tires Operations v. Brown*
   564 U.S. 915 (2011)................................................................................. 6

*Hall v. Sea World Entertainment, Inc.*
   2015 WL 9659911 (S.D. Cal. Dec. 23, 2015)................................. 16, 17

*Havens Realty Corp. v. Coleman*
   455 U.S. 363 (1982)............................................................................... 11

*Holland America Line Inc. v. Wärtsilä North America, Inc.*
   485 F.3d 450 (9th Cir. 2007) ................................................................. 7

*In Defense of Animals v. Sanderson Farms, Inc.*
   2021 WL 4243391 (N.D. Cal. Sept. 17, 2021) ................................ 12, 14

*Int'l Shoe Co. v. Washington*
   326 U.S. 310 (1945)................................................................................. 5

*Kearns v. Ford Motor Co.*
   567 F.3d 1120 (9th Cir. 2009) ............................................................. 16

*Keeton v. Hustler Magazine, Inc.*
   465 U.S. 770 (1984)................................................................................. 7

*Kellman v. Whole Foods Market, Inc.*
   313 F. Supp. 1031 (N.D. Cal. 2018) ..................................................... 7

*Krause-Pettai v. Unilever United States, Inc.*, 2021 WL 1597931 (S.D. Cal., Apr. 23, 2021) ...... 18

*Levay v. AARP, Inc.*
   2019 WL 2108124 (C.D. Cal. May 14, 2019) ..................................... 16

*M2 Software Inc. v. M2 Commc'ns, L.L.C.*
   149 F. App'x 612 (9th Cir. 2005) .......................................................... 7

*Meaunrit v. The Pinnacle Foods Group, LLC*
   2010 WL 1838715 (N.D. Cal., May 5, 2010) ...................................... 18

*Odom v. Microsoft Corp.*
   486 F.3d 541 (9th Cir. 2007) ............................................................... 15

*Pebble Beach Co. v. Caddy*
   453 F.3d 1151 (9th Cir. 2006) ............................................................... 5

*Pels v. Keurig Dr. Pepper, Inc.*
  2019 WL 5813422 (N.D. Cal. Nov. 7, 2019)..........................................................10

*Rio Props., Inc. v. Rio Int'l Interlink*
  284 F.3d 1007 (9th Cir. 2002) .............................................................................5

*Schmier v. United States Court of Appeals*
  279 F.3d 817 (9th Cir. 2009) ...............................................................................8

*Schwarzenegger v. Fred Marin Motor Co.*
  374 F.3d 797 (9th Cir. 1998) ...........................................................................6, 7

*Spokeo, Inc. v. Robins*
  136 S. Ct. 1540 (2016) ....................................................................................9, 10

*Stewart v. Kodiak Cakes, LLC*
  537 F. Supp. 3d 1103 (S.D. Cal. 2021)...........................................................14, 15

*United Food & Commercial Workers Union Local 751 v. Brown Grp., Inc.*
  571 U.S. 544 (1996) ...........................................................................................11

*United States v. Hays*
  515 U.S. 737 (1995) .............................................................................................8

*Vasquez v. Whole Foods Mkt., Inc.*
  2018 WL 810232 (D.D.C. Feb. 9, 2018) ..............................................................7

*Vess v. Ciba-Geigy Corp USA*
  317 F.3d 1097 (9th Cir. 2003) ...........................................................................15

*Vitiosus v. Alani Nutrition, LLC*
  2022 WL 2441303 (S.D. Cal. July 5, 2022) ...................................................14, 15

*Walden v. Fiore*
  134 S.Ct. 1115 (2014).........................................................................................6

*Wallace v. ConAgra Foods, Inc.*
  747 F.3d 1025 (8th Cir. 2014) ...........................................................................10

*White v. Lee*
  227 F.3d 1214 (9th Cir. 2000) .............................................................................8

*Whitson v. Bumbo*
  2009 WL 1515597 (N.D. Cal. Apr. 16, 2009) ....................................................10

*World-Wide Volkswagen Corp. v. Woodson*
  444 U.S. 286 (1980).............................................................................................5

## STATE CASES

Page

*McBride v. Boughten*
    123 Cal. App. 4th 379 (2004) ................................................................................ 18

*Melchior v. New Line Products, Inc.*
    106 Cal. App. 4th 779 (2003) ................................................................................ 18

## OTHER AUTHORITIES

Page

Fed. R. Civ. P. 9(b) .................................................................................................. 15

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

In this action, plaintiffs Sara Safari, Peymon Khaghani, Jason Rose, and Farm Forward (collectively "Plaintiffs") claim that defendant Whole Foods Market, Inc. ("WFMI") misrepresented that beef products sold in Whole Foods Market stores are free from antibiotics.  As a threshold matter, because this Court lacks personal jurisdiction over defendant WFMI, the case should be dismissed under Rule 12(b)(2). WFMI is a Texas holding company that does not have a presence anywhere outside of Texas.  WFMI does not have any offices, bank accounts, employees or telephone numbers in California.  It is not qualified to—and does not—conduct business in California and does not have an agent for service in this State. Further, WFMI does not set policies for nor control any Whole Foods Market stores.  Nor does it produce the beef products at issue in this case, nor does it review or approve their labels.  Quite simply, WFMI lacks any contact with California, and is not subject to general or specific jurisdiction in the State.

In addition, Plaintiffs lack standing under Article III and California's consumer statutes. Because the individual plaintiffs Safari, Khaghani and Rose, fail to allege a particularized and concrete injury, they lack Article III standing.  Similarly, the organizational plaintiff, Farm Forward, fails to show how WFMI's alleged misrepresentations forced it to divert its resources. Indeed, Farm Forward's allegations show its investigation of Whole Foods Market stores was a continuation of its stated mission.  Plaintiffs also lack standing to assert claims on behalf of a nationwide class because no plaintiff resides outside of California nor has purchased products outside of California. Because Plaintiffs lack standing, the case should be dismissed under Rule 12(b)(1).

Moreover, Plaintiffs' claims, which are all based in fraud, are not alleged with the requisite particularity required by Rule 9(b).  Plaintiffs fail to allege *when* they saw and relied upon WFMI alleged misrepresentation, *why* WFMI's representations are false, and *how* they were damaged. Notably, Plaintiffs fail to allege any details about the alleged testing they undertook.  Without these essential facts, Plaintiffs' claims fail to meet Rule 9(b)'s particularity requirements and

should be dismissed.  Lastly, Plaintiffs' claim for unjust enrichment is not a stand-alone claim under California law and should be dismissed.

## II.       SUMMARY OF ALLEGATIONS AND FACTS

### A.     Defendant WFMI

WFMI is a Texas corporation with its principal place of business in Austin, Texas.  ECF No. 1, ¶30; *see also* Declaration of Jay Warren ("Warren Decl."), ¶2.  WFMI does not conduct or transact any business in California or any state other than Texas, and is not qualified to do business in California or in any state other than Texas.  *See* Warren Decl., ¶¶3-4.  WFMI is a holding company that owns shares of other operating companies, some of which in turn own and operate individual Whole Foods Market stores.  *Id*., ¶3.  WFMI does not own or operate any stores in California, or any other state, has not designated an agent for service in California, and does not have any employees, office space, telephones, bank accounts or other tangible personal or real property in California.  *Id.*, ¶¶3-4 and 6.

The Whole Foods Market stores located in California are owned and operated by two separate entities.  Mrs. Gooch's Natural Food Markets, Inc. ("Mrs. Gooch's") owns and operates the Whole Foods Market stores located in the Southern Pacific Region (generally the stores south of Fresno).  *See* Warren Decl., ¶12.  Whole Foods Market California, Inc. ("WFM CA") owns and operates the stores located in the Northern California Region (generally the stores in Fresno and north of Fresno).  *Id*., ¶11.  The Whole Foods Market stores located in other Regions around the country are owned and operated by other corporate entities in the Whole Foods Market family of companies.  *Id.*, ¶13.

WFMI does not operate, manage, or control the operations of Mrs. Gooch's, WFM CA, nor the other operating entities.  Warren Decl., ¶7.  WFMI also does not set policies for any Whole Foods Market store, nor does it regulate or assure the uniformity of policies in those stores.  *Id*. Another company, Whole Foods Market Services, Inc. ("WFM Services"), performs certain administrative task on behalf of the operating entities and operates the Whole Foods Market website, located at www.wholefoodsmarket.com.  *Id*., ¶14.

WFMI does not design, develop or manufacture any products including the beef products sold at Whole Foods Market stores. *See* Warren Decl., ¶8.  It does not determine what products are sold at Whole Foods Market stores, nor does it decide which suppliers, vendors, or distributors are to be used by Whole Foods Market stores. *Id.*, ¶9.  WFMI does not review or approve the labelling of any products and is not involved in any way in the labeling of products sold at Whole Foods Market stores. *Id.*, ¶10.

**B.     Plaintiffs and Their Claims**

**1.     The Individual Plaintiffs**

Plaintiffs Sara Safari, Peymon Khaghani and Jason Rose (collectively the "Individual Plaintiffs") are individual consumers residing in Tustin and Moorpark, California.  *See* ECF No. 1, ¶¶7, 14 and 21.  All three allege that they purchased beef products on numerous occasions from their local Whole Foods Market stores in Southern California over the last several years. *Id.*, ¶¶8-9, 15-16 and 22-23.  They identify, in their allegations, numerous beef products sold at Whole Foods Market stores, but do not allege which of those products they purchased. *Id.*, ¶¶7-27, 40.

The Individual Plaintiff allege they believed the beef products they purchased were raised without the use of antibiotics and pharmaceuticals. *Id.*, ¶¶10-11, 17-18 and 24-25.  Specifically, they allege they relied on the marketing slogans and representations "No Antibiotics Ever" and "No antibiotics or growth hormones, ever" in making their purchases. *Id.*  They further allege that they saw these statements on in-store signage, product labels, the Whole Foods Market website and on listings on Amazon.com. *Id.*, ¶¶11, 18 and 25.

**2.     Farm Forward**

Plaintiff Farm Forward is a 501(c)(3) public interest organization formed in 2007 and based in Portland, Oregon.  ECF No. 1, ¶28.  Farm Forward alleges that its mission is to end factory farming. *Id.*, ¶29.  To that end, Farm Forward alleges that its staff and board members expended numerous hours working alongside representatives of Whole Foods Market to develop and create the criteria and standards for certifying various meat products, including beef products, as "Animal Welfare Certified" or "GAP certified" under the Global Animal Partnership's ("GAP")

1  certification program.  *Id.*, ¶¶51-57 and 83.  It also alleges that it expended resources promoting

2  Whole Foods Market's meat products as "better" and "best" choices to consumers based on the

3  GAP and Animal Welfare certifications.  *Id.*, ¶¶83-86.

4         **3.**       **Plaintiffs' Claims**

5         Plaintiffs claim that Whole Foods Market's antibiotic representations, and its broad

6  marketing campaign that restates and reinforces these representations, is false and misleading.

7  ECF No. 1, ¶¶1, 43-59.  In particular, they claim that testing by plaintiff Farm Forward has found

8  that beef products sold at Whole Foods Market contain antibiotic and other pharmaceutical

9  residues.  *Id.*, ¶¶1-2 and 60-63.  Plaintiffs do not attach their testing results, identify which beef

10  products were tested, nor allege that they tested the beef products purchased by the Individual

11  Plaintiffs.

12  Regardless, the Individual Plaintiffs claim they have been injured because they would not have

13  purchased or would not have paid as much for the beef products had they known the cattle used in

14  the products were raised with antibiotics.  *Id.*, ¶¶13, 20 and 27.  Farm Forward claims it has been

15  injured by expending resources in the alleged development and promotion of animal welfare

16  standards and Whole Foods Market's meat products, and its subsequent investigation and

17  marketing campaign to correct Whole Foods Market's alleged misstatements.  *Id.*, ¶¶

18         Based on these allegations, Plaintiffs assert claims of unlawful and deceptive business

19  practices and advertising in violation of California's Consumers Legal Remedies Act, Cal. Civ.

20  Code §§ 1750, et seq. ("CLRA"), Unfair Competition Law, Cal. Bus. & Prof. Code §§17200, et

21  seq. ("UCL), and False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, et seq. ("FAL"),

22  unjust enrichment and fraudulent concealment.  ECF No. 1, ¶¶105-152.  Plaintiffs bring their

23  claims on behalf of themselves and all persons in the United States, or alternatively those in

24  California,  "who purchased a Beef Product from Whole Foods between 2017 and the present."

25  *Id.*, ¶94.  Plaintiffs demand restitution, actual damages, punitive damages and injunctive relief.  *Id.*

26  at 42:8-22.

27

28

# III.    LEGAL ARGUMENT

## A.    The Court Lacks Personal Jurisdiction Over WFMI.

Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 12(b)(2) allows a defendant to challenge a complaint for lack of personal jurisdiction.  The determination of whether to exercise personal jurisdiction is a question of law.  *Rio Props., Inc. v. Rio Int'l Interlink,* 284 F.3d 1007, 1019 (9th Cir. 2002).  Plaintiff bears the burden of establishing that the Court has personal jurisdiction over each defendant, and is "obligated to come forward with facts, by affidavit or otherwise, supporting personal jurisdiction."  *Amba Mktg. Sys. v. Jobar Int'l*, 551 F.2d 784, 787 (9th Cir. 1977); *see also Fed. Deposit Ins. Corp. v. British-Am. Ins. Co.*, 828 F.2d 1439, 1441 (9th Cir. 1987).  WFMI challenges and does not admit the facts pled in the Complaint.  Thus, Plaintiffs cannot rely on their conclusory allegations and must set forth competent and admissible evidence establishing jurisdiction over WFMI.

### 1.    Governing Statutory and Constitutional Principles of Personal Jurisdiction.

"The general rule is that personal jurisdiction over a defendant is proper if it is permitted by a long-arm statute, and if the exercise of that jurisdiction does not violate federal due process." *Pebble Beach Co. v. Caddy,* 453 F.3d 1151, 1154 (9th Cir. 2006).  Pursuant to California Code of Civil Procedure section 410.10, California's long-arm statute reaches as far as the U.S. Constitution permits.  Thus, the Court can proceed directly to the federal due process analysis. *Daimler AG v. Bauman*, 571 U.S. 117, 134 S. Ct. 746, 753, 187 L. Ed. 2d 624 (2014).

Due process requires that the defendant have sufficient minimum contacts with the forum such that the assertion of jurisdiction in that forum "'does not offend traditional notions of fair play and substantial justice.'"  *Pebble Beach,* 453 F.3d at 1155 (quoting *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 315, 66 S. Ct. 154, 158, 90 L. Ed. 95 (1945)).  The minimum contacts requirement "protects the defendant against the burdens of litigating in a distant or inconvenient forum." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292, 100 S.Ct. 559, 62 L. Ed. 2d 490 (1980).  "There are two types of personal jurisdiction: general and specific." *Goes Int'l, AB v. Dodur, Ltd.,* No. 14-cv-05666-LB, 2015 WL 5043296, *7 (N.D. Cal. Aug. 26, 2015) (citing

1  *Daimler AG v. Bauman*, 134 S. Ct. at 754-55).  Neither type applies to WFMI.

2  **2.  WFMI Is Not Subject to the Court's General Jurisdiction.**

3  General personal jurisdiction exists where a defendant's business contacts with the forum

4  state are so substantial, continuous and systematic that they "approximate physical presence."

5  *Bancroft & Masters, Inc. v. Augusta Nat'l Inc. ("Bancroft"),* 223 F.3d 1082, 1086 (9th Cir. 2000).

6  The United States Supreme Court recently held that, absent an "exceptional case," a corporation is

7  "at home" (and, therefore, subject to general jurisdiction) only in its state of incorporation and its

8  principal place of business.  *Daimler AG v. Bauman*, 571 U.S. 117, 134 S. Ct. at 753.  Thus, the

9  defendant's affiliations with California must be "so 'continuous and systematic' as to render [it]

10  essentially at home in the forum State."  *Id.*  (quoting *Goodyear Dunlop Tires Operations v.*

11  *Brown*, 564 U.S. 915, 919 (2011)).  This historically entailed contacts with the forum that include

12  ownership of property, the maintenance of bank accounts, having employees, soliciting business,

13  or having a designated agent in the state.  *Glencore Grain v. Shivnath Rai Harnarain*, 284 F.3d

14  1114, 1124-25 (9th Cir. 2002).  WFMI does not maintain any of these types of contacts with

15  California.  *See,* Warren Decl. ¶¶2-5.

16  WFMI is a Texas holding company that does not have a presence anywhere outside of

17  Texas.  Warren Decl., ¶2.  It does not have any offices, bank accounts, employees nor telephone

18  numbers in California.  *Id.*, ¶¶3-4.  Further, it is not qualified to conduct business in California

19  (and does not) and does not have an agent for service in this State.  *Id*., ¶4.  WFMI simply does not

20  have any relevant contacts, let alone the "continuous and systematic general business contacts that

21  approximate physical presence in" California.[1]  *Schwarzenegger v. Fred Marin Motor Co.,* 374

22  F.3d 797, 801 (9th Cir. 1998) (internal citations omitted).

23  **3.  WFMI Is Not Subject to the Court's Specific Jurisdiction.**

24  Specific jurisdiction "focuses on 'the relationship among the defendant, the forum and the

25  litigation.'"  *Walden v. Fiore*, 134 S.Ct. 1115, 1121 (2014) (quoting *Keeton v. Hustler Magazine,*

26  *Inc.*, 465 U.S. 770, 775, 104 S.Ct. 1473, 79 L. Ed. 2d 790 (1984)).  Plaintiff must prove that a

27
28  [1]  As discussed in Section III(A)(3) below, the California contacts of WFMI's subsidiaries cannot
be imputed to WFMI for purposes of general or specific personal jurisdiction.

1   nonresident defendant purposefully directed its activities or consummated some transaction in

2   California, or performed some act by which it purposefully availed itself of the privilege of

3   conducting activities here.  *Schwarzenegger v. Fred Motor Co., supra*, 374 F.3d at 802.  Plaintiffs

4   also must show that their claims specifically arose out of or relate to those activities.  *Id.*

5   Moreover, the existence of a relationship between a parent company and its subsidiaries, without

6   more, is not sufficient to establish specific jurisdiction over the parent on the basis of the

7   subsidiaries' contacts with California.  *Holland America Line Inc. v. Wärtsilä North America, Inc.*,

8   485 F.3d 450, 459 (9th Cir. 2007); *see also Calvert v. Huckins*, 875 F. Supp. 674, 678 (E.D. Cal.

9   1995) ("it is well settled that the mere presence of a subsidiary in a forum state will not suffice to

10   establish personal jurisdiction over a nonresident parent company.").  Plaintiffs cannot satisfy this

11   burden as to WFMI.

12       WFMI does not have any direct contacts with California, let alone the minimum contacts

13   required by *Int'l Shoe* and its progeny.  As detailed above, WFMI is a passive holding company

14   for other operating companies.  Warren Decl., ¶2.  It does not own or operate any offices or stores

15   in California, nor does it engage in any other type of commercial activity, such as advertising,

16   marketing, distribution or sales, within California.  *See* Warren Decl., ¶¶4-10.  Further, WFMI

17   does not set policies for or control the operating entities.  *Id.*, ¶7.  It also does not produce the beef

18   products at issue in this case, nor review or approve their labels.  *Id.*, ¶¶8 and 10.  For these

19   reasons, federal courts have held that holding companies—including WFMI, in particular—are not

20   subject to specific jurisdiction in foreign states.  *M2 Software Inc. v. M2 Commc'ns, L.L.C.*, 149 F.

21   App'x 612, 615 (9th Cir. 2005) ("mere fact that M2 Communications owns Viacom stock is not an

22   'act' that is aimed at California"); *Eat Right Foods, Ltd. v. Whole Foods Mkt., Inc.*, No. C13-2174-

23   RSM, 2014 WL 12027447, *3 (W.D. Wash. Sept. 15, 2014)   (specific jurisdiction lacking over

24   holding company); *Vasquez v. Whole Foods Mkt., Inc.*, No. 17-cv-00112-APM, 2018 WL 810232,

25   *7 (D.D.C. Feb. 9, 2018) (plaintiff failed to demonstrate specific jurisdiction over WFMI);

26   *Kellman v. Whole Foods Market, Inc.,* 313 F. Supp. 1031, 1048 (N.D. Cal. 2018) (plaintiff failed

27   to establish either general or specific jurisdiction over WFMI).  Thus, WFMI has not conducted or

28

directed any activity in or towards California and is not subject to this Court's specific personal jurisdiction, and the claims against it should be dismissed.

**B.      Plaintiffs Fail to Plead the Necessary Facts to Establish Their Standing to Assert the Alleged Claims.**

Standing is a jurisdictional issue and may properly be addressed through a pleading challenge under Fed. R. Civ. P. 12(b)(1).  *See United States v. Hays*, 515 U.S. 737, 742 (1995); *see also White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000) (party may challenge standing in Rule 12(b)(1) motion given that standing "pertain[s] to a federal court's subject-matter jurisdiction under Article III.".)  Plaintiffs have the burden of establishing standing.  *See Colwell v. Dept. of Health & Human Servs.*, 558 F.3d 1112, 1121 (9th Cir. 2009).

Article III's constitutional case-in-controversy requirements necessitate that, for each claim a plaintiff must allege: (1) an injury in fact that is concrete and particularized, as well as actual and imminent; (2) that the injury is fairly traceable to the challenged action of the defendant; and (3) that it is likely (not merely speculative) that the injury will be redressed by a favorable decision. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 180-81 (2000).  A concrete injury is one that is "distinct and palpable...as opposed to merely abstract." *Schmier v. United States Court of Appeals*, 279 F.3d 817, 821 (9th Cir. 2009).

A suit brought by a plaintiff without Article III standing is not a "case or controversy," and an Article III federal court therefore lacks subject matter jurisdiction over the suit.  *See Cetacean Community v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004).  Claims brought under California's CLRA, UCL, or FAL must also satisfy Article III standing requirements.  *See Birdsong v. Apple*, 590 F.3d 955, n.4 (9th Cir. 2009) (citing *Cantrell v. City of Long Beach*, 241 F.3d 674, 683 (9th Cir. 2001)) (holding that a party asserting state law claims in federal court "must meet the stricter federal standing requirements of Article III.").

///

1    **1.     The Individual Plaintiffs Have Not Alleged a Particularized or Concrete**

2         **Injury.**

3         The Individual Plaintiffs claim that they were deceived by the advertising statements "No

4    Antibiotics, Ever" and "No antibiotics or added growth hormones, ever" into believing the beef

5    products they purchased from Whole Foods Market were raised without the use of antibiotics.

6    ECF No. 1, ¶¶ 10, 17, 24.  Plaintiffs also allege that they tested an undisclosed beef product from

7    an undisclosed Whole Foods Market store using an undisclosed method and detected an

8    undisclosed amount of monensin sodium in the single unspecified product.[2]  *Id.*, ¶62.  Based on

9    this single incident, Plaintiffs claim they have been injured by purchasing beef products that were

10   raised using antibiotics.  *Id.*, ¶13, 20, 27.  Notably, the Individual Plaintiffs fail to allege that the

11   beef products they personally purchased were raised with antibiotics or even that the unspecified

12   beef product they tested was the same beef product they purchased or that the unspecified beef

13   product was even purchased from the same store or region where they shopped.

14        Thus, Plaintiffs fail to show a link between the specific beef product each of them bought,

15   the representations they viewed, and the beef product that was subjected to testing.  Just because

16   some unspecified testing of an unidentified beef product allegedly revealed an undisclosed amount

17   of monensin sodium, it does not follow that the beef products each Individual Plaintiff bought

18   must have also contained antibiotics.  Nor does it follow that all, a substantial portion, or even

19   more than a single sample of Whole Foods Market's beef products contain antibiotic residues

20   and/or were raised with antibiotics.  Indeed, the slaughterhouse testing cited by Plaintiffs suggests

21   that most cattle, eighty-five percent (85%), came from lots where no cattle tested positive for

22   antibiotics.  *See* ECF No. 1, ¶¶64-65.

23        Accordingly, Plaintiffs' alleged injuries are neither particularized nor concrete.

24   "Particularization is necessary to establish an injury in fact," and for "an injury to be

25   'particularized,' it 'must affect the plaintiff in a personal and individual way.'" *Spokeo, Inc. v.*

26   _____

27   [2] As discussed in Section III(B)(2) below, none of the other testing cited by Plaintiffs is of Whole
     Foods Market's beef products.

28

1  *Robins*, 136 S. Ct. 1540, 1547-48 (2016).  Moreover, a "concrete" injury must be '*de facto*'; that

2  is, it must actually exist." *Id*. at 1548.  A concrete injury must be real and not abstract.  *Id.*

3       In *Wallace v. ConAgra Foods, Inc.*, the plaintiffs alleged that Hebrew National beef

4  products were not 100% kosher beef as advertised, based on allegations that certain

5  slaughterhouses did not follow kosher rules.  *See Wallace v. ConAgra Foods, Inc*., 747 F.3d 1025

6  (8th Cir. 2014).  The *Wallace* plaintiffs tried to get around the speculation in their complaint by

7  stating that it was "'impossible for any reasonable consumer to detect whether purportedly kosher

8  meat is non-kosher." *Id.* at 1030.  But this made no difference.  The Eighth Circuit dismissed the

9  complaint because the plaintiffs' "allegations fail[ed] to show that any of the particular packages

10 of Hebrew National beef they personally purchased contained non-kosher beef" and plaintiffs

11 "gave no reason to think all the beef marked as kosher under the quota did not meet kosher

12 standards." *Id*.

13      The Eighth Circuit emphasized it could not "discern from the complaint how many

14 packages were tainted with non-kosher beef," and noted that it was "unclear whether even a bare

15 majority of Hebrew National packages were not kosher." *Id*. (citation omitted).  Thus, the Court

16 found that "it is pure speculation to say the particular packages sold to the [plaintiffs] were tainted

17 by non-kosher beef" and dismissed the complaint because "the Supreme Court has reminded lower

18 courts that speculation and conjecture are not injuries cognizable under Article III." *Id*. at 1031

19 (citation omitted).  Similarly, in *Pels v. Keurig Dr. Pepper, Inc*., plaintiff alleged that defendants'

20 spring water contained excessive levels of arsenic.  The district court found that plaintiff failed to

21 plead a particularized injury because he failed to plead the spring water he purchased contained

22 violative arsenic levels.  *Pels v. Keurig Dr. Pepper, Inc.*, No. 19-cv-03052-SI, 2019 WL 5813422,

23 at *5 (N.D. Cal. Nov. 7, 2019).

24      The Individual Plaintiffs cannot artfully plead around the injury in fact requirement by

25 claiming that some other consumers allegedly purchased beef from Whole Foods Market raised

26 with antibiotics.  In *Whitson v. Bumbo*, consumer plaintiff alleged that the defendant manufacturer

27 misrepresented the safety of its baby seat.  *See Whitson v. Bumbo*, No. 07-cv-05597-MHP, 2009

28

WL 1515597, at *4 (N.D. Cal. Apr. 16, 2009).  Although the manufacturer warned consumer to never use the seat on a raised surface, the packaging contained photos depicting babies in seats on a table.  *Id*. at *1.  After receiving reports that children had fallen out of the seat, the seat was recalled.  *Id.* at *2.  The court dismissed the plaintiff's claim on standing grounds, concluding that she had failed to "allege any actual injury" because she did not allege that any baby fell from the seat she purchased.  *Id*.  Here, the Individual Plaintiffs similarly fail to allege any injury from the beef products they purchased. Indeed, while Individual Plaintiffs make the conclusory allegation they were economically harmed and "would not have paid the prices they did, had they known the truth that cattle used in the Products were raised with antibiotics," they fail to show that the beef products they purchased were raised with antibiotics. ECF No. 1, ¶¶ 5, 116, 130, 136.

### 2.	Farm Forward Lacks Standing to Assert its FAL and UCL Claims.

In advancing its FAL and UCL claims, Farm Forward relies on organizational standing when it argues that its interests were hindered because WFMI allegedly falsely advertised its meat products as antibiotic free.  To establish organizational standing under the FAL and UCL, Farm Forward bears the burden of showing that the advertising: (1) frustrated its organizational mission; and (2) forced Farm Forward to divert resources to avoid real harm.  *See Friends of the Earth v. Sanderson Farms, Inc.*, 992 F.3d 939, 942 (9th Cir. 2021); *see also Havens Realty Corp. v. Coleman,* 455 U.S. 363, 379 (1982).  These are additional elements beyond that required to establish associational standing under federal law.  *United Food & Commercial Workers Union Local 751 v. Brown Grp., Inc.,* 571 U.S. 544, 552 (1996).  Farm Forward fails to adequately plead the second element, diversion of resources, because it fails to adequately plead that it diverted resources to combat WFMI's advertising versus merely going about its usual business.

Organizations divert resources when they change resource allocation, not merely by going about their "business as usual."  *Am. Diabetes Ass'n v. U.S. Dep.'t of the Army*, 938 F.3d 1147, 1154 (9th Cir. 2019.)  Courts have found that merely continuing ongoing activities does not satisfy this requirement.  *Friends of the Earth v. Sanderson Farms, Inc.*, *supra*, 992 F.3d at 941-942 (finding that advocacy groups, whose missions related to protection of human health, animal

-11-

health and the environment, failed to establish standing on their FAL and UCL claims regarding antibiotic use in chicken when the groups' activities were continuation of their ongoing work); *see also, In Defense of Animals v. Sanderson Farms, Inc.* 2021 WL 4243391, at **4-5 (N.D. Cal. Sept. 17, 2021).

Farm Forward repeatedly claims that its mission is "to end factory farming."[3] *See* ECF No. 1, ¶¶ 2, 29.  It attempts to establish organizational standing by alleging that it "significantly departed" from this mission when it allegedly tested Whole Foods Markets' beef products for antibiotics and initiated a campaign to "expose Whole Foods' (and other) companies' false advertising of meat." *Id.*, ¶ 92.  Other allegations in the Complaint, however reveal that these actions constituted "business as usual" for Farm Forward because it believes evidence of antibiotics in meat demonstrates that such meat came from factory farms.  For instance, Farm Forward claims that "[d]ue to their poor genetic health and the crowded conditions in which they're confined, *animals on factory farms are often given drugs* in subtherapeutic doses to promote growth and keep them alive in conditions that would otherwise stunt their growth and even kill them."  *Id.*, ¶ 37 (emphasis added).

Similarly, in a Farm Forward article cited in the Complaint entitled "The Drugs Farm Forward Found Hiding in Your Meat," Farm Forward states "[b]ecause GAP has shown a pattern of catering to the industry *by welcoming modified factory farms into its program*, we suspected that drugs may be present in the meat it certifies."  ECF No. 1, fn. 10 at p. 2 (emphasis added).  In that same article, Farm Forward claims that it discovered two antiparasitic drugs in Whole Foods Market's meat and that while those drugs were "technically permitted within GAP's Animal Welfare Certified program," they were "routinely used on factory farms" and their use was "worrisome." ECF No. 1, fn. 10 at p. 3.  Farm Forward goes on to state, "these drugs are often used prophylactically to prevent densely packed animals on factory farms from falling ill…"  *Id.* Finally, Farm Forward opines that "[i]ts time for GAP and Whole Foods to commit to phase out

---

[3] Notably, Farm Forward fails to specifically define anywhere in the complaint (perhaps purposefully to avoid undermining its standing allegations) what it believes constitutes "factory farming."

all factory farm practices for all of the operations they certify and sell, and to do more to promote

plant-based alternatives…" *Id.*

In another article cited in the Complaint entitled "Farm Forward Finds Drugs in Certified

Meat at Whole Foods," Farm Forward further reveals that its campaign against Whole Foods was

merely a continuation of its core mission to end factory farming. It states:

> In reality, **factory farmed products dominate Whole Foods'
> supply chain** despite charging customers up to 40 percent more for
> Animal Welfare Certified products. Antibiotics and other drugs are
> used widely on factory farms to keep animals alive in cruel and
> filthy conditions that may otherwise kill them. Farm Forward's
> findings should raise serious doubts in the minds of consumers
> about Whole Foods' and GAP's ability to prevent animals from
> suffering on factory farms and to keep products with drug residues
> from ending up on store shelves.

*See* ECF No. 1, fn. 16 at p. 2 (emphasis added).  At the conclusion of that article in a heading

entitled "**End Factory Farming**," Farm Forward again opines, "It's time for GAP's Animal

Welfare Certified program and Whole Foods to commit to stop selling factory farmed products all

together.  Until they stop selling factory farmed products, the best way for consumers to avoid

unwanted drugs in their food is to avoid animal products whenever possible. Sign our petition…to

**tell Whole Foods to take factory farmed products off their shelves**."  ECF No. 1, fn. 16 at p. 3

(emphasis in original).  These statements show that contrary to the conclusory statement in the

Complaint that WFMI's alleged misleading advertising caused Farm Forward to "depart[] from

Farm Forward's longstanding anti-factory farming focus," Farm Forward's repeated attacks

against "Whole Foods" constituted business as usual in furtherance of its mission to end factory

farming and practices it associates with factory farming.  *See* ECF No. 1, ¶81.

Farm Forward also fails to make any specific averments about what it would have done

with its time and money if it had not purportedly diverted resources to counteract WFMI's alleged

advertising.  Instead, Farm Forward only makes vague references to "disruption to its

organizational activities" and that it "drained resources from its efforts to directly oppose and seek

to curtail factory farming." ECF No. 1, ¶¶ 81, 89.  These conclusory allegations cannot support a

finding of diversion of resources.

It is clear from the Complaint that the activities Farm Forward contends constitute its response to the alleged discovery of the use of pharmaceuticals in WFMI's meat products was standard issue advocacy work by Farm Forward.  As a matter of law, Farm Forward cannot establish that it "diverted resources" when its campaign against WFMI was a continuation of its ongoing work to end factory farming.  It would "effectively nullify the constitutional requirement of standing" if Farm Forward could establish standing "by virtue of investigating conduct or starting a new campaign against someone who frustrates its general mission."  *In Defense of Animals v. Sanderson Farms, Inc., supra,* 2021 WL 4243391, at *4.

### 3.     Plaintiffs Lack Standing to Assert Nationwide Class Claims.

The Individual Plaintiffs, who are all California residents and purchased their products in Southern California (i.e., the Southern Pacific Region), attempt to assert claims on behalf of consumers nationwide.  *See* ECF NO. 1, ¶¶7, 14, 21 and 94.  Plaintiffs allege their purported class to be "[a]ll persons in the United States who purchased a Beef Product from Whole Foods between 2017 and present." *Id.*, ¶94.  Plaintiffs also assert claims on behalf of a "California Subclass." *Id.*  Plaintiffs allege causes of action for violation of California's UCL, CLRA and FAL as well as common law claims for unjust enrichment and fraudulent concealment.  *See gen.*, ECF No. 1.

Because Plaintiffs do not have Article III standing to assert claims under the laws of states in which no plaintiff resides nor has purchased products, it is appropriate to dismiss Plaintiffs' nationwide class claims at the pleading stage.  *Vitiosus v. Alani Nutrition, LLC*, No. 21-cv-2048-MMA, 2022 WL 2441303, at *9 (S.D. Cal. July 5, 2022); *see also Stewart v. Kodiak Cakes, LLC*, 537 F. Supp. 3d 1103, 1123-24 (S.D. Cal. 2021) (collecting cases dismissing nationwide class claims at the pleading stage).  Plaintiffs also fail to assert separate causes of action for each state's common law claims – unjust enrichment and fraudulent concealment.  Separate state law claims may not be lumped together in one cause of action.  *See Kodiak*, 537 F.Supp.3d at 1157; *see also Augustine v. Talking Rain Beverage Co., Inc.*, 386 F. Supp. 3d 1317, 1333 (S.D. Cal. 2019)

1  (dismissing under Rule 12(b)(6) the plaintiff's common law claims on behalf of a nationwide class

2  because they failed to allege the applicable law).

3       Even if Plaintiffs could amend their Complaint to separately allege causes of action for all

4  fifty states, Plaintiffs do not have standing to assert claims outside of California because Plaintiffs

5  do not reside in those other states and did not purchase products there.  *See Kodiak*, 537 F.Supp.3d

6  at 1125 ("No named Plaintiff alleges a connection to [the] jurisdictions where they do not reside or

7  have not purchased Defendant's products. Therefore, the Court finds Plaintiffs lack standing to

8  bring claims under the laws of the states where they do not reside or did not purchase the at-issue

9  products."); *see also Vitiosus, supra*, 2022 WL 2441303, at *10 ("The question here is whether

10  Plaintiffs have standing to hypothetically assert claims on behalf of unnamed class members under

11  potentially forty-eight (48) other states' laws that do not govern their own claims. They do not.").

12  **C.      Plaintiffs' Fraud Claims Fail for Lack of Particularity**

13       A party alleging fraud must "state with particularity the circumstances constituting fraud."[4]

14  Fed. R. Civ. P. 9(b).  This heightened standard requires a pleader state the time, place and specific

15  content of the false representations.  *See Odom v. Microsoft Corp.*, 486 F.3d 541, 553 (9th Cir.

16  2007).  The allegations "must set forth more than neutral facts necessary to identify the

17  transaction.  The plaintiff must set forth what is false or misleading about the statement, and why

18  it is false." *Vess v. Ciba-Geigy Corp USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (emphasis added.)

19  "The circumstances constituting the alleged fraud [must] be specific enough to give defendants

20  notice of the particular misconduct…so that they can defend against the charge and not just deny

21  that they have done anything wrong." *Id*. (ellipsis original and internal quotation marks omitted).

22       "Rule 9(b) serves three purposes: (1) to provide defendants with adequate notice to allow

23  them to defend the charge and deter plaintiffs from the filing of complaints as a pretext for the

24  discovery of unknown wrongs; (2) to protect those whose reputation would be harmed as a result

25  _____

26  [4] Rule 9(b) applies to Plaintiffs' fraudulent concealment claim, as well as their claims for violation
   of California's CLRA, UCL and FAL.  State law claims that allege a unified course of fraudulent

27  conduct are "'grounded in fraud'" or []'sound in fraud,' and the pleading of [those] claim[s] as a
   whole must satisfy the particularity requirement of Rule 9(b)." *Vess v. Ciba-Geigy Corp. USA*,

28  317 F.3d 1097, 1103–1104 (9th Cir. 2003).

of being subject to fraud charges; and (3) to prohibit [ ] plaintiff[s] from unilaterally imposing upon the court, the parties and society enormous social and economic costs absent some factual basis." *Levay v. AARP, Inc.*, No. 17-cv-09041-DDP, 2019 WL 2108124, at *6 (C.D. Cal. May 14, 2019) (internal quotation marks omitted).

These heightened pleading requirements are equally applicable to fraud claims based on omissions or nondisclosures by a defendant. *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009) ("Because the Supreme Court of California has held that nondisclosure is a claim for misrepresentation in a cause of action for fraud, it (as any other fraud claim) must be pleaded with particularity under Rule 9(b)."); *see also Hall v. Sea World Entertainment, Inc.*, No. 15-cv-660-CAB, 2015 WL 9659911, at *2 (S.D. Cal. Dec. 23, 2015).  Plaintiffs' Complaint fails to meet Rule 9(b)'s heighted pleading standard because Plaintiffs fail to plead with particularity the when (when Plaintiffs heard statements from Whole Foods), the why (why those statement are false), and the how (which products Plaintiffs purchased and how were they injured).

The gravamen of Plaintiffs' claims is their contention that Whole Foods Market represented its beef products as "made from cattle raised without antibiotics," but, in fact, "Whole Foods' Beef Products were raised with antibiotics and other pharmaceuticals."  ECF No. 1, ¶¶109, 127, 134, 140 and 144.  Plaintiffs claim that they relied on Whole Foods Market's statements prior to purchasing unspecified beef products.  Plaintiffs, however, failed to state with any particularity when they heard and relied upon statements made by Whole Foods, the facts to support their conclusory allegation that Whole Foods Market's beef products were in fact raised with antibiotics, and how they relied upon Whole Foods Market's statements—that is, what products did Plaintiffs purchase in reliance on Whole Foods Market's statements?

Plaintiffs allege that they saw and relied upon Whole Foods' "No Antibiotics, Ever" and "No antibiotics or added growth hormones, ever" representation.  Plaintiffs, however, fail to allege when they saw and relied on these representations.  By failing to plead when they saw and relied on these alleged representations, Plaintiffs fail to satisfy Rule 9(b)'s particularity requirements. *Kearns, supra*, 567 F.3d at 1126.

Plaintiffs also claim that Whole Foods' representations are false because they tested "meat products" from Whole Foods Market and that their testing revealed the presence of monensin sodium in a single beef product.  ECF No. 1, ¶62.  This bare allegation leaves out all the particularity of the alleged fraud.  The Complaint does not identify the date the beef product was purchased from Whole Foods Market or whether it came from the Southern Pacific Region, the specific beef product purchased and tested, the name of the laboratory that performed the testing, the method of testing, or the amount of antibiotic allegedly detected.[5]  Without this required information WFMI cannot defend against Plaintiffs' allegations.

Plaintiffs also allude to a peer-reviewed study which they claim shows Whole Foods Market's beef products were raised with antibiotics.  ECF No. 1, ¶64.  Neither the allegations in the Complaint nor the study itself, however, identify the slaughterhouse where the testing took place and there is no evidence that beef products from that slaughterhouse were sold at Whole Foods Market stores.  *Id.*, ¶64.  Plaintiffs also cite to a Consumer Reports study that found antibiotic resistant bacteria in chicken.  *Id.*, ¶66.  Again, antibiotic resistant bacteria in chicken does not show that beef products sold by Whole Foods Market were raised by antibiotics.

The length of Plaintiffs' Complaint should not be conflated with the particularity of Plaintiffs' allegations of fraud.  *See Hall v. Sea World Entertainment, supra*, 2015 WL 9659911, at *10 ("Although the FAC spends close to seventy pages discussing the conditions of the whales at SeaWorld, as well as statements purportedly made by SeaWorld related thereto, simply listing statements and saying they are false does not satisfy Rule 9(b).").  Plaintiffs must specifically allege how and why Whole Foods' statements are false and they have failed to do so.

---

[5] Plaintiffs also claim that testing showed the presence of fenbendazole in Beef Products purchased from Whole Foods Market.  Notably, as Plaintiffs acknowledge in their Complaint, fenbendazole is not an antibiotic and its alleged presence in beef products does not support Plaintiffs' claim of deception.   Even so, as with the alleged antibiotic testing, the Complaint does not identify the date the beef products were purchased from Whole Foods Market, that any of the tested beef products came from the Southern Pacific Region, the specific beef products, the name of the laboratory that performed the testing, the method of testing, or the amount of fenbendazole allegedly detected.

Additionally, Plaintiffs fail to allege they relied on Whole Foods Market's representations. In particular, Plaintiffs fail to identify what beef product they purchased in reliance on Whole Foods Market's statements and how they were injured.  Instead, Plaintiffs lump together forty-three separate products sold by Whole Foods Market that contain beef and claim they purchased some unspecified product in reliance on Whole Foods Market's representation.  *See* ECF No. 1, ¶¶10, 17, 24 and 4.  This does not satisfy Rule 9(b).  WFMI needs to know which products Plaintiffs purchased so that it can respond to the fraud allegations.  For example, some Beef Products listed by Plaintiffs are packaged and claims made on their labels would be preempted by labeling requirements in the Federal Meat Inspection Act (FMIA).  *See Meaunrit v. The Pinnacle Foods Group, LLC,* No. 09-cv-04555 CW, 2010 WL 1838715, at *7 (N.D. Cal., May 5, 2010). Other Beef Products listed are produced and labeled by other companies and Whole Foods Market has no control of the label.  These details are necessary for Whole Foods to defend itself and required by Rule 9(b).

**D.      Plaintiffs' Claim for Unjust Enrichment Fails**

Plaintiffs' claim for unjust enrichment should be dismissed because there is no stand-alone claim under California law.  *See McBride v. Boughten*, 123 Cal. App. 4th 379, 387 (2004), quoting *Melchior v. New Line Products, Inc.*, 106 Cal. App. 4th 779, 793 (2003) (stating unjust enrichment is a "general principle underlying various legal doctrines and remedies;" it is not an independent cause of action); *Krause-Pettai v. Unilever United States, Inc*., No. 20-cv-1672-DMS, 2021 WL 1597931, at *7 (S.D. Cal., Apr. 23, 2021); *Barrett v. Optimum Nutrition,* No. CV21-4398-DMG (SKX), 2022 WL 2035959 (C.D. Cal. Jan. 12, 2022).

///

# IV.    CONCLUSION

For the reasons stated set forth above, the Court should grant WFMI's Motion and dismiss the Complaint for lack of personal jurisdiction, lack of standing to assert the alleged claims and lack of particularity required for fraud claims.

Dated:  October 21, 2022                           BLAXTER | BLACKMAN LLP

                                          By _____
                                                /s/ *Brian R. Blackman*
                                                BRIAN R. BLACKMAN
                                                Attorneys for Defendant
                                                WHOLE FOODS MARKET, INC.

1

## **CERTIFICATE OF SERVICE**

2

I HEREBY CERTIFY, that on October 21, 2022, I filed the foregoing electronically

3
through the CM/ECF system, which caused the following parties or counsel to be served by

electronic means, as more fully reflected on the Notice of Electronic Filing:

4

5    Paige M. Tomaselli                      Gretchen Elsner
     Dylan D. Grimes                         ELSNER LAW & POLICY, LLC
6    GRIMES LAW LLP                          314 South Guadalupe Street, Suite 123
     730 Arizona Avenue                      Santa Fe, NM 87501
7    Santa Monica, CA 90401                  Telephone:  (505) 303-0980
     Telephone:  (310) 747-5095              Email:  gretchen@elsnerlaw.org
8    Email:  ptomaselli@grimelaw.com

9    Email:  dgrimes@grimelaw.com

10

11   Adam E. Polk
     Jordan Elias
12   Simon Grille
     Jordan Isern
13   GIRARD SHARP LLP
     601 California Street, Suite 1400
14   San Francisco, CA 9410
     Telephone:  (415) 981-4800
15   Email:  apolk@girardsharp.com

16   Email:  jelias@girardsharp.com
     Email:  sgrille@girardsharp.com
17   Email:  jisern@girardsharp.com

18

19        I declare under penalty of perjury under the laws of the United States of America that the

20   above it true and correct.  Executed on October 21, 2022 in San Francisco, California.

21

                                            /s/ *Emma J. Hart*
22                                          EMMA J. HART

23

24

25

26

27

28