Paige M. Tomaselli (SBN 237737)
Dylan D. Grimes (SBN 302981)
**GRIME LAW LLP**
730 Arizona Avenue
Santa Monica, CA 90401
Telephone: (310) 747-5095
ptomaselli@grimelaw.com
dgrimes@grimelaw.com

Gretchen Elsner (*pro hac vice*)
**ELSNER LAW & POLICY, LLC**
314 South Guadalupe Street, Suite 123
Santa Fe, NM 87501
Telephone: (505) 303-0980
gretchen@elsnerlaw.org

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## SOUTHERN DIVISION

| | |
|---|---|
| SARA SAFARI, PEYMON KHAGHANI, on behalf of themselves and all others similarly situated, and FARM FORWARD, on behalf of the general public, | Case No. 8:22-CV-01562-JWH-KES |
| Plaintiffs, | **FIRST AMENDED CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| WHOLE FOODS MARKET SERVICES, INC., a Delaware corporation, WHOLE FOODS MARKET CALIFORNIA, INC., a California corporation, MRS. GOOCH'S NATURAL FOOD MARKETS, INC. doing business as Whole Foods Market, a California Corporation, | |
| Defendants. | |

Plaintiffs Sara Safari, Peymon Khaghani ("Consumer Plaintiffs"), on behalf of themselves and all others similarly situated, and public interest organization Plaintiff Farm Forward (collectively, "Plaintiffs") file this Class Action Complaint against Whole Foods Market Services, Inc.; Whole Foods Market Distribution, Inc.; Whole Foods Market California, Inc.; Mrs. Gooch's Natural Food Markets, Inc. (collectively, "Whole Foods" or "Defendants") and allege:

## **NATURE OF THE ACTION**

1.      This consumer fraud action concerns Whole Foods' material misrepresentations and omissions about the use of antibiotics in the beef it sells. Whole Foods markets its beef with the slogan, "No Antibiotics, Ever" and reinforces this promotional message that all its beef is raised antibiotic-free with other similar representations at retail stores, in online marketing, and on product packaging. But, as independent testing has shown, Whole Foods' claim that it sells only antibiotic-free beef is false. Plaintiffs bring this action to stop Whole Foods' misleading promotion and sale of beef ("Beef Products" or the "Products"), and the Consumer Plaintiffs seek to recover damages for themselves and other purchasers of these Products in California.

2.      Plaintiff Farm Forward—a public interest organization seeking to end factory farming—recently found that beef sold by Whole Foods contained antibiotic and other pharmaceutical residue. The presence of this residue demonstrates the cattle were treated with antibiotics or other pharmaceuticals while being raised. Farm Forward seeks injunctive relief through this action.

3.      Whole Foods' internal emails show that its executives rejected the opportunity to investigate the accuracy of its "No Antibiotics, Ever" claims, in part because "the repercussions for having a positive result were beyond ridiculous[.]" Unreceptive to testing cattle in its supply chain, Whole Foods continued promoting its beef products as raised antibiotic-free.

4.      What Whole Foods tells consumers about the beef it sells matters. According

to *Superbugs in Stock: Which Grocery Chains Are Acting to Eliminate Routine Antibiotic Use in Their Meat Supply*, published in October 2022, "Grocery companies are a primary source of meat products consumed in American households and the main source for consumers for information about these products....Most U.S. consumers are demanding meat and poultry raised without the routine use of antibiotics, and 40 percent of consumers 'always' or 'often' purchase meat and poultry raised without antibiotics at the supermarket." While some companies that sell animal products have policies in place regarding antibiotics use, "the language in these policies" "can give the public the false impression that companies have implemented meaningful change when that often is not the case. This type of language is indicative of 'greenwashing': making unsubstantiated or misleading claims that lead consumers to believe their products or behaviors are more sustainable or values-based than they actually are."[1]

5.     Raised without antibiotics marketing claims matter to consumers. According to a 2018 Consumer Reports study, 43% of Americans always or often looked for meat or poultry marketed as "raised without antibiotics." Six out of 10 consumers were willing to pay more for meat raised without antibiotics. Even four years ago at the time of the study, 32% of Americans knew someone who had a bacterial infection where antibiotics were ineffective in curing an illness; 43% of Americans were highly concerned that feeding antibiotics to animals may diminish effectiveness of antibiotics in humans and an additional 34% were somewhat concerned.[2]

---

[1] Food Animals Concerns Trust and Keep Antibiotics Working et al, *Superbugs in Stock: Which grocery chains are acting to eliminate routine antibiotic use in their meat supply?* (October 2022) https://www.centerforfoodsafety.org/reports/6741/superbugs-in-stock-which-grocery-chains-are-acting-to-eliminate-routine-antibiotic-use-in-their-meat-supply (last visited November 14, 2022).

[2] Consumer Reports Survey Group, *Natural and Antibiotics Labels Survey* 8 (2018), *available at* https://advocacy.consumerreports.org/wp-content/uploads/2018/10/2018-Natural-and-Antibiotics-Labels-Survey-Public-Report-1.pdf.

6.      Administering routine or subtherapeutic antibiotics to farmed animals creates serious health risks. It contributes to the development of antibiotic-resistant bacteria in the animals—bacteria that consumers of the meat eventually ingest.[3] Once in the human system, these bacteria can cause infections that cannot be treated with existing antibiotics because the bacteria is antibiotic-resistant.[4]

7.      Consumers overpaid for and were economically harmed as a result of Whole Foods' misleading promotion of its Beef Products. Whole Foods charges—and consumers pay—a substantial price premium for Beef Products based on the claim that the cattle that become these Products were not given any antibiotics. For instance, Whole Foods charges $31.99 per pound for beef tenderloin steak filet mignon. A traditional retailer charges only $24.99 per pound for the same cut of beef. Thus, Whole Foods marks up the price of this Beef Product by 28% in connection with its antibiotic-free representations. Consumer Plaintiffs would not have purchased Beef Products, or would not have paid the prices they did, had they had known the truth that cattle used in the Products were raised with antibiotics. Furthermore, Consumer Plaintiffs would not have purchased Beef Products, or would not have paid the prices they did, had they known the truth that Whole Foods does not effectively verify its "No Antibiotics, Ever" representation.

8.      Plaintiffs seek an injunction requiring Whole Foods to correct and clarify its past and ongoing misrepresentations and omissions, and to remove the misrepresentations or, in the alternative, to ensure that Whole Foods' Beef Products conform with how it markets them. Consumer Plaintiffs, on behalf of the Class, further seek to recover their overpayments for Beef Products due to Whole Foods' false advertising.

---

[3] Lisa L. Gill, *Is Our Meat Safe to Eat?*, 87 Consumer Rep. 31, 36 (2022).

[4] Lesley Stahl, *Is overuse of antibiotics on farms worsening the spread of antibiotic-resistant bacteria?*, CBS News (Jan. 5, 2020), https://www.cbsnews.com/news/is-overuse-of-antibiotics-on-farms-worsening-the-spread-of-antibiotic-resistant-bacteria-60-minutes-2020-01-05/.

**A.    Plaintiffs**

**Sara Safari**

9.    Plaintiff Sara Safari is a citizen and resident of Tustin, California.

10.    Since approximately 2010 and within the applicable limitations period, Ms. Safari has purchased Beef Products at Whole Foods on numerous occasions. She mostly recently purchased Beef Products from Whole Foods in or around June 2022.

11.    Ms. Safari purchased the Products at Whole Foods' retail stores, including its store located at 2847 Park Avenue in Tustin, California.

12.    Ms. Safari saw and relied on Whole Foods representations concerning its Beef Products in-store, on its website, in its listings on Amazon, and on the Products' packaging. She saw and relied upon Whole Foods representations from approximately 2010 to approximately June 2022, including every time she grocery shopped at Whole Foods. From approximately 2018 to June 2022, Ms. Safari shopped approximately weekly in person at Whole Foods in Tustin and was exposed to and relied on the signs in the Whole Foods meat department promising no antibiotics ever. Ms. Safari saw and relied on Whole Foods' "No Antibiotics, Ever" and "No antibiotics or added growth hormones, ever" slogans prior to purchasing the Beef Products.

13.    Ms. Safari purchased the Beef Products at a premium price because, based on Whole Foods' representations, she believed all Beef Products available for sale from Whole Foods were derived from cattle raised without antibiotics or pharmaceuticals. Choosing antibiotic-free meat is important to Ms. Safari because she does not want to fund or support a farming model that uses pharmaceuticals, including antibiotics, as part of raising the animals in crowded, unsanitary conditions. Ms. Safari also does not want to fund or support this farming model because it contributes to the rise of antibiotic-resistant bacteria and may leave pharmaceutical residue in the meat.

14.    Whole Foods never disclosed to Ms. Safari that the cattle used in its Beef

Products may be raised with antibiotics or that it does not take the necessary steps to ensure that all Beef Products it sells are raised antibiotic-free.

15. Had Ms. Safari known that cattle used in Whole Foods Beef Products were raised with antibiotics, she would not have purchased the Products or would not have paid what she did for them.

**Peymon Khaghani**

16. Plaintiff Peymon Khaghani is a citizen and resident of Tustin, California.

17. Since approximately 2010 and within the applicable limitations period, Mr. Khaghani has purchased Beef Products at Whole Foods on numerous occasions. He mostly recently purchased Beef Products from Whole Foods in or around June 2022.

18. Mr. Khaghani purchased the Products at Whole Foods' retail stores, including its store located at 2847 Park Avenue in Tustin, California from approximately June 2020 to June 2022. Mr. Khaghani shopped approximately weekly in person at Whole Foods in Tustin and was exposed to and relied on the signs in the Whole Foods meat department promising no antibiotics ever. In spring 2020 and before, Mr. Khaghani purchased the Products from the Whole Foods stores located at 450 Rhode Island Street in San Francisco, 2001 Market Street in San Francisco, and 20955 Stevens Creek Boulevard in Cupertino, California. In those locations, Mr. Khaghani was also exposed to and relied on the signs in the Whole Foods meat department promising no antibiotics ever.

19. Mr. Khaghani saw and relied on Whole Foods representations concerning its Beef Products in-store, on its website, in its listings on Amazon, in emails from Whole Foods, and on the Products' packaging. He saw and relied upon Whole Foods representations from approximately 2010 to approximately June 2022, including every time he grocery shopped at Whole Foods. Mr. Khaghani saw and relied on Whole Foods' "No Antibiotics, Ever" and "No antibiotics or added growth hormones, ever" slogans prior to purchasing the Beef Products.

20. Mr. Khaghani purchased the Beef Products at a premium price because,

based on Whole Foods' representations, he believed all Beef Products available for sale from Whole Foods derived from cattle raised without antibiotics or pharmaceuticals. Choosing antibiotic-free meat is important to Mr. Khaghani because he does not want to fund or support a farming model that uses pharmaceuticals, including antibiotics, as part of raising the animals in crowded, unsanitary conditions. Mr. Khaghani also does not want to fund or support this farming model because it contributes to the rise of antibiotic-resistant bacteria and may leave pharmaceutical residue in the meat.

21. Whole Foods never disclosed to Mr. Khaghani that the cattle used in its Beef Products may be raised with antibiotics or that it does not take the necessary steps to ensure that all Beef Products it sells are raised antibiotic-free.

22. Had Mr. Khaghani known that cattle used in Whole Foods Beef Products were raised with antibiotics, he would not have purchased the Products or would not have paid what he did for them.

### Farm Forward

23. Plaintiff Farm Forward is a national public interest animal protection organization founded in 2007 and recognized by the IRS as a § 501(c)(3) tax-exempt entity. Farm Forward's principal place of business is in Portland, Oregon. It has more than 60,000 supporters across the world, with over 33,000 followers on social media. Farm Forward's mission is to end factory farming. It has approximately 75 to 150 supporters in Orange County.

### B. Defendants

### Whole Foods Market Services, Inc.

24. Defendant Whole Foods Market Services, Inc. ("WFM Services") is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in Austin, Texas. WFM Services is responsible for the content and the design of Whole Foods' website and actively or constructively knows that the

website directs California customers to Whole Foods's California stores, shows California customers local sales specific to their California stores, shows California customers listings for Whole Foods' products, including the Beef Products marketed as "No Antibiotics, Ever," and allows California customers to purchase those Products online. WFM Services distributes and sells products, and provides products and services to customers in California when they visit a Whole Foods' website, use a Whole Foods or Amazon mobile device app, or visit a store.

### Whole Foods Market California, Inc.

25. Defendant Whole Foods Market California, Inc. is a corporation organized and existing under the laws of the state of California. Its principal place of business and headquarters is maintained at 6401 Hollis Street, Emeryville, California.

26. Whole Foods Market California, Inc. owns and operates Whole Foods stores in Northern California and sells the Products in its retail stores throughout northern California.

### Mrs. Gooch's Natural Food Market, Inc.

27. Defendant Mrs. Gooch's Natural Food Markets, Inc. is a corporation organized and existing under the laws of the state of California. Its principal place of business and headquarters is maintained at 207 Goode Avenue, Glendale, California.

28. Mrs. Gooch's Natural Food Markets, Inc., doing business as Whole Foods Market, owns and operates Whole Foods stores in the Southern Pacific Region, which includes Orange County. Mrs. Gooch's Natural Foods Market, Inc. sells the Products in its retail stores throughout Southern California.

### JURISDICTION AND VENUE

29. This Court has jurisdiction over this lawsuit under the Class Action Fairness Act, 28 U.S.C. § 1332, because this is a proposed class action in which: (1) there are at least 100 class members; (2) the combined claims of class members exceed $5,000,000, exclusive of interest, attorneys' fees, and costs; and (3) Plaintiffs and Defendant Whole

Foods are domiciled in different states.

30.     This Court has personal jurisdiction over Whole Foods because the relevant transactions with Whole Foods giving rise to Plaintiffs' claims occurred in California, and Whole Foods has sufficient minimum contacts in California to render the exercise of jurisdiction by this Court proper. Additionally, the representations and omissions at issue were directed to California residents. Many of the relevant representations and omissions—and the transactions made based on those representations and omissions— occurred in Whole Foods' California stores, were made directly to California residents via online marketing, and involved Beef Products purchases in California.

31.     Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## FACTUAL ALLEGATIONS

### A.     Consumer Demand for Antibiotic-Free Meat

32.     In recent years, transparency about animal welfare and the administration of antibiotics to animals has become increasingly important to meat consumers. According to a 2018 study by the Food Marketing Institute, "'[r]aised in the U.S.' and 'antibiotic-free' are the two most requested items for expanded assortment at the primary meat store."[5] The same study found that, at the same time that conventional meat sales had decreased, "meat with special production claims, such as organic, grass-fed or antibiotic-free, had dollar gains of 25.9 percent and volume growth of 38.3 percent over 2017.[6] Nearly two-thirds of shoppers who have seen a claim of "antibiotic-free," "hormone-free" or "humanely-raised" are more likely to buy the advertised item instead of a conventional counterpart.[7] Consumers, who do not have the expertise to know what pharmaceuticals are used to raise animals for meat, generally understand "no antibiotics" and "no

---

[5] *Power of Meat*, Food Marketing Institute, 2018, at 5.

[6] *Id.*

[7] *Id.* at 5, 48.

hormones" representations to communicate that no routine, subtherapeutic pharmaceuticals of any kind were used to raise the animals and that no pharmaceutical residues of any kind could remain in the meat.

33. The use of antibiotics in animal farming contributes to the development of antibiotic-resistant bacteria, which can infect humans.[8] Infection can occur in several ways,[9] but most relevant here, it can happen by consuming or handling meat.[10] Giving animals antibiotics contributes to the development of antibiotic-resistant bacteria. People then ingest the bacteria along with the meat, and the bacteria can cause infections. Many of these infections cannot be effectively treated with existing antibiotics because the bacteria are already antibiotic-resistant.[11]

34. The use of antibiotics is also indicative of animal mistreatment. As Farm Forward has noted elsewhere, "[d]ue to their poor genetic health and the crowded conditions in which they're confined, animals on factory farms are often given drugs in subtherapeutic doses to promote growth and keep them alive in conditions that would

---

[8] *See Antibiotic Resistance: Understanding the Connection to Antibiotic Use In Animals Raised for Food*, Mayoclinic.org, https://www.mayoclinic.org/diseases-conditions/infectious-diseases/in-depth/antibiotic-resistance/art-20135516#:~:text=cause%20untreatable%20infections.-,Antibiotic%20resistance%3A%20Understanding%20the%20connection%20to%20antibiotic%20use%20in%20animals,These%20may%20cause%20untreatable%20infections (last visited Aug. 9, 2022); Christy Manyi-Loh et al., *Antibiotic Use in Agriculture and Its Consequential Resistance in Environmental Sources: Potential Public Health Implications*, 233 Molecules 795, 796 (2018), *available at* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC6017557/.

[9] Gill, *supra* note 1, at 36 (noting antibiotic-resistant bacteria can also spread through the air, water, insects, farmworkers, and soil).

[10] Vangelis Economou & Panagiota Gousia, *Agriculture and Food Animals as a Source of Antimicrobial-Resistant Bacteria*, 8 Infect Drug Resist 49-61 (2015), available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4388096/.

[11] Stahl, *supra* note 2.

otherwise stunt their growth and even kill them."[12] Therefore, the use of antibiotics in meat goes hand-in-hand with poor animal welfare standards. And animal welfare, too, is of increasing importance to meat consumers. According to a 2017 Hartman's Group survey, 71% of respondents agreed that "when making purchasing decisions, it's important the company avoids inhumane treatment of animals," and one of the top animal welfare practices that increase the likelihood of purchases is that the "animals [are] not given antibiotics/hormones."[13] In 2018, another survey found that "[t]hree-fourths of consumers say that they would be likely to switch to meat, eggs and dairy products with labels that guarantee that the products came from farm animals who were raised according to higher animal welfare standards. This finding extends across demographics, including gender, age, and race."[14] In 2020, a public opinion poll found that "[t]he vast majority (89%) of Americans are concerned about industrial animal agriculture, citing animal welfare, worker safety or public health risks as a concern."[15]

     35.    Buying antibiotic-free meat and meat derived from appropriately treated

---

[12] Ben Goldsmith, *The Drugs Farm Forward Found Hiding in Your Meat*, Farm Forward (April 13, 2022), https://www.farmforward.com/#!/blog?blogid=the-drugs-farm-forward-found-hiding-in-your-meat; *see also* Stacy Sneeringer et al., *Economics of Antibiotic Use in U.S. Livestock Production* 31–36 (2015), *available at* https://www.ers.usda.gov/webdocs/publications/45485/err-200.pdf?v=0.

[13] Ginger Schleuter, *2017 Study Finds Consumer Familiarity With Sustainability Reached All-Time High*, Natural Products Insider, https://www.naturalproductsinsider.com/sustainability/2017-study-finds-consumer-familiarity-sustainability-reached-all-time-high (last visited Aug. 3, 2022).

[14] Lake Research Partners, Results from a Survey of American Consumers, ASPCA, https://www.aspca.org/sites/default/files/aspca-2018_animal_welfare_labelling_and_consumer_concern_survey.pdf (last visited Aug. 9, 2022).

[15] Email from Bob Meadow & Meryl O'Bryan, Lake Rsch. Partners (Feb. 1, 2019), *available at* https://www.aspca.org/sites/default/files/impact_on_public_attitudes_toward_industrial_animal_agriculture-final-111120.pdf.

animals is sufficiently important to American consumers that they are willing to pay a premium price for it. One study, for example, concluded that the price premium is 20% or more for meat raised without antibiotics than conventional counterparts.[16]

36. Beginning in 2002, Whole Foods launched a promotional campaign marketing its beef as having "No Antibiotics, Ever."[17] The reality is starkly different: Whole Foods sold Beef Products without taking effective measures to ensure that they came from cattle raised without antibiotics.[18]

**B. Whole Foods' Beef Products**

37. Whole Foods' Beef Products—all of which are marketed with the prominent slogans "[n]o antibiotics or added growth hormones, ever" or "No Antibiotics, Ever."[19]

38. Whole Foods also prominently advertises on its website:

> When you walk in our doors, you'll find vibrant stacks of produce, animal welfare rated meat, Responsibly Farmed and sustainable wild-caught seafood and body care products with ingredients you can trust. That's because we have experienced team members who help make it all possible. They partner with farmers and suppliers and carefully vet our products to make sure they meet our high standards by researching ingredients, reading labels and auditing sourcing practices — all to make shopping easier for you. Remember, if it doesn't meet our standards, we don't sell it.[20]

39. Whole Foods sells and has sold, during the applicable statute of limitations,

---

[16] Lance Price et al., *Policy Reforms for Antibiotic Use Claims In Livestock*, 376 Science 130 (Supp. 2022), *available at* https://www.science.org/doi/10.1126/science.abj1823.

[17] *See Whole Foods Market Quality Standards: Select Milestones*, Whole Foods Market, https://d39w7f4ix9f5s9.cloudfront.net/ea/2d/171463694419b8abc050017e4255/wfm-timeline-4.pdf (last visited July 12, 2022).

[18] *See* Andrew deCoriolis, *Farm Forward Finds Drugs in Certified Meat at Whole Foods*, Farm Forward (Apr. 4, 2022), https://www.farmforward.com/#!/blog/farm-forward-finds-drugs-in-certified-meat-at-whole-foods/farm-forward.

[19] *See Beef*, Whole Foods Market, https://www.wholefoodsmarket.com/products/meat/beef, (last visited July 12, 2022).

[20] *Core Values*, Whole Foods Market, https://www.wholefoodsmarket.com/mission-values/core-values (last visited November 28, 2022).

its Beef Products in California. The Products are available for purchase at Whole Foods stores and online in California.

40. Whole Foods markets and advertises its Products in California and nationwide. It reaches consumers through, among other marketing channels, in-store signage, television advertising, print advertising, email marketing, and online marketing including on Google, Facebook, YouTube, Twitter, Amazon Prime, and its own website and blog.

**Whole Foods' "No Antibiotics, Ever" Advertising Misleadingly Communicates That Its Beef Products Come from Cattle Raised Without Antibiotics or Other Pharmaceuticals**

41. Whole Foods has had a formal policy of "[n]o antibiotics ever and animal welfare standards in [its] meat department" since 2002.[21] Since 1981, no "antibiotics [were] allowed for [its] meat department."[22]

42. Whole Foods promotes "No Antibiotics, Ever" through a widespread campaign in stores and online shopping outlets, as well as on its website, blog, packaging, and online and television advertisements. "No Antibiotics, Ever" is prominently displayed in Whole Foods stores throughout California. "No Antibiotics, Ever" appears, for example, on in-store signage above or near Whole Foods meat departments as well as on the packaging for certain Products and napkins given out to customers:



---

[21] See *Whole Foods Market Quality Standards: Select Milestones*, *supra* note 15.

[22] See *id.*





43.     A similar slogan appears on Whole Foods' Amazon listings. As shown below, next to each Beef Product on the Amazon website, the prospective purchaser sees: "No added growth hormones or antibiotics, ever."



44.     Similarly, on its own website, Whole Foods states that a "baseline standard[]" for the meat it sells is "[n]o antibiotics ever. If an animal needs antibiotic treatment, it is

separated from those bought by [its] meat department."[23]

45.    On its blog, Whole Foods promotes "No Antibiotics, Ever" in its meat with posts entitled, for instance, "Our Meat: No Antibiotics, Ever[,]" "What Makes Our Meat Different[,]" and "Whole Foods Market: no antibiotics in meat departments[.]"[24] These blog posts specifically mention Whole Foods' Beef Products. For example, the "Our Meat: No Antibiotics Ever" post depicts cattle underneath the emphatic caption, "At Whole Foods Market: No Antibiotics EVER is our standard[,]" and proceeds to tout "the best-tasting beef, pork and poultry you'll find in a grocery store and no antibiotics, EVER!"[25] After repeatedly promising consumers, "No Antibiotics, Ever," Defendants also promise consumers, "If it doesn't meet our standards, we won't sell it," misleading consumers into thinking that Defendants have verified supplier compliance with its standard.[26]

---

[23] *See Meat Department Quality Standards*, Whole Foods Market, https://www.wholefoodsmarket.com/quality-standards/meat-standards, (last visited July 12, 2022).

[24] *See* A.C. Gallo, *Our Meat: No Antibiotics, Ever*, Whole Foods Market (Jun. 25, 2012), https://www.wholefoodsmarket.com/tips-and-ideas/archive/our-meat-no-antibiotics-ever-0; Liz Fry, *Our Meat: No Antibiotics, Ever*, Whole Foods Market (Apr. 29, 2015), https://www.wholefoodsmarket.com/tips-and-ideas/archive/our-meat-no-antibiotics-ever; Theo Weening, *What Makes Our Meat Different*, Whole Foods Market (Feb. 10, 2011), https://www.wholefoodsmarket.com/tips-and-ideas/archive/what-makes-our-meat-different; *Whole Foods Market: no antibiotics in meat departments*, Whole Foods Market (Apr. 18, 2011), https://media.wholefoodsmarket.com/whole-foods-market-no-antibiotics-in-meat-departments.

[25] *See* Gallo, *supra* note 21 (emphasis in original).

[26] *See Meat Department Quality Standards*, Whole Foods Market, https://www.wholefoodsmarket.com/quality-standards/meat-standards, (last visited November 15, 2022).



**Our Meat: No Antibiotics, Ever**

Have you heard the news reports about consumers' concern with antibiotics in the US meat supply? At Whole Foods Market: No antibiotics, EVER is our standard.

A.C. Gallo | June 25, 2012

46.     Whole Foods' "No Antibiotics, Ever" promotional campaign also appears in television and online video advertisements. For instance, in one television advertisement, Whole Foods prominently displays imagery of beef and cattle and its "No Antibiotics, Ever" slogan, while the viewer hears a rhyming slogan: "[a]t Whole Foods Market, we

raise our meat right with show-stopping taste in every bite."[27]



47.    Whole Foods' dissemination of "No Antibiotics, Ever" and related advertisements gives reasonable consumers the false impression that the Beef Products were raised without antibiotics.

48.    Consumers understand antibiotic-free labeling to mean that the cattle used in the meat were raised without antibiotics or other pharmaceuticals. In a 2018 Consumer Reports study of 1,014 Americans, "when given a list of criteria for a label claim referencing 'no antibiotics' on meat or poultry," over three-quarters said "no antibiotics" should mean "no antibiotics were administered to a healthy animal" and two-thirds said it should mean "no antibiotics were administered to the animal under any circumstances."[28]

---

[27] *Whole Foods Market TV Spot, 'Where it Starts,'* ispot.tv (Aug. 17, 2020), https://www.ispot.tv/ad/nxX8/whole-foods-market-where-it-starts.

[28] Consumer Reports Survey Group, *Natural and Antibiotics Labels Survey* 8 (2018), *available at* https://advocacy.consumerreports.org/wp-content/uploads/2018/10/2018-Natural-and-Antibiotics-Labels-Survey-Public-Report-1.pdf.

**C. Whole Foods' "Animal Welfare Certified" Representation on Beef Product Packaging Reinforces Its "No Antibiotics, Ever" Promotional Campaign**

49. Whole Foods also represents that its Beef Products are "Animal Welfare Certified" on the Products themselves, as at the bottom of the following ribeye steak label:[29]



50. "Animal welfare certified" is a label developed by the Global Animal Partnership ("GAP"), a standards-setting group for farmed animals. While GAP recognizes different tiers of certification,[30] any GAP certification is supposed to mean the animals were "raised without the use of antibiotics[.]"[31] Given this standard and the common understanding of "animal welfare," Whole Foods' "Animal Welfare Certified"

---

[29] *Meat Department Quality Standards*, *supra* note 20.

[30] *See id.*

[31] *See* Global Animal Partnership Homepage, https://globalanimalpartnership.org/ (last visited July 12, 2022).

label reinforces to reasonable consumers that the Beef Product was raised with higher animal welfare standards, without antibiotics or other pharmaceuticals.

51.    In approximately 2007, Whole Foods' CEO formed GAP. Farm Forward's Board Chair[32] joined GAP's founding Board of Directors, and Farm Forward representatives continued to serve on GAP's Board until 2020. During that decade, Farm Forward worked with GAP, and by extension Whole Foods, in an effort to improve animal welfare standards through multi-level standards development, standards application, and standards verification across the meat supply chain.

52.    Whole Foods was integral to creating GAP and its standards: Whole Foods employees provided staff support to GAP, and Whole Foods employees served on GAP's Board. Whole Foods thus influenced the GAP standards that would be used to certify meat sold by Whole Foods. Whole Foods maintains close control over GAP to this day: GAP's executive director is Whole Foods' Executive Leader of Meat and Poultry.

53.    GAP developed a six-tier rating system (1, 2, 3, 4, 5 and 5+ ratings), with a "1" rating denoting "No Cages, No Crates, No Crowding" and each step up from there denoting additional animal welfare measures. Products certified to meet GAP standards are often marketed as "Animal Welfare Certified"—branding language developed by GAP, at the insistence of Whole Foods' suppliers whose products could not qualify for the higher GAP tiers, to identify products that meet at least level 1 of the rating system.

54.    "GAP certified meat" and "Animal Welfare Certified" meat describe the same products and are used interchangeably by GAP and Whole Foods.

55.    GAP/Animal Welfare Certified meat is sold throughout Whole Foods' stores. The products are advertised as GAP/Animal Welfare Certified, via in store signage, online advertising, circulars, and on the package itself. Consumers pay more for Products that

---

[32] Farm Forward's Board Chair originally joined GAP's Board of Directors as a representative of a different animal protection organization, and continued serving on GAP's Board as Farm Forward's representative.

are GAP Animal Welfare Certified, in part because administering antibiotics to animals marketed under GAP's Animal Welfare Certified program is strictly prohibited.

56.    As detailed below, Farm Forward's product testing revealed that Whole Foods' Beef Products contain pharmaceutical, including antibiotic, residue. And cattle raised with routine, subtherapeutic antibiotics are typically *not* raised with higher animal welfare standards. Hence, Whole Foods' "Animal Welfare Certified" label is actually false and misleads prospective purchasers, in tandem with Whole Foods' "No Antibiotics, Ever" marketing, to think that the cattle were raised without the use of antibiotics. As a result of this deception, Whole Foods is able to sell more Beef Products and at higher prices.

57.    Even consumers unfamiliar with GAP interpret the "Animal Welfare Certified" label as meaning the Beef Product was raised without antibiotics or other pharmaceuticals. According to a 2017 Hartman's Group survey, 71% of respondents said that "when making purchasing decisions, it's important the company avoids inhumane treatment of animals," and one of the top welfare practices making a purchase more likely is that the "animals [are] not given antibiotics/hormones."[33] In short, a reasonable consumer upon seeing Whole Foods' "Animal Welfare Certified" label—particularly in combination with its "No Antibiotics, Ever" advertising—is left with the false impression that the Beef Product was raised without antibiotics or other pharmaceuticals.

**D.    Whole Foods' Beef Products Tested Positive for Antibiotics and Other Pharmaceuticals**

58.    Testing has shown that Whole Foods' Beef Products are not reliably antibiotic-free. Whole Foods' failure to verify its claims and disclose that cattle used in its Beef Products were administered antibiotics is false, misleading, and contrary to its pervasive "No Antibiotics, Ever" promotional campaign and "Animal Welfare Certified"

---

[33] Schleuter, *supra* note 11.

representation.

59.     In 2021 and 2022, Farm Forward tested samples of meat products purchased at six different Whole Foods locations in San Francisco, Virginia, Chicago, and Salt Lake City. This chemical testing revealed the presence of pharmaceutical residue, including antibiotic residue, in the Beef Products.

60.     Farm Forward tested the meat products using two different independent laboratories. One laboratory found monensin sodium, an antibiotic, in a Beef Product marketed as GAP Step 4 and USDA Certified Organic, and purchased from Whole Foods in San Francisco. Monensin sodium is marketed as a growth-promoting pharmaceutical.[34]

61.     Another laboratory found fenbendazole, an antiparasitic pharmaceutical, in five Beef Product samples purchased from Whole Foods in Salt Lake City and Chicago. All five Beef Product samples were marketed as GAP certified and four of these Beef Products were marketed as GAP Step 4.

62.     These laboratory results are consistent with the results of other tests performed on purported "antibiotic-free" cattle. For example, Food In-Depth ("FoodID") tested 699 head of cattle at a slaughterhouse that processes "raised without antibiotics" cattle. All cattle in the study were eligible to be marketed as "No Antibiotics, Ever" and a subset of these cattle also were part of the GAP Animal Welfare Certified program.[35] FoodID's sample size represented approximately 12% of the U.S. "raised without antibiotics" market during the testing period (38,219 cattle were in the study; 699 cattle were tested). FoodID tested cattle urine over a seven-month period in 2020. An average of two animals from each lot were tested. Given the "raised without antibiotics" claims, FoodID stated that "the prevalence of animals testing positive for antibiotics was expected to be zero. Thus, any animal[] testing positive would indicate a deviation from RWA

---

[34] *Rumensin[TM] 100 Premix*, Elanco, https://www.elanco.com.au/products-services/dairy-cattle/products/dairy-rumensin (last visited August 14, 2022).

[35] Price, *supra* note 14, at 131.

[raised without antibiotics] protocols and both animals testing positive from a lot would suggest a systemic problem."[36] FoodID found that:

      a.     42% of feedyards providing "raised without antibiotics" cattle had at least one animal test positive for antibiotics.[37]

      b.     Approximately 15% of the "raised without antibiotics" cattle processed at the slaughterhouse came from a lot that tested positive for antibiotics.[38]

      c.     Approximately 26% of the GAP certified cattle came from a lot where at least one animal tested positive for antibiotics, and 22% of the GAP certified cattle came from a lot where both of the two animals tested positive for antibiotics.[39]

63.    The results of FoodID's testing indicate that at least one out of every five GAP certified head of cattle had been treated with antibiotics. FoodID published this study in a peer-reviewed journal article in *Science* on April 8, 2022.

64.    In August 2022, *Consumer Reports* published a study where it tested 351 packages of ground meat and found "deadly bacteria in ground beef" resistant to at least one antibiotic.[40] As part of the study, *Consumer Reports* also purchased 75 packages of ground chicken from Whole Foods and other stores. The testing showed that four of nine packages of Whole Foods ground chicken contained salmonella resistant to at least one antibiotic.[41] The presence of antibiotic-resistant bacteria in meat or poultry may be a sign

---

[36] *Id.*

[37] *Id.*; *see also* Laura Reiley, *Some Beef 'Raised Without Antibiotics' Tests Positive for Antibiotics in Study*, Washington Post (Apr. 7, 2022), https://www.washingtonpost.com/business/2022/04/07/antibiotics-found-in-natural-meat/.

[38] Price, *supra* note 14, at 131.

[39] Lance Price et al., *Policy Reforms for Antibiotic Use Claims In Livestock*, 376 Science (Supp. 2022), *available at* https://www.science.org/doi/10.1126/science.abj1823.

[40] Gill, *supra* note 1, at 31.

[41] *Id.* at 36–37.

that antibiotics were used in raising the animals.[42]

65.     The U.S. Department of Agriculture (USDA), Office of Inspector General (OIG) investigated its label review process and concluded that inaccurate labels are in commerce. The June 2020 report, titled *Controls Over Meat, Poultry, and Egg Product Labels*, indicated how unreliable these meat and poultry labels are, even if USDA has approved them:

> As a result, meat, poultry, and egg product labels may reflect inaccurate statements and claims made by establishments. Additionally, there is reduced assurance that establishments' generic labels meet requirements. Based on our sample results, we estimated that approximately 2,038 (15.00 percent) of the approved required labels and 161 (18.34 percent) of the approved generic labels may have one or more exceptions.[43]

**E.     Whole Foods' Awareness of Its Beef Product Suppliers' Use of Antibiotics**

66.     In April 2022, Farm Forward notified Whole Foods that Farm Forward's study had found antibiotic and pharmaceutical residue in Whole Foods' Beef Products. Specifically, on April 15, 2022, Farm Forward notified John Mackey, Whole Foods' CEO, of the results of Farm Forward and FoodID's investigations discussed above.

67.     Mr. Mackey did not respond to Farm Forward. Instead, he *unsubscribed* from Farm Forward's email list (after having been a board member and mailing list recipient for over a decade).

68.     Knowledge of Farm Forward and FoodID's studies within Whole Foods was not limited to Mr. Mackey. The FoodID study findings were the subject of conference

---

[42] *Id.* at 37.

[43] USDA, Audit Report 24601-0002-23, https://www.usda.gov/sites/default/files/audit-reports/24601-0002-23.pdf, last visited November 28, 2022.

calls with Whole Foods' executive officers, including Anne Malleau, Executive Leader of Meat and Poultry.

69.     Well before *Science* published the FoodID study and test results in April 2022, Whole Foods knew that it was not verifying its beef suppliers to determine if Whole Foods "No Antibiotics, Ever," claim was true. In 2017, Farm Forward brought to Ms. Malleau's attention a pharmaceutical testing method that Whole Foods could use to verify Whole Foods' promises to consumer purchasers. Ms. Malleau dismissed the opportunity without proposing an alternative, stating in part:

> [I]nteresting concept; however, there's no mention of #s for statistical significance or # that's practically relevant. I bring this up because I've been approached with this concept or similar ones and the risk management piece was not well thought out. One of them had all of the risk being assumed by a retailer (and there's no way ANY retailer would sign onto that), the other was such insignificant numbers, and the repercussions for having a positive result were beyond ridiculous (meaning it was all a sham IMO)[.]

70.     Whole Foods officers have now been informed that its Beef Products tested positive for pharmaceutical, including antibiotic, residue. Moreover, as early as 2017, Whole Foods had ready access to testing that could verify whether its Beef Products suppliers administered antibiotics or other pharmaceuticals. Despite its actual and constructive knowledge that cattle used in its Beef Products were raised with antibiotics and other pharmaceuticals, Whole Foods has continued its "antibiotic-free" promotional messaging.

71.     Since at least 2017, Whole Foods has known of deficiencies in GAP's ability to verify whether the Beef Products were raised without antibiotics or other pharmaceuticals. GAP, a separate entity, is not fully independent of Whole Foods. Instead,

it was founded *by* Whole Foods in approximately 2008.[44] It relies on monetary donations from its corporate partners, including Whole Foods,[45] and the majority of GAP's leadership consists of current or former Whole Foods employees.[46] Anne Malleau, Whole Foods' Executive Leader of Meat and Poultry for Whole Foods, who wrote the email quoted above, is the Executive Director of GAP.[47]

72.   To obtain GAP certification, a meat producer must undergo an on-site audit of each farm every 15 months to verify compliance.[48] Under GAP's rules, meat producers cannot use antibiotics for "sub-therapeutic" use[49] and "any animal treated with [antibiotics] cannot be marketed as GAP certified."[50] Yet, by 2017 at the latest, both GAP and Whole Foods knew of shortcomings of these GAP audits.

73.   Nor would certification of certain Beef Products as USDA Organic necessarily mean they were raised without antibiotics or other pharmaceuticals, or negate Whole Foods' actual and constructive knowledge that the Products in fact derive from

---

[44] *See* Glob. Animal P'ship, *2018 Impact Report* 12 (2018), *available at* https://globalanimalpartnership.org/flipbook/2018-impact-report/?page=1, at 12.

[45] *See Changing the Way Food is Raised*, Global Animal Partnership, https://globalanimalpartnership.org/#:~:text=Global%20Animal%20Partnership%20is%20one,and%20creating%20long%2Dlasting%20change. (last visited July 19, 2022); *When it Comes to Retail, G.A.P. Means Business*, Global Animal Partnership, https://globalanimalpartnership.org/businesses/ (last visited July 19, 2022).

[46] *Our Leadership*, Global Animal Partnership, https://globalanimalpartnership.org/about/leadership/ (last visited Aug. 5, 2022).

[47] *See Anne Malleau*, Linkedin.com, https://www.linkedin.com/in/annemalleau/ (last visited July 19, 2022); *see also Our Leadership*, *supra* note 41.

[48] *See G.A.P. Certification*, Global Animal Partnership, https://globalanimalpartnership.org/certification/ (last visited July 12, 2022).

[49] *See Global Animal Partnership's 5-Step Animal Welfare Pilot Standards for Dairy Cattle v1.0*, Global Animal Partnership, https://globalanimalpartnership.org/wp-content/uploads/2021/07/G.A.P.-5-Step-Standards-for-Dairy-Cattle-v1.0-20210707.pdf (last visited July 13, 2022).

[50] *Id.*

cattle given antibiotics. As GAP itself recognizes, the USDA Organic program requires a sample of only about 10% of farms to be audited each year.[51] Hence, many Beef Products receive the USDA Organic certification despite no testing.

74.    At no point did Whole Foods obtain federal approval of its false and misleading statements. The federal government does not test any of Whole Foods' Beef Products to determine if the cattle were raised with antibiotics or other pharmaceuticals. Whole Foods' "No Antibiotics, Ever" slogan and "Animal Welfare Certified" representation violate 21 U.S.C. § 602, 9 C.F.R. § 317.8, and other federal laws prohibiting false or misleading marketing of food products because the Products so advertised are *not* reliably free of antibiotics and other pharmaceuticals.

75.    Plaintiffs' claims do not impose, directly or indirectly, any requirement with regard to premises, facilities, or operations that is in addition to, or different than, the requirements of any federal law or regulation. Nor do Plaintiffs' claims impose, directly or indirectly, any requirement with regard to marking, labeling, packaging, or ingredients found by the USDA Secretary to unduly interfere with the free flow of beef products in commerce, or that is in addition to, or different than, the requirements of any federal law or regulation.

**F.    Consumer Plaintiffs and Class Members Overpaid as a Result of Whole Foods' False Advertising**

76.    Whole Foods' misrepresentations and omissions described above have enabled Whole Foods to charge a significant premium for its Beef Products, some of which are sold for as much as $31.99 per pound.[52] By way of example, in comparison, similar beef products without antibiotic-free claims from other grocers sell for $24.99 per

---

[51] Glob. Animal P'ship, *supra* note 39, at 11.

[52] *Beef Tenderloin Steak (Filet Mignon)*, Whole Foods Market, https://www.wholefoodsmarket.com/product/meat-beef-tenderloin-steak-filet-mignon-b07811nqgn (last visited Aug. 5, 2022).

pound.[53]

77.     Consumer Plaintiffs and Class members were exposed to Whole Foods' representations at issue that falsely and misleadingly communicate that the cattle used in its Beef Products are raised without antibiotics or other pharmaceuticals.

78.     Because of Whole Foods' false advertising, Consumer Plaintiffs and Class members thought they were purchasing Beef Products derived from cattle raised without antibiotics or other pharmaceuticals, and reasonable consumers did not expect the Beef Products were derived from cattle so raised.

79.     Absent Whole Foods' misleading representations and omissions that its Beef Products were raised antibiotic-free, Consumer Plaintiffs and Class members would not have purchased the Products, or would not have purchased them at the price they paid.

## G.     Farm Forward Suffered Harm

80.     Farm Forward, like other advocates of responsible practices, relies on honesty in marketing to perform work in furtherance of its organizational mission. In this case, Farm Forward relied to its detriment on Whole Foods' misleading advertising. Because of Whole Foods' misleading advertisements, resources that Farm Forward expended to direct consumers to what it believed at the time were "better" and "best" choice animal products did not advance Farm Forward's goals. To the contrary, Whole Foods' misleading advertising caused Farm Forward to direct resources in support of the very forms of farming that Farm Forward seeks to end. Farm Forward's significant outlay in costs to discover Whole Foods' deceit has also caused Farm Forward financial harm in the form of direct costs to investigate, uncover, and work to inform the public of the truth about Whole Foods' Beef Products, as described further below. Additionally, the

---

[53] *USDA Choice Beef Tenderloin Filet Mignon Steak*, Safeway, https://www.safeway.com/shop/product-details.188020017.html (last visited Aug. 5, 2022).

departure from Farm Forward's longstanding anti-factory farming focus to expose and rectify this consumer deception has drained resources from its efforts to directly oppose and seek to curtail factory farming. For all these reasons, Farm Forward has expended significant resources addressing Whole Foods' misinformation, which has resulted in the organization having fewer resources to devote to its mission of ending factory farming.

81. Farm Forward promotes constant improvement in farmed animal welfare practices in support of its mission to end factory farming. Farms with high welfare standards typically do not need to use routine (also known as subtherapeutic) antibiotics to treat illnesses or prevent diseases. As such, Farm Forward's interest in meat presented to consumers as having "No Antibiotics, Ever" aligns with promoting higher-welfare husbandry practices. Antibiotics are most commonly administered to animals to prevent or treat illness and disease contracted when animals are crowded into unsanitary factory farm conditions—the kind of suboptimal animal welfare conditions Farm Forward works to prevent.

82. Since its inception in 2007 to 2020, Farm Forward helped develop, support and promote GAP certified products, including products branded as Animal Welfare Certified and with the promise "No Antibiotics, Ever." Three Farm Forward staff members and two Farm Forward board members donated extensive time—thousands of hours—to working alongside Whole Foods on the GAP/Animal Welfare Certified standards. Farm Forward staff attended dozens of GAP meetings, sometimes held at Whole Foods' headquarters in Austin, Texas, expending Farm Forward's limited resources to participate in these meetings, review pertinent materials, and actively contribute to the decision-making processes that created the standards. Farm Forward also spent hundreds of hours working with other public interest and animal protection groups to improve the lives of animals in Whole Foods' supply chain. Among other work, Farm Forward spoke extensively with producers and visited farms that supply Whole Foods.

83. During the decade in which Farm Forward served on GAP's Board, members

of the public sought guidance from Farm Forward on meat marketing claims. Farm Forward relied on Whole Foods' representations to Farm Forward that Whole Foods sold GAP certified "No Antibiotics, Ever" meat, as well as Whole Foods' representations of other attributes that indicated high welfare. Consequently, Farm Forward promoted Whole Foods' meat products as "better" choices through a web-based consumer guide that Farm Forward, using its resources, created. Farm Forward spent its own money on this consumer guide that promoted Whole Foods products. In particular, Farm Forward listed Whole Foods' GAP certified and Animal Welfare Certified products as "better choices" and "best choices" for consumers to "make a difference each time [they] visit the grocery store." Recommendation of select GAP certified "No Antibiotics, Ever" beef products, sold primarily at Whole Foods, were also central to Farm Forward's religious outreach program, including its in-house program, the Jewish Initiative for Animals. This program cost Farm Forward thousands of dollars.

84.     Farm Forward relied on Whole Foods' representations that its meat advertising, including with respect to GAP certification criteria, was accurate. Farm Forward would not have devoted a significant portion of its resources to serving on GAP's Board, or to promoting meat sold at Whole Foods as "better" and "best" choices for consumers, had it known that Whole Foods' promotional messaging, such as its claims of a "never ever antibiotics" meat supply, was misleading consumers.

85.     As Farm Forward continued working with Whole Foods over time, Farm Forward began to suspect that Whole Foods was selling meat from producers that administered antibiotics to the animals—contrary to Whole Foods' marketing of that same meat as Animal Welfare Certified and as having "No Antibiotics, Ever"—and contrary to Farm Forward's endorsement of that same meat to its supporters and the public as "better" and "best" choices. Farm Forward acted on its suspicion by introducing the GAP-Whole Foods leadership to an entity that could test the meat sold at Whole Foods and verify if Whole Foods' marketing claims were true. But the GAP-Whole Foods representative

dismissed the proposal, noting that the concept had been raised before but that "risk management" had not been well thought out and all the risk would be assumed by the retailer (i.e., Whole Foods). Farm Forward understood from this response that Whole Foods was neither receptive to nor interested in investigating verification options. No one in the GAP-Whole Foods leadership suggested to Farm Forward an alternative means of testing or otherwise verifying Whole Foods' claims.

86. After serving on GAP's Board of Directors for a decade—within GAP's first few years of existence—Farm Forward resigned in April 2020. It did so in large part because it suspected (as it ultimately concluded) that GAP's Animal Welfare Certified marketing, widely used by Whole Foods, was deceiving consumers, as well as due to concerns that Whole Foods had too much control over GAP.

87. Whole Foods' marketing of meat as Animal Welfare Certified and having "No Antibiotics, Ever" when, in fact, the meat comes from factory and other farms that administer antibiotics to cattle, conflicted with Farm Forward's endorsement of Whole Foods' meat—advertised as purportedly Animal Welfare Certified and having "No Antibiotics, Ever"—as "better" and "best" choices for consumers. Whole Foods' misrepresentations, both to Farm Forward and to the public, therefore directly undermined Farm Forward's activities to convince the public to make a "better choice" consistent with Farm Forward's mission to end factory farming.

88. Farm Forward also experienced financial loss and disruption to its organizational activities to address Whole Foods' misrepresentations and omissions and the consumer confusion they have engendered. Similarly, after Farm Forward concluded it had been misled by Whole Foods, Farm Forward expended significant staff time and organizational resources to address Whole Foods' false advertising and to expose the confusion and misimpressions among consumers that Whole Foods had caused and continues to cause.

89. In 2020, even though Whole Foods' leadership had failed to avail itself of

opportunities to thoroughly test its Products, Farm Forward began testing Whole Foods' meat sold in San Francisco and other U.S. cities for pharmaceutical residues. Chemical testing can reliably show whether the meat comes from "No Antibiotics, Ever" higher welfare farms or from farms that administer antibiotics. Farm Forward spent at least $80,000 purchasing Whole Foods' Products, shipping Products to testing laboratories, and paying laboratory-testing fees.

90.     Farm Forward also expended significant resources on, among other efforts, understanding the impact of Whole Foods' deceptive advertising and marketing on Farm Forward's members, supporters, and social media followers, and Whole Foods' consumers, and educating the public accordingly.

91.     To properly inform its members, supporters, and social media followers, Farm Forward invested in and initiated a new campaign designed to expose Whole Foods' (and other companies') false advertising of meat. This significant departure from Farm Forward's work to end factory farming was nonetheless important to the organization and its supporters, including because Farm Forward had promoted these products as "better choices" for many years. Farm Forward has spent over 5,000 employee hours on this new campaign to educate the public.

92.     Had Farm Forward not spent significant resources investigating Whole Foods' misrepresentations, and initiating a new campaign to educate the public, it would have spent these resources on its "Pandemics and factory farming" campaign, which would have included a new video, digital ads, media outreach, material production, and conference attendance. Farm Forward put this campaign on hold, despite the fact that the campaign was highly effective and the early campaign materials were viewed over a million times on social media, in order to fund its Whole Foods investigation and new educational campaign.

93.     Farm Forward also surveyed consumers in September 2021 to determine whether consumers were being misled by Whole Foods. Farm Forward spent more than

$12,000 on the survey; and it showed that up to 97% of American consumers are being misled by Whole Foods' meat advertising claims.

94.     Had Farm Forward not investigated and exposed Whole Foods' false meat advertising claims, the organization would have suffered injury to its reputation, and lost the support of both the public and the highest welfare farmers and ranchers, many of whom had expressed frustration with Whole Foods, and frustration with Farm Forward for their ongoing support of GAP.

## CLASS ACTION ALLEGATIONS

95.     Under Federal Rules of Civil Procedure 23(a), (b)(2), (b)(3), and/or (c)(4), Consumers Plaintiffs bring this lawsuit as a class action on behalf of themselves and all other persons similarly situated, on behalf of the following Class:

> All persons who purchased a Beef Product from Whole
> Foods in California between 2017 and the present.

96.     Excluded from the Class are Defendants, their officers, directors, and managerial employees, any individuals employed by counsel for the parties in this action, and any Judge to whom this case is assigned and their staff and immediate family members. Plaintiffs reserve the right to modify the Class definition(s) based on discovery and further investigation.

97.     Numerosity. While the exact number of Class members is not known at this time, the Class is so numerous that joinder of all members is impractical. Thousands of Californians purchase Beef Products each week. The identities of Class members are available through information and records in the possession, custody, or control of Whole Foods; notice of this action can be readily given to the Class.

98.     Typicality. Consumer Plaintiffs' claims are typical of the claims of the Class. Consumer Plaintiffs, like all Class members, purchased at least one Beef Product from Whole Foods in California since 2017, and were injured by the same wrongful acts, practices, and omissions. Consumer Plaintiffs, like all Class members, were exposed to

the same widespread marketing campaign and saw the same misrepresentations, including at the point of purchase. The claims of Consumer Plaintiffs thus arise from the same course of conduct that gives rise to the claims of every other Class member.

99. <u>Adequacy of Representation</u>. Consumer Plaintiffs are members of the Class and will fairly and adequately represent and protect the other members' interests. Consumer Plaintiffs have no interests adverse to the interests of other Class members. Plaintiffs' counsel are competent and experienced in consumer protection and other class action litigation and will pursue this action vigorously.

100. <u>Predominant Common Issues of Law and Fact</u>. Common questions of fact and law exist with respect to all Class members and predominate over any questions affecting only individual members. The common questions include, without limitation:

a. Whether Whole Foods advertised, marketed, promoted, and/or sold its Beef Products as having "No Antibiotics, Ever";

b. Whether Whole Foods' Beef Products were antibiotic or pharmaceutical-free;

c. Whether Whole Foods' advertising campaign related to Beef Products was unfair, unlawful, false, misleading and/or deceptive;

d. Whether claims in Whole Foods' advertising campaign related to Beef Products were material;

e. Whether Whole Foods knew or should have known that its Beef Products were not antibiotic or pharmaceutical-free;

f. Whether Whole Foods had a duty to disclose to consumers that its Beef Products derived from cattle raised with antibiotics or other pharmaceuticals;

g. Whether Whole Foods failed to disclose to consumers that its Beef Products derived from cattle raised with antibiotics or other pharmaceuticals;

h. Whether Whole Foods' false advertising and deceit caused injury to Consumer Plaintiffs and Class members; and

i.    The amount by which Whole Foods' false advertising and deceit inflated the prices that Consumer Plaintiffs and Class members paid for Beef Products.

101.  <u>Superiority</u>. A class action is superior to all other alternatives for the fair and efficient adjudication of this controversy. Absent a class action, all or nearly all members of the Class would have no effective remedy because their individual claims are far smaller than the cost of litigating them, making the filing of individual actions infeasible. Class treatment will conserve judicial resources, avoid waste and the risk of inconsistent rulings, and promote efficient adjudication before a single Judge.

102.  Whole Foods has acted or refused to act on grounds generally applicable to the entire class, making injunctive and corresponding declaratory relief appropriate with respect to the Class as a whole.

## **TOLLING OF THE STATUTES OF LIMITATIONS**

103.  All applicable statutes of limitations have been tolled by Whole Foods' fraudulent concealment and denial of the facts set forth in this complaint.

104.  Whole Foods was and remains under a continuing duty to disclose to Plaintiffs and Class members its practice of marketing Beef Products derived from cattle given antibiotics or other pharmaceuticals as "Animal Welfare Certified" and as containing "No Antibiotics, Ever."

105.  As a result of Whole Foods' fraudulent concealment, not until shortly before this class action commenced could Plaintiffs and Class members have reasonably discovered Whole Foods' practice of marketing Beef Products derived from cattle given antibiotics or other pharmaceuticals as "Animal Welfare Certified" and as containing "No Antibiotics, Ever."

## FIRST CAUSE OF ACTION

## Violation of the Consumers Legal Remedies Act ("CLRA"),

## Cal. Civ. Code § 1750 *et seq.*

## (By Consumer Plaintiffs on Behalf of the Class)

106.　Plaintiffs incorporate and reallege the foregoing allegations of fact.

107.　Whole Foods is a "person" within the meaning of California Civil Code sections 1761(c) and 1770 and provided "goods"—Beef Products—within the meaning of sections 1761(a) and 1770.

108.　Consumer Plaintiffs and Class members are "consumers," under California Civil Code section 1761(d), because they bought the Products for personal, family, or household purposes.

109.　The conduct alleged in this complaint constitutes unfair methods of competition and unfair and deceptive acts and practice in violation of the CLRA.

110.　As alleged more fully above, the unlawful conduct includes Whole Foods' false representations to Plaintiffs and Class members that the Beef Products are made from cattle raised without antibiotics. Testing has shown the opposite is true—Whole Foods' Beef Products were raised with antibiotics or other pharmaceuticals.

111.　Whole Foods made false representations concerning the Beef Products in its advertising and marketing materials at stores, in television advertisements, in online materials, and on the products themselves, among other places.

112.　By engaging in such conduct, Whole Foods has violated California Civil Code sections 1770(a)(2), (a)(3), (a)(4), (a)(5), (a)(7), and (a)(9).

113.　Whole Foods was under a duty to disclose that its Beef Products were not, in fact, free of antibiotics or other pharmaceuticals because it made partial, materially misleading representations about the Beef Products despite having superior knowledge of their origins, nature, and history, including through communications with its suppliers. Whole Foods' duty to disclose that the cattle used in its Beef Products were raised with

antibiotics or other pharmaceuticals arises in consequence of its "No Antibiotics, Ever" promotional campaign and "Animal Welfare Certified" marketing. Whole Foods has not qualified, clarified, or otherwise corrected its "No Antibiotics, Ever" and "Animal Welfare Certified" marketing even though the cattle raised for its Beef Products were given antibiotics and other pharmaceuticals.

114. Whole Foods had ample means and opportunities to disclose to Plaintiffs and Class members that the cattle for its Beef Products were raised with antibiotics and other pharmaceuticals, including through in-store signage, product packaging, and online statements. Whole Foods did not disclose or otherwise qualify or correct its misrepresentations.

115. Whole Foods' relevant misrepresentations and omissions were material and important to a reasonable consumer's decision whether to purchase a Beef Product.

116. Each Consumer Plaintiff reasonably relied to their detriment upon Whole Foods' deceptive marketing of the Beef Products when they purchased those Products.

117. Consumer Plaintiffs and Class members would not have purchased the Beef Products or would not have paid the prices they did, had they known that the cattle used in the Beef Products were raised with antibiotics or other pharmaceuticals.

118. Plaintiffs seek injunctive relief in the form of an order requiring Whole Foods to cease these deceptive acts and practices and to correct its misleading promotions related to antibiotics use in the beef it sells.

119. Plaintiffs would like to buy Whole Foods' Beef Producs in the future if and when they are produced as advertised by Whole Foods. Plaintiffs do not currently intend to do so because they cannot rely on the accuracy of Whole Foods' representations in deciding whether to purchase Whole Foods' Beef Products, and Plaintiffs cannot independently or easily determine whether the particular Beef Products are raised with antibiotics.

120. Pursuant to California Civil Code section 1782(a), on their own behalf and

on behalf of the Class, each Consumer Plaintiff sent a CLRA notice letter to Whole Foods on August 23, 2022. These notices were sent via certified mail, return receipt requested, to Whole Foods' principal place of business. The notices advised Whole Foods that it is in violation of the CLRA and must remedy the conduct, representations, and omissions at issue. Whole Foods has not remedied the conduct, representations, and omissions at issue.

121.    Consumer Plaintiffs and the Class seek damages pursuant to Cal. Civ. Code § 1780(a) as result of Whole Foods' use or employment of a method, act, or practice declared unlawful by Cal. Civ. Code § 1770. Consumer Plaintiffs and the Class seek to recover actual damages, compensatory damages, injunctive relief, restitution of property, punitive damages, and any other relief that the Court deems proper. Pursuant to Cal. Civ. Code § 1752, the CLRA provisions are not exclusive, and the remedies provided are in addition to any other procedures or remedies for any violation or conduct provided for in any other law.

122.    In accordance with California Civil Code section 1780(d), Consumer Plaintiffs' CLRA venue declarations were submitted to the Court in ECF No. 12 (Safari) and 13 (Khaghani).

## SECOND CAUSE OF ACTION

### Violation of the Unfair Competition Law ("UCL"),

### Cal. Bus. & Prof. Code § 17200 *et seq.*

### (By Consumer Plaintiffs on Behalf of the Class,

### and by Plaintiff Farm Forward)

123.    Plaintiffs incorporate and reallege the foregoing allegations of fact.

124.    Whole Foods engaged in unlawful, unfair, and or fraudulent acts and practices violative of the UCL, California Business and Professions Code section 17200 *et seq.*, by advertising its Beef Products as "No Antibiotics, Ever" and "Animal Welfare Certified" when in fact, the cattle used in Whole Foods' Beef Products were raised with antibiotics or other pharmaceuticals.

125.    Whole Foods' conduct is unlawful because it violates 21 U.S.C. § 602 and its implementing regulations, which deem food misbranded when its label contains a statement that is "false or misleading in any particular[.]" 21 U.S.C. § 601. Whole Foods' conduct also is unlawful because it violates 9 C.F.R. § 317.8 and related food regulations providing that "no product . . . shall bear any false or misleading marking[.]"

126.    Further, Whole Foods' conduct is unlawful because it violates the CLRA, Cal. Civ. Code § 1750 *et seq.*, and the False Advertising Law, California Business and Professions Code section 17500 *et seq.*, for the reasons stated in the First and Third Causes of Action in this complaint.

127.    Whole Foods' conduct is unfair because, violating the legislative declared public policy mandating truth in advertising, Whole Foods sells Beef Products raised with antibiotics or other pharmaceuticals while advertising the Products as having "No Antibiotics, Ever" and being "Animal Welfare Certified."

128.    Whole Foods' conduct is unfair, moreover, because it is unethical, oppressive, unscrupulous, and/or substantially injurious to Plaintiffs and Class members. The harm to Plaintiffs resulting from Whole Foods' conduct outweighs any legitimate benefit Whole Foods derived from the conduct.

129.    Consumer Plaintiffs could not reasonably have avoided injury as a result of Whole Foods' unfair, unlawful and fraudulent conduct. Consumer Plaintiffs and Class members did not know, and had no reasonable means of discovering, that Whole Foods' advertisements were false and misleading prior to purchasing a Beef Product.

130.    Whole Foods' misrepresentations and omissions with regard to the Beef Products constitute fraudulent business practices in violation of the UCL because, among other things, they are likely to deceive reasonable consumers. Among other falsehoods, Whole Foods marketed its Products as having "No Antibiotics, Ever" and being "Animal Welfare Certified" when in fact, cattle used in the Beef Products were raised with antibiotics or other pharmaceuticals.

131.  Consumer Plaintiffs reasonably relied to their detriment upon Whole Foods' unfair and fraudulent marketing of the Beef Products when they purchased those Products.

132.  All of Whole Foods' unlawful and unfair conduct, fraudulent misrepresentations, and inadequate disclosures occurred in the course of Whole Foods' business and were part of a generalized course of conduct. Whole Foods' conduct at issue was designed to and did induce Consumer Plaintiffs and Class members to purchase a Beef Product.

133.  As a direct and proximate result of Whole Foods' violations of the UCL, Plaintiffs suffered injury in fact. Farm Forward suffered financial harm and substantial disruption to its organizational activities that precluded other work, as described above. Consumer Plaintiff and Class members lost money or property because they would not have purchased a Beef Product, or would not have paid the prices they did, had they known that, contrary to Whole Foods' promotional messaging, the cattle used in the Beef Products were raised with antibiotics or other pharmaceuticals.

134.  Plaintiffs lack an adequate remedy at law and seek restitution and injunctive relief according to proof. Plaintiffs will ask the Court to order Whole Foods to cease these acts of unfair competition and to correct its unfair, unlawful and fraudulent marketing campaign related to antibiotics in the beef it sells.

135.  Plaintiffs would like to buy Whole Foods' Beef Producs in the future if and when they are produced as advertised by Whole Foods. Plaintiffs do not currently intend to do so because they cannot rely on the accuracy of Whole Foods' representations in deciding whether to purchase Whole Foods' Beef Products, and Plaintiffs cannot independently or easily determine whether the particular Beef Products are raised with antibiotics.

# THIRD CAUSE OF ACTION

## Violation of the False Advertising Law ("FAL"),

## Cal. Bus. & Prof. Code § 17500 *et seq.*

## (By Consumer Plaintiffs on Behalf of the Class,

## and by Plaintiff Farm Forward)

136. Plaintiffs incorporate and reallege the foregoing allegations of fact.

137. Whole Foods publicly disseminated untrue or misleading advertising in violation of the FAL, California Business and Professions Code section 17500 *et seq.*

138. Whole Foods violates the FAL by using false and misleading statements, and material omissions, to promote the sale of its Beef Products. Whole Foods represents through advertisements, in-store signage, print advertisements, online content, and product labeling that the Beef Products are made from cattle raised without antibiotics. Those representations are false and misleading because the Beef Products are made from cattle raised with antibiotics or other pharmaceuticals.

139. Consumer Plaintiffs reasonably relied to their detriment upon Whole Foods' false and misleading advertising of the Beef Products when they purchased those Products. The general public is and was likely to be deceived by Whole Foods' false and misleading advertising of the Beef Products as antibiotic-free.

140. As a direct and proximate result of Whole Foods' false advertising, Plaintiffs suffered injury in fact. Farm Forward suffered significant financial injury and disruption to its organizational activities, as alleged in more detail above. Consumer Plaintiff and Class members would not have purchased the Beef Products or would not have paid the prices they did, had they known that the cattle used in the Beef Products were raised with antibiotics or other pharmaceuticals.

141. Plaintiffs lack an adequate remedy at law and seek restitution and injunctive relief according to proof.

## FOURTH CAUSE OF ACTION

### Violation of Cal. Com. Code § 2313 (breach of express warranty)

### (By Consumer Plaintiffs on Behalf of the Class)

142.  Plaintiffs incorporate and reallege the foregoing allegations of fact.

143.  Defendants provided Plaintiffs and Class Members with an express warranty in the form of written affirmations of fact promising and representing that the Beef Products were raised without antibiotics, specifically stating, "No Antibiotics, Ever," "No antibiotics or added growth hormones, ever," and "At Whole Foods Market: No Antibiotics EVER is our standard."

144.  These affirmations in the paragraph above were not couched as "belief" or "opinion," and were not "generalized statements of quality not capable of proof or disproof."

145.  These affirmations of fact became part of the basis for the bargain and were material to the Plaintiffs' and Class Members' transactions.

146.  Plaintiff and Class Members reasonably relied upon the Defendant's affirmations of fact and justifiably acted in ignorance of the material facts omitted or concealed when they decided to buy Defendant's Products.

147.  Within a reasonable time after they knew or should have known of Defendant's breach, Defendants were placed on notice of its breach by the CLRA letter Plaintiffs sent, giving Defendants an opportunity to cure its breach, which it did not do.

148.  Defendants breached the express warranty because the Products are not "No Antibiotics, Ever" products.

149.  As a direct and proximate result of Defendants' breach of express warranty, Plaintiffs and Class Members were damaged in an amount to be proven at trial.

**FIFTH CAUSE OF ACTION**

**Unjust Enrichment**

**(By Consumer Plaintiffs on Behalf of the Class)**

150.   Plaintiffs incorporate and reallege the foregoing allegations of fact.

151.   Consumer Plaintiffs and Class members conferred benefits on Whole Foods by purchasing Beef Products, and Whole Foods acknowledged and appreciated these benefits.

152.   The Beef Products that Consumer Plaintiffs and Class members purchased did not have the antibiotic-free characteristic that Whole Foods represented they had. Contrary to Whole Foods' representations, Beef Products it sells come from cattle raised with antibiotics.

153.   Under these circumstances, equity and good conscience militate against permitting Whole Foods to retain the profits and benefits from its wrongful conduct. They should accordingly be disgorged or placed in a constructive trust so that Consumer Plaintiffs and Class members can obtain restitution.

**SIXTH CAUSE OF ACTION**

**Fraudulent Concealment**

**(By Consumer Plaintiffs on Behalf of the Class, and by Plaintiff Farm Forward)**

154.   Plaintiffs incorporate and reallege the foregoing allegations of fact.

155.   Whole Foods fraudulently concealed and suppressed material facts regarding the Beef Products. Despite advertising these Products as Animal Welfare Certified and having "No Antibiotics, Ever," Whole Foods knew when it marketed and sold these Products that the cattle from which they derive were raised with antibiotics or other pharmaceuticals. Whole Foods failed to disclose these facts to consumers at the time it marketed and sold the Products. Whole Foods knowingly and intentionally engaged in this concealment to falsely assure consumers that its Beef Products were antibiotic-free in

order to boost its sales, revenues, competitive position, and profits.

156. Whole Foods' fraudulent concealment was uniform across all Class members: Whole Foods concealed from all purchasers the fact that its meat suppliers administer antibiotics or other pharmaceutical to the cattle. Plaintiffs and Class members had no reasonable means of knowing that Whole Foods' representations were false and misleading, or that Whole Foods had omitted to disclose material details relating to the Products. Plaintiffs and Class members did not and could not reasonably discover Whole Foods' concealment on their own.

157. Whole Foods had a duty to disclose that its Beef Products were not, in fact, free of antibiotics or other pharmaceuticals because it made partial, materially misleading representations about the Beef Products despite having superior knowledge of their origins, nature, and history. Whole Foods' duty to disclose that the cattle used in its Beef Products were raised with antibiotics or other pharmaceuticals arises in consequence of its "No Antibiotics, Ever" promotional campaign and "Animal Welfare Certified" marketing. Whole Foods has neither qualified nor corrected its "No Antibiotics, Ever" and "Animal Welfare Certified" marketing even though the cattle raised for its Beef Products were given antibiotics and other pharmaceuticals.

158. These omitted and concealed facts were material because a reasonable consumer would rely on them in deciding to purchase Whole Foods' Beef Products and because they substantially reduced the value of the Products that Consumer Plaintiffs and Class members purchased. Whether Whole Foods' Beef Products come from cattle raised with antibiotics was an important factor in Consumer Plaintiffs' and Class members' decisions to purchase these Products. Consumer Plaintiffs and Class members relied on Whole Foods' misleading representations and concealment, trusting Whole Foods not to sell them food that was not as represented.

159. Consumer Plaintiffs and Class members were unaware of these omitted material facts and would have paid less for Beef Products, or would not have purchased

them at all, had they known of the concealed and suppressed facts. Consumer Plaintiffs and Class members did not receive the benefit of their bargain due to Whole Foods' fraudulent concealment. Whole Foods was in exclusive control of the material facts and such facts were not reasonably known or knowable to the public, Plaintiffs, or Class members.

160.   Consumer Plaintiffs and Class members relied to their detriment upon Whole Foods' fraudulent misrepresentations and material omissions regarding the Beef Products' nature and origins in deciding to purchase them.

161.   As a direct and proximate result of Whole Foods' deceit and fraudulent concealment, including its intentional suppression of the true facts, Consumer Plaintiffs and Class members suffered damages in an amount to be proven at trial.

162.   Whole Foods' deceit and fraudulent concealment also caused financial injury to Plaintiff Farm Forward as set forth above.

163.   All Plaintiffs therefore seek injunctive relief to correct and prevent Whole Foods' fraudulent concealment relating to the nature and origins of its Beef Products.

164.   In addition, Whole Foods' fraudulent acts and omissions were carried out maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and Class members' rights, with the aim of enriching Whole Foods, justifying an award of punitive damages in an amount sufficient to deter such wrongful conduct in the future.

## SEVENTH CAUSE OF ACTION

### Intentional Misrepresentation

### (By Consumer Plaintiffs on Behalf of the Class)

165.   Plaintiffs incorporate and reallege the foregoing allegations of fact.

166.   Defendant, with knowledge of the falsity of representations, materially and intentionally misrepresented its Beef Products to consumers through its advertising and communications, some of which are reproduced above.

167. Defendant, through company representatives who handled meat buying, marketing and communications, authorized, implemented, and coordinated the production and distribution of the aforementioned advertisements via in-store signage, television advertising, print advertising, email marketing, and online marketing including on Google, Facebook, YouTube, Twitter, Amazon Prime, and its own website and blog, with knowledge of their inclusion of intentional misrepresentations.

168. These intentional misrepresentations include, but are not limited to:

a) "No Antibiotics, Ever"

b) "No antibiotics or added growth hormones, ever"

c) "At Whole Foods Market: No Antibiotics EVER is our standard"

169. These advertisements and intentional misrepresentations were made to potential consumers, including Plaintiffs and the Class, throughout the time periods referenced in ¶¶ 10-12 and 17-19, 2010-2022, and within the applicable statute of limitations.

170. These advertisements and intentional misrepresentations were received and viewed by Plaintiffs and the Class in Defendant's stores and online.

171. Defendants intended to induce reliance in Plaintiffs and the Class when Defendants misrepresented its Beef Products. Plaintiffs and the Class justifiably relied on the accuracy of Defendants' representations.

172. Defendants' misrepresentations caused Plaintiffs and the Class to purchase a product they would not have otherwise purchased and/or at a price that they would have otherwise paid, resulting in damage to Plaintiffs and the Class.

**JURY TRIAL DEMANDED**

173.    Plaintiffs and the Class respectfully seek a jury trial on all issues so triable.

**PRAYER FOR RELIEF**

Consumer Plaintiffs, on behalf of themselves and the Class, respectfully ask that the Court:

A.    Certify the Class under Rule 23 of Federal Rules of Civil Procedures and appoint Consumer Plaintiffs and their undersigned counsel to represent the Class; and

B.    Award active damages or restitution, statutory damages, compensatory damages, exemplary damages, punitive damages, and pre- and post-judgment interest as provided by law.

All Plaintiffs, on behalf of themselves, the Class, and the general public, further ask that the Court:

C.    Declare that Whole Foods violated California consumer protection law;

D.    Enter injunctive relief through an Order, *inter alia*, enjoining Whole Foods from continuing its unlawful, unscrupulous, misleading and deceptive practices and mandating that Whole Foods undertake a corrective campaign of notification at its expense;

E.    Award reasonable attorneys' fees and costs of litigation as permitted by law, including California Civil Code section 1780 and California Code of Civil Procedure section 1021.5; and

F.    Order such other and further relief as may be just and proper.

DATED: November 29, 2022       Respectfully submitted,

/s/ *Paige M. Tomaselli*
Paige M. Tomaselli (SBN 237737)
Dylan D. Grimes (SBN 302981)
**GRIME LAW LLP**
730 Arizona Avenue
Santa Monica, CA 90401
Telephone: (310) 747-5095
ptomaselli@grimelaw.com
dgrimes@grimelaw.com

Gretchen Elsner (*pro hac vice*)
**ELSNER LAW & POLICY, LLC**
314 South Guadalupe Street, Suite 123
Santa Fe, NM 87501
Telephone: (505) 303-0980
gretchen@elsnerlaw.org

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 29, 2022, I electronically filed the foregoing document using the Court's CM/ECF system, which will send notification of the filing of this document to the e-mail addresses registered in the CM/ECF system, as denoted on the Electronic Mail Service List.

Dated: November 29, 2022

Respectfully submitted,

/s/ *Paige M. Tomaselli*
Paige M. Tomaselli (SBN 237737)
**GRIME LAW LLP**
730 Arizona Avenue
Santa Monica, CA 90401
Telephone: (310) 747-5095
ptomaselli@grimelaw.com