BRIAN R. BLACKMAN (SBN 196996)
bblackman@blaxterlaw.com
J.T. WELLS BLAXTER (SBN 190222)
wblaxter@blaxterlaw.com
DAVID P. ADAMS (SBN 312003)
dadams@blaxterlaw.com
BLAXTER | BLACKMAN LLP
601 Montgomery Street, Suite 1110
San Francisco, California 94111
Telephone: (415) 500-7700

Attorneys for defendants WHOLE
FOODS MARKET SERVICES, INC.;
WHOLE FOODS MARKET CALIFORNIA,
INC.; and MRS. GOOCH'S NATURAL FOOD
MARKETS, INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SARA SAFARI, PEYMON KHAGHANI, on behalf of themselves and all others similarly situated, and FARM FORWARD, on behalf of the general public,<br><br>Plaintiffs,<br><br>v.<br><br>WHOLE FOODS MARKET SERVICES, INC., a Delaware corporation, WHOLE FOODS MARKET CALIFORNIA, INC., a California corporation, MRS. GOOCH'S NATURAL FOOD MARKETS, INC., doing business as Whole Foods Market, a California Corporation,<br><br>Defendants. | Case No. 8:22-cv-01562-JWH (KESx)<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**<br><br>[*Request for Judicial Notice, and [Proposed] Order filed concurrently herewith*]<br><br>Date:     March 10, 2023<br>Time:     9:00 AM<br>Place:    411 West Fourth Street<br>          Courtroom 9D, 9th Floor<br>          Santa Ana, California 92701<br><br>The Honorable John W. Holcomb<br><br>Complaint Filed:   August 23, 2022<br>Trial Date:        Not Set |

## NOTICE OF MOTION AND MOTION TO DISMISS

TO THE HONORABLE COURT, ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on March 10, 2023 at 9:00 AM, or as soon thereafter as counsel may be heard in Courtroom 9D of the above-entitled Court, located in the United States District Court, 411 West 4th Street, Santa Ana, California, defendants Whole Foods Market California, Inc., Mrs. Gooch's Natural Food Markets, Inc. and Whole Foods Market Services, Inc. (collectively "Defendants"), will and hereby move to dismiss the First Amended Complaint of plaintiffs Sara Safari, Peymon Khaghani and Farm Forward (collectively "Plaintiffs") pursuant to Federal Rules of Civil Procedure ("Fed. R. Civ. P.") 9(b), 12(b)(1) and 12(b)(6) on the following grounds:

1. Defendants move to dismiss Plaintiffs' claims under Fed. R. Civ. P. 12(b)(1) on the grounds that Plaintiffs lack Article III standing, and statutory standing under the UCL, FAL, and CLRA. Plaintiffs Safari and Khaghani have not alleged facts demonstrating they suffered a particularized harm or economic injury as a result of Defendants' alleged actions. Further, Plaintiff Farm Forward has not alleged facts demonstrating a diversion of resources based on Defendants' advertising statements.

2. Defendants move to dismiss Plaintiffs' fraud claims under Fed. R. Civ. P. 9(b) and 12(b)(6). Plaintiffs have not sufficiently alleged the when, why or how of their false advertising and fraud claims.

3. Defendants move to dismiss Plaintiffs' claim for breach of warranty because Plaintiffs have not alleged facts sufficient to show that Defendants breached the alleged warranty.

4. Defendants move to dismiss Plaintiffs' unjust enrichment claim because California does not recognize a separate claim for unjust enrichment and because it is

1  otherwise derivative of Plaintiffs false advertising and fraud claims, which fail for

2  the reasons set forth above.

3      This Motion is made following the conferences of counsel pursuant to Civil

4  L.R. 7-3 which took place on December 20, 2022, and subsequent communications

5  on December 21, 22 and 30, 2022.

6      This Motion is based upon this Notice of Motion and Motion, the attached

7  Memorandum of Points and Authorities, the accompanying Request for Judicial

8  Notice, all other pleadings, papers, records and documentary materials on file in this

9  action, and such further evidence and argument as the Court may allow at the hearing

10 on this Motion.

11 Dated:  January 10, 2023                    BLAXTER | BLACKMAN LLP

12

13                                     By: _____
                                             /s/ *Brian R. Blackman*
14                                           BRIAN R. BLACKMAN
15                                           Attorneys for Defendant
                                             WHOLE FOODS MARKET SERVICES,
16                                           INC.; WHOLE FOODS MARKET
                                             CALIFORNIA, INC.; MRS. GOOCH'S
17                                           NATURAL FOOD MARKETS, INC.

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

Page

I.     INTRODUCTION .................................................................................. 1

II.    SUMMARY OF ALLEGATIONS AND FACTS ............................... 2

    A.     The Parties .................................................................................. 2

        1.     Defendants ........................................................................ 2

        2.     The Individual Plaintiffs ................................................. 3

        3.     Farm Forward .................................................................. 4

    B.     Plaintiffs' Claims ...................................................................... 4

    C.     Procedural History .................................................................... 5

III.   LEGAL ARGUMENT ........................................................................ 6

    A.     Plaintiffs Fail to Plead the Necessary Facts to Establish Their Standing to Assert the Alleged Claims. .................................... 6

        1.     The Individual Plaintiffs Failed to Allege a Particularized or Concrete Injury. ........................................................... 7

        2.     The Individual Plaintiffs Have Not Alleged an Economic Injury Caused by Defendants' Alleged Advertising .................. 11

        3.     Farm Forward Lacks Standing to Assert its FAL and UCL Claims. ........................................................................... 12

    B.     Plaintiffs' Fraud Claims Fail for Lack of Particularity ......................... 15

    C.     Plaintiffs' Express Warranty and Unjust Enrichment Claims Fails. ........................................................................................ 18

        1.     Plaintiffs' Express Warranty Claims Fail. .................................. 19

        2.     Plaintiffs' Unjust Enrichment Claims Fail. ................................ 19

IV.    CONCLUSION .................................................................................. 20

# TABLE OF AUTHORITIES

## FEDERAL CASES

Page

*Am. Diabetes Ass'n v. U.S. Dep.'t of the Army*
    938 F.3d 1147 (9th Cir. 2019) ...................................................................... 12

*Barrett v. Optimum Nutrition*
    2022 WL 2035959 (C.D. Cal. Jan. 12, 2022) ......................................... 19

*Birdsong v. Apple*
    590 F.3d 955 (9th Cir. 2009) ......................................................................... 7

*Cantrell v. City of Long Beach*
    241 F.3d 674 (9th Cir. 2001) ......................................................................... 7

*Cetacean Community v. Bush*
    386 F.3d 1169 (9th Cir. 2004) ....................................................................... 7

*Choi v. Kimberly-Clark Worldwide, Inc.*
    2019 WL 4894120 (C.D. Cal. Aug. 28, 2019) ........................................ 20

*Colwell v. Dept. of Health & Human Servs.*
    558 F.3d 1112 (9th Cir. 2009) ....................................................................... 6

*Friends of the Earth v. Sanderson Farms Inc.*
    992 F.3d 939 (9th Cir. 2021) ....................................................................... 12

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*
    528 U.S. 167 (2000) ........................................................................................ 7

*Hall v. Sea World Entertainment, Inc.*
    2015 WL 9659911 (S.D. Cal. Dec. 23, 2015) ................................... 16, 17

*Havens Realty Corp. v. Coleman*
    455 U.S. 363 (1982) ...................................................................................... 12

*In Defense of Animals v. Sanderson Farms, Inc.*
    2021 WL 4243391 (N.D. Cal. Sept. 17, 2021) ................................. 12, 15

*In re Arris Cable Modem Consumer Litig.*
    2018 WL 288085 (N.D. Cal. Jan. 4, 2018) ............................................. 19

*Joseph v. Ralphs Grocery Co.*
  2016 WL 1056648 (C.D. Cal. Mar. 4, 2016)....................................................7, 11

*Kearns v. Ford Motor Co.*
  567 F.3d 1120 (9th Cir. 2009) ...............................................................................16

*Krause-Pettai v. Unilever United States, Inc.*
  2021 WL 1597931 (S.D. Cal., Apr. 23, 2021)........................................................19

*Levay v. AARP, Inc.*
  2019 WL 2108124 (C.D. Cal. May 14, 2019) ........................................................16

*Meaunrit v. The Pinnacle Foods Group, LLC*
  2010 WL 1838715 (N.D. Cal., May 5, 2010)..........................................................18

*Mohamed v. Kellogg Co.*
  2015 WL 12469107 (S.D. Cal. Aug. 19, 2015) ........................................................6

*Odom v. Microsoft Corp.*
  486 F.3d 541 (9th Cir. 2007) .................................................................................15

*Pels v. Keurig Dr. Pepper, Inc.*
  2019 WL 5813422 (N.D. Cal. Nov. 7, 2019) .........................................................10

*Sanders v. Apple Inc.*
  672 F. Supp .2d 978 (N.D. Cal. 2009) ...................................................................19

*Schmier v. United States Court of Appeals*
  279 F.3d 817 (9th Cir. 2009) ...................................................................................7

*Spokeo, Inc. v. Robins*
  136 S. Ct. 1540 (2016)..............................................................................................9

*United Food & Commercial Workers Union Local 751 v. Brown Grp., Inc.*
  571 U.S. 544 (1996).................................................................................................12

*United States v. Hays*
  515 U.S. 737, 742 (1995)...........................................................................................6

*Vess v. Ciba-Geigy Corp. USA*
  317 F.3d 1097 (9th Cir. 2003) ..........................................................................15, 18

*Wallace v. ConAgra Foods, Inc.*
  747 F.3d 1025 (8th Cir. 2014) ...........................................................................9, 10

*White v. Lee*
  227 F.3d 1214 (9th Cir. 2000) ................................................................ 6

*Whitson v. Bumbo*
  2009 WL 1515597 (N.D. Cal. Apr. 16, 2009) ................................ 10, 11

## <u>CALIFORNIA STATE CASES</u>

Page

*Durell v. Sharp Healthcare*
  183 Cal. App. 4th 1350 (2010) .......................................................... 11

*Kwikset Corp. v. Sup. Ct.*
  51 Cal. 4th 310 (2011) ...................................................................... 11

*McBride v. Boughten*
  123 Cal. App. 4th 379 (2004) ............................................................ 19

*Melchior v. New Line Products, Inc.*
  106 Cal. App. 4th 779 (2003) ............................................................ 19

## <u>RULES</u>

Page

Fed. R. Civ. P. 12(b)(1) ........................................................................ 6

Fed. R. Civ. P. 9(b) .............................................................................. 15

## <u>STATUTES</u>

Page

Cal. Bus. & Prof. Code § 17204 ............................................................ 11

Cal. Bus. & Prof. Code § 17535 ............................................................ 11

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

In this action, plaintiffs Sara Safari, Peymon Khaghani and Farm Forward (collectively "Plaintiffs") claim that defendants Whole Foods Market Services, Inc. ("WFM Services"), Whole Foods Market California, Inc. ("WFM California") and Mrs. Gooch's Natural Food Markets, Inc. ("Mrs. Gooch's" and collectively "Defendants") have falsely and misleadingly represented that the beef products sold in Whole Foods Market stores in California were raised without using antibiotics. In order to establish the presence of antibiotics across all beef products sold at Whole Foods Market, Plaintiffs allege that Farm Forward tested an undisclosed number of undisclosed beef products purchased from Whole Foods Market stores in several states using an undisclosed testing method and detected an undisclosed amount of monensin sodium residue in a **single** unspecified product.  *See* ECF No. 35, ¶¶2 & 59-60.

These woefully deficient allegations do not establish a pattern or practice of antibiotic use by **all** Whole Foods Market beef suppliers, nor do they provide a plausible basis from which the Court may infer the beef products Plaintiffs purchased, or more broadly all beef products sold at Whole Foods Market, were raised using antibiotics.  Plaintiffs allegations, therefore, are insufficient to establish Defendants' representations of "No Antibiotics, Ever" and "No antibiotics or add growth hormones, ever" are false and misleading to California consumers and to state each of the claims alleged in the FAC.

First, plaintiffs Safari and Khaghani failed to allege facts establishing their standing under Article III and California's consumer statutes.  They have not alleged facts demonstrating that they purchased beef products from a Whole Foods Market that were raised using antibiotics, nor sufficient facts from which the Court might plausibly infer that the beef products they purchased were raised using antibiotics.

1   Thus, they have not alleged any concrete or particularized injury nor a loss of

2   money or property as a result of Defendants' alleged actions.  Similarly, the

3   organizational plaintiff, Farm Forward, failed to show how Defendants' alleged

4   misrepresentations forced it to divert its resources.  Indeed, Farm Forward's

5   allegations show its investigation of Whole Foods Market stores was a continuation

6   of its stated mission.  Because Plaintiffs lack standing, the case should be dismissed

7   under Rule 12(b)(1).

8        Second, Plaintiffs' claims, which are all based in fraud and rely on the same

9   unified course of fraudulent conduct, are not alleged with the particularity required

10  by Rule 9(b).  Plaintiffs fail to allege facts demonstrating *why* Defendants'

11  representations are false, and *how* they were damaged.  Notably, Plaintiffs failed to

12  allege any details about what beef products they purchased or the alleged testing

13  they undertook.  Further, their allegations fail to tie the beef products Plaintiffs

14  purchased to the antibiotic testing in any meaningful way.  Without these essential

15  facts, Plaintiffs' claims fail to meet Rule 9(b)'s particularity requirements and

16  should be dismissed.  Finally, Plaintiffs' claim for unjust enrichment is not a stand-

17  alone claim under California law and should be dismissed.

18              **II.        SUMMARY OF ALLEGATIONS AND FACTS**

19  **A.    The Parties**

20         **1.    Defendants**

21         Defendant WFM Services is a Delaware corporation based in Austin, Texas.

22  ECF No. 35, ¶24.  WFM Services owns and operates the Whole Foods Market

23  website, located at www.wholefoodsmarket.com.  *Id.*  Plaintiff alleges that WFM

24  Services advertises Whole Foods Market's beef products in a manner indicating

25  they are raised without antibiotics and directs consumers to Whole Foods Market

26  stores in California where they can purchase the challenged beef products.  *Id.*

27         Defendants WFM California and Mrs. Gooch's are California corporations

28

based in Emeryville and Glendale, respectively.  ECF No. 35, ¶¶25 & 27.  WFM California owns and operates the Whole Foods Market stores located in the Northern California Region (generally the stores in Fresno and north of Fresno).  *Id*., ¶26.  Mrs. Gooch's owns and operates the Whole Foods Market stores located in the Southern Pacific Region (generally the stores south of Fresno).  *Id.*, ¶28.  Plaintiffs contend WFM California and Mrs. Gooch's market and sell beef products to California consumers under the slogans "No Antibiotics, Ever" and "No antibiotics or added growth hormones, ever."  *Id.*, ¶¶12, 19 & 37.

### 2.  The Individual Plaintiffs

Plaintiffs Sara Safari and Peymon Khaghani (collectively the "Individual Plaintiffs") are individual consumers residing in Tustin and Moorpark, California.  *See* ECF No. 35, ¶¶9 & 16.  The Individual Plaintiffs allege they purchased "Beef Products" on numerous occasions from their local Whole Foods Market stores in Southern California over the last several years.  *Id.*, ¶¶10-11 &17-18.  Plaintiff Khaghani also alleges he purchased "Beef Products" on several occasions from Whole Foods Market stores in the Bay Area in 2020.  *Id.*, ¶18.  Plaintiffs define "Beef Products" as simply "beef."[1]  *Id.,* ¶1.

The Individual Plaintiffs allege they believed the beef products they purchased were raised without the use of antibiotics and pharmaceuticals.  *Id.*, ¶¶12-13 & 18-20.  Specifically, they allege they relied on the marketing slogans and representations "No Antibiotics Ever" and "No antibiotics or growth hormones, ever" in making their purchases.  *Id.*  They further allege that they saw these statements on in-store signage, product labels, the Whole Foods Market website and on listings on Amazon.com.  *Id.*, ¶¶12 & 19.

---

[1] Plaintiffs' initial complaint included a list of more than 40 products they alleged fell within their definition of "Beef Products."  *See* ECF No. 1, ¶40.  Plaintiffs removed this allegation from their First Amended Complaint, adding to the ambiguity of their current allegations and claims.  *See gen.,* ECF No. 35, ¶¶37-40.

### 3.     Farm Forward

Plaintiff Farm Forward is a 501(c)(3) public interest organization formed in 2007 and based in Portland, Oregon.  ECF No. 35, ¶23.  Farm Forward alleges that its mission is to end factory farming.  *Id.*  To that end, Farm Forward alleges that its staff and board members expended numerous hours working alongside representatives of Whole Foods Market to develop and create the criteria and standards for certifying various meat products, including beef products, as "Animal Welfare Certified" or "GAP certified" under the Global Animal Partnership's ("GAP") certification program.  *Id.*, ¶¶49-55 & 81-82.  It also alleges that it expended resources promoting Whole Foods Market's meat products as "better" and "best" choices to consumers based on the GAP and Animal Welfare certifications.  *Id.*, ¶¶82-85.

### B.     Plaintiffs' Claims

Plaintiffs claim that Whole Foods Market's antibiotic representations, and its broader marketing campaign that restates and reinforces these representations, is false and misleading.  ECF No. 35, ¶¶1 & 41-57.  In particular, they claim that testing by plaintiff Farm Forward found that beef products sold at Whole Foods Market contain antibiotic and other pharmaceutical residues.  *Id.*, ¶¶1-2 & 59-61.  Plaintiffs do not explain the method used to test the beef products, attach the testing results, identify which beef products were tested, nor allege that they tested the beef products purchased by the Individual Plaintiffs.  *Id.*  Regardless, the Individual Plaintiffs claim they have been injured because they would not have purchased or would not have paid as much for the beef products had they known the cattle used in the products were raised with antibiotics.  *Id.*, ¶¶15 & 22.  Farm Forward claims it has been injured by expending resources in the alleged development and promotion of animal welfare standards and Whole Foods Market's meat products, and its

Case No. 8:22-CV-01562-JWH (KESx)
MPA ISO DEF.'S MTN. TO DISMISS FAC

subsequent investigation and marketing campaign to correct Whole Foods Market's alleged misstatements.  *Id.*, ¶¶80-94.

Based on these allegations, Plaintiffs assert claims of unlawful and deceptive business practices and advertising in violation of California's Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, et seq. ("CLRA"), Unfair Competition Law, Cal. Bus. & Prof. Code §§17200, et seq. ("UCL), and False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, et seq. ("FAL"), breach of express warranty, unjust enrichment, fraudulent concealment and intentional misrepresentation.  ECF No. 35, ¶¶106-172.  Plaintiffs bring their claims on behalf of themselves and "[a]ll persons who purchased a Beef Product from Whole Foods in California between 2017 and the present."  *Id.*, ¶95.  Plaintiffs demand restitution, actual damages, punitive damages and injunctive relief.  *Id.* at p. 47:4-18.

**C.    Procedural History**

Plaintiffs, together with another consumer – Jason Rose, initiated this action against Whole Foods Market, Inc. ("WFMI") in August 2022.[2]  *See* ECF No. 1. WFMI moved to dismiss the Complaint for lack of personal jurisdiction, failure to allege standing and a lack of particularity in October 2022.  ECF No. 24.  Plaintiff Jason Rose thereafter voluntarily dismissed his claims under Federal Rule of Civil Procedure 41(a) and the remaining Plaintiffs filed a First Amended Complaint ("FAC"), dropping WFMI as a defendant and naming WFM Services, WFM California and Mrs. Gooch's in its place.  *See* ECF Nos. 27 & 35.  The FAC also added several allegations in an effort to address WFMI's standing and particularity arguments, and added claims for breach of express warranty and intentional

---

[2]  In November 2022, Girard Sharp LLP – one of the law firms representing Plaintiffs in this action – moved to withdraw as counsel of record because their client, plaintiff Jason Rose, had voluntarily dismissed his claims.  *See* ECF No. 33. The Court granted the motion by order entered on December 5, 2022.  *See* ECF No. 37.

misrepresentation.  *See* ECF No. 35-1.  The Court denied WFMI's motion to dismiss as moot based on the filing of the FAC.  ECF No. 26.

The Court held an Initial Scheduling Conference on December 13, 2022.  *See* ECF No. 38.  During the conference, the parties and Court discussed various pleadings defects Defendants contend exist in Plaintiffs' FAC.  The Court ordered the parties to meet and confer over these issues in order to resolve as much as possible by voluntary amendment before proceeding, if necessary, with motion practice.  *Id.*  The parties held an initial conference on December 20, 2022 and exchanged further communications detailing their positions and response positions on December 21, 22 and 30.  The parties were able to resolve their dispute over CAFA jurisdiction, but Plaintiffs chose to stand on their current allegations in response to Defendants other pleading challenges.

## III.   LEGAL ARGUMENT

**A.    Plaintiffs Fail to Plead the Necessary Facts to Establish Their Standing to Assert the Alleged Claims.**

Standing is a jurisdictional issue and may properly be addressed through a pleading challenge under Fed. R. Civ. P. 12(b)(1).  *See United States v. Hays*, 515 U.S. 737, 742 (1995); *see also White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000) (party may challenge standing in Rule 12(b)(1) motion given that standing "pertain[s] to a federal court's subject-matter jurisdiction under Article III.".) Plaintiffs are "required to establish standing in [their] own right to bring substantially similar claims on behalf of others."  *Mohamed v. Kellogg Co.*, No. 14-cv-02449-L, 2015 WL 12469107, *5 (S.D. Cal. Aug. 19, 2015).  Plaintiffs have the burden of establishing standing.  *See Colwell v. Dept. of Health & Human Servs.*, 558 F.3d 1112, 1121 (9th Cir. 2009).

Article III's constitutional case-in-controversy requirements necessitate that, for each claim a plaintiff must allege: (1) an injury in fact that is concrete and

particularized, as well as actual and imminent; (2) that the injury is fairly traceable to the challenged action of the defendant; and (3) that it is likely (not merely speculative) that the injury will be redressed by a favorable decision.  *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 180-81 (2000).  A concrete injury is one that is "distinct and palpable...as opposed to merely abstract." *Schmier v. United States Court of Appeals*, 279 F.3d 817, 821 (9th Cir. 2009).

A suit brought by a plaintiff without Article III standing is not a "case or controversy," and an Article III federal court therefore lacks subject matter jurisdiction over the suit.  *See Cetacean Community v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004).  Claims brought under California's CLRA, UCL, or FAL must also satisfy Article III standing requirements and the separate standing requirements of those statues.  *See Birdsong v. Apple*, 590 F.3d 955, n.4 (9th Cir. 2009) (citing *Cantrell v. City of Long Beach*, 241 F.3d 674, 683 (9th Cir. 2001) (holding that a party asserting state law claims in federal court "must meet the stricter federal standing requirements of Article III."); *see also Joseph v. Ralphs Grocery Co.*, No. 15-cv-9399-AB, 2016 WL 1056648, at *2 (C.D. Cal. Mar. 4, 2016) (dismissing UCL claims for lack of standing because plaintiff did not allege economic injury or causation).

**1.      The Individual Plaintiffs Failed to Allege a Particularized or Concrete Injury.**

The Individual Plaintiffs claim that they were deceived by the advertising statements "No Antibiotics, Ever" and "No antibiotics or added growth hormones, ever" into believing the beef products they purchased from Whole Foods Market were raised without the use of antibiotics.  ECF No. 35, ¶¶12 & 19.  Plaintiffs also allege that they tested an undisclosed number of undisclosed beef products purchased from Whole Foods Market stores in several states using an undisclosed

method and detected an undisclosed amount of monensin sodium residue in a single unspecified product.[3]  *Id.*, ¶¶59-60.

Based on this single incident, Plaintiffs contend that all beef products sold at Whole Foods Market "were treated with antibiotics or other pharmaceuticals while being raised."  *Id.*, ¶2.  Further, they claim that they have been injured by purchasing beef products that were raised using antibiotics.  *Id.*, ¶15 & 22.  Notably, the Individual Plaintiffs failed to allege any facts demonstrating that the beef products they personally purchased were raised with antibiotics or even that the unspecified beef product they tested was the same beef product they purchased or that the unspecified beef product, which tested positive for residue, was even purchased from the same store or region where they shopped.  *See gen.,* ECF No. 35, ¶¶9-22.

Plaintiffs also claim that Farm Forward's testing revealed the presence of fenbendazole in five beef product samples purchased from Whole Foods Market stores in other states.  *See* ECF No. 35, ¶61.  Notably, as Plaintiffs acknowledge in their FAC, fenbendazole is not an antibiotic and its alleged presence in beef products does not support Plaintiffs' claim of deception.  *Id.*  Even so, as with the alleged antibiotic testing, the FAC does not identify the date the beef products were purchased from Whole Foods Market, that any of the tested beef products came from the Southern Pacific Region, the specific type or brand of beef products, the name of the laboratory that performed the testing, the method of testing, or the amount of fenbendazole allegedly detected.  *Id.*  Thus, these alleged test results do not lend any support to Plaintiffs' contention that all beef products sold at Whole Foods Market were raised using antibiotics.

---

[3]  As discussed in Section III.A.2 below, none of the other testing cited by Plaintiffs is of Whole Foods Market's beef products.

1    Plaintiffs fail to allege a link between the specific beef product each of them
2    bought, the representations they viewed, and the beef product that was subjected to
3    testing.  Just because some unspecified testing of an unidentified beef product
4    allegedly revealed an undisclosed amount of monensin sodium residue,[4] it does not
5    follow that the beef products each Individual Plaintiff bought must have also been
6    raised using antibiotics.  Nor does it follow that all, a substantial portion, or even
7    more than a single sample of Whole Foods Market's beef products contain antibiotic
8    residues and/or were raised with antibiotics.  Indeed, the slaughterhouse testing cited
9    by Plaintiffs (which is not specific to beef products sold at Whole Foods Market)
10   suggests that most cattle, eighty-five percent (85%), came from lots where no cattle
11   tested positive for antibiotics.  *See* ECF No. 35, ¶¶62-63.

12   Accordingly, Plaintiffs' alleged injuries are neither particularized nor
13   concrete.  "Particularization is necessary to establish an injury in fact," and for "an
14   injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual
15   way.'" *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547-48 (2016).  Moreover, a
16   "concrete" injury must be '*de facto*'; that is, it must actually exist." *Id*. at 1548.  A
17   concrete injury must be real and not abstract.  *Id.*

18   In *Wallace v. ConAgra Foods, Inc.*, the plaintiffs alleged that Hebrew
19   National beef products were not 100% kosher beef as advertised, based on
20   allegations that certain slaughterhouses did not follow kosher rules.  *See Wallace v.*
21   *ConAgra Foods, Inc*., 747 F.3d 1025 (8th Cir. 2014).  The *Wallace* plaintiffs tried to
22   get around the speculation in their complaint by stating that it was "'impossible for
23   any reasonable consumer to detect whether purportedly kosher meat is non-kosher."

---

24
25   [4]  Defendants also do not concede that the alleged presence of monensin sodium
26   residue in a single unspecified product means that the cattle from which that product
     came was raised using antibiotics.  The residue may have come from some type of
27   contamination in the processing of that beef product, from the testing itself or from
28   some other source.

*Id.* at 1030.  But this made no difference.  The Eighth Circuit dismissed the complaint because the plaintiffs' "allegations fail[ed] to show that any of the particular packages of Hebrew National beef they personally purchased contained non-kosher beef" and plaintiffs "gave no reason to think all the beef marked as kosher under the quota did not meet kosher standards." *Id.*

The Eighth Circuit emphasized it could not "discern from the complaint how many packages were tainted with non-kosher beef," and noted that it was "unclear whether even a bare majority of Hebrew National packages were not kosher."  *Id.* (citation omitted).  Thus, the Court found that "it is pure speculation to say the particular packages sold to the [plaintiffs] were tainted by non-kosher beef" and dismissed the complaint because "the Supreme Court has reminded lower courts that speculation and conjecture are not injuries cognizable under Article III."  *Id.* at 1031 (citation omitted).  Similarly, in *Pels v. Keurig Dr. Pepper, Inc.*, plaintiff alleged that defendants' spring water contained excessive levels of arsenic.  The district court found that plaintiff failed to plead a particularized injury because he failed to plead the spring water he purchased contained violative arsenic levels.  *Pels v. Keurig Dr. Pepper, Inc.*, No. 19-cv-03052-SI, 2019 WL 5813422, at *5 (N.D. Cal. Nov. 7, 2019).

The Individual Plaintiffs cannot artfully plead around the injury in fact requirement by claiming that some other consumers allegedly purchased beef from Whole Foods Market raised with antibiotics.  In *Whitson v. Bumbo*, consumer plaintiff alleged that the defendant manufacturer misrepresented the safety of its baby seat.  *See Whitson v. Bumbo*, No. 07-cv-05597-MHP, 2009 WL 1515597, at *4 (N.D. Cal. Apr. 16, 2009).  Although the manufacturer warned consumers to never use the seat on a raised surface, the packaging contained photos depicting babies in seats on a table.  *Id.* at *1.  After receiving reports that children had fallen out of the seat, the seat was recalled.  *Id.* at *2.  The court dismissed the plaintiff's claim on

standing grounds, concluding that she had failed to "allege any actual injury" because she did not allege that any baby fell from the seat she purchased.  *Id*.  Here, the Individual Plaintiffs similarly fail to allege any injury from the beef products they purchased.  Indeed, while Individual Plaintiffs make the conclusory allegation they were economically harmed and "would not have paid the prices they did, had they known the truth that cattle used in the Products were raised with antibiotics," they fail to show that the beef products they purchased were raised with antibiotics or allege facts from which the Court might infer that all or substantially all of the beef products sold at Whole Foods Market were raised using antibiotics.  *See* ECF No. 35, ¶¶7, 59-60, 117, 133, 140 & 148.

### 2.    The Individual Plaintiffs Have Not Alleged an Economic Injury Caused by Defendants' Alleged Advertising

In addition to the Article III standing requirements, Plaintiffs must also satisfy the specific standing requirements under the UCL, FAL, and CLRA to assert claims under those statutes.  *See Joseph v. Ralphs Grocery Co.*, *supra*, 2016 WL 1056648, at *2.  To assert a UCL or FAL claim, a private plaintiff needs to have "suffered injury in fact and . . . lost money or property as a result of the unfair competition."  Cal. Bus. & Prof. Code §§ 17204 & 17535; *Kwikset Corp. v. Sup. Ct.*, 51 Cal. 4th 310, 321-322 (2011).   Plaintiffs similarly must allege that they suffered economic injury as a result of Defendants' advertising statements in order to establish standing under the CLRA.  *See Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1367 (2010).  Plaintiffs have not satisfied these statutory standings requirements for the same reasons articulated in Section III.A.1 above.  They have not alleged facts plausibly demonstrating that they purchased beef products that came from cattle raised with antibiotics, nor sufficient facts from which the Court might infer that all beef products sold at Whole Foods Market are raised using antibiotics.

### 3.   Farm Forward Lacks Standing to Assert its FAL and UCL Claims.

In advancing its FAL and UCL claims, Farm Forward relies on organizational standing when it argues that its interests were hindered because Defendants allegedly falsely advertised their meat products as raised without antibiotics.  To establish organizational standing under the FAL and UCL, Farm Forward bears the burden of showing that the advertising: (1) frustrated its organizational mission; and (2) forced Farm Forward to divert resources to avoid real harm.  *See Friends of the Earth v. Sanderson Farms, Inc.*, 992 F.3d 939, 942 (9th Cir. 2021); *see also Havens Realty Corp. v. Coleman,* 455 U.S. 363, 379 (1982).  These are additional elements beyond that required to establish associational standing under federal law.  *United Food & Commercial Workers Union Local 751 v. Brown Grp., Inc.,* 571 U.S. 544, 552 (1996).  Farm Forward fails to adequately plead the second element, diversion of resources, because it fails to adequately plead that it diverted resources to combat Defendants' advertising versus merely going about its usual business.

Organizations divert resources when they change resource allocation, not merely by going about their "business as usual." *Am. Diabetes Ass'n v. U.S. Dep.'t of the Army*, 938 F.3d 1147, 1154 (9th Cir. 2019).  Courts have found that merely continuing ongoing activities does not satisfy this requirement. *Friends of the Earth v. Sanderson Farms, Inc.*, *supra*, 992 F.3d at 941-942 (finding that advocacy groups, whose missions related to protection of human health, animal health and the environment, failed to establish standing on their FAL and UCL claims regarding antibiotic use in chicken when the groups' activities were continuation of their ongoing work); *see also, In Defense of Animals v. Sanderson Farms, Inc.* 2021 WL 4243391, at **4-5 (N.D. Cal. Sept. 17, 2021).

///

///

///

Farm Forward repeatedly admits that its mission is "to end factory farming."[5] *See* ECF No. 35, ¶¶2 & 23.  It attempts to establish organizational standing by alleging that it "significantly departed" from this mission when it allegedly tested Whole Foods Markets' beef products for antibiotics and initiated a campaign to "expose Whole Foods' (and other) companies' false advertising of meat." *Id*., ¶91. Other allegations in the FAC, however, reveal that these actions constituted "business as usual" for Farm Forward because it believes evidence of antibiotics in meat demonstrates that such meat came from factory farms.  For instance, Farm Forward claims that "[d]ue to their poor genetic health and the crowded conditions in which they're confined, *animals on factory farms are often given drugs* in subtherapeutic doses to promote growth and keep them alive in conditions that would otherwise stunt their growth and even kill them."  *Id.*, ¶34 (emphasis added).

Similarly, in a Farm Forward article cited in the FAC entitled "The Drugs Farm Forward Found Hiding in Your Meat," Farm Forward states "[b]ecause GAP has shown a pattern of catering to the industry *by welcoming modified factory farms into its program*, we suspected that drugs may be present in the meat it certifies." ECF No. 35, fn. 12 at p. 2 (emphasis added).  In that same article, Farm Forward claims that it discovered two antiparasitic drugs in Whole Foods Market's meat and that while those drugs were "technically permitted within GAP's Animal Welfare Certified program," they were "routinely used on factory farms" and their use was "worrisome."  ECF No. 35, fn. 12 at p. 3.  Farm Forward goes on to state, "these drugs are often used prophylactically to prevent densely packed animals on factory farms from falling ill…"  *Id*.  Finally, Farm Forward opines that "[i]ts time for GAP and Whole Foods to commit to phase out all factory farm practices for all of the

---

[5] Notably, Farm Forward fails to specifically define anywhere in the FAC (perhaps purposefully to avoid undermining its standing allegations) what it believes constitutes "factory farming."

1    operations they certify and sell, and to do more to promote plant-based

2    alternatives…" *Id.*

3         In another article cited in the FAC entitled "Farm Forward Finds Drugs in

4    Certified Meat at Whole Foods," Farm Forward further reveals that its campaign

5    against Whole Foods was merely a continuation of its core mission to end factory

6    farming.  It states:

7              In reality, **factory farmed products dominate Whole
              Foods' supply chain** despite charging customers up to
8              40 percent more for Animal Welfare Certified products.
              Antibiotics and other drugs are used widely on factory
9              farms to keep animals alive in cruel and filthy conditions
              that may otherwise kill them. Farm Forward's findings
10             should raise serious doubts in the minds of consumers
              about Whole Foods' and GAP's ability to prevent
11             animals from suffering on factory farms and to keep
              products with drug residues from ending up on store
12             shelves.

13

14

15   *See* ECF No. 35, fn. 18 at p. 2 (emphasis added).  At the conclusion of that article in

16   a heading entitled "**End Factory Farming**," Farm Forward again opines, "It's time

17   for GAP's Animal Welfare Certified program and Whole Foods to commit to stop

18   selling factory farmed products all together.  Until they stop selling factory farmed

19   products, the best way for consumers to avoid unwanted drugs in their food is to

20   avoid animal products whenever possible. Sign our petition…to **tell Whole Foods

21   to take factory farmed products off their shelves**."  ECF No. 35, fn. 18 at p. 3

22   (emphasis in original).  These statements show that contrary to the conclusory

23   statement in the FAC that Defendants' alleged misleading advertising caused Farm

24   Forward to "depart[] from Farm Forward's longstanding anti-factory farming

25   focus," Farm Forward's repeated attacks against "Whole Foods" constituted

26   business as usual in furtherance of its mission to end factory farming and practices it

27   associates with factory farming.  *See* ECF No. 35, ¶80.

28

It is clear from the FAC that the activities Farm Forward contends constitute its response to the alleged discovery of the use of pharmaceuticals in Defendants' meat products was standard-issue advocacy work by Farm Forward.  As a matter of law, Farm Forward cannot establish that it "diverted resources" when its campaign against Whole Foods Market was a continuation of its ongoing work to end factory farming.  It would "effectively nullify the constitutional requirement of standing" if Farm Forward could establish standing "by virtue of investigating conduct or starting a new campaign against someone who frustrates its general mission."  *In Defense of Animals v. Sanderson Farms, Inc., supra,* 2021 WL 4243391, at *4.

**B.    Plaintiffs' Fraud Claims Fail for Lack of Particularity**

A party alleging fraud must "state with particularity the circumstances constituting fraud."[6]  Fed. R. Civ. P. 9(b).  This heightened standard requires a pleader state the time, place and specific content of the false representations.  *See Odom v. Microsoft Corp.*, 486 F.3d 541, 553 (9th Cir. 2007).  The allegations "must set forth more than neutral facts necessary to identify the transaction.  The plaintiff must set forth what is false or misleading about the statement, and why it is false." *Vess v. Ciba-Geigy Corp USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (emphasis added.)  "The circumstances constituting the alleged fraud [must] be specific enough to give defendants notice of the particular misconduct…so that they can defend against the charge and not just deny that they have done anything wrong."  *Id.* (ellipsis original and internal quotation marks omitted).

"Rule 9(b) serves three purposes: (1) to provide defendants with adequate notice to allow them to defend the charge and deter plaintiffs from the filing of

---

[6] Rule 9(b) applies to Plaintiffs' fraudulent concealment and intentional misrepresentation claims, as well as their claims for violation of California's CLRA, UCL and FAL.  State law claims that allege a unified course of fraudulent conduct are "'grounded in fraud'" or []'sound in fraud,' and the pleading of [those] claim[s] as a whole must satisfy the particularity requirement of Rule 9(b)." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103–1104 (9th Cir. 2003).

complaints as a pretext for the discovery of unknown wrongs; (2) to protect those whose reputation would be harmed as a result of being subject to fraud charges; and (3) to prohibit [ ] plaintiff[s] from unilaterally imposing upon the court, the parties and society enormous social and economic costs absent some factual basis." *Levay v. AARP, Inc.*, No. 17-cv-09041-DDP, 2019 WL 2108124, at *6 (C.D. Cal. May 14, 2019) (internal quotation marks omitted).

These heightened pleading requirements are equally applicable to fraud claims based on omissions or nondisclosures by a defendant. *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009) ("Because the Supreme Court of California has held that nondisclosure is a claim for misrepresentation in a cause of action for fraud, it (as any other fraud claim) must be pleaded with particularity under Rule 9(b)."); *see also Hall v. Sea World Entertainment, Inc.*, No. 15-cv-660-CAB, 2015 WL 9659911, at *2 (S.D. Cal. Dec. 23, 2015). Plaintiffs' FAC fails to meet Rule 9(b)'s heighted pleading standard because Plaintiffs fail to plead with particularity the why (why those statement are false), and the how (which products Plaintiffs purchased and how were they injured).

The gravamen of Plaintiffs' claims is their contention that Whole Foods Market represented its beef products as "made from cattle raised without antibiotics," but, in fact, "Whole Foods' Beef Products were raised with antibiotics and other pharmaceuticals." ECF No. 35, ¶¶110, 130, 138, 143, 152, 156 & 168. Plaintiffs claim that they relied on Whole Foods Market's statements prior to purchasing unspecified beef products. Plaintiffs, however, failed to state with any particularity the facts to support their conclusory allegation that Whole Foods Market's beef products were in fact raised with antibiotics, and how they relied upon Whole Foods Market's statements—that is, what products did Plaintiffs purchase in reliance on Whole Foods Market's statements?

Plaintiffs claim that Defendants' representations are false because Farm Forward tested "meat products" from Whole Foods Market and the testing results revealed the presence of monensin sodium residue in a single beef product purchased from a store in San Francisco.  ECF No. 35, ¶¶2 & 59-60.  These bare allegations leave out all the particularity of the alleged fraud.  The FAC does not identify the date the beef product was purchased from Whole Foods Market or whether the same or a similar beef product is sold in the Southern Pacific Region (where the Individual Plaintiffs regularly shop), the specific beef product purchased and tested, the name of the laboratory that performed the testing, the method of testing, or the amount of antibiotic allegedly detected.  Without this required information Defendants cannot defend against Plaintiffs' allegations.

Plaintiffs also allude to a peer-reviewed study which they claim shows Whole Foods Market's beef products were raised with antibiotics.  ECF No. 35, ¶62.  Neither the allegations in the FAC nor the study itself, however, identify the slaughterhouse where the testing took place and there is no evidence that beef products from that slaughterhouse were sold at Whole Foods Market stores or, more particularly, stores in California.  *Id*., ¶62.  Plaintiffs also cite to a Consumer Reports study that found antibiotic resistant bacteria in chicken.  *Id*., ¶64.  Again, antibiotic resistant bacteria in chicken does not show that beef products sold by Whole Foods Market were raised by antibiotics.

The length of Plaintiffs' FAC should not be conflated with the particularity of Plaintiffs' allegations of fraud.  *See Hall v. Sea World Entertainment, supra*, 2015 WL 9659911, at *10 ("Although the FAC spends close to seventy pages discussing the conditions of the whales at SeaWorld, as well as statements purportedly made by SeaWorld related thereto, simply listing statements and saying they are false does not satisfy Rule 9(b).").  Plaintiffs must specifically allege how and why Whole Foods' statements are false and they have failed to do so.

Additionally, Plaintiffs fail to allege they relied on Whole Foods Market's representations.  In particular, Plaintiffs fail to identify what beef product they purchased in reliance on Defendants' statements and how they were injured by those purchases.  Instead, Plaintiffs lump together all beef products sold by Whole Foods Market around the country and claim they purchased some unspecified products in reliance on Whole Foods Market's representation.  *See* ECF No. 35, ¶¶1-2, 12 & 19 and 4.  This does not satisfy Rule 9(b).  Defendants need to know which products Plaintiffs purchased so that it can respond to the fraud allegations.

For example, if Plaintiffs purchased a packaged and branded beef product (e.g., Eel River Organic Ground Beef, Country Natural Beef Ground Beef, Honest Dogs, Rao's Meatballs, Wellshire Farms Beef Bologna, etc.), the claims made on the product labels would be preempted by labeling requirements in the Federal Meat Inspection Act (FMIA).  *See Meaunrit v. The Pinnacle Foods Group, LLC,* No. 09-cv-04555 CW, 2010 WL 1838715, at *7 (N.D. Cal., May 5, 2010).  Further, many beef products are produced and labeled by other companies and Defendants have no control over their labels.  Moreover, if Farm Forward tested a branded beef product, then their results cannot be extrapolated to implicate every single beef product sold at Whole Foods Market nor possibly the beef products purchased by the Individual Plaintiffs.  These details are necessary for Defendants to defend themselves and are required by Rule 9(b).

## C.   Plaintiffs' Express Warranty and Unjust Enrichment Claims Fails.

Plaintiffs fails to adequately plead claims for breach of express warranty and unjust enrichment.  As an initial matter, because Plaintiffs allege a "unified course of fraudulent conduct and rely entirely on that course of conduct as the basis of" all of their claims, these claims are subject to—and fail to meet—the same heightened pleading requirements described in Section III.B above, and should be dismissed for that reason alone.  See *Vess v. Ciba-Geigy Corp. USA*, *supra*, 317 F.3d at 1103-04;

*see also In re Arris Cable Modem Consumer Litig.*, No. 17-cv-01834-LHK, 2018 WL 288085, at *10 (N.D. Cal. Jan. 4, 2018).  Regardless, these claims fail at the pleading stage for independent reasons.

### 1.  Plaintiffs' Express Warranty Claims Fail.

"To plead an action for breach of express warranty under California law, a plaintiff must allege: (1) the exact terms of the warranty; (2) reasonable reliance thereon; and (3) a breach of warranty which proximately caused plaintiff's injury." *Sanders v. Apple Inc.*, 672 F. Supp .2d 978, 986–87 (N.D. Cal. 2009) (citation omitted).  The Court should dismiss this claim because the Individual Plaintiffs do not allege sufficient facts demonstrating they purchased beef products raised using antibiotics.  As detailed in Section III.B above, the Individual Plaintiffs do not alleged facts demonstrating they purchased the same beef product, or even the same category of beef product (e.g., ground beef, butcher cut beef products, meatballs, hot dogs, etc.), that allegedly tested positive for antibiotic residue.  *See* ECF No. 35, ¶¶12-22.  Thus, they have not alleged the facts necessary to stating their claim for breach of warranty.

### 2.  Plaintiffs' Unjust Enrichment Claims Fail.

Plaintiffs' claim for unjust enrichment should be dismissed because there is no stand-alone claim under California law.  *See McBride v. Boughten*, 123 Cal. App. 4th 379, 387 (2004), quoting *Melchior v. New Line Products, Inc.*, 106 Cal. App. 4th 779, 793 (2003) (stating unjust enrichment is a "general principle underlying various legal doctrines and remedies;" it is not an independent cause of action); *Krause-Pettai v. Unilever United States, Inc.*, No. 20-cv-1672-DMS, 2021 WL 1597931, at *7 (S.D. Cal., Apr. 23, 2021); *Barrett v. Optimum Nutrition,* No. CV21-4398-DMG (SKX), 2022 WL 2035959 (C.D. Cal. Jan. 12, 2022). Further, because Plaintiffs' unjust enrichment claim is predicated on the same facts and allegations as their other claims, which fail for the reasons detailed above, the Court should not construe the

claim as a quasi-contract claim. *Choi v. Kimberly-Clark Worldwide, Inc.*, No. 19-cv-0468-DOC, 2019 WL 4894120, *13 (C.D. Cal. Aug. 28, 2019) ("there must be an underlying claim that a defendant has been unjustly conferred a benefit through mistake, fraud, coercion, or request.").

## IV. CONCLUSION

For the reasons stated set forth above, and because Plaintiffs were already given opportunities to amend, the Court should grant Defendants' Motion and Dismiss the FAC with prejudice for lack of standing to assert the alleged claims and lack of particularity required for claims based in fraud.

Dated: January 10, 2023      BLAXTER | BLACKMAN LLP


By:   _____ */s/ Brian R. Blackman*

BRIAN R. BLACKMAN
Attorneys For Defendants WHOLE FOODS MARKET SERVICES, INC.; WHOLE FOODS MARKET CALIFORNIA, INC.; MRS. GOOCH'S NATURAL FOOD MARKETS, INC.

1

## **CERTIFCATE OF COMPLIANCE**

2     The undersigned, counsel of record for defendants Whole Foods Market

3  Services, Inc., Whole Foods Market California, Inc. and Mrs. Gooch's Natural Food

4  Markets, Inc., certifies that this Memorandum of Points and Authorities contains

5  6,073 words, as reported by the word count function of the word-processing system

6  used to prepare this memorandum, which complies with the word limit of L.R. 11-

7  6.1.

8  Dated:  January 10, 2023                    BLAXTER | BLACKMAN LLP

9

10                              By:  _____/s/ *Brian R. Blackman*_____

11                                   BRIAN R. BLACKMAN
                                     Attorneys For Defendants
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28