Paige M. Tomaselli (SBN 237737)
Dylan D. Grimes (SBN 302981)
**GRIME LAW LLP**
730 Arizona Avenue
Santa Monica, CA 90401
Telephone: (310) 747-5095
ptomaselli@grimelaw.com
dgrimes@grimelaw.com

*Attorneys for Plaintiffs*

Gretchen Elsner (*pro hac vice*)
**ELSNER LAW & POLICY, LLC**
314 South Guadalupe Street, Suite 123
Santa Fe, NM 87501
Telephone: (505) 303-0980
gretchen@elsnerlaw.org

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## SOUTHERN DIVISION

| | |
|---|---|
| SARA SAFARI, PEYMON KHAGHANI, on behalf of themselves and all others similarly situated, and FARM FORWARD, on behalf of the general public,<br><br>    Plaintiffs,<br><br>    v.<br><br>WHOLE FOODS MARKET SERVICES, INC., a Delaware corporation, WHOLE FOODS MARKET CALIFORNIA, INC., a California corporation, MRS. GOOCH'S NATURAL FOOD MARKETS, INC. doing business as Whole Foods Market, a California Corporation,<br><br>    Defendants. | Case No. 8:22-cv-01562-JWH-KES<br><br>**PLAINTIFFS SARA SAFARI, PEYMON KHAGHANI and FARM FORWARD'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**<br><br>Date: March 10, 2023<br>Time: 9:00 a.m.<br>Department: 9D, 9th Floor<br>Judge: Hon. John W. Holcomb<br><br>Complaint Filed: August 23, 2022<br>Trial Date: Not Set<br><br>Jury Trial Demanded |

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................. 1

FACTUAL BACKGROUND ............................................................................... 2

STANDARD OF REVIEW .................................................................................. 4

ARGUMENT ........................................................................................................ 5

   I.   **Plaintiffs Have Alleged Sufficient Facts to Establish Standing** ...................... 5

     A.   Consumer Plaintiffs Have Standing ........................................................... 5

     1.   The Consumers Pled a Particularized and Concrete Injury ..................... 5

     2.   The Consumer Plaintiffs Pled an Economic Injury .................................. 10

     B.  Farm Forward Alleged Organizational Standing ........................................ 12

     1.   Farm Forward Alleged Frustration of Mission. ....................................... 13

     2.   Farm Forward Diverted Resources to Combat Defendants' Misleading Representations ........................................................................................ 15

   II.   **Plaintiffs Plead with Particularity** ................................................................ 18

   III.   **Plaintiffs Plead Breach of Warranty** .......................................................... 20

   IV.   **Plaintiffs Plead Unjust Enrichment** ............................................................ 21

CONCLUSION ..................................................................................................... 21

# TABLE OF AUTHORITIES

Cases

*Am. Diabetes Ass'n v. U.S. Dep't of the Army*, 938 F.3d 1147 (9th Cir. 2019) 13,15

*Annunziato v. eMachines, Inc.*, 402 F. Supp.2d 1133 (C.D. Cal. 2005) ..........................20

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...............................................................4

*Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753 (9th Cir. 2015) ................................21

*Barnes v. Nat. Organics, Inc.*, 2022 WL 4283779 (C.D. Cal. Sept. 13, 2022) ................9

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 540 (2007).........................................4

*Bennett v. Spear*, 520 U.S. 154 (1997) ......................................................4, 12

*Blennis v. Hewlett Packard Co.*, 2008 WL 818526 (N.D. Cal. Mar. 25, 2008)..............20

*Clancy v. Bromley Tea Co.*, 308 F.R.D. 564 (N.D. Cal. 2013) ..............................18

*Dinosaur Development, Inc. v. White,* 216 Cal.App.3d 1310 (1989)..............................21

*Fair Hous. Council v. Roommate.com LLC*, 666 F.3d 1216 (9th Cir. 2012) .................13

*Freeman v. Time*, 68 F.3d 285 (9th Cir. 1995) .................................................19

*Friends of the Earth v. Laidlaw Envtl. Servs.*, 528 U.S. 167 (2000)...............................12

*Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982).............................................12, 14

*Herb Reed Enterprises, LLC v. Florida Entertainment Mgmt, Inc.* (9th Cir. 2013) 736
    F.3d 1239, 1250 .................................................................................15

*Hinojos v. Kohl's Corp.*, 718 F.3d 1098 (9th Cir. 2013)…..………….………….11,12

*Hodsdon v. Mars*, 162 F.Supp.3d 1016 (N.D. Cal. Feb. 17, 2016) ..................... 6,7,10,11

*Hubbard Business Plaza v. Lincoln Liberty Life Ins.* (D.Nev. 1986) 649 F. Supp. 1310,
    1317, affd. (9th Cir. 1988) 844 F.2d 792 .................................................15

*In Defense of Animals v. Sanderson,* 2021 WL 4243391 (N.D. Cal. Sept. 17, 2021)......14

*Whitson v. Bumbo*, 2009 WL 1515597 (N.D. Cal. Apr. 16, 2009)..................................10

*Jimenez v. Tsai*, 2017 WL 2423186 (N.D. Cal. June 5, 2017) .......................................14

*Kwikset v. Superior Court*, 51 Cal.4th at 330 (2011) ......................................11

*Leoni v. State Bar*, 39 Cal.3d 609, 626, 217 Cal.Rptr. 423, 704 P.2d 183 (1985) ..........19

*Levine v. Vilsack*, 587 F.3d 986 (9th Cir. 2009) ......................................................4

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992) ......................................................5

*Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982) .....................................12

*Maya v. Centex Corp.,* 658 F.3d 1060 (9th Cir. 2011) ..........................................4

*McCoy v. Nestle USA, Inc.*, 730 F. App'x 462 (9th Cir. 2018) ............................6

*McCoy v. Nestle, USA, Inc.*, 173 F. Supp. 3d 954 (N.D. Cal. 2016) ........... 6, 8, 9,11

*Melchior v. New Line Productions, Inc.*, 106 Cal.App.4th 779 (2003)...............21

*Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139 (2010) ............................5

*MySpace, Inc. v. Wallace* (C.D. Cal. 2007) 498 F.Supp.2d 1293 ....................15

*Oceguera v. Baby Trend, Inc.*, 2022 WL 1599869 (C.D. Cal. Jan. 14, 2022) ...............10

*Open Text, Inc. v. Northwell Health, Inc.*, 2020 WL 8025315 (C.D. Cal. Dec. 11, 2020) ............................................................................................................11

*Pierce v. Ducey*, 965 F.3d 1085 (9th Cir. 2020)................................................14

*Rice-Sherman v. Big Heart Pet Brands, Inc.*, 2020 WL 1245130 (N.D. Cal. Mar. 16, 2020)...........................................................................................................9

*Rosales v. FitFlop USA, LLC*, 882 F. Supp. 2d 1168 (S.D. Cal. 2012)..........20

*Rutherford Holdings, LLC v. Plaza Del Rey*, 223 Cal.App.4th 221, 166 Cal.Rptr.3d 864, 872 (2014)........................................................................................21

*Sabra v. Maricopa County Community College,* 44 F.4th 867 (2022)............... 15, 16, 17

*Semegen v. Weidner*, 780 F.2d 727 (9th Cir. 1985).........................................18

*Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005 (9th Cir. 2012)...........4

*Smith v. Pac. Props. & Dev. Corp.*, 358 F.3d 1097 (9th Cir. 2004).................5

*Spokeo Inc. v. Robins*, 136 S. Ct. 1540 (2016) ................................................5

*Stuhlbarg Int'l Sales Co. v. John D. Brush and Co., Inc.* 240 F.3d 832 (9th Cir. 2001)..15

*Swartz v. KPMG LLP*, 476 F.3d 756 (9th Cir. 2007) ......................................18

*Vess v. Ciba-Geigy Corp. USA*, 317 F. 3d 1097 (9th Cir. 2003)......................18

*Wallace v. ConAgra Foods, Inc.*, 747 F.3d 1025 (8th Cir. 2014) ...................8

*Whitson v. Bumbo*, 2009 WL 1515597 (N.D. Cal. Apr. 16, 2009)..................10

---

*Zamani v. Carnes*, 491 F.3d 990 (9th Cir. 2007)................................................................13

Federal Rules of Civil Procedure

Federal Rule 9(b) ........................................................................................................1,18

Federal Rule Rule 12(b)..............................................................................................1

Federal Rule Rule 12(b)(1) ...................................................................................4, 9, 10

Federal Rule Rule 12(b)(6) .........................................................................................4

**INTRODUCTION**

Plaintiffs' First Amended Class Action Complaint easily satisfies Rule 12(b) and Rule 9(b) pleading requirements. *See* First Amended Complaint (FAC), ECF No. 35. Defendants repeatedly market ***all*** their Beef Products as "No Antibiotics, EVER," even though antibiotics are used in Whole Foods' supply chain. Consumer Plaintiffs Sara Safari and Peymon Khaghani (Consumer Plaintiffs) and public interest organization Plaintiff Farm Forward (collectively, Plaintiffs) have standing to challenge Defendants' (various Whole Foods entities) misleading statements.

In the First Amended Complaint, all three Plaintiffs address how Defendants' misrepresentations—promising "No Antibiotics, EVER" despite antibiotics use in Defendants' supply chain—harmed them. The Consumer Plaintiffs would not have purchased Defendants' beef products or would not have paid what they did pay if they had known that the cattle used in Defendants' products were raised with antibiotics. FAC ¶¶ 15, 22. The Consumer Plaintiffs exemplify consumer concern regarding antibiotics use in agriculture and the harm to consumers from Defendants' misleading statements. On top of advertising the "No Antibiotics, Ever" standard, Defendants promised consumers, "[i]f it doesn't meet our standards, we won't sell it," misleading consumers into thinking that Defendants have verified compliance with its standard. FAC ¶ 45. Plaintiffs Safari and Khaghani "purchased the Beef Products at a premium price because, based on Whole Foods' representations," they "believed all Beef Products available for sale from Whole Foods were derived from cattle raised without antibiotics or pharmaceuticals." FAC ¶¶ 13, 20. "Choosing antibiotic-free meat is important to" Consumer Plaintiffs because they do "not want to fund or support a farming model that uses pharmaceuticals, including antibiotics" because it contributes to the rise of antibiotic-resistant bacteria," "may leave pharmaceutical residue in the meat," and is indicative of "crowded, unsanitary" farming conditions that the Consumer Plaintiffs are opposed to. FAC ¶¶ 13, 20. As a result of this deception, Whole Foods sold Consumer Plaintiffs Beef Products they otherwise would not

have purchased, or at the very least, not at the inflated prices they paid. FAC ¶ 56. For Plaintiff Farm Forward, Defendants' misrepresentations frustrated Farm Forward's mission and caused Farm Forward to divert "significant resources addressing Whole Foods' misinformation." FAC ¶ 80.

Plaintiffs' allegations are specific enough to give Defendants notice of the particular misconduct that constitutes fraud so that they can defend against the charge. Plaintiffs also plead the elements of unjust enrichment and breach of warranty. Thus, this Court should deny Defendants' motion.

## FACTUAL BACKGROUND

Consumer Plaintiffs Sara Safari and Peymon Kaghani are representative Whole Foods shoppers. They purchased beef at Whole Foods because they believed that Whole Foods sold only Beef Products that were not raised with antibiotics and that Whole Foods verified this claim. FAC ¶ 7. Plaintiff Farm Forward is a public interest organization that works with farmers, ranchers, and retailers so that these companies can provide consumers with healthier, ethically sourced Beef Products. All Plaintiffs relied on Defendants' statements about their products and were deceived into purchasing, or promoting as is the case with Farm Forward, Defendants' Beef Products.

Consumers—like Consumer Plaintiffs—rely on Defendants to tell the truth. Grocery companies are a primary source of meat products consumed in American households and a main source for consumers for information about these products. Most U.S. consumers demand meat raised without the routine use of antibiotics, and 40 percent of consumers "always" or "often" purchase meat advertised as raised without antibiotics at the supermarket. FAC ¶ 4. Yet companies, like Defendants, can give the public the false impression that they have implemented meaningful change. *Id.* This type of language is commonly referred to as "greenwashing": making unsubstantiated, misleading, or untruthful claims that lead consumers to believe their products or the supply chain from

which they come are more sustainable, less harmful, or more ethical than they are. FAC ¶ 4.

Antibiotics use in Beef Products' supply chain is an issue that consumers are deeply concerned about. According to a 2018 Consumer Reports study, six out of ten consumers were willing to pay more for meat raised without antibiotics and 43% of Americans always or often looked for meat marketed as "raised without antibiotics." Even at the time of the 2018 study, 32% of Americans knew someone who had a bacterial infection where antibiotics were ineffective in curing an illness; and 43% of Americans were highly concerned that feeding antibiotics to animals may diminish effectiveness of antibiotics in humans. FAC ¶ 5. Defendants capitalize on these concerns by charging a premium for Beef Products, *all* which are marketed as "No Antibiotics, EVER." FAC ¶¶ 7, 13, 20, 27.

Defendants' Beef Products are certified by its partner, Global Animal Partnership (GAP). GAP was founded, funded, and staffed by Whole Foods. FAC ¶¶ 51, 52, 71. When a third party, FoodID, tested 699 "raised without antibiotics" cattle, the expectation was that zero animals would test positive for antibiotics. FAC ¶ 62. But 42% of feedyards providing "raised without antibiotics" cattle had at least one animal test positive. FAC ¶ 62(a). When FoodID separately analyzed the evidence of antibiotics residue in GAP rated cattle, FoodID found that approximately 26% of GAP cattle came from a lot where at least one animal tested positive, and 22% of GAP certified cattle came from a lot where two animals tested positive for antibiotics. FAC ¶ 62(c). As the scientists stated in their peer-reviewed journal article, "both animals testing positive from a lot would suggest a *systemic* problem" in the supply chain. FAC ¶ 62 (emphasis added).[1]

---

[1] Laboratory testing results revealed a systemic problem in GAP certified beef, even though antibiotics residue testing can detect only pharmaceutical residues that the cattle did not fully metabolize. Antibiotics residue testing does not definitely determine whether antibiotics were *used* (because they could have metabolized) and antibiotics residue testing does not determine if Defendants verified their promises to consumers.

Defendants had actual and constructive knowledge of antibiotics use in their supply chain and in their own Beef Products. Beef purchased from Whole Foods tested positive. A peer reviewed study confirmed that the problem is systemic, including for beef certified by GAP, the certification program used by Whole Foods. Yet Whole Foods has continued to promise consumers that all its meat is raised without antibiotics. FAC ¶¶ 69-71.

## STANDARD OF REVIEW

In considering motions to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) or for failure to state a claim under Rule 12(b)(6), a court must construe the complaint liberally, accepting all allegations as true and drawing all reasonable inferences in plaintiffs' favor. *Maya v. Centex Corp.,* 658 F.3d 1060, 1068 (9th Cir. 2011); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Similarly, courts "presume that general allegations embrace those specific facts that are necessary to support the claim." *Maya*, 658 F.3d at 1068; *Levine v. Vilsack*, 587 F.3d 986, 991 (9th Cir. 2009). The requisite showing for constitutional standing at the motion to dismiss stage is "relatively modest." *Bennett v. Spear*, 520 U.S. 154, 171 (1997). In reviewing a motion to dismiss for failure to state a claim, a court must accept "all factual allegations in the complaint as true" and construe them "in the light most favorable to the nonmoving party." *Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1014 (9th Cir. 2012). A court must deny the motion so long as the factual allegations in the complaint, accepted as true, "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 540, 555 (2007).

# ARGUMENT

## I.   Plaintiffs Have Alleged Sufficient Facts to Establish Standing.

Article III of the U.S. Constitution authorizes the judiciary to adjudicate only "cases" and "controversies." The doctrine of standing is "an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). "Article III standing requires a concrete injury even in the context of a statutory violation." *Spokeo Inc. v. Robins*, 136 S. Ct. 1540, 1543 (2016). The three well-known "irreducible constitutional minim[a] of standing" are injury-in-fact, causation, and redressability. *Lujan*, 504 U.S. at 560–61. A plaintiff bears the burden of demonstrating that her injury-in-fact is "concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010). Organizations establish injury-in-fact if they can demonstrate both (1) frustration of their organizational mission and (2) diversion of their resources to combat the conduct in question. *Smith v. Pac. Props. & Dev. Corp.*, 358 F.3d 1097, 1105 (9th Cir. 2004).

### A.   Consumer Plaintiffs Have Standing.

#### 1.   The Consumers Pled a Particularized and Concrete Injury.

Consumer Plaintiffs are not expected to send a sample of every Beef Product they purchase to a lab. Yet this is the impossible and unsupported standard that Defendants advance. Defendants assert, (1) "Notably, the Individual Plaintiffs failed to allege any facts demonstrating that the beef products they personally purchased were raised with antibiotics . . ." Defendants' Motion to Dismiss (Defs.' Mot.) 8.[2] And, (2) "Plaintiffs fail

---

[2] Defendants contend "the residue may have come from some type of contamination in the processing of that beef product, from the testing itself or some other source." Defs.' Mot. 9, n.4. If the antibiotic residue came from slaughterhouse contamination, that would still be contrary to Defendants' "No Antibiotics, Ever" promise to meat purchasers. *Id.* Moreover, the FAC does not allege that "antibiotic residue" is the injury.

to allege a link between the specific beef product each of them bought . . . and the beef product that was subjected to testing." Defs.' Mot. 9. Plaintiffs' Complaint and accompanying injury arises from Defendants' misrepresentations regarding antibiotics use in their beef supply chain and whether Defendants take the necessary steps to verify its extensive and clear promises.

The consumer protection cases challenging Ivorian labor in the chocolate supply chain are instructive. In *Hodsdon v. Mars*, 162 F.Supp.3d 1016 (N.D. Cal. Feb. 17, 2016) the chocolate company defendant (Mars) made the same arguments that Defendants make here to assert that the consumer plaintiff did not have standing: Plaintiff Hodsdon "(1) does not claim that he purchased chocolate containing cocoa beans harvested by children or forced laborers; (2) cannot trace any of Mars's chocolate to particular farms that use the objectionable labor practices . . ." *Id*. at 1022. In rejecting those arguments and finding that the consumer did have standing, the district court noted, "[t]he Ninth Circuit has already rejected Mars's first two arguments." *Id.* Like here, the injury comes from the objectionable practice in the supply chain:

> [T]he problem, according to Hodsdon, is that he was unaware that cocoa harvested by children and forced laborers were in the *supply chain*, not that he purchased chocolate actually tainted by child labor. Hodsdon ties his harm to the lack of certainty about the source of the cocoa beans, not to consumption of cocoa products actually harvested by child and forced laborers. In so doing, he has established injury in fact.

162 F.Supp.3d at 1022 (N.D. Cal. 2016), *aff'd*, 891 F.3d 857 (9th Cir. 2018) (italics in original).

In a similar case, *McCoy v. Nestle*, *USA, Inc.*, 173 F. Supp. 3d 954 (N.D. Cal. 2016), *aff'd sub nom. McCoy v. Nestle USA, Inc*., 730 F. App'x 462 (9th Cir. 2018), Nestlé

---

It alleges that the Consumer Plaintiffs' purchase of a Beef Product from a supply chain that uses antibiotics and Defendants' concomitant obfuscation of that truth while charging more for a product that is not what it is advertised to be, is the injury.

argued that plaintiff McCoy did not have an actual, particularized, injury. Nestlé could not trace the cocoa used in a particular chocolate product to a specific plantation, so there was no way to know whether slave labor was used to produce the consumer's product. *Id*. at 962. But because plaintiff had alleged that she would not have purchased Nestlé's products if she had known the supply chain involved the labor abuses at issue, "regardless of where the cocoa in a particular chocolate bar originated," she had standing. *Id*. at 962.[3]

When a plaintiff alleges that the value of a product was "diminished" because consumers did not wish to support a supply chain that included severe labor abuses, the alleged damage—injury—is "done *by the purchase itself*, not by any contingency that might happen after the purchase." *Id*. at 964 (emphasis in original). Much like Defendants here, there Nestlé argued that a UCL claim based on misrepresentation of labor practices can only succeed where a plaintiff is *certain* that the objectionable practice was used to produce the specific item that the plaintiff purchased. The court stated:

> That argument would dictate that even if Nestlé had—hypothetically—concealed Ivorian labor conditions from its customers, falsely labeled all of its chocolate as certified to be free of child labor, and run a fraudulent national ad campaign touting its child-labor-free chocolate, a customer who relied on that false promotion would lack standing to sue for fraudulent business practices and false advertising so long as some fraction of Nestlé's cocoa met those descriptions and the customer was unable to tell what labor conditions produced the cocoa in the actual product he or she purchased. Such a result would undermine the holding of *Hinojos* and *Kwikset*.

Here, Consumer Plaintiffs allege that they would not have purchased Whole Foods' "Beef Products, or would not have paid the prices they did, had they had known the truth that cattle used in the Products were raised with antibiotics." FAC ¶ 7. "Furthermore, Consumer Plaintiffs would not have purchased Beef Products, or would not have paid the

---

[3] In both *Hodsdon v. Mars* and *McCoy v. Nestlé*, the consumer plaintiff had standing but the cases were dismissed on other grounds not applicable here, because here, Defendants have made affirmative representations.

prices they did, had they known the truth that Whole Foods does not effectively verify its 'No Antibiotics, Ever' representation." *Id.* Plaintiffs allege that Defendants are concealing that their Beef Products were raised with antibiotics, that they are falsely advertising their Beef Products as certified "No Antibiotics, Ever," and are running a fraudulent national ad campaign touting their allegedly antibiotic-free Beef Products. FAC ¶¶ 132, 138, 157, 158. Defendants' sweeping website statements include: "At Whole Foods Market: No Antibiotics EVER is our standard[,]" and "the best- tasting beef, pork and poultry you'll find in a grocery store and no antibiotics, EVER!" FAC ¶ 45 (citing Whole Foods' website) (capitals in original). After repeatedly promising consumers, "No Antibiotics, Ever," Defendants also promise consumers, "If it doesn't meet our standards, we won't sell it." FAC ¶ 45. These statements misled Plaintiffs into believing that Whole Foods' supply chain met these conditions. The Consumer Plaintiffs relied on that false promotion.

Thus, the injury is not conferred by purchasing a Beef Product that tests positive for antibiotics. Consumer Plaintiffs' injury is conferred by purchasing a product that is devalued by the practices in Defendants' supply chain regardless of whether ***any*** piece of meat they purchase tests positive for antibiotics. Like the consumer in *McCoy*, Plaintiffs here have alleged a fundamental misrepresentation about Whole Foods' supply chain.

Consumer Plaintiffs paid a premium for Defendants' assurance that their Beef Products meet certain standards. If, as Plaintiffs allege, that the assurance turns out to be meaningless, then in the Ninth Circuit, the premium that Plaintiffs paid is an actual, personal, particularized injury that is cognizable under Article III. *McCoy,* 173 F. Supp. 3d at 964 (citing *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1104 (9th Cir. 2013). Defendants nevertheless argue that this Court should ignore courts in this Circuit and instead, apply a rule from the Eighth Circuit. *See* Defs.' Mot. 9-10 (citing *Wallace v. ConAgra Foods, Inc.*, 747 F.3d 1025, 1030–31 (8th Cir. 2014) (holding that customers lacked Article III standing to bring a claim based on allegedly false advertising of a product as using 100% kosher beef, where the plaintiffs could not show that the specific products they purchased

contained non-kosher beef)). "*Wallace* does not reflect the law of this Circuit." *Rice-Sherman v. Big Heart Pet Brands, Inc.*, No. 19-CV-03613-WHO, 2020 WL 1245130, at *6 (N.D. Cal. Mar. 16, 2020) (citing *McCoy*, 173 F. Supp. at 964 ("This Court respectfully disagrees with [*Wallace*]. In this Court's view, if a customer has paid a premium for an assurance that a product meets certain standards, and the assurance turns out to be meaningless, the premium that the customer has paid is an actual, personal, particularized injury that is cognizable under Article III.")). Indeed, "[i]t would be a bizarre result if sellers advertising food as halal or kosher, diamonds as conflict-free, or products as union-made could knowingly mix compliant and non-compliant products with impunity so long as there was no way for a buyer to trace the specific item he or she purchased back to the source." *McCoy,* 173 F. Supp. 3d at 964. Plaintiffs have pled that they place less value on a Beef Product produced from a supply chain using antibiotics. "That actual, particularized injury is sufficient to establish standing." *Id*.

In another Rule 12(b)(1) challenge involving consumer standing, a prenatal vitamin company defendant, NaturesPlus, defended the presence of heavy metals in its vitamins by arguing that the consumer did not have an injury because she knew what she was buying. The district court rejected that argument by stating:

> NaturesPlus apparently overlooks that this is precisely what Ms. Barnes alleges: that the inclusion, *or risk of inclusion*, of Heavy Metals was not disclosed on the label, and if it had been, she would not have paid for the Prenatal Vitamins. The Court declines to consider other arguments, supported by non-binding, out-of-circuit cases, that are unpersuasive given that the caselaw squarely supports Ms. Barnes' standing.

*Barnes v. Nat. Organics, Inc.*, No. EDCV22314JGBPLAX, 2022 WL 4283779, at *4 (C.D. Cal. Sept. 13, 2022) (emphasis added). Similarly, Plaintiffs here would not have purchased Whole Foods Beef Products if they knew, contrary to the "No Antibiotics, Ever" promise, that Plaintiffs were at risk of purchasing from a supply chain using antibiotics.

---

Defendants cite a case about the Bumbo baby seat to argue that the plaintiff failed to allege an actual injury. In *Whitson v. Bumbo*, No. 07-cv-05597-MHP, 2009 WL 1515597 at *4 (N.D. Cal. Apr. 16, 2009), the court dismissed because the named plaintiff "has not alleged how or whether she used her Bumbo seat, nor has she alleged that she or a child on whose behalf she has standing to sue was injured by the seat." Here, Consumer Plaintiffs' actual injury is purchasing misleadingly marketed Beef Products.

To the extent that baby seat safety cases are applicable to food marketing cases, Plaintiffs' case is more like *Oceguera v. Baby Trend, Inc*., No. 521CV00398JWHKKX, 2022 WL 1599869 (C.D. Cal. Jan. 14, 2022). Defendant Baby Trend also challenged the plaintiff Oceguera's standing under Rule 12(b)(1), and this Court concluded:

> Plaintiffs allege that they would not have purchased the Booster Seats if Baby Trend had properly disclosed that the seats were safe only for children who weigh at least 40 pounds. That allegation sufficiently constitutes an allegation of an injury in fact and conveys Article III standing.

*Oceguera*, 2022 WL 1599869 at *4. Likewise, Consumer Plaintiffs allege that they would not have purchased Beef Products had they known the truth that Whole Foods does not verify its advertising and that Whole Foods' "No Antibiotics, Ever" slogan really meant "No Antibiotics, Sometimes."

### 2.    The Consumer Plaintiffs Pled an Economic Injury.

An economic injury *is* a concrete and particularized injury. In *Hodsdon*, the Northern District of California held that consumer plaintiffs can have standing under the Unfair Competition Law (UCL), Consumers Legal Remedies Act (CLRA), and the False Advertising Law (FAL) when (1) they allege that a consumer paid more than they actually valued the product; (2) the plaintiff adequately alleged that the production method in the supply chain caused them to devalue the product even if they could not prove that production method was used to produce the specific products that they purchased; and (3) the plaintiff adequately alleged that they saw the product labels or advertisements before

they purchased the products. *Hodsdon* at 1022.[4]

The Consumer Plaintiffs here also have standing under the UCL and FAL, which requires an economic injury: private plaintiffs "ha[ve] suffered injury in fact and ha[ve] lost money or property as a result of the unfair competition" or false advertising. *Hinojos*, 718 F.3d at 1103 (quoting Cal. Bus. & Prof. Code § 17204 (UCL); citing *id.* § 17535 (FAL)) (alterations in original). In *Hinojos*, the Ninth Circuit examined the California Supreme Court's decision in *Kwikset Corp. v. Superior Court*, which held that a "'a consumer who relies on a product label and challenges a misrepresentation contained therein can satisfy the standing requirement of [the UCL and the FAL] by alleging ... that he or she would not have bought the product but for the misrepresentation,'" and that "such allegations are sufficient to establish economic injury within the meaning of [those statutes]." *Id.* at 1105 (quoting *Kwikset*, 51 Cal.4th 310, 330, 120 Cal.Rptr.3d 741, 246 P.3d 877 (2011)) (ellipsis in original). Further, "'the consumer paid more than he or she actually valued the product. That increment, the extra money paid, is economic injury and affords the consumer standing to sue.'" *Id.* at 1104 (quoting *Kwikset*, 51 Cal.4th at 330).

In *Kwikset* and *Hinojos*, plaintiffs who relied on the defendants' representations about their products—advertising Made in U.S.A. and "reduced price," respectively—had standing to sue under the UCL and FAL. *Id.* at 1107; *Kwikset*, 51 Cal.4th at 330, 120 Cal.Rptr.3d 741, 246 P.3d 877. Those courts also listed several other scenarios where a plaintiff's reliance on false advertising could give rise to standing: "meat falsely labeled as kosher or halal, wine labeled with the wrong region or year, blood diamonds mislabeled as conflict-free, and goods falsely suggesting they were produced by union

---

[4] Courts in the Ninth Circuit agree that for a plaintiff to properly allege economic injury, a plaintiff need only allege that it received less due to the defendant's unfair and fraudulent conduct. *See, e.g., Open Text, Inc. v. Northwell Health, Inc.*, No. 2:19-CV-09216-SB-AS, 2020 WL 8025315, at *3 (C.D. Cal. Dec. 11, 2020) (alleging that unfair and fraudulent conduct resulted in plaintiff receiving less confers standing); *McCoy*, 173 F.Supp.3d at 963.

labor." *Hinojos*, 718 F.3d at 1105 (citing *Kwikset*, 51 Cal.4th at 328–29, 120 Cal.Rptr.3d 741, 246 P.3d 877).

Here, Plaintiffs allege that they "purchased the Beef Products at a premium price because, based on Whole Foods' representations, [they] believed **all** Beef Products available for sale from Whole Foods were derived from cattle raised without antibiotics or pharmaceuticals." FAC ¶¶ 13, 20 (emphasis added). Plaintiffs specifically alleged that if they had "known that cattle used in Whole Foods Beef Products were raised with antibiotics," they "would not have purchased or would not have paid what" they did for them. FAC ¶¶ 15, 22. Consumer Plaintiffs' claims that they "would have paid less for (or declined to purchase) [Whole Foods' Beef] products but for [Whole Foods'] misrepresentations of the [animal raising] practices in its supply chain fits well within the above examples." *McCoy*, 173 F. Supp. at 963. Thus, Consumer Plaintiffs have adequately alleged standing.

## B.    Farm Forward Alleged Organizational Standing.

The facts before this Court, when accepted as true and construed in the light most favorable to Plaintiffs, demonstrate that Farm Forward has suffered injuries sufficient to establish standing at this stage of the litigation. In the First Amended Complaint, Plaintiffs allege how Defendants' unlawful actions have both frustrated Farm Forward's mission and caused them to expend resources to combat the Defendants' actions. FAC ¶¶ 80-94. This is all that is required at this stage. *See Bennett*, 520 U.S. at 171 (noting that a plaintiff's burden is "relatively modest at this stage of the litigation.").

The Supreme Court applied the Article III standing test, *see, e.g.*, *Friends of the Earth v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 180-81 (2000); *Lujan*, 504 U.S. at 560, in *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982), to recognize that a public interest organization has a legally protected interest to pursue its charitable mission. The *Havens* plaintiff, a housing rights association, operated a housing counseling service and investigated housing discrimination complaints. *See id.* at 368. The Court observed that

"injury to the organization's activities—with the consequent drain on the organization's resources—constitutes far more than simply a setback to the organization's abstract social interests." *Id.* at 379. When an organization is forced to divert its resources to "identify and counteract" unlawful activity that frustrates its mission, "there can be no question that organization has suffered an injury in fact" sufficient "to warrant his invocation of federal-court jurisdiction." *Id.* at 378-79 (stating that organization has standing to sue when "concrete and demonstrable injury to the organizations' activities" results "consequential drain on the organization's resources"); *see also Fair Hous. Council v. Roommate.com LLC*, 666 F.3d 1216, 1219 (9th Cir. 2012). Thus, consistent with well-established Supreme Court and Ninth Circuit precedent, Farm Forward alleged that the challenged conduct (1) frustrated its mission and (2) that it diverted resources to alleviate its harms. *Am. Diabetes Ass'n v. U.S. Dep't of the Army*, 938 F.3d 1147, 1154 (9th Cir. 2019).

### 1.     Farm Forward Alleged Frustration of Mission.[5]

Farm Forward's stated mission is to end factory farming. *See, e.g.,* FAC ¶ 2. In support of this mission, Farm Forward promotes "constant improvement in farmed animal welfare practices." FAC ¶ 81. In advance of this mission and for more than a decade, Farm Forward worked alongside Defendants' representatives to support and promote products that Defendants sold with the promise of "No Antibiotics, Ever." FAC ¶ 82. Farm Forward spent thousands of hours "working alongside Whole Foods" on its animal welfare standards. *Id.* Not only did Farm Forward work with Whole Foods on these standards, but it also ***promoted*** Whole Foods' Beef Products on its website, and through a web-based consumer guide as "better" and "best" choices for consumers to "make a difference every

---

[5] Defendants do not argue that Farm Forward did not adequately allege frustration of mission and thus Defendants waive that argument. *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) (stating district court need not consider arguments raised for first time in reply brief). However, since standing is jurisdictional, Plaintiffs discuss both frustration of mission and diversion of resources.

time they visit the grocery store." FAC ¶ 82. During the end of its tenure working with Whole Foods, Farm Forward discovered that the same Beef Products it was promoting as better and best choices for its members and the public were not produced in conformity with its mission. FAC ¶ 85. This frustrated Farm Forward's mission because the organization found that it was promoting products that did not align with its stated goals. FAC ¶ 86; *id.* at 87 ("Whole Foods' marketing of meat as Animal Welfare Certified and having "No Antibiotics, Ever" when, in fact, the meat comes from factory and other farms that administer antibiotics to cattle, conflicted with Farm Forward's endorsement of Whole Foods' meat—advertised as purportedly Animal Welfare Certified and having "No Antibiotics, Ever"—as "better" and "best" choices for consumers.").

Plaintiffs allege that had "Farm Forward not investigated and exposed Whole Foods' false meat advertising claims, the organization would have suffered injury to its reputation, and lost the support of both the public and the highest welfare farmers and ranchers, many of whom had expressed frustration with Whole Foods, and frustration with Farm Forward for their ongoing support of GAP." FAC ¶ 94. The reputational and financial harm that comes from promoting products that do not align with an organization's stated mission is an actual impediment to an organization's real-world efforts on behalf of its mission. *Jimenez v. Tsai*, 2017 WL 2423186, at *11 (N.D. Cal. June 5, 2017); *In Defense of Animals v. Sanderson,* No. 20-CV-05293-RS, 2021 WL 4243391, at *3 (N.D. Cal. Sept. 17, 2021) (citing *Jimenez v. Tsai*, 2017 WL 2423186, at *11 (N.D. Cal. June 5, 2017) (frustration of mission cannot be just a setback to an organization's values or interests, it must result in "an actual impediment to the organization's real-world efforts on behalf of such principles"); *see also Havens*, 455 U.S. 363, 379 (1982) (discussing "injury to the organization's activities"); *Pierce v. Ducey*, 965 F.3d 1085, 1089 (9th Cir. 2020) (per curiam) ("To be 'concrete,' the injury 'must actually exist'—an abstract, theoretical concern will not do." (citation omitted)); *Herb Reed Enterprises, LLC v. Florida Entertainment Management, Inc*. 736 F.3d 1239,

1250 (9th Cir. 2013) ("[e]vidence of … damage to [a business's] goodwill [can] constitute irreparable harm"); *Stuhlbarg Int'l Sales Co. v. John D. Brush and Co., Inc*. (9th Cir. 2001) 240 F.3d 832, 841; *MySpace, Inc. v. Wallace,* 498 F.Supp.2d 1293, 1305 (C.D. Cal. 2007); *Hubbard Business Plaza v. Lincoln Liberty Life Ins*., 649 F. Supp. 1310, 1317 (D.Nev. 1986), *aff'd*. 844 F.2d 792 (9th Cir. 1988) (damage to business reputation and interests from allegedly fraudulent draw of letter of credit constitutes irreparable injury.)

### 2.     Farm Forward Diverted Resources to Combat Defendants' Misleading Representations.

The diversion of resources element requires a change in resource allocation to combat a defendant's unlawful activity. *Am. Diabetes Ass'n*, 938 F.3d at 1154. An organizational plaintiff must show they would have suffered some other injury if it had not diverted resources to counteract the problem. *Sabra v. Maricopa County Community College,* 44 F.4th 867 (2022). In *Sabra,* the district court incorrectly held that the organization's activities were "business as usual" and that the organization did not have standing. *Sabra,* 44 F.4th at 879.

> [The organization] ha[d] not effectively shown that it would have suffered an injury if it had not diverted resources to counteract [the] allegedly 'Islamophobic' teachings. The allegedly offending course material, the court said, was more 'akin to a mere social setback for CAIR-AZ's abstract social interest[s],' and the organization had not demonstrated 'a diversion of resources that [was] not a normal part of [its] activities.

*Id.*

Reversing on the business-as-usual argument, the Ninth Circuit held that in this Circuit, a public interest organization "committed to advocacy and protecting the civil rights of American Muslims" had standing when it diverted its "resources to create a campaign correcting the Islamophobic information in course materials" and "contracting with a religious scholar to develop materials for this campaign." *Id.* The Court pointed to *Fair Housing Council,* reaffirming the Ninth Circuit's precedent that an organizational

plaintiff that spends "resources investigating the defendant's alleged discriminatory actions and developing 'new education and outreach campaigns' to combat those actions" has organizational standing. *Sabra,* 44 F.4th at 880 (quoting *Fair Housing Council*, 666 F.3d at 1219). Because the defendant's actions caused the plaintiffs "to divert resources independent of litigation costs and frustrated their central mission," the plaintiffs had organizational standing. *Id.* "So it is here." *Id.*

Defendants' standing argument is plainly inconsistent with recent Ninth Circuit caselaw, including *Sabra v. Maricopa County Community College.* If a public interest organization "committed to advocacy and protecting the civil rights of American Muslims" had standing to bring a First Amendment challenge against allegedly Islamophobic course materials taught by a community college professor because the organization "had to divert its resources to create a campaign correcting the Islamophobic information," *Sabra,* 44 F.4th at 880,  then a public interest organization committed to ending factory farming has standing to bring an unfair competition and false advertising challenge when a business knowingly deceives both the organization and the public about its products, and the public interest organization investigates and exposes the deception, contracts with a laboratory in order to do so, initiates a new campaign exposing the truth about the company's products, and would suffer financial and reputational harm if it had not done these things.

As in *Fair Housing Council*, Whole Foods' actions frustrated Farm Forward's mission and caused it to expend resources unrelated to litigation, resources that otherwise would have been spent on other programs, including its Pandemics campaign. FAC ¶ 92. The articles that Defendants suggest this Court should judicially notice do not advance their arguments. First, the articles are from 2022, after Defendants frustrated Farm Forward's mission by deceiving Farm Forward into promoting products that conflict with its mission, and after Farm Forward diverted resources (beginning in 2020) from promoting Whole Foods to investigating, exposing, and campaigning to expose the truth

about Whole Foods' products. FAC ¶¶ 86-94. Indeed, these articles are an example of Farm Forward allocating resources to its new campaign about Whole Foods' supply chain. These articles show that after a decade of working with Whole Foods to promote its products and relying on Defendants' statements regarding its products, Farm Forward was forced to expose the company and its products as not consistent with Farm Forward's mission and its members' and the public's goals of purchasing a better or best product, or suffer harm to its own organization. Had Farm Forward not investigated Whole Foods' Beef Products, hired a third-party testing laboratory, and started a new campaign exposing Whole Foods' false and misleading statements, then Farm Forward would have been complicit in the deception *because it was previously promoting those very products*, and it would have lost the support of the public and farmer and rancher partners. FAC ¶ 85.

Second, these articles underscore that Farm Forward allocated its resources differently because of Whole Foods' misrepresentations. Farm Forward alleges that it donated thousands of hours of its time to working with Whole Foods to improve the lives of the animals in its supply chain over the course of 12 years. FAC ¶ 82. Yet, as the articles show, in 2020, Farm Forward resigned from this work and diverted those resources to investigating Whole Foods' supply chain, testing products, and developing a new public awareness campaign rebutting the misinformation in Whole Foods' ads. FAC ¶¶ 89-91; *see also Sabra,* 44 F.4th at 880. Due to Whole Foods' deception—and its refusal in 2017 to even explore an internal verification program which would have assuaged Farm Forward's concerns—Farm Forward had to expose Whole Foods' deception to avoid harm to the organization.

Because Farm forward has alleged that Whole Foods' actions frustrated its organizational mission and caused it to divert resources to counteract Whole Foods' public misrepresentations, Farm Forward has stated sufficient facts to establish Article III standing at the motion-to-dismiss stage of the litigation. *Sabra*, 44 F.4th at 800.

## II.  Plaintiffs Plead with Particularity.

To satisfy Rule 9(b), the allegations in the complaint must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985). Thus, claims sounding in fraud must allege "an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007). In other words, "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F. 3d 1097, 1106 (9th Cir. 2003) (citation omitted).

In *Clancy v. Bromley Tea Co*., 308 F.R.D. 564,  576 (N.D. Cal. 2013), Federal Rule 9(b) was satisfied when the plaintiff alleged the who (the company), what (nine discrete types of unlawful and deceptive claims by defendants on the labeling and packaging of its products and on defendants' website), when (since 2008 and throughout the class period), where (defendants' package labels and website), and how (reasonable reliance on defendants' statements made in violation of California consumer protection laws). Here, Plaintiffs do just that:

**Who**. When there are multiple defendants in a case, "Rule 9(b) does not allow a complaint to merely lump multiple defendants together but 'require[s] plaintiffs to differentiate their allegations when suing more than one defendant ... and inform each defendant separately of the allegations surrounding his alleged participation in the fraud.'" *Swartz*, 476 F.3d at 764–65 (citation omitted). Here, Plaintiffs allege that Defendant Whole Foods Market Services is responsible for the content and design of Whole Foods' website, including the advertising. FAC ¶ 24. Plaintiffs allege that Mrs. Gooch's and Whole Foods Market California own and operate the stores in their respective regions in California, FAC ¶¶ 26, 28, and subsequently are responsible for in-store

advertising.

**What**. Defendants' discrete claims that its Beef Products are ***never*** produced with antibiotics and that Defendants verify that standard. Plaintiffs identify Whole Foods' "No Antibiotics, Ever" promotional campaign and address this slogan fifty times in the FAC. FAC at *passim*. By using this phrase, Defendants unequivocally claim that Whole Foods' baseline standard is that the animals raised for Whole Foods' Beef Products are ***never*** administrated antibiotics and if they are, they are "separated from those bought by [its] meat department" and "[i]f it doesn't meet [their] standards, [they] won't sell it." FAC ¶¶ 44-45.

**When**. Plaintiffs "saw and relied upon Whole Foods' representations from approximately 2010 to June 2022, including every time [they] shopped at Whole Foods." FAC ¶¶ 10, 12, 17, 19.

**Where**. Plaintiffs allege that they saw and relied on Whole Foods' "No Antibiotics, Ever" slogans prior to purchasing the Beef Products. FAC ¶¶ 12, 19. Plaintiffs saw and relied on Whole Foods representations concerning its Beef Products in-store, on its website, in its listings on Amazon.com, and on the Products' packaging. *Id.*

**How**. Consumer Plaintiffs represent reasonable consumers. They were exposed to and relied on Defendants' assurances that its Beef Products are raised with "No Antibiotics, Ever," and that Defendants took the necessary steps to ensure the accuracy of this key promise.[6] *See, e.g.,* FAC ¶ 77. Yet, Plaintiffs allege that the cattle that become Whole Foods' Beef Products were given antibiotics, as evidenced by the residue testing,

---

[6] Under the reasonable consumer standard, a plaintiff must "show that 'members of the public are likely to be deceived.'" *Freeman v. Time*, 68 F.3d 285, 289 (9th Cir. 1995) (quoting *Bank of West v. Superior Court*, 2 Cal.4th 1254, 1267, 10 Cal.Rptr.2d 538, 833 P.2d 545 (1992)). California's consumer protection laws prohibit "not only advertising [that] is false, but also advertising which [,] although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public." *Leoni v. State Bar*, 39 Cal.3d 609, 626, 217 Cal.Rptr. 423, 704 P.2d 183 (1985)).

FAC ¶ 56 ("Whole Foods Beef Products contain … antibiotic residue"); that Whole Foods sells GAP certified Beef Products, FAC ¶¶ 54-55; that a significant percent of GAP certified Beef Products—one out of every five—tested positive for antibiotics as confirmed by a peer-reviewed study, FAC ¶¶ 62-63; and that Whole Foods was aware that its meat tested positive for antibiotics and chose to do nothing about it, FAC ¶¶ 66-67. Because of Defendants' statements, Plaintiffs were deceived into purchasing Beef Products from a supply chain that employs the very practices that Plaintiffs paid a premium to avoid. FAC ¶¶ 13, 20 ("Choosing antibiotic-free meat is important to [Plaintiffs] because [they do] not want to fund or support a farming model that uses pharmaceuticals, including antibiotics, as part of raising the animals in crowded, unsanitary conditions."). Plaintiffs would not have purchased the products, or paid what they did for them, had they known that Defendants did not take the necessary steps to ensure that all Defendants' Beef Products conformed to the "No Antibiotics, Ever" promise. FAC ¶¶ 14-15, 21-22, 77-78.

## III.  Plaintiffs Plead Breach of Warranty.

In California, to prove a claim based on breach of an express warranty, a plaintiff must show that the seller: "(1) made an affirmation of fact or promise or provided a description of its goods; (2) the promise or description formed part of the basis of the bargain; (3) the express warranty was breached; and (4) the breach caused injury to the plaintiff." *Blennis v. Hewlett Packard Co.*, No. C07-00333 JF, 2008 WL 818526, *2 (N.D. Cal. Mar. 25, 2008). "[P]roduct advertisements, brochures, or packaging can serve to create part of an express warranty." *Rosales v. FitFlop USA, LLC*, 882 F. Supp. 2d 1168, 1178 (S.D. Cal. 2012). This requires "a specific factual statement which could be established or disproved through discovery." *Annunziato v. eMachines, Inc.*, 402 F. Supp.2d 1133, 1140-41 (C.D. Cal. 2005).

Here, Plaintiffs pled the requisite elements: Whole Foods misrepresented that its Beef Products were "No Antibiotics, Ever" and that "If it doesn't meet our standards, we

won't sell it," and these representations induced consumers, like the Consumer Plaintiffs, to purchase the products. These allegations are testable, and their veracity can "be established or disproved through discovery." *Id*. at 1140-41.

## IV.    Plaintiffs Plead Unjust Enrichment.

When a plaintiff alleges unjust enrichment, a court may "construe the cause of action as a quasi-contract claim seeking restitution." *Rutherford Holdings, LLC v. Plaza Del Rey*, 223 Cal.App.4th 221, 166 Cal.Rptr.3d 864, 872 (2014). *Melchior v. New Line Productions, Inc.*, 106 Cal.App.4th 779, 793 (2003) (unjust enrichment is synonymous with restitution). There is no particular pleading necessary to invoke restitution. *Dinosaur Development, Inc. v. White,* 216 Cal.App.3d 1310, 1315 (1989). The principles of unjust enrichment and restitution are nearly identical and require the receipt of a benefit and unjust retention of the benefit at the expense of another. *Id*.

The First Amended Complaint alleges a right to restitution and the cause of action's label is immaterial. Plaintiffs have pled that Defendants have been unjustly conferred a benefit through "mistake, fraud, coercion, or request." *Astiana v. Hain Celestial Grp., Inc*., 783 F.3d 753, 762 (9th Cir. 2015) (internal citation omitted). Due to Whole Foods' misrepresentations, Defendants received substantial revenue and financial benefits at the expense of Plaintiffs and consumers. FAC ¶¶ 150-153.

### CONCLUSION

For the foregoing reasons, Plaintiffs request that this Court deny Defendants' Motion to Dismiss.

DATED: February 9, 2023                     Respectfully submitted,

                                            /s/ *Paige M. Tomaselli*
                                            Paige M. Tomaselli (SBN 237737)
                                            Dylan D. Grimes (SBN 302981)
                                            **GRIME LAW LLP**
                                            730 Arizona Avenue
                                            Santa Monica, CA 90401
                                            Telephone: (310) 747-5095
                                            ptomaselli@grimelaw.com
                                            dgrimes@grimelaw.com

                                            /s/ *Gretchen Elsner*
                                            Gretchen Elsner
                                            **ELSNER LAW & POLICY, LLC**
                                            314 South Guadalupe Street, Suite 123
                                            Santa Fe, NM 87501
                                            Telephone: (505) 303-0980
                                            gretchen@elsnerlaw.org

                                            *Attorneys for Plaintiffs*

## CERTIFCATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiffs, certifies that this Memorandum of Points and Authorities contains 6998 words, as reported by the word count function of the word-processing system used to prepare this memorandum, which complies with the word limit of L.R. 11- 6.1.

Dated: February 9, 2023                    Respectfully submitted,

                                           /s/ Paige M. Tomaselli
                                           Paige M. Tomaselli (Bar ID CA 237737)
                                           GRIME LAW, LLP
                                           730 Arizona Avenue
                                           Santa Monica, CA 90401
                                           ptomaselli@grimelaw.com
                                           Telephone: (310) 747-5095

1

2

## CERTIFICATE OF SERVICE

3          I hereby certify that on February 9, 2023, I electronically filed the foregoing

4   document using the Court's CM/ECF system, which will send notification of the filing of

5   this document to the e-mail addresses registered in the CM/ECF system, as denoted on the

6   Electronic Mail Service List.

7

8    Dated: February 9, 2023                Respectfully submitted,

9                                            /s/ Paige M. Tomaselli

10                                           Paige M. Tomaselli (Bar ID CA 237737)
                                             GRIME LAW, LLP
11                                           730 Arizona Avenue
                                             Santa Monica, CA 90401
12                                           ptomaselli@grimelaw.com
                                             Telephone: (310) 747-5095
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27