1 | BRIAN R. BLACKMAN (SBN 196996)
bblackman@blaxterlaw.com
2 | J.T. WELLS BLAXTER (SBN 190222)
wblaxter@blaxterlaw.com
3 | DAVID P. ADAMS (SBN 312003)
dadams@blaxterlaw.com
4 | BLAXTER | BLACKMAN LLP
601 Montgomery Street, Suite 1110
5 | San Francisco, California 94111
Telephone: (415) 500-7700
6 |
Attorneys for defendants WHOLE
7 | FOODS MARKET SERVICES, INC.;
WHOLE FOODS MARKET CALIFORNIA,
8 | INC.; and MRS. GOOCH'S NATURAL FOOD
MARKETS, INC.
9 |

10 |                UNITED STATES DISTRICT COURT

11 |               CENTRAL DISTRICT OF CALIFORNIA

12 | SARA SAFARI, PEYMON                    Case No. 8:22-cv-01562-JWH (KESx)
KHAGHANI, on behalf of themselves
13 | and all others similarly situated, and    **DEFENDANTS' REPLY IN**
FARM FORWARD, on behalf of the         **SUPPORT OF ITS MOTION TO**
14 | general public,                          **DISMISS PLAINTIFFS' FIRST**
                                           **AMENDED COMPLAINT**
15 |        Plaintiffs,
                                           Date:     March 10, 2023
16 |    v.                                  Time:     9:00 AM
                                           Place:    411 West Fourth Street
17 | WHOLE FOODS MARKET                               Courtroom 9D, 9th Floor
SERVICES, INC., a Delaware                         Santa Ana, California 92701
18 | corporation, WHOLE FOODS
MARKET CALIFORNIA, INC., a             The Honorable John W. Holcomb
19 | California corporation, MRS. GOOCH'S
NATURAL FOOD MARKETS, INC.,            Complaint Filed:  August 23, 2022
20 | doing business as Whole Foods Market,    Trial Date:       Not Set
a California Corporation,
21 |
        Defendants.
22 |

23 |

24 |

25 |

26 |

27 |

28 |

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ................................................................................... 1

II.    ARGUMENT ......................................................................................... 2

    A.    The Individual Plaintiffs Failed to Allege a Particularized or Concrete Injury Sufficient to Establish their Article III Standing. ......... 2

    B.    The Individual Plaintiffs Have Not Alleged an Economic Injury Caused by Defendants' Alleged Advertising ......................................... 6

    C.    Farm Forward Fails to Adequately Allege It Diverted Resources Versus Merely Going About Business as Usual. ................................... 6

    D.    Plaintiffs' Fraud Claims Fail for Lack of Particularity. ....................... 10

    E.    Plaintiffs' Express Warranty and Unjust Enrichment Claims Fail. ....... 11

        1.    Plaintiffs' Express Warranty Claims Fail. ................................. 11

        2.    Plaintiffs' Unjust Enrichment Claims Fail. ............................... 11

III.    CONCLUSION .................................................................................... 12

# TABLE OF AUTHORITIES

## FEDERAL CASES

Page

*Barrett v. Optimum Nutrition*
   2022 WL 2035959 (C.D. Cal. Jan. 12, 2022) ........................................ 12

*Choi v. Kimberly-Clark Worldwide, Inc.*
   2019 WL 4894120 (C.D. Cal. Aug. 28, 2019) ...................................... 12

*Fair Housing Council v. Roomate.com LLC*
   66 F.3d 1216 (9th Cir. 2012) .................................................................. 8

*Friends of the Earth v. Sanderson Farms, Inc.*
   992 F.3d 939 (9th Cir. 2021) ............................................................... 7, 9

*Hodsdon v. Mars, Inc.*
   162 F. Supp. 3d 1016 (N.D. Cal. 2016) ................................................ 4

*In re Arris Cable Modem Consumer Litig.*
   2018 WL 288085 (N.D. Cal. Jan. 4, 2018) .......................................... 11

*In re Defense of Animals v. Sanderson Farms, Inc.*
   2021 WL 42443391 (N.D. Cal. Sept. 17 2021) ..................................... 7

*Krause-Pettai v. Unilever United States, Inc.*
   2021 WL 1597931 (S.D. Cal., Apr. 23, 2021) ..................................... 12

*McCoy v. Nestle USA, Inc.*
   173 F. Supp. 3d 954 (N.D. Cal. 2016) .................................................. 4

*McKenzie v. Fed. Exp. Corp.*
   765 F. Supp. 2d 1222 (C.D. Cal. 2011) ................................................ 8

*Odom v. Microsoft Corp.*
   486 F.3d 541 (9th Cir. 2007) ............................................................... 10

*Pels v. Keurig Dr. Pepper, Inc.*
   2019 WL 5813422 (N.D. Cal. Nov. 7, 2019) ....................................... 5

*Rice-Sherman v. Big Heart Pet Brands, Inc.*
   2020 WL 1245130 (N.D. Cal. Mar. 16, 2020) ...................................... 5

*Sabra v. Maricopa County Community College District*
  44 F.4th 867 (9th Cir. 2022) ............................................................ 7, 8

*Vess v. Ciba-Geigy Corp USA*
  317 F.3d 1097 (9th Cir. 2003) ....................................................... 10, 11

*Wallace v. ConAgra Foods, Inc.*
  747 F.3d 1025 (8th Cir. 2014) ............................................................. 5

### **CALIFORNIA STATE CASES**

Page

*California Medical Assn. v. Aetna Health of California, Inc.*
  63 Cal.App.5th 660 (2021) .................................................................. 6

*Durell v. Sharp Healthcare*
  183 Cal. App. 4th 1350 (2010) ............................................................ 6

*Kwikset Corp. v. Sup. Ct.*
  51 Cal. 4th 310 (2011) .................................................................... 6, 8

*McBride v. Boughten*
  123 Cal. App. 4th 379 (2004) ............................................................ 12

*Melchior v. New Line Products, Inc.*
  106 Cal. App. 4th 779 (2003) ............................................................ 12

### **STATUTES**

Page

Cal. Bus. & Prof. Code § 17204 ............................................................ 6

Cal. Bus. & Prof. Code § 17535 ............................................................ 6

### **RULES**

Page

Fed. R. Civ. P. 9(b) ........................................................................ 10

# I.    INTRODUCTION

At the foundation of Plaintiffs' claims in this action is their contention that antibiotics are used in raising the cattle that provide the beef products sold at Whole Foods Market stores in California and therefore were likely present in the beef products Plaintiffs purchased.[1]  To establish a factual basis for this contention, Plaintiffs allege that Farm Forward tested an undisclosed number of undisclosed beef products purchased from Whole Foods Market stores in several states using an undisclosed testing method and detected an undisclosed amount of monensin sodium residue in a *single* unspecified product.  *See* ECF No. 35, ¶¶2 & 59-60.  Based on this one incident, Plaintiffs claim they were injured by Defendants' antibiotic marketing statements because they would not have purchased the beef products from Whole Foods Market if they had known about the supposed antibiotic use.  These allegations, however, do not demonstrate an injury in fact or economic loss resulting from Plaintiffs purchases.

Plaintiffs do **not** allege that the beef products they purchased contained antibiotics nor that all beef products sold by Whole Foods Market stores contain antibiotics.  Conceding this point, Plaintiffs' Opposition charts a new course.  Plaintiffs argue that their allegations are sufficient to establish their Article III and statutory standing (i.e., injury in fact and economic loss) because the allegation show that antibiotics are likely used in the beef supply chain.  *See* ECF No. 48 at 1:4-5, 6:2-5, 8:13-16, 9:24-27.  This argument, however, lacks particularity and factual support.  Plaintiffs allegations speak in general terms about the United States beef supply chain and GAP testing.  There is nothing connecting Plaintiffs' "supply chain" allegations to Whole Foods Market's supply chain.  Nowhere do Plaintiffs allege that FoodID or Consumer Reports tested meat products from the Whole Foods Market's supply chain.  *See* ECF No. 35, ¶¶62-65.  Rather, their allegations

---

[1] Defendants' Reply Brief uses the same shorthand references defined in its moving papers.

discuss testing of the "U.S. 'raised without antibiotics' market" and antibiotic resistant chicken.  *Id.*  These allegations do not establish a pattern or practice of antibiotic use in Whole Foods Market's supply chain and fail to establish the Individual Plaintiffs' standing.  Similarly, the organizational plaintiff, Farm Forward, fails to show how Defendants' alleged misrepresentations forced it to divert its resources.  Because Plaintiffs lack standing, the case should be dismissed under Rule 12(b)(1).

Additionally, Plaintiffs' claims, which are all based in fraud and rely on the same unified course of fraudulent conduct, are not alleged with the particularity required by Rule 9(b).  Plaintiffs fail to allege facts demonstrating *why* Defendants' representations are false, and *how* they were damaged.  Notably, Plaintiffs fail to allege any details about what beef products they purchased or the alleged testing they undertook.  Further, their allegations fail to tie the beef products Plaintiffs purchased to the antibiotic testing in any meaningful way.  Without these essential facts, Plaintiffs' claims fail to meet Rule 9(b)'s particularity requirements and should be dismissed.  Finally, Plaintiffs' claim for unjust enrichment is not a stand-alone claim under California law and should be dismissed.

## II.    ARGUMENT

**A.    The Individual Plaintiffs Failed to Allege a Particularized or Concrete Injury Sufficient to Establish their Article III Standing.**

The Individual Plaintiffs claim they have alleged an injury in fact sufficient to establish their standing because had they "known that cattle used in Whole Foods Beef Products were raised with antibiotics, [they] would not have purchased the Products or would not have paid what [they] did for them." *See* ECF No. 35, ¶¶7, 15, 22; *see also* ECF No. 48 at 7:21-8:2.  As detailed in Defendants' moving papers, this alleged "injury" requires facts plausibly demonstrating, or from which the Court may reasonably infer, that the beef products the Individual Plaintiffs purchased

contained antibiotics.  *See* ECF No. 46 at 7:21-11:10.  To establish this fact, the Individual Plaintiffs rely on a single incident where their testing allegedly detected antibiotics in a single, unidentified beef product sold by Whole Foods Market.  *See* ECF No. 35, ¶¶59-60.  Neither Plaintiffs' FAC nor their Opposition, however, link the unspecified beef product to the Individual Plaintiffs' purchases, e.g., by product name, product category, product brand, store or any other means.  Thus, Plaintiffs' allegations do not establish they were injured by purchasing beef products from Whole Foods Market because there are no facts tending to show that antibiotics were used in raising the cattle the provided the beef products Plaintiffs purchased.

Plaintiffs, however, claim they do not need to link their purchases to this single positive test result because their testing allegations demonstrate the presence of antibiotics in Whole Foods Market's beef supply chain.  *See* EFC No. 48 at 6:2-5, 8:13-17.  Not true.  Plaintiff's supply chain allegations rely on testing performed by FoodID and Consumer Reports.  *See,* ECF No. 35, ¶62-64.  None of these testing allegations are specific to Whole Foods Market or its beef supply chain.  *Id.* FoodID tested beef samples from a single, unidentified slaughter facility.  *Id.*, ¶62. Plaintiff has not alleged any facts showing that the slaughter facility, or the feed yards or producers that supply that facility, are part of Whole Foods Market's beef supply chain.  *Id.*  Consumer Reports, for its part, did not test for the presence of antibiotics or antibiotic residue in beef products or more importantly Whole Foods Market beef products.  *Id.*, ¶64.  Consumer Reports tested beef, pork, chicken and turkey for bacteria, e.g., salmonella and E. Coli.  *Id.*  Thus, neither of these testing allegations plausibly establish the presence of antibiotic use in Whole Foods Market's beef supply chain.

Plaintiffs also heavily rely on a line of cases concerning labor practices in the supply chain of chocolate (the "Chocolate Labor Cases") to show they have sufficiently alleged standing.  Specifically, the Individual Plaintiffs contend that

their "injury is conferred by purchasing a Beef Product that is devalued by the practices in Defendants' supply chain regardless of whether *any* piece of meat they purchased test positive for antibiotics." ECF No. 48 at 8:14-15. Plaintiffs' reliance on the Chocolate Labor Cases is misplaced.

First, in the Chocolate Labor Cases, it was undisputed that some of the defendant chocolate suppliers' products were made from cocoa harvested using child and slave labor. *McCoy v. Nestle USA, Inc.* 173 F. Supp. 3d 954, 957 (N.D. Cal. 2016), *aff'd sub nom. McCoy v. Nestle USA, Inc*. 730 Fed. Appx. 462 (9th Cir. 2018) ("Nestlé acknowledges child and slave labor in its Ivorian supply chain . . ."); *Hodsdon v. Mars, Inc.* 162 F. Supp. 3d 1016, 1020 (N.D. Cal. 2016) ("Mars and many other chocolate manufacturers have acknowledged that their products may contain cocoa harvested by children."), *aff'd* 891 F.3d 857 (9th Cir. 2018). In contrast, Plaintiffs have not alleged any fact to establish the use of antibiotics in Whole Foods Market's beef supply chain.

Second, in the Chocolate Labor Cases, the plaintiffs alleged that the defendant chocolate suppliers used cocoa sourced from the Ivory Coast "much" or "most of the time." *See McCoy*, 173 F. Supp. 3d at 957 ("Nestlé sources much of its chocolate from Côte d'Ivoire . . ."). Here, Plaintiffs do not allege that all, most, or even a significant portion of the beef products sold by Whole Foods Market stores contain antibiotics or came from slaughter facilities or suppliers with known or demonstrated antibiotic use. Indeed, Plaintiffs can only cite to a single incident where their testing detected an undisclosed amount of monensin sodium residue in a single unspecified product. *See* ECF No. 35, ¶¶59-60.

Third, in the Chocolate Labor Cases, the defendant suppliers acknowledged that there was no way to determine if a specific chocolate product purchased by the plaintiffs contained cocoa sourced from the Ivory Coast and harvested using child and slave labor. *See McCoy,* 173 F. Supp. 3d at 962 ("The parties agree that Nestlé

currently cannot trace the cocoa used in a particular Nestlé chocolate product to a specific plantation, and there is thus no way to know what labor practices were used in its production.")  Unlike the plaintiffs in the Chocolate Labor Cases, Plaintiffs here could test and determine if the beef products they purchased contain antibiotics. These distinctions make the conclusions of the Chocolate Labor Cases inapplicable to the facts of the present case.  There are simply no facts of rampant use of antibiotics in Whole Foods Market's beef supply chain.

Because Plaintiffs do not allege that all or even most beef products sold by Whole Foods Market stores contain antibiotics, their claims are similar to the plaintiffs' claims in *Wallace v. ConAgra Foods, Inc.*, 747 F.3d 1025 (8th Cir. 2014), and *Pels v. Keurig Dr. Pepper, Inc.*, No. 19-cv-03052-SI, 2019 WL 5813422, at *1 (N.D. Cal. Nov. 7, 2019).  In both cases, the court found that the plaintiffs' injuries were too speculative for Article III standing.  In *Wallace*, the plaintiff only alleged that some of defendant's hot dogs were not kosher, while in *Pels,* the plaintiffs alleged that only some the products contained arsenic.

Plaintiffs respond by arguing the Court should not be persuaded by the *Wallace* decision and should instead rely on *Rice-Sherman v. Big Heart Pet Brands, Inc.,* No. 19-cv-03613-WHO, 2020 WL 1245130, at *6 (N.D. Cal. Mar. 16, 2020) to find their standing allegations sufficient.  *See* ECF No. 48 at 9:1-13.  In *Rice-Sherman*, the court found that plaintiffs had standing because "[a] fair reading of their FAC shows that they allege that *all* Nature's Food Recipe products" contain corn and soy and are thus falsely advertised.  *Rice-Sherman,* 2020 WL 1245130, at *7 (emphasis added).  The court distinguished *Wallace* and *Pels*, reasoning that plaintiffs in those cases only alleged that *some* products were not kosher or *some* products contained arsenic.  That distinction, however, is precisely what Plaintiffs have alleged in their FAC.  Plaintiffs only allege that a single unspecified beef product sold by a Whole Foods Market store has tested positive for antibiotics.  This

is not enough to establish wide spread and continuous use of antibiotics in Whole Foods Market's beef products or its beef supply chain.  Thus, Plaintiffs' allegations do not establish a particularized and concrete injury resulting from their purchase of beef products from Whole Foods Market.

**B.     The Individual Plaintiffs Have Not Alleged an Economic Injury Caused by Defendants' Alleged Advertising.**

In addition to the Article III standing requirements, Plaintiffs' UCL, FAL and CLRA claims require they have "suffered injury in fact and . . . lost money or property as a result of the unfair competition."  Cal. Bus. & Prof. Code §§ 17204 & 17535; *Kwikset Corp. v. Sup. Ct.*, 51 Cal. 4th 310, 321-322 (2011); *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1367 (2010).  Plaintiffs have not satisfied these statutory standing requirements for the same reasons articulated in Section II.A above.  They have not alleged facts plausibly demonstrating that they purchased beef products that came from cattle raised with antibiotics, nor sufficient facts from which the Court might infer that the beef products in Whole Foods Market's supply chain or all beef products sold at Whole Foods Market are raised using antibiotics.

**C.     Farm Forward Fails to Adequately Allege It Diverted Resources Versus Merely Going About Business as Usual.**

Plaintiff Farm Forward contends that it has adequately alleged economic injury, an element of standing under the UCL and FAL, under a "resource drain" theory.[2]  The parties agree that Farm Forward must establish two criteria under this theory: (1) that Defendants' advertising frustrated its organizational mission; and (2) the advertising forced Farm Forward to divert resources to avoid real harm.  ECF No. 48 at 13:9-12.  Only the second element: diversion of resources is at issue here.

---

[2] Whether this is even a sufficient theory to establish economic injury under the UCL is currently an issue pending on review with the California Supreme Court in *California Medical Assn. v. Aetna Health of California, Inc.,* 63 Cal.App.5th 660, 667 (2021), review granted & nonpub. den. (No. S269212).

Plaintiffs do not dispute that Farm Forward's diversion of resources cannot simply constitute a continuation of its previous advocacy efforts to qualify as economic injury under the UCL and FAL.  Plaintiffs also make no attempt to distinguish *Friends of the Earth v. Sanderson Farms, Inc.,* 992 F.3d 939, 942 (9th Cir. 2021) nor *In re Defense of Animals v. Sanderson Farms, Inc.,* No. 20-CV-05293-RS, 2021 WL 42443391 (N.D. Cal. Sept. 17 2021), analogous cases finding that advocacy group plaintiffs failed to show a diversion of resources under the UCL when the groups' activities investigating the defendants were a continuation of their ongoing work related to protection of animal health.  *See Friends of the Earth,* 992 F.3d at 943-944; *In re Defense of Animals,* 2021 WL 42443391, at **5-6.

Instead, Plaintiffs cite to cases that do not analyze standing under the UCL or the FAL, but rather, discuss the scope of the federal requirement that organizational plaintiffs suffer an "injury-in-fact" to establish standing under Article III.  For instance, Plaintiffs rely on *Sabra v. Maricopa County Community College District,* 44 F.4th 867 (9th Cir. 2022), an Arizona case that analyzes whether an organizational plaintiff has Article III standing in a 42 U.S.C. section 1983 claim alleging that a community college district violated the Establishment and Free Exercise Clauses of the U.S. Constitution.  *Sabra,* 44 F.4th at 877.  *Sabra* does not involve a UCL or FAL claim.  It also does not analyze whether the plaintiff's purported diversion of resources was a continuation of its normal business, i.e., the issue presented here.  Judge Vandyke's concurrence in *Sabra* did analyze this issue in the context of Article III standing and found:

> The only resources CAIR-AZ diverted are those to further its stated purpose of protecting the civil rights of American Muslims…An activity that falls exactly in line with an organization's stated purpose seriously undermines any sense of injury, and therefore runs afoul of the Supreme Court's threshold requirement that an injury be 'concrete and particularized and 'actual or imminent.'

*Id.* at 896.

Plaintiffs also rely on *Fair Housing Council v. Roomate.com LLC,* 66 F.3d 1216, 1219 (9th Cir. 2012), which addressed an organization's standing under Article III to seek relief under the California Fair Employment and Housing Act. Again, this case does not involve a UCL or FAL claim.  Notably, Judge Ikuta in his concurrence and dissent finds that the plaintiff did not establish standing under Article III because the alleged "diversion" was merely a voluntary redirection of more resources to areas where the plaintiff could make a bigger impact advancing its mission.  *Fair Housing Council,* 66 F.3d at 1226-1227.  According to Judge Ikuta, "[t]his represented adaptive and savvy organizational management, not injury." *Id.* at 1227.

In relying on these authorities, Plaintiffs incorrectly assume that Article III standing is identical to standing under the UCL.  To the contrary, as the California Supreme Court recognized in *Kwikset*, Proposition 64 made UCL and FAL standing requirements far more stringent than the federal standing requirements.  "The Proposition 64 requirement that an injury be economic renders standing under section 17204 substantially narrower than federal standing under Article III, section 2 of the United States Constitution, which may be predicated on a broader range of injuries.'"  *Kwikset,* 51 Cal.4th at p. 324; accord, *McKenzie v. Fed. Exp. Corp.,* 765 F. Supp. 2d 1222, 1236 (C.D. Cal. 2011) ("While McKenzie's intangible injuries are sufficient for Article III standing, they fail to satisfy the more stringent standing requirement under Proposition 64").  None of Plaintiffs' authorities are helpful in analyzing the issue presented here because they do not consider the stringent requirements of UCL standing after the Proposition 64 amendment became effective in 2004.

Under the UCL and FAL, any alleged use of resources does not suffice to establish standing under a "resource drain" theory of economic injury.  Instead,

Farm Forward's alleged diversion of resources must be away from its core mission to constitute harm. *See Friends of the Earth,* 992 F.3d at pp. 943-944. This more stringent standard for standing under the UCL is more in-line with the analysis in Judge Vandyke's concurrence in *Sabra* and Judge Ikuta's concurrence and dissent in *Fair Housing Council* than the majority opinion in those cases.

Here, although the FAC alleges that its campaign to expose Defendants and other companies use of antibiotics "significantly departed" from its core mission (FAC ¶23), Farm Forward's articles, cited to and incorporated into the FAC, show the opposite.[3]  As those articles reveal, Farm Forward believes that evidence of antibiotics in meat shows that such meat comes from factory farms. Thus, Farm Forward's use of resources on its campaign "to expose" Defendants did not cause Farm Forward harm, but rather was exactly in-line with Farm Forward's stated purpose of ending factory farming. Plaintiffs' contention that Farm Forward suffered harm because "it was previously promoting Defendants' products" confuses the relevant issue. *See* ECF No. 48 at 17:7-11. While that contention may show reliance (a different element of standing) or frustration of mission, the harm relevant to the second criteria (i.e., diversion of resources) under a "resource drain" theory is the harm purportedly suffered by a plaintiff in diverting resources.

Plaintiffs dispute the import of these articles, claiming they show that Farm Forward allocated its resources differently by diverting resources from helping Defendants to "improve the lives of the animals in its supply chain," to investigating and initiating a campaign to rebut Defendants' alleged misrepresentations about antibiotic use. *See* ECF No. 48 at 17:12-22; *See also* ECF No. 49 at 5:7-10. Plaintiffs' argument lacks merit. This is not a re-allocation of resources that resulted

---

[3] Although Plaintiffs opposed Defendants' request for judicial notice of the two Farm Forward articles cited and incorporated into the FAC, Plaintiffs "do not oppose this Court taking judicial notice of the existence of Farm Forward's articles." *See* ECF No. 49 at 5:3-4.

in an economic harm to Farm Forward, as required for standing under the UCL. Farm Forward would have stopped working with Defendants irrespective of whether it used resources in its campaign against Defendants because it believed Defendants sold factory farmed meat.  Farm Forward did not suffer any harm by ceasing its work with Defendants.  Indeed, if as alleged in the FAC, Farm Forward believed Defendants sold factory farmed meat, then stopping that collaboration could only have benefited it.  It is clear from these articles that Farm Forward did not suffer any economic harm by dedicating resources to a campaign to investigate and expose the alleged use of antibiotics in meat sold by Defendants because such efforts were a continuation of its ongoing work to end factory farming.  The FAC therefore fails to adequately allege that Farm Forward has standing under the UCL and FAL.

## D.   Plaintiffs' Fraud Claims Fail for Lack of Particularity.

Under Rule 9(b) a plaintiff alleging fraud must "state with particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b).  This heightened standard requires a pleader state the time, place and specific content of the false representations.  *See Odom v. Microsoft Corp.*, 486 F.3d 541, 553 (9th Cir. 2007).  The allegations "must set forth more than neutral facts necessary to identify the transaction.  The plaintiff must set forth what is false or misleading about the statement, and why it is false."  *Vess v. Ciba-Geigy Corp USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (emphasis added.).

In their moving papers, Defendants show that Plaintiffs failed to allege the facts necessary to identify the transaction and why Defendants' statements are supposedly false.  In particular, Plaintiffs failed to state with any particularity the facts to support their conclusory allegation that Whole Foods Market's beef products were raised with antibiotics or its supply chain tainted by antibiotic use.  Plaintiffs do not provide any details concerning their alleged testing, including which beef products were tested and in which beef product Plaintiffs purportedly

detected antibiotics.  Plaintiffs do not address this fatal omission in their Opposition.
Nor do Plaintiff allege how they relied upon Whole Foods Market's statements—
that is, what products did Plaintiffs purchase in reliance on Whole Foods Market's
statements?  Plaintiffs failed to address these essential questions.  These details are
necessary for Defendants to defend themselves and are required by Rule 9(b).

**E.      Plaintiffs' Express Warranty and Unjust Enrichment Claims Fail.**

Plaintiffs also failed to adequately plead claims for breach of express
warranty and unjust enrichment.  As an initial matter, because Plaintiffs allege a
"unified course of fraudulent conduct and rely entirely on that course of conduct as
the basis of" all of their claims, these claims are subject to—and fail to meet—the
same heightened pleading requirements described in Section II.D above, and should
be dismissed for that reason alone.  *See Vess v. Ciba-Geigy Corp. USA*, *supra*, 317
F.3d at 1103-04; *see also In re Arris Cable Modem Consumer Litig.*, No. 17-cv-
01834-LHK, 2018 WL 288085, at *10 (N.D. Cal. Jan. 4, 2018).  Regardless, these
claims fail at the pleading stage for independent reasons.

**1.      Plaintiffs' Express Warranty Claims Fail.**

The Court should dismiss Plaintiffs' express warranty claim because the
Individual Plaintiffs do not allege sufficient facts demonstrating they purchased beef
products raised using antibiotics.  As detailed in Sections II.A and II.D above, the
Individual Plaintiffs do not allege facts demonstrating they purchased the same beef
product, or even the same category of beef product (e.g., ground beef, butcher cut
beef products, meatballs, hot dogs, etc.), that allegedly tested positive for antibiotic
residue.  *See* ECF No. 35, ¶¶12-22.  Thus, they have not alleged the facts necessary
to stating a breach of the asserted warranty.

**2.      Plaintiffs' Unjust Enrichment Claims Fail.**

Plaintiffs' claim for unjust enrichment should be dismissed because there is
no stand-alone claim under California law.  *See McBride v. Boughten*, 123 Cal. App.

4th 379, 387 (2004), quoting *Melchior v. New Line Products, Inc.*, 106 Cal. App. 4th 779, 793 (2003) (stating unjust enrichment is a "general principle underlying various legal doctrines and remedies;" it is not an independent cause of action); *Krause-Pettai v. Unilever United States, Inc*., No. 20-cv-1672-DMS, 2021 WL 1597931, at *7 (S.D. Cal., Apr. 23, 2021); *Barrett v. Optimum Nutrition,* No. CV21-4398-DMG (SKX), 2022 WL 2035959 (C.D. Cal. Jan. 12, 2022). Further, because Plaintiffs' unjust enrichment claim is predicated on the same facts and allegations as their other claims, which fail for the reasons detailed above, the Court should not construe the claim as a quasi-contract claim. *Choi v. Kimberly-Clark Worldwide, Inc.*, No. 19-cv-0468-DOC, 2019 WL 4894120, *13 (C.D. Cal. Aug. 28, 2019) ("there must be an underlying claim that a defendant has been unjustly conferred a benefit through mistake, fraud, coercion, or request.").

## III.   CONCLUSION

At the initial scheduling conference, this Court ordered the parties to meet and confer over Defendants' pleading challenges in order to resolve as much as possible by voluntary amendment before proceeding, if necessary, with this motion.  The parties met and conferred and exchange several communications on these issues. Plaintiffs, however, chose to stand on their current allegations.  The clear implication being that they do not have any further facts to offer that might resolve these issues.  Because Plaintiffs have already had multiple opportunities to amend and have not meaningfully addressed the defects identified in Defendants' two motions to dismiss, the Court should dismiss Plaintiffs' FAC with prejudice.

Dated:  February 23, 2023

BLAXTER | BLACKMAN LLP

By:  _____/s/ *Brian R. Blackman*_____
BRIAN R. BLACKMAN
Attorneys For Defendants

-12-      Case No. 8:22-CV-01562-JWH (KESx)
REPLY ISO MTN. TO DISMISS FAC