1    BRIAN R. BLACKMAN (SBN 196996)
     bblackman@blaxterlaw.com
2    J.T. WELLS BLAXTER (SBN 190222)
     wblaxter@blaxterlaw.com
3    ERIN W. KEEFE (SBN 240639)
     ekeefe@blaxterlaw.com
4    DAVID P. ADAMS (SBN 312003)
     dadams@blaxterlaw.com
5    BLAXTER | BLACKMAN LLP
     601 Montgomery Street, Suite 1110
6    San Francisco, California 94111
     Telephone: (415) 500-7700
7
     Attorneys for defendants WHOLE
8    FOODS MARKET SERVICES, INC.;
     WHOLE FOODS MARKET CALIFORNIA,
9    INC.; and MRS. GOOCH'S NATURAL FOOD
     MARKETS, INC.
10

11              UNITED STATES DISTRICT COURT

12            CENTRAL DISTRICT OF CALIFORNIA

13   SARA SAFARI, PEYMON              Case No. 8:22-cv-01562-JWH (KESx)
     KHAGHANI, on behalf of themselves
14   and all others similarly situated, and   **DEFENDANTS' SUPPLEMENTAL**
     FARM FORWARD, on behalf of the   **BRIEF IN SUPPORT OF ITS**
15   general public,                  **MOTION TO DISMISS**
                                      **PLAINTIFFS' FIRST AMENDED**
16              Plaintiffs,           **COMPLAINT**

17        v.                          Date:    April 7, 2023
                                      Time:    9:00 AM
18   WHOLE FOODS MARKET               Place:   411 West Fourth Street
     SERVICES, INC., a Delaware                Courtroom 9D, 9th Floor
19   corporation, WHOLE FOODS                  Santa Ana, California 92701
     MARKET CALIFORNIA, INC., a
20   California corporation, MRS.     The Honorable John W. Holcomb
     GOOCH'S NATURAL FOOD
21   MARKETS, INC., doing business as Complaint Filed:  August 23, 2022
     Whole Foods Market, a California Trial Date:        Not Set
22   Corporation,

23              Defendants.

24

25

26

27

28

# **TABLE OF CONTENTS**

Page

I.    INTRODUCTION ................................................................................................ 1

II.   ARGUMENT .................................................................................................... 2

    A.    Legal Standard: *TransUnion* .................................................................. 2

    B.    Question 1: This Action Is Not the Type of Case that History and Tradition Show Article III Empowers Federal Courts to Consider as Required by *TransUnion* ............................................................ 4

        1.    Individual Plaintiffs' Fear of "Purchasing from a Supply Chain Using Antibiotics" Is Not a Concrete Harm Traditionally Recognized as a Basis for Article III Standing ...... 5

        2.    The Individual Plaintiffs Failed to Plead Sufficient Facts to Show Monetary Harm ............................................................ 8

        3.    Farm Forward's Resource Drain Theory of Injury Is Not a Concrete Harm Traditionally Recognized as a Basis for Article III Standing ............................................................ 10

    C.    Question 2: Following *TransUnion*, "Organizational Standing" Is No Longer Constitutionally Viable under Article III ............................ 13

III.  CONCLUSION .............................................................................................. 16

# TABLE OF AUTHORITIES

## FEDERAL CASES

Page

*American Legion v. American Humanist Assn.*
588 U.S. ___, 139 S.Ct. 2067 (2019)......................................................... 14

*Blunt v. Lower Merion Sch. Dist.*
767 F.3d 247 (3rd Cir. 2014) .................................................................. 15

*Bowen v. Energizer Holdings, Inc.*
2023 WL 1786731 (C.D. Cal. Jan. 5, 2023) ........................................... 6

*Clapper v. Amnesty Int'l*
568 U.S. 398, 133 S.Ct. 1138 (2013)..................................................... 4, 7

*Fair Housing Council of San Fernando Valley v. Roommate, LLC*
666 F.3d 1216 (9th Cir. 2012) ............................................................... 13

*Fair Housing Council v. Roomate.com LLC*
66 F.3d 1216 (9th Cir. 2012) ................................................................. 13

*Gadelhak v. AT&T Services, Inc.*
950 F.3d 458 (7th Cir. 2020) ................................................................. 11

*Havens Realty Corp. v. Coleman*
455 U.S. 363, 102 S.Ct. 114 (1982)................................................. passim

*Hein v. Freedom From Religion Foundation, Inc.*
551 U.S. 587, 127 S.Ct. 2553 (2007)....................................................... 8

*Henriquez v. ALDI*
2023 WL 2559200 (C.D. Cal. Feb. 7, 2023) ........................................... 9

*Lance v. Coffman*
549 U.S. 437,  112 S.Ct. 2130 (2007)................................................. 11, 12

*McKenzie v. Fed. Exp. Corp.*
765 F.Supp.2d 1222 (C.D. Cal. 2011) .................................................... 10

*Perry v. Newsom*
    18 F.4th 622 (9th Cir. 2021) ............................................................... 5, 12

*Sabra v. Maricopa County Community College District*
    44 F.4th 867 (9th Cir. 2022) .................................................................. 13

*Sierra Club v. Morton*
    405 U.S. 727 (1970) ................................................................................. 8

*Smith v. Pac. Props and Dev. Corp.*
    358 F.3d 1097 (9th Cir. 2004) ............................................................... 14

*Spokeo Inc. v. Robins*
    578 U.S. 330, 136 S.Ct. 1540 (2016) ....................................... 2, 3, 12, 16

*TransUnion LLC v. Ramirez*
    141 S.Ct. 2190 (2021) .................................................................... passim

*Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*
    454 U.S. 464, 102 S.Ct. 752 (1982) .................................................. 8, 15

## **TREATISES**

Page

Restatement (Third) of Torts § 9 ................................................................. 10

# I.    INTRODUCTION

Pending before this Court is Defendants' Motion to Dismiss Plaintiff's FAC.[1] This Court requested supplemental briefing on two questions concerning Article III standing as defined by the Supreme Court in *TransUnion LLC v. Ramirez,* 141 S.Ct. 2190 (2021).  First, the Court asked the parties to address "[a]s discussed in *TransUnion*, how [] Plaintiffs' instant action fit[s] within the 'types of cases' that 'history and tradition' show 'Article III empowers federal courts to consider.'" Simply stated: It does not.

The Individual Plaintiffs allege two types of harm in this action arising from Defendants' purported misrepresentation that antibiotics are not used in raising the cattle that provide the beef products sold at Whole Foods Market stores.  First, the Individual Plaintiffs claim they suffer from a fear of purchasing from a supply chain that uses antibiotics to raise cattle.  As *TransUnion* makes clear the Individual Plaintiffs' claim of a risk of future injury because they may potentially purchase beef from cattle raised with antibiotics has no historical or common-law equivalent and is too speculative to support Article III standing.  Second, the Individual Plaintiffs allege they overpaid for an unidentified beef product.  While overpayment for a particular product can qualify as a concrete monetary loss, here, the Individual Plaintiffs fail to plead sufficient facts from which the Court might plausibly infer that either of them suffered or might have suffered such monetary harm.  With respect to the organizational plaintiff Farm Forward, its purported diversion of resources also is not a concrete harm traditionally recognized as providing a basis for Article III standing.

Second, the Court asked the parties to analyze "the constitutional viability of organizational standing following the Supreme Court's decision in *TransUnion*."

---

[1] This response uses the same shorthand references defined in Defendants' moving papers.

The doctrine of "organizational standing" rests on a "resource drain" theory of injury established in 1982 by the Supreme Court in *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 102 S.Ct. 114 (1982).  Neither frustration of an organizational mission nor diversion of resources, the two elements of a resource drain theory of injury, are harms traditionally recognized as providing a basis for lawsuits in federal courts.  Accordingly, the "organizational standing" doctrine runs afoul of *TransUnion*'s limit of Article III standing to concrete injuries that have a traditional or common law analogue.

## II.     ARGUMENT

### A.     Legal Standard: *TransUnion*

In *TransUnion*, the Supreme Court confirmed that Article III standing requires claimants show that they suffered an injury in fact that is concrete, particularized, and actual or imminent.  *TransUnion,* 141 S.Ct. at 2203.  The Court provided additional guidance to lower courts in their assessment of whether a plaintiff's alleged harm is adequately "concrete" to confer Article III standing.  It instructed lower courts to assess "whether the asserted harm has a 'close relationship' to a harm traditionally recognized as providing a basis for a lawsuit in American courts" and "ask[] whether plaintiffs have identified a close historical or common-law analogue for their asserted injury." *Id.* at 2200, 2204 (citing *Spokeo Inc. v. Robins,* 578 U.S. 330, 340-341, 136 S.Ct. 1540 (2016)).  The Court did not require an "exact duplicate" of a traditionally recognized harm, but it cautioned federal courts against "loosen[ing] Article III based on contemporary, evolving beliefs about what kinds of suits should be heard in federal courts." *Id.* at 2204, 2209.

The Court further explained that traditional tangible harms, such as physical and monetary harms, "readily qualify as concrete injuries under Article III." *TransUnion,* 141 S.Ct. at 2204.  Intangible injuries traditionally recognized as

providing a basis for lawsuits in American courts, such as "reputational harms, disclosure of private information, and intrusions upon seclusion" also qualify as concrete. *Id.* (citations omitted). Finally, traditional harms that qualify as concrete may include harms specified by the Constitution, such as abridgment of free speech and infringement of free exercise. *Id.* (citations omitted.)

The Court also explained that, although the view of Congress may be instructive in the sense that it may "elevate to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law," Congress may not "simply enact an injury into existence, using its lawmaking power to transform something that is not necessarily harmful into something that is." *TransUnion,* 141 S.Ct. at 2204-2205 (citing *Spokeo,* 578 U.S. at 341, 136 S.Ct. 1540).

The Court applied these principles to a consumer class action case where plaintiffs alleged a violation of the Fair Credit Reporting Act against TransUnion, a credit reporting agency that misleadingly identified plaintiffs as a "potential match" to a name on a list maintained by the United States Treasury Department's Office of Foreign Assets Control ("OFAC") of terrorists, drug traffickers or other serious criminals. *TransUnion,* 141 S.Ct. at 2200-2202. The Court held that a portion of the plaintiffs' class did not have Article III standing to assert their claims. *Id.* at 2212-2213. Congress had enacted a statute authorizing the plaintiffs to sue when a credit reporting agency negligently created inaccurate credit files, and TransUnion concededly violated the terms of that statute. *Id.* at 2208-2213. Because the misleading credit reports of 6,332 class members, however, were not disclosed to third parties, the Court found that these class members did not allege a concrete injury. *Id.* These class members only had a risk of future harm that their misleading reports might be disseminated, and exposure to the risk of future harm is not a concrete harm. *Id.* at 2211.

The Court noted that while "a person exposed to a risk of future harm may pursue forward-looking, injunctive relief to prevent the harm from occurring," "allegations of *possible* future injury" or an "objectively reasonable likelihood" of future injury are insufficient to confer standing for injunctive relief. *TransUnion,* 141 S.Ct. at 2210 (citing *Clapper v. Amnesty Int'l*, 568 U.S. 398, 414, n. 5, 133 S.Ct. 1138 (2013) ["a threatened injury must be *certainly impending* to constitute injury in fact]).  Here the 6,332 class members failed to demonstrate a sufficient likelihood that their misleading credit reports would be disseminated to third parties. *Id.* at 2212.

In contrast, in the case of the other 1,853 class members, the defendant credit reporting agency disseminated the misleading credit reports to third party creditors. *TransUnion,* 141 S.Ct. at 2202.  The Court found that these class members had suffered concrete "reputational harm" through the dissemination of misleading information akin to the harm associated with the common law tort of defamation. *Id.* at 2208.  *TransUnion* argued that the alerts on the disseminated credit reports were only misleading and not literally false since they identified consumers as a "potential match" to an individual. *Id.* at 2209.  The Court found that although not an exact match to the harm suffered from a false, defamatory statement, labeling an individual as a "potential terrorist" bore a "sufficiently close relationship" to the defamatory harm of being labeled a "terrorist" to suffice as a concrete injury. *Id.*

**B.     Question 1: This Action Is Not the Type of Case that History and Tradition Show Article III Empowers Federal Courts to Consider as Required by *TransUnion***

The Individual Plaintiffs allege two types of harm in this action: (1) fear of purchasing from a supply chain that uses antibiotics; and (2) overpayment for beef products purchased from Whole Foods Market stores and marketed as raised without the use of antibiotics.  *See* ECF No. 35, ¶7.  Organizational plaintiff Farm

Forward separately alleges that it was harmed because it diverted resources to investigate the alleged sale of beef products from cattle that were raised with antibiotics at Whole Foods Market and educate the public about Defendants' alleged misstatements. *Id.,* ¶¶80, 88 and 90.

Under *TransUnion*, the Individual Plaintiffs' allegations of a risk of injury because they *may* potentially purchase beef from a supply chain where the cattle *might* have been raised with antibiotics fails to qualify as a concrete harm sufficient to establish standing under Article III.  The Individual Plaintiffs also failed to plead sufficient facts to show monetary harm to support their "overpayment" theory of monetary injury.  Likewise, Farm Forward failed to establish Article III standing under *TransUnion* because its purported diversion of resources is not a concrete harm traditionally recognized as providing a basis for Article III standing.

### 1. Individual Plaintiffs' Fear of "Purchasing from a Supply Chain Using Antibiotics" Is Not a Concrete Harm Traditionally Recognized as a Basis for Article III Standing

The Individual Plaintiffs argue that they were injured when they purchased beef products from Whole Foods Market stores because they "were at risk of purchasing from a supply chain using antibiotics."  *See* ECF No. 48 at 9:26-27. *TransUnion* made clear that this type of intangible future harm is not cognizable under Article III: a risk of harm cannot qualify as a concrete harm.  *TransUnion,* 141 S. Ct. at 2211; *see also Perry v. Newsom*, 18 F.4th 622, 632 (9th Cir. 2021) (appellants claim that unsealing of records would result in harm to future litigants' ability to rely on judicial "promises," and thereby injure both the judicial systems and future litigants was a "generalized grievance," not an injury or threat of injury that "actually exists" as required under *TransUnion*).  As detailed below, the Individual Plaintiff's claim that the unidentified beef products they purchased were somehow "devalued" because the beef product supply chain might contain beef

products raised with antibiotics – without connecting that supply chain to the beef that Whole Foods Market sells, the beef products tested by Plaintiffs, nor the particular beef products purchased by the Individual Plaintiffs – is too attenuated and speculative to constitute a harm traditionally recognized as providing a basis for a lawsuit in American courts.

The Individual Plaintiffs' alleged harm is equally speculative as the harm alleged by the 6,332 class members in *TransUnion*, who claimed a risk of harm that their misleading credit report might be disseminated but no actual harm from the disclosure of their reports.  The Individual Plaintiffs allege a risk or fear that they may have purchased beef products from a supply chain that uses antibiotics, but not that they actually purchased a beef product that was raised with antibiotics.

Like the Individual Plaintiffs, the plaintiff in the recent case *Bowen v. Energizer Holdings, Inc*. attempted to establish Article III standing based on a fear that the products she purchased may have contained benzene.  *Bowen v. Energizer Holdings, Inc.*, No. 21-cv-4356-MWF, 2023 WL 1786731, at *3 (C.D. Cal. Jan. 5, 2023).  The Central District Court found that the plaintiff did not have standing because she failed to allege a particularized injury stemming from her purchase of certain sunscreens.  The plaintiff alleged that she purchased Ultra Sport 30 and Ultra Sport 100 sunscreens, but she failed to allege that the product she purchased actually contained benzene and failed to link the third-party testing of sunscreens to the actual products she purchased: "Plaintiff's claim is based on the hypothetical possibility that the products she purchased may have contained benzene – not that she purchased a product that demonstrably did contain benzene, such as from a batch identified by [third party testing]."  *Id*.

Likewise, here, the Individual Plaintiffs failed to allege a concrete injury, and have instead posited a hypothetical possibility that the unidentified beef products that they purchased may have come from a supply chain where some cattle were

raised with antibiotics.  However, they failed to allege that the specific supplier or type of beef product purchased by the Individual Plaintiffs demonstrably came from cattle raised with antibiotics.  Moreover, like the plaintiff in *Bowen*, the Individual Plaintiffs failed to link the testing of the beef products supply chain to the actual products they purchased.  No Article III standing can exist on a theory of injury resting on a "attenuated chain of inferences necessary to find harm." *Clapper,* 568 U.S. at 414, n.5, 133 S.Ct. 1138.

Additionally, like the 6,332 class members in *TransUnion*, the Individual Plaintiffs do not factually establish a risk of future harm that is "certainly impending," rather than merely possible.  The Individual Plaintiffs thus cannot establish standing for injunctive relief to prevent this *possible* future injury from occurring.  *See TransUnion,* 141 S.Ct. at 2210; *Clapper,* 568 U.S. at 414, n.5, 133 S.Ct. 1138.  Nor do the Individual Plaintiffs demonstrate a "objectively reasonable likelihood" of a risk that Whole Foods Market's supply chain uses antibiotics. *TransUnion,* 141 S.Ct. at 2210.  As detailed in Defendant's Reply, Plaintiffs are only able to allege that a single beef product from a Whole Foods Market store supposedly tested positive for antibiotic residue. Plaintiffs do not identify this single product nor claim that they purchased the same product or a product from the same supplier (i.e., brand).  *See* ECF No. 50 at 3:1-24.  Moreover, the testing relied upon by Plaintiffs is not specific to Whole Foods Market nor its beef supply chain.  *Id.*

The Individual Plaintiffs argue that whether the particular beef product that they purchased contained antibiotics is immaterial because the possibility that a beef product may have contained antibiotics or that any beef products sold by Whole Foods Market contained antibiotics injured their principles of not wanting to support factory farming.  This purported psychological injury or mental angst, however, has no close historical or common-law analogue and therefore runs afoul of *TransUnion.  See Valley Forge Christian Coll. v. Ams. United for Separation of*

*Church & State, Inc.*, 454 U.S. 464, 485, 102 S.Ct. 752 (1982) ("The psychological consequence presumably produced by observation of conduct with which one disagrees" is "not injury sufficient to confer standing under Art. III"); *see also Hein v. Freedom From Religion Foundation, Inc.*, 551 U.S. 587, 633, 127 S.Ct. 2553 (2007) (Scalia J. concurring) (a taxpayer's mental angst is merely a generalized grievance and is not an injury-in-fact); *Sierra Club v. Morton*, 405 U.S. 727, 738-40 (1970) (organization's long-standing and deep commitment to environmental causes was insufficient to confer standing when the group attempted to challenge a development project).  Accordingly, the Individual Plaintiffs' claim that they might be at risk of purchasing from a supply chain that uses antibiotics is not the type of case that history and tradition show Article III empowers federal courts to consider as required under *TransUnion*.

### 2. The Individual Plaintiffs Failed to Plead Sufficient Facts to Show Monetary Harm

In the FAC, the Individual Plaintiffs attempt to establish Article III standing and statutory standing under the UCL, FAL and CLRA by claiming that they overpaid for beef products they purchased from Whole Foods Market stores. Monetary harm is sufficient to establish Article III standing: "[i]f a defendant has caused physical or monetary injury to the plaintiff, the plaintiff has suffered a concrete injury in fact under Article III." *Transunion,* 141 S. Ct. at 2204.  Here, however, Plaintiffs failed to allege sufficient facts to support their contention that they overpaid for beef products purchased from Whole Foods Market stores.

In their FAC, Plaintiffs alleged that if the Individual Plaintiffs "had known that cattle used in Whole Foods Beef Products were raised with antibiotics, [they] would not have purchased the Products or would not have paid what [they] did for them." *See* ECF No. 35, ¶¶7, 15, 22.  The problem with the Individual Plaintiffs' theory is that they failed to allege facts showing that the beef products they

purchased were raised using antibiotics, and failed to provide any plausible basis from which the Court might infer those products were raised using antibiotics.  In fact, the Plaintiffs failed to allege any basis for inferring that many or most of the beef products sold by Whole Foods Market were raised using antibiotics.  As a result, Plaintiffs' allegations are far from the cases where courts have found the price premium theory sufficient.

For example, in the supplemental authority submitted by Plaintiffs, *Henriquez v. ALDI*, No. 22-cv-6060-JLS, 2023 WL 2559200 (C.D. Cal. Feb. 7, 2023), the plaintiffs clearly linked the tuna they purchased to methods of fishing that are not dolphin safe.  The plaintiff Henriquez alleged that she paid a price premium of $0.75 for tuna marketed as "dolphin safe" and that the actual can of tuna she purchased was caught using methods that are not dolphin safe.  *Henriquez*, 2023 WL 2559200, at *1.  Plaintiff Henriquez had the facts to support this claim because each tuna can included information on how and where the tuna was caught.  *Id.* at **2-3; *see* Defendants' Request for Judicial Notice in Support of Supplemental Brief, Ex. 1 [*Henriquez v. ALDI* First Amended Complaint], ¶47.  Thus, the plaintiff could affirmatively allege that the tuna she purchased was caught using purse seine fishing and longline fishing and that these methods are regarded throughout the industry as unsafe for dolphins.  *See Henriquez*, 2023 WL 2559200, at **2-3; *see also* Ex. 1 to RJN at ¶¶48,53.

In the present action, the Individual Plaintiffs failed to allege facts to support their contention that they overpaid for their unspecified beef products.  They do not allege the "price premium" they paid (i.e. how much more did they pay for antibiotic-free beef?).  They do not even identify the specific beef products they purchased nor the prices they paid for those products.  *See* ECF No. 35, ¶¶9-22.  More importantly, they failed to show how the beef products they purchased were worth less than what they paid for them.  Plaintiffs do not allege that the beef

products they purchased actually contained antibiotics, nor do they allege that all or most of Whole Foods Market's beef products contain antibiotics.  Accordingly, they failed to plead sufficient facts to establish a concrete harm under a theory of overpayment and thus fail to establish Article III standing and the statutory standing required under UCL, FAL and CLRA.

### 3. Farm Forward's Resource Drain Theory of Injury Is Not a Concrete Harm Traditionally Recognized as a Basis for Article III Standing

In the FAC, Farm Forward attempts to establish Article III standing to pursue its FAL and UCL claims in federal court through "organizational standing." Organizational standing asserts a "resource drain" theory of injury, which requires a plaintiff to establish two elements: (1) frustration of its organizational mission; and (2) diversion of resources.  *Havens*, 455 U.S. at 379, 102 S.Ct. 1114; *see* ECF No. 35, ¶¶80-94.  There is no historical or common-law analogue to Farm Forward's alleged injury based on a resource drain theory of injury, and therefore it cannot establish Article III standing under *TransUnion*.

Farm Forward's alleged frustration of mission is an allegation that Defendants' actions hurt Farm Forward's ideological agenda to end factory farming. *See* ECF No. 35, ¶¶2 & 23.  Injury to an ideological agenda has no close relationship to any traditionally-recognized harm.  There is no question that frustration of mission does not constitute a tangible injury.  It does not involve lost money or property.  While an intangible injury might suffice to establish standing under the UCL, private enforcement actions under the UCL may only be brought by those who have "lost money or property as a result of the unfair competition." *See*, *McKenzie v. Fed. Exp. Corp.*, 765 F.Supp.2d 1222, 1236 (C.D. Cal. 2011). Likewise, common law fraud, a tort similar to a violation of the FAL, requires an economic loss.  *See,* Restatement (Third) of Torts, § 9 ("One who fraudulently

makes a material misrepresentation of fact…for the purpose of inducing another to act…is subject to liability for economic loss cause by the other's justifiable reliance on the misrepresentation).

Even if an intangible injury sufficed to establish standing here, however, there is no traditionally-recognized intangible harm that is equivalent to a frustration of mission. *See TransUnion*, 141 S.Ct. at 2204.  For instance, Farm Forwards does not allege that Defendants' misrepresentation hurt its reputation.  Nor could Farm Forward adequately allege reputational harm as that harm derives from the common law tort of defamation, which requires a defamatory statement "that would subject [Farm Forward] to hatred, contempt, or ridicule." *Id.* at 2208.  Defendants' alleged misrepresentation does not involve any defamatory statement leveled at Farm Forward.  Indeed, the alleged misrepresentation regarding whether meat sold at Whole Foods Markets comes from cattle raised with antibiotics do not mention Farm Forward whatsoever.  Thus, there is no "close relationship" between the harm of frustration of mission and the harm from a false and defamatory statement. *Id.* at 2209.  Similarly, frustration of mission bears no relationship to the "long recognized" harm stemming from the common law tort of intrusion upon seclusion. *Gadelhak v. AT&T Services, Inc.*, 950 F.3d 458, 462 (7th Cir. 2020).  That tort requires an allegation Defendant's actions violated Farm Forward's privacy. *Id.* Farm Forward makes no such allegation in the FAC.

Farm Forward's claim that the alleged misrepresentations frustrated its mission is more akin to an impermissible "generalized grievance" than a traditionally recognized harm.  A purported injury is an "generalized grievance" when the interest of the party asserting it "is plainly undifferentiated and common to all members of the public." *Lance v. Coffman*, 549 U.S. 437, 439, 112 S.Ct. 2130 (2007).  "The Supreme Court has long admonished that a party 'raising only a generally available grievance…does not state Article III case or controversy.'"

*Perry v. Newsom,* 18 F.4th 622, 632 (9th Cir. 2021) (citing *Lance,* 549 U.S. at 439, 112 S.Ct. 2130); *see also, Spokeo*, 568 U.S. at 341, 136 S.Ct. 1540 (finding that an injury in fact must also be particularized, that is, affecting the plaintiff "in a personal and individual way").

Farm Forward does not allege that it personally purchased any meat products from a Whole Foods Market nor that it told its members to purchase the meat products based on Defendants' representations.  Instead, through the FAC, Farm Forward seeks to enforce Defendants' compliance with state law to protect the public from the harm of buying meat that comes from cattle raised with antibiotics (i.e., meat coming from cattle that is factory farmed) despite representations to the contrary.  Farm Forward's concern that Defendants violated the FAL and UCL is a generalized grievance, not a concrete and particularized personal injury as required for Article III standing.

The second element of organizational standing – diversion of resources – cannot alone establish organizational standing.  Accordingly, the fact that the injury from frustration of mission has no common law equivalent is fatal to Farm Forward's attempt to establish Article III standing.  Even if Farm Forward could solely rely on its purported diversion of resources to establish standing (which it cannot), however, that also has no common law analogue.  Diversion of resources does not bear a close relationship to monetary harm.  The fact that Farm Forward does not seek monetary damages, even in a nominal amount, or restitution in the FAC demonstrates that diverting resources did not result in some economic loss to Farm Forward.  *See* ECF No. 35 at 47:4-18.

Moreover, as alleged in Defendants' moving papers, the fact that the only resources Farm Forward allegedly diverted fell exactly in line with its ongoing work to stop factory farming undermines any sense of injury, and certainly runs afoul of the Supreme Court's requirement that an injury be concrete.  Farm Forward

1  *voluntarily* redirected time and energy from engaging with Defendants and GAP to

2  help develop the standards and improve the conditions under which cattle were

3  raised to purportedly exposing Defendants' failure to comply with Farm Forward's

4  standards.  Farm Forward's voluntary redirection of resources in furtherance of their

5  mission to end factory farming "represented adaptive and savvy organizational

6  management," not monetary harm.  *See Fair Housing Council of San Fernando*

7  *Valley v. Roommate, LLC,* 666 F.3d 1216, 1227 (9th Cir. 2012) (Ikuta dissenting).

8       The authority cited by Plaintiffs in their Opposition Brief fails to show that an

9  injury based on a resource drain theory suffices to establish Article III standing

10 under *TransUnion.  Fair Housing Council v. Roomate.com LLC,* 66 F.3d 1216 (9th

11 Cir. 2012), predates *TransUnion* by 10 years and failed to consider the central issue

12 identified in *TransUnion* regarding whether the plaintiff asserted a traditionally

13 recognized harm.  *Sabra v. Maricopa County Community College District*, 44 F.4th

14 867 (9th Cir. 2022), also did not analyze that issue.  Additionally, in contrast to

15 Farm Forward's claims, in *Sabra,* the plaintiff alleged that the defendant violated the

16 Establishment and Free Exercise Clauses of the U.S. Constitution, a traditional harm

17 specifically identified in *TransUnion. Sabra,* 44 F.4th at 877.

18      Because Farm Forward failed to allege a concrete harm as defined by

19 *TransUnion*, this Court should find that it has not established Article III standing.

20 **C.    Question 2: Following *TransUnion*, "Organizational Standing" Is No**

21          **Longer Constitutionally Viable under Article III**

22      The Court's holding in *TransUnion* undermines the constitutional viability of

23 the doctrine of "organizational standing" based on a resource drain theory of injury.

24 In *Havens*, the Supreme Court recognized the concept of "organizational standing"

25 under Article III.  *Havens*, 455 U.S. at 379.  Thus, a closer look at the Court's

26 holding and reasoning in *Havens* is warranted in analyzing the viability of

27 organizational standing post *TransUnion*.

28

In *Havens*, a nonprofit community organization, Housing Opportunities Made Equal (HOME), and individual plaintiffs sued a realty company for racial steering in violation of the Fair Housing Act. *See Havens*, 455 U.S. at 366-367. HOME claimed that it was injured because defendants' practices frustrated its efforts to assist equal access to housing through counseling and other referral services, and because it devoted significant resources to identifying and counteracting the defendant's practices. *Id.* The Court held that HOME had Article III standing, reasoning that it had alleged a "concrete and demonstrable injury to [its] activities – with the consequent drain on [its] resources." *Id.* at 379. It further reasoned that the alleged resource drain constituted "far more than simply a setback to the organization's abstract social interests." *Id.* Courts have interpreted *Havens* as allowing organizations to satisfy the Article III requirement of an injury in fact by demonstrating: (1) that the defendant's actions frustrated its organizational mission; and (2) diversion of its resources to combat that frustration beyond going about business as usual. *See, e.g.*, *Smith v. Pac. Props and Dev. Corp.,* 358 F.3d 1097, 1101 (9th Cir. 2004).

*TransUnion* undercuts the holding in *Havens* in several respects. First, as set forth above, frustration of an organizational mission is not a harm traditionally recognized as providing a basis for a lawsuit in federal courts nor is a voluntary diversion of resources. *TransUnion,* 141 S.Ct. at 2204.

The resource drain theory of injury also runs afoul of the Court's reasoning in *TransUnion* that "under Article III, a federal court may resolve only 'a real controversy with real impact on real persons.'" *TransUnion*, 141 S.Ct. 2203 (citing *American Legion v. American Humanist Assn.*, 588 U.S. ___, 139 S.Ct. 2067, 2103 (2019)). As an initial matter, Farm Forward is not a "real person" nor an individual. *Id*. at 2203 ("Requiring a plaintiff to demonstrate a concrete and particularized injury caused by the defendant and redressable by the court ensures that federal

courts decide only 'the rights of individuals' [citations omitted]").  Farm Forward also does not allege that Defendants' purported misrepresentations directly harmed it resulting in a "real controversy" or "real impact."  Farm Forward does not allege that it or its members purchased or consumed beef products from cattle raised with antibiotics.  Thus, Farm Forward is not seeking to remedy or obtain redress for any direct harm to itself.  Instead, it seeks to enforce Defendants' compliance with state law to protect the public from harm.  To do that, Farm Forward manufactures a direct harm: it purportedly has shifted its resources to investigate and educate the public about the alleged misrepresentations.  *TransUnion* reflects the Supreme Court's desire to constrain just this type of "open-ended invitation for federal courts to loosen Article III based on contemporary, evolving beliefs about the kinds of suits that should be heard in federal courts."  *TransUnion*, 141 S.Ct. at 2204.  Permitting Farm Forward to establish Article III standing through a "resource drain theory," rather than a concrete harm as defined by *TransUnion*, morphs federal courts into "vehicle[s] for the vindication of the value interests of concerned bystanders." *Valley Forge Christian Coll.*, 454 U.S. at 472, 102 S.Ct. 2405; *see also Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 288-89 (3rd Cir. 2014) (noting "the prudential concerns behind the standing doctrine that courts not become vehicles for the advancement of ideological and academic agendas").  This result is contrary to the Courts instruction in *TransUnion* that Article III standing should be limited to "concrete and particularized injur[ies] caused by the defendant." *TransUnion*, 141 S.Ct. at 2203.

Additionally, the Supreme Court's departure from the reasoning in *Havens* is notable from the Court's earlier statement in *Havens* that "[t]he actual or threatened injury required by Art. III may exist solely by virtue of 'statutes creating legal rights, the invasion of which creates standing…'" *Havens,* 455 U.S. at 364, 102 S.Ct. 1114.  *TransUnion* soundly rejects this proposition as did the Supreme Court

in *Spokeo*: "[t]his Court has rejected the proposition that 'a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to vindicate that right.'" *TransUnion*, 141 S.Ct. at 2205 (citing *Spokeo,* 568 U.S. at 341, 136 S.Ct. 1540). Contrary to the reasoning in *Havens*, the law is now clear that Article III standing requires a concrete injury even in the context of a statutory violation. Farm Forward fails to allege such an injury in the FAC.

While the definition of "organizational standing" in *Havens* conflicts with the definition of a concrete injury in *TransUnion* that conflict does not foreclose the ability of organizations to establish Article III standing all together. Rather, it bars the doctrine of "organizational standing" as defined by *Havens* (i.e., a resource drain theory of injury). An organization can still seek redress in federal courts when it suffers an injury akin to a traditionally recognized harm, such as monetary damages. For instance, a business could establish Article III standing for a false advertising claim by alleging that a competitor's false advertising caused a decrease in its market share (a monetary loss), which necessarily would include in the prayer a claim for compensatory damages. There are endless examples of how an organization can allege a concrete injury that has a close relationship to a harm traditionally recognized as providing a basis for a lawsuit in American courts. Farm Forward simply makes no such allegations in the FAC. Because Farm Forward relies entirely on a "resource drain" theory of injury that runs counter to the definition of a concrete injury in *TransUnion*, it has not establish standing under Article III.

### III.   CONCLUSION

As the Supreme Court stated in *TransUnion,* "No concrete harm, no standing." *TransUnion*, 141 S.Ct. at 2214. Neither the Individual Plaintiffs nor Farm Forward have adequately alleged that they suffered a concrete harm because

1    of Defendants' alleged misrepresentations.  Thus, Plaintiffs do not have Article III

2    standing and the FAC should be dismissed.

3    Dated:  March 27, 2023

4                            BLAXTER | BLACKMAN LLP

5

6              By:                 */s/ Brian R. Blackman*

7                            BRIAN R. BLACKMAN

8                            J.T. WELLS BLAXTER

9                            ERIN W. KEEFE

10                          DAVID P. ADAMS
                          Attorneys For Defendants

11             WHOLE FOODS MARKET SERVICES,
                   INC.; WHOLE FOODS MARKET
           CALIFORNIA, INC.; and MRS. GOOCH'S

12              NATURAL FOOD MARKETS, INC

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28