Paige M. Tomaselli (SBN 237737)
Dylan D. Grimes (SBN 302981)
**GRIME LAW LLP**
730 Arizona Avenue
Santa Monica, CA 90401
Telephone: (310) 747-5095
ptomaselli@grimelaw.com
dgrimes@grimelaw.com

*Attorneys for Plaintiffs*

Gretchen Elsner (*pro hac vice*)
**ELSNER LAW & POLICY, LLC**
314 South Guadalupe Street, Suite 123
Santa Fe, NM 87501
Telephone: (505) 303-0980
gretchen@elsnerlaw.org

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### SOUTHERN DIVISION

| | |
|---|---|
| SARA SAFARI, PEYMON KHAGHANI, on behalf of themselves and all others similarly situated, and FARM FORWARD, on behalf of the general public,<br><br>    Plaintiffs,<br><br> v.<br><br>WHOLE FOODS MARKET SERVICES, INC., a Delaware corporation, WHOLE FOODS MARKET CALIFORNIA, INC., a California corporation, MRS. GOOCH'S NATURAL FOOD MARKETS, INC. doing business as Whole Foods Market, a California Corporation,<br><br>    Defendants. | Case No. 8:22-cv-01562-JWH-KES<br><br>**PLAINTIFFS SARA SAFARI, PEYMON KHAGHANI and FARM FORWARD'S SUPPLEMENTAL BRIEF ON STANDING**<br><br>Date: April 7, 2023<br>Time: 9:00 a.m.<br>Department: 9D, 9th Floor<br>Judge: Hon. John W. Holcomb<br><br>Complaint Filed: August 23, 2022<br>Trial Date: Not Set<br><br>Jury Trial Demanded |

TABLE OF CONTENTS

INTRODUCTION ........................................................................................... 1

I.    AS DISCUSSED IN *TRANSUNION*, HOW DOES PLAINTIFFS' INSTANT ACTION FIT WITHIN THE "TYPES OF CASES" THAT "HISTORY AND TRADITION" SHOW "ARTICLE III EMPOWERS FEDERAL COURTS TO CONSIDER"? ....................................................................................... 1

    A.    Plaintiffs Have a Concrete Injury: Monetary Harm. ...................... 2

    B.    *TransUnion* Supports Plaintiffs' Standing for Consumer Protection Cases. ... 4

    C.    Plaintiffs Have Standing for Each Form of Relief That They Seek. ............... 7
          1. Standing for Monetary Relief .................................................... 7
          2. Standing for Injunctive Relief .................................................. 7

    D.    The Point of Article III Is Satisfied Here. ...................................... 9

II.   WHAT IS THE CONSTITUTIONAL VIABILITY OF ORGANIZATIONAL STANDING FOLLOWING THE SUPREME COURT'S DECISION IN *TRANSUNION*? ............................................................................... 11

    A.    Monetary Injury for Article III Standing Includes Resource Diversion. ...... 12

    B.    California's Consumer Protection Statutes Require that a Plaintiff Suffer Economic Harm Satisfying Article III. ...................................... 15

    C.    Farm Forward Suffered Particularized and Concrete Economic Injury. ........ 17

# TABLE OF AUTHORITIES
**Cases**

*Allen v. Wright*, 468 U.S. 737 (1984) ............................................................................ 11

*Am. Diabetes Ass'n v. United States Dep't of the Army*, 938 F.3d 1147 (9th Cir. 2019) 20

*California v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, No. 20-CV-06761-EMC, 2023 WL 1873087 (N.D. Cal. Feb. 9, 2023) ................................... 14,16, 18, 20

*Carijano v. Occidental Petroleum Corp.* 686 F.3d 1027 (9th Cir. 2012) ...................... 17

*City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283 (1982) ...................................... 9

*Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936 (9th Cir. 2011) ........................................................................................................................ 19

*Ctr. for Biological Diversity v. Bernhardt, No.* 19-CV-05206-JST, 2020 WL 4188091 (N.D. Cal. May 18, 2020) .............................................................................................. 21

*Davidson v. Kimberly-Clark Corp.,* 889 F.3d 956 (9th Cir. 2017) ............................... 8, 9

*Dieffenbach v. Barnes & Noble, Inc.* 887 F.3d 826 (7th Cir. 2018) .............................. 14

*East Bay Sanctuary Covenant v. Trump*, 909 F.3d 1219 (9th Cir. 2018) ....................... 18

*El Rescate Legal Servs., Inc. v. Exec. Office of Immigration Review*, 959 F.2d 742 (9th Cir. 1991) .................................................................................................................... 20

*Evenflo Co., Inc., Mktg., Sales Pracs. & Prod. Liab. Litig.*, 54 F.4th 28 (1st Cir. 2022)  3, 4, 5

*Fair Hous. Council of San Fernando Valley v. Roommate.com, LLC*, 666 F.3d 1216 (9th Cir. 2012) .............................................................................................................. ……19, 20

*Fair Hous. of Marin v. Combs*, 285 F.3d 899, 905 (9th Cir. 2002) .................... 12, 14, 19

*Fair Housing Justice Center, Inc. v. 203 Jay St. Associates*, LLC, No. 21-CV-1192, 2022 WL 3100557 (E.D.N.Y. Aug. 4, 2022) ............................................................... 14

*Federal Election Commission v. Ted Cruz for Senate*, 142 S.Ct. 1638 (2022) ............... 22

*Friends of the Earth v. Sanderson Farms, Inc.*, 992 F.3d 939 (9th Cir. 2021) ......... 18, 20

*Friends of the Earth, Inc. v. Laidlaw Env't Services (TOC), Inc.*, 528 U.S. 167 (2000) 7, 9

*Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982) ................................. passim

*Henriquez v. ALDI Inc.,* No. 222CV06060JLSJEM, 2023 WL 2559200 (C.D. Cal. Feb. 7, 2023) ........................................................................................................................ 6

*Housing Rights Initiative v. Compass, Inc.*, No. 21-cv-2221 2023 WL 1993696 (S.D.N.Y. Feb. 14, 2023) ........................................................................ 14

*Kwikset Corp. v. Superior Court*, 51 Cal.4th 310 (2011) .............................. 17

*La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083 (9th Cir. 2010) ............................................................................ 26

*La Unión del Pueblo Entero v. Abbott*, No. 5:21-CV-0844-XR, 2022 WL 3052489 (W.D. Tex. Aug. 2, 2022) .............................................................. 17

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ................................... 11

*Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 595 (9th Cir. 2012) ............... 3

*Moya v. U.S. Dep't of Homeland Sec.*, 975 F.3d 120, 130 (2d Cir. 2020) .......... 18

*Na Po'e Kokua v. Bank of Am. Corp.*, No. CV 22-00238-JMS-WRP, 2023 WL 2042923 (D. Haw. Feb. 16, 2023) .............................................................. 14

*Nat'l Council of La Raza v. Cegavske*, 800 F.3d 1032 (9th Cir. 2015) ............ 20

*National Coalition Government of Union of Burma v. Unocal, Inc.,* 176 F.R.D. 329 (C.D. Cal. 1997) ................................................................ 20

*National Council of La Raza v. Cegavske*, 800 F.3d 1032 (9th Cir. 2015) ......... 23

*Nnebe v. Daus*, 644 F.3d 147 (2d Cir. 2011) ............................................. 15

*People for the Ethical Treatment of Animals, Inc. v. Banks* No. 4:20-cv-02913, 2022 WL 4021938 (S.D. Tex. Sept. 2, 2022) ...................................... 9, 14

*Petconnect Rescue, Inc. v. Salinas*, No. 20-CV-00527-H-DEB, 2021 WL 5178647 (S.D. Cal., Nov. 8, 2021) .............................................................. 16

*Planned Parenthood Federation of Am. v. Newman*, No. 20-16068, 2022 WL 13613963 (9th Cir. Oct. 21, 2022) ........................................................ 8

*Project Sentinel v. Komar*, No. 119CV00708DADEPG, 2021 WL 3051991 (E.D. Cal., July 20, 2021) ............................................................................ 16

*Project Sentinel v. Komar*, No. 119CV00708DADEPG, 2021 WL 1346025 (E.D. Cal., Apr. 12, 2021) ............................................................................ 16

*Reid v. Johnson & Johnson*, 780 F.3d 952 (9th Cir. 2015) ............................. 3

*Rodriguez v. City of San Jose,* 930 F.3d 1123 (9th Cir. 2019) ..................... 18, 21

*Sabra v. Maricopa Cnty. Cmty. Coll. Dist.*, 44 F.4th 867 (9th Cir. 2022) ....... 14, 20

*Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 227 (1974) ....... 10

*Sierra Club v. Morton*, 405 U.S. 727, 739 (1972) ........................................ 13

*Smith v. Pac. Props. & Dev. Corp.*, 358 F.3d 1097 (9th Cir. 2004)........................ 10, 19

*Southern California Housing Rights Center v. Krug*, 564 F.Supp.2d 1138 (C.D. Cal. 2007) ........................................................................................................ 16

*Southern California Housing Rights Center v. Los Feliz Towers Homeowners Association*, 426 F.Supp.2d 1061 (9th Cir. 2005)........................................ 15

*Spann v. Colonial Village, Inc.*, 899 F.2d 24 (D.C. Cir. 1990) ...................... 11

*Spokeo v. Robins,* 578 U.S. 330 (2016) ................................................. 1, 4, 10

*TransUnion v. Ramirez,* 141 S.Ct. 2190 (2021)…………………………..………… passim

*Valle del Sol Inc. v. Whiting*, 732 F.3d 1006 (9th Cir. 2013) .......................... 19

*Walker v. City of Lakewood*, 272 F.3d 1114 (9th Cir. 2001) .......................... 12

*Wright v. Costco*, No. 22-cv-0443 WHO, 2023 WL 210936 (N.D. Cal. Jan. 17, 2023)5, 6

**Statutes**

UCL. Cal. Bus. & Prof. Code §§ 17203-04...................................................... 12

**Rules**

Federal Rule of Civil Procedure 12(b)(1)......................................................... 7

# INTRODUCTION

*TransUnion v. Ramirez* supports the conclusion that Plaintiffs Sara Safari, Peymon Khaghani, and Farm Forward have standing. The Court ordered supplemental briefing on two questions related to Defendants' Motion to Dismiss Plaintiff Sara Safari, Peymon Khaghani, and Farm Forward's Complaint. ECF No. 54. For the first question, Plaintiffs' Complaint is exactly the type of case that Article III empowers federal courts to consider. As to the second question, organizational standing is still constitutionally viable after *TransUnion v. Ramirez*.

The pending case satisfies Article III's "case or controversy" requirement: all Plaintiffs have a stake in the outcome. This is especially true given that separation of executive, legislative, and judicial powers are not implicated when private individuals and a private entity sue a private company for injuries in fact recognized at common law.

## I. As discussed in *TransUnion*, how does Plaintiffs' instant action fit within the "types of cases" that "history and tradition" show "Article III empowers federal courts to consider"?

Plaintiffs suffered monetary injury, which fits squarely into the types of cases that Article III empowers federal courts to consider. The *TransUnion* Court stated, "certain harms readily qualify as concrete injuries under Article III. The most obvious are traditional tangible harms, such as physical harms and monetary harms. If a defendant has caused physical or monetary injury to the plaintiff, the plaintiff has suffered a concrete injury in fact under Article III." *TransUnion v. Ramirez,* 141 S.Ct. 2190, 2204 (citing *Spokeo v. Robins*, 578 U.S. 330 (2016), *as revised* (May 24, 2016).

The Consumer Plaintiffs alleged monetary injury:

- Consumers overpaid for and were economically harmed as a result of Whole Foods' misleading promotion of its Beef Products. Whole Foods charges—and consumers pay—a substantial price premium for Beef Products based on the claim that the cattle that become these Products were not given any antibiotics.

---

ECF No. 35 (First Amended Complaint ("FAC")) ¶ 7.

- Consumer Plaintiffs would not have purchased Beef Products, or would not have paid the prices they did, had they had known the truth that cattle used in the Products were raised with antibiotics. Furthermore, Consumer Plaintiffs would not have purchased Beef Products, or would not have paid the prices they did, had they known the truth that Whole Foods does not effectively verify its "No Antibiotics, Ever" representation. FAC ¶ 7.

- Ms. Safari purchased the Beef Products at a premium price because, based on Whole Foods' representations, she believed all Beef Products available for sale from Whole Foods were derived from cattle raised without antibiotics or pharmaceuticals. FAC ¶ 13; ¶ 20 (for consumer Khaghani).

- Absent Whole Foods' misleading representations and omissions that its Beef Products were raised antibiotic-free, Consumer Plaintiffs and Class members would not have purchased the Products, or would not have purchased them at the price they paid. FAC ¶ 79.

Farm Forward alleged monetary injury:

- Farm Forward promoted Whole Foods' meat products as "better" choices through a web-based consumer guide that Farm Forward, using its resources, created. Farm Forward spent its own money on this consumer guide that promoted Whole Foods products. FAC ¶ 82.

- Farm Forward also experienced financial loss and disruption to its organizational activities to address Whole Foods' misrepresentations and omissions and the consumer confusion they have engendered. FAC ¶ 88.

## A. Plaintiffs Have a Concrete Injury: Monetary Harm.

Plaintiffs Safari, Khaghani, and Farm Forward have all answered this question: "What's it to you?" *TransUnion,* 141 S.Ct. at 2203 (citing Scalia, *The Doctrine of Standing*

as an Essential Element of the Separation of Powers, 17 Suffolk U. L. Rev. 881, 882 (1983)). Each Plaintiff has a personal stake in holding Whole Foods accountable for the promises that each Plaintiff relied on because relying on Whole Foods' promises caused each Plaintiff monetary injury. Farm Forward so trusted Whole Foods' promises that Farm Forward spent its own money promoting Whole Foods products to consumers. FAC ¶ 82. The Consumer Plaintiffs lost money because they relied on Whole Foods' "No Antibiotics, Ever" promises when they paid for a product that they would not have otherwise bought. FAC ¶¶ 7, 13, 20, 79.

Overpayment is a well-recognized monetary injury for standing, including for the Unfair Competition Law (UCL), False Advertising Law (FAL), and Consumers Legal Remedies Act (CLRA) claims in this case. "To establish standing to bring a claim under these statutes, plaintiffs must meet an economic injury-in-fact requirement, which demands no more than the corresponding requirement under Article III of the U.S. Constitution." *Reid v. Johnson & Johnson*, 780 F.3d 952, 958 (9th Cir. 2015). "In a false advertising case, plaintiffs meet this requirement if they show that, by relying on a misrepresentation on a product label, they 'paid more for a product than they otherwise would have paid, or bought it when they otherwise would not have done so.'" *Reid,* 780 F.3d at 958 (quoting *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1104 n.3 (9th Cir. 2013) *accord, e.g.*, *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 595 (9th Cir. 2012), *overruled on other grounds by Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651 (9th Cir. 2022). The First Circuit in *In re Evenflo Co., Inc., Mktg., Sales Pracs. & Prod. Liab. Litig.*, 54 F.4th 28 (1st Cir. 2022), considered *TransUnion* and proceeded to catalog decisions from various federal circuits, including the Ninth Circuit, that "determined that plaintiffs have standing based on overpayment due to a defendant's false or misleading statements." 54 F.4th at 36. Explicitly considering *TransUnion* and *Spokeo*, the First Circuit rejected defendant's argument that overpayment was in tension with those cases. *Id*. at 38.

*TransUnion* requires not only an injury at law, but also an injury in fact, and the Court focused on the concreteness of that injury. "Only those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue that private defendant over that violation in federal court." *TransUnion* at 2205. The Court tied concreteness to traditionally recognized harms. All Plaintiffs meet *TransUnion*'s concrete harm standard because, as the Court stated, "monetary harm" is an example of "harm traditionally recognized as providing a basis for a lawsuit in American courts…" *TransUnion* at 2200. The *TransUnion* Court addressed standing requirements for statutory violations and considered whether the injury has a "close historical or common-law analogue" for the injury. *Id*. at 2204 (citing *Spokeo v. Robins,* 578 U.S. 330 (2016)). In this case, the common law analogue is also contained in Plaintiffs' FAC. Plaintiffs sued for both statutory violations (CLRA, UCL, FAL, express warranty) and their traditional common law analogues (unjust enrichment, fraudulent concealment, intentional misrepresentation). "Spokeo does not require an exact duplicate in American history and tradition," *id*. at 2204, and here, Plaintiffs provided that analogue in their complaint and therefore satisfy *TransUnion*'s concreteness requirement.

**B.**  **_TransUnion_ Supports Plaintiffs' Standing for Consumer Protection Cases.**

Several post-*TransUnion* cases have concluded that plaintiffs have standing, and consumer protection litigation is the type of case that Article III empowers federal courts to hear. The First Circuit, in addressing a consumer challenge to a company's misrepresentations about child car seats, concluded that "*TransUnion* and *Spokeo* support the plaintiffs' standing." *In re Evenflo,* 54 F.4th at 39. Plaintiffs alleged that "but for Evenflo's misrepresentations, the plaintiffs would not have purchased the seat, would have paid less for it, and/or would have bought a safer alternative." 54 F.4th at 32. The First Circuit classified  "these three harms as 'overpayment.'" *Id.* The complaint alleged that "Evenflo's misrepresentations caused the plaintiffs to spend money that they otherwise

would not have spent." *Id*. The complaint did not allege that the plaintiffs' children were hurt while using the seat or that the product otherwise failed to perform. *Id.*

Evenflo argued that plaintiffs lacked standing and the district court agreed, by reasoning that plaintiffs failed to establish an economic injury because "(1) the complaint did not allege that the seats failed to perform -- such that the plaintiffs had necessarily received the benefit of the bargain in purchasing them -- and (2) the plaintiffs had not plausibly shown that the seats were worth less than what they had paid for them or estimated their true value." *Id*. at 33. The First Circuit reversed and concluded that plaintiffs did have standing to seek monetary relief because the overpayment flowing from the misrepresentations mattered, not whether the seats actually worked.

In the pending case, the Consumer Plaintiffs' allegations of overpayment due to Whole Foods' Beef promises are nearly identical to the Evenflo plaintiffs' allegations about child car seat misrepresentations and the ensuing overpayment economic injury that satisfied the Article III standing test. Likewise, Whole Foods' argument here challenging Plaintiffs' standing is similar to Evenflo's losing argument. Whole Foods asserts that the Consumer Plaintiffs must allege "that the beef products the Individual Plaintiffs purchased contained antibiotics." Defs.' Reply at 2-3, ECF No. 50. That is not only an attempt to re-write Plaintiffs' Complaint, but also non-responsive to Plaintiffs' actual overpayment injury. Relevant to the facts here involving a grocery store food product and *TransUnion's* concreteness requirements, the First Circuit stated, "That the mechanics underlying that injury are somewhat different in this case – a one-time overpayment for a durable product, rather than repeated overpayments for a consumable good – does not undercut the concreteness of the alleged economic harm. *Id*. at 36.

At least two federal district courts in California have recently arrived at the same conclusion, both applying *TransUnion* to consumer challenges to misrepresentations in the grocery supply chain and concluding that plaintiffs had standing. In *Wright v. Costco*, No. 22-cv-0443 WHO, 2023 WL 210936 (N.D. Cal. Jan. 17, 2023), the plaintiff

challenged Costco's representations that its tuna was dolphin-safe. Costco, much like Whole Foods here, argued that the plaintiff "does not allege that any tuna [she] purchased from Costco came from a vessel that either deployed a net that encircled any dolphin or that killed or seriously injured any dolphin." 2023 WL 210936 at *4. Costco then asserted that the plaintiff lacked a concrete injury, and Judge Orrick said, "Costco misses the crux of Wright's complaint. The FAC alleges that, had Wright known that Costco's canned tuna was not dolphin-safe, she would not have bought it, 'and certainly would not have paid a 'premium' for such a valued perceived benefit.'" *Id.* Citing *TransUnion*, Judge Orrick continued, "This also aligns with the well-established principle that a monetary harm is a sufficiently concrete injury." *Id.*

In *Henriquez v. ALDI Inc.,* No. 222CV06060JLSJEM, 2023 WL 2559200 (C.D. Cal. Feb. 7, 2023), which Plaintiffs submitted to this Court as supplemental authority, ECF No. 51-1, the plaintiff alleged that the grocery chain misled consumers about its tuna supply chain. ALDI moved to dismiss per Rule 12(b)(1), and argued that plaintiff did not have a concrete injury because it was only a possibility that dolphins were harmed. 2023 WL 2559200 at *5. Whole Foods made a similar "only a possibility" argument about Plaintiffs here: "They have not alleged facts plausibly demonstrating that they purchased beef products that came from cattle raised with antibiotics, nor sufficient facts from which the Court might infer that all beef products sold at Whole Foods Market are raised using antibiotics." Defs.' Reply, ECF No. 50 at 11. Just as Judge Staton said, citing *TransUnion* and *Spokeo*, Whole Foods' argument "misses the mark." 2023 WL 2559200 at *5. There,

> [t]he harm that Henriquez allege[d was] not dependent on whether dolphins were killed in relation to the sourcing of the can of tuna that she purchased. Rather, Henriquez allege[d] that she was harmed by paying for tuna that she would not have purchased absent ALDI's allegedly deceptive representations and by paying a premium for the tuna.

2023 WL 2559200 at *5. Here, Plaintiffs do not need to allege or prove that all beef

products sold at Whole Foods are raised using antibiotics or that Plaintiffs' specific hamburger came from cattle raised with antibiotics; their allegations are sufficient at this stage of the litigation because Plaintiffs would not have purchased Whole Foods Beef Products absent the deceptive "No Antibiotics, Ever" promises.

### C. Plaintiffs Have Standing for Each Form of Relief That They Seek.

*TransUnion* stated that "plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek (for example, injunctive relief and damages)," citing *Friends of the Earth, Inc. v. Laidlaw Env't Services (TOC), Inc.*, 528 U.S. 167, 185 (2000).

#### 1. Standing for Monetary Relief

The Individual Plaintiffs have standing to pursue monetary relief, discussed above, because they lost money in reliance on Whole Foods' promises.

#### 2. Standing for Injunctive Relief

The *TransUnion* Court noted that "a person exposed to a risk of future harm may pursue forward-looking, injunctive relief to prevent the harm from occurring, at least so long as the risk of harm is sufficiently imminent and substantial." *TransUnion* at 2210. Organizations may also seek injunctive relief. *TransUnion* at 2208 (citing *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167 (2000) (organizations had standing to bring citizen suit seeking both injunctive relief and civil penalties)). All Plaintiffs here seek injunctive relief via the UCL, FAL, and Fraudulent Concealment causes of action (FAC ¶¶ 135, 141); the Consumer Plaintiffs additionally seek injunctive relief via the CLRA cause of action (FAC ¶ 118-119).

The allegations here include:

- Plaintiffs seek injunctive relief in the form of an order requiring Whole Foods to cease these deceptive acts and practices and to correct its misleading promotions related to antibiotics use in the beef it sells. FAC ¶ 118 (CLRA).
- Plaintiffs would like to buy Whole Foods' Beef Products in the future if and when

they are produced as advertised by Whole Foods. Plaintiffs do not currently intend to do so because they cannot rely on the accuracy of Whole Foods' representations in deciding whether to purchase Whole Foods' Beef Products, and Plaintiffs cannot independently or easily determine whether the particular Beef Products are raised with antibiotics. FAC ¶ 119 (CLRA); *id.* ¶ 135 (UCL).

- All Plaintiffs therefore seek injunctive relief to correct and prevent Whole Foods' fraudulent concealment relating to the nature and origins of its Beef Products. FAC ¶ 163 (Fraudulent Concealment).

These allegations are sufficient to have standing for injunctive relief, as held by the Ninth Circuit in another consumer goods false advertising case. In *Davidson v. Kimberly-Clark Corp.,* 889 F.3d 956 (9th Cir. 2017), the consumer was misled about flushable wipes, and the court said, "we hold that a previously deceived plaintiff may have standing to seek injunctive relief." *Id.* at 970. The court continued, "we hold that Davidson adequately alleged that she faces an imminent or actual threat of future harm due to Kimberly–Clark's false advertising. Davidson has alleged that she desires to purchase Kimberly–Clark's flushable wipes." *Id.* at 971. The court determined that the consumer's injury was concrete and particularized. "Davidson's alleged harm is her inability to rely on the validity of the information advertised on Kimberly–Clark's wipes despite her desire to purchase truly flushable wipes." *Id.* at 971. Plaintiffs' harm is the same: the Consumer Plaintiffs would like to purchase Whole Foods Beef Products again, but currently cannot rely on the information; none of the Plaintiffs can easily determine whether a particular product was raised with antibiotics. FAC ¶¶ 119, 135. If Farm Forward cannot easily determine the truth about a particular product, then it cannot accurately educate the public to make a "better choice" meat purchase. FAC ¶ 87.

The *Davidson* rule also applies to organizations seeking injunctive relief. *Planned Parenthood Federation of Am. v. Newman*, No. 20-16068, 2022 WL 13613963 (9th Cir. Oct. 21, 2022). Specifically addressing an organization's standing for injunctive relief, the

Ninth Circuit said, "the district court did not err in determining that Planned Parenthood had standing to seek injunctive relief because it was likely to be injured again in a similar way, *see Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2017)." 2022 WL 13613963, at *8. Further, the organization's requested injunction was in the public interest and its injuries could not be addressed by damages. *Id.* Unless and until Whole Foods is enjoined from making false and misleading promises about its meat, Farm Forward cannot rely on Whole Foods' promises and cannot accurately educate consumers about "better choices" Beef Products.

The Southern District of Texas recently confirmed, in a case involving a public interest organization, that federal courts have the power to enter injunctions sought by organizations. In *People for the Ethical Treatment of Animals, Inc. v. Banks* No. 4:20-cv-02913, 2022 WL 4021938 (S.D. Tex. Sept. 2, 2022) (U.S. Magistrate Judge Report and Recommendation), the court relied on two U.S. Supreme Court precedents to arrive at the conclusion that the organization could pursue injunctive relief:

> It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice. Such abandonment is an important factor bearing on the question whether a court should exercise its power to enjoin the defendant from renewing the practice, but that is a matter relating to the exercise rather than the existence of judicial power.

*City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982). The court continued, "Only 'if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur' would the court be without jurisdiction to hear this dispute." 2022 WL 4021938 at * 6 (citing *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000)).

### D. The Point of Article III Is Satisfied Here.

The Supreme Court has repeatedly instructed that "separation of powers" is the

"'single basic idea' on which the Article III standing requirement is built." *Spann v. Colonial Village, Inc.*, 899 F.2d 24, 30 (D.C. Cir. 1990) (quoting *Allen v. Wright*, 468 U.S. 737, 752 (1984)). Article III standing, as it operates in "undifferentiated injury cases, prevents the courts from interfering in questions that 'our system of government leaves . . . to the political processes.'" *Id.* (quoting *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 227 (1974)). The Ninth Circuit has endorsed this view for broadly evaluating standing in these types of cases, focusing its inquiry primarily on the presence or absence of allegations of a concrete and particularized injury. *See, e.g.*, *Smith v. Pac. Props. & Dev. Corp.*, 358 F.3d 1097, 1105 (9th Cir. 2004) (allegation that disability group "has had (and, until the discrimination is corrected, will continue) to divert its scarce resources from other efforts to promote awareness of—and compliance with—federal and state accessibility laws . . . [is sufficient to show] a 'diversion of resources' . . . ." and confer standing). Thus, although the threshold Article III standing inquiry is whether the judicial branch or the legislative branch is the appropriate venue for the dispute, Article III does not eviscerate judicial resolution for disputes between private entities. "These limitations preserve separation of powers by preventing the judiciary's entanglement in disputes that are primarily political in nature. This concern is generally absent when a private plaintiff seeks to enforce only his personal rights against another private party." *Spokeo v. Robins*, 578 U.S. at 344.

Plaintiffs are not seeking to compel government action or to "involve the courts in a matter that could be resolved in the political branches[.]" *Spann*, 899 F.2d at 30. Nor are they seeking to "vindicate their own value preferences through the judicial process." *Id.* (internal quotation marks omitted). Plaintiffs are consumers and a public interest organization who have been harmed in the traditional sense—monetary harm—by Defendants' business practices: "traditional grist for the judicial mill." *Id.* To the extent that Plaintiffs seek to vindicate values, those values were endorsed by the State of California in enacting the UCL. Cal. Bus. & Prof. Code §§ 17203-04 (allowing any

"person that has suffered injury in fact or lost money or property" to sue for relief).

All Plaintiffs satisfied the concreteness element elucidated in *TransUnion,* and they also satisfied the well-trod Article III standing requirements articulated in *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 578 (1992). The three well-known "irreducible constitutional minim[a] of standing" are injury-in-fact, causation, and redressability. *Lujan*, 504 U.S. at 560–61. Plaintiffs explicitly pled causation, or traceability, of their harm to Whole Foods' representations. FAC ¶ 80 ("Whole Foods' misleading advertising caused Farm Forward to direct resources in support of the very forms of farming that Farm Forward seeks to end."); FAC ¶ 162 ("Whole Foods' deceit and fraudulent concealment also caused financial injury to Plaintiff Farm Forward as set forth above."); FAC ¶ 172 (Defendants' misrepresentations caused Plaintiffs and the Class to purchase a product they would not have otherwise purchased and/or at a price that they would have otherwise paid, resulting in damage to Plaintiffs and the Class.). These harms are redressable via the monetary and injunctive relief that the Consumer Plaintiffs seek and the injunctive relief that Farm Forward seeks, and therefore all Plaintiffs have more than adequately pled Article III standing so that they can proceed to the merits.

## II.   What is the Constitutional Viability of Organizational Standing Following the Supreme Court's Decision in *TransUnion*?

Organizational standing is constitutionally viable after Supreme Court's decision in *TransUnion*. The *TransUnion* Court twice cited the four-decade old seminal case on organizational standing: *Havens Realty Corp. v. Coleman,* 455 U.S. 363, 379 (1982) (cited in *TransUnion*, 141 S.Ct. at 2218, 2221) (*Havens*). Applying *Havens* organizational standing is especially appropriate for cases brought under California's consumer protection statutes (the Unfair Competition Law and related statutes) because these statutes require a monetary injury consistent with *TransUnion*'s statement that monetary harm is a traditional tangible harm.

**A.    Monetary Injury for Article III Standing Includes Resource Diversion.**

The Supreme Court has clearly articulated that to establish organizational standing, an organization must show that it suffered its own (particular, individual) concrete injuries. Organizational plaintiffs can establish standing by demonstrating that they had to divert institutional resources to counteract the defendant's unlawful actions, as in *Havens Realty Corp. v. Coleman,* 455 U.S. 363, 379 (1982). Under the diversion-of-resources basis for establishing standing, the plaintiff must demonstrate that it diverted resources from other institutional activities or otherwise expended resources in response to the defendant's challenged activity, separate and apart from any direct expenditure of funds or resources on litigation. *See, e.g., Walker v. City of Lakewood*, 272 F.3d 1114, 1124, fn. 3 (9th Cir. 2001); *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 905 (9th Cir. 2002). This diversion of resources is consistent with *TransUnion*'s requirement that injury be concrete:

> Certain harms readily qualify as concrete injuries under Article III. The most obvious are traditional tangible harms, such as physical harms and monetary harms. If a defendant has caused physical or monetary injury to the plaintiff, the plaintiff has suffered a concrete injury in fact under Article III.

*TransUnion*, 141 S. Ct. at 2204.

*Havens* is the primary federal precedent defining injury-in-fact for organizational plaintiffs. In *Havens*, the Court was faced with the question of whether the plaintiff organization had shown the "Art. III minima of injury-in-fact—that as a result of the defendant's actions [it] had suffered" injury. *Havens*, 455 U.S. at 372. The Court found that the organization had "standing in its own right" against the defendant property-management company because it alleged its mission had been "frustrated by defendants' racial steering practices" and because the organization "had to devote significant resources to identify and counteract" those practices. 455 U.S. at 379. As a result, the organizational

plaintiff's core activities—providing counseling and referral services for low-and moderate-income home seekers—were "perceptibly impaired." *Id.* The Court concluded that an organization has standing if it alleges not merely "a setback to [its] abstract social interests" but "a concrete and demonstrable injury to [its] activities" accompanied by a "consequent drain on the organization's resources." *Id.* at 379.

*Havens* supports the conclusion that diversion of resources provides the requisite injury for Article III standing post-*TransUnion*. *Havens* characterized the nature of the injury at issue as "concrete and demonstrable injury to the organization's activities—with the consequent *drain on the organization's resources.*" *Id.* at 379 (emphasis added). The drain on resources—the economic loss—was crucial to Supreme Court's analysis, as the Court distinguished the organizational standing approved in *Havens* from the "mere 'interest in a problem'" that the Court rejected as insufficient for standing in *Sierra Club v. Morton*, 405 U.S. 727, 739 (1972). *Havens* explained, "[t]hat the alleged injury results from the organization's noneconomic interest in encouraging open housing does not [a]ffect the nature of the injury suffered." *Havens*, 455 U.S. at 379.

The Second Circuit has endorsed this economic-based-injury reading of *Havens*, explaining that "the Supreme Court has stated that so long as the economic effect on an organization is real, the organization does not lose standing simply because the proximate cause of that economic injury is 'the organization's noneconomic interest in encouraging [a particular policy preference].'" *Nnebe v. Daus*, 644 F.3d 147, 157 (2d Cir. 2011). The Ninth Circuit also weaves the tangible and intangible organizational injury together, requiring the tangible—the economic—injury for the organization to have standing:

> [An] organizational plaintiff must show that the defendant's actions run counter to the organization's purpose, that the organization seeks broad relief against the defendant's actions, and that granting relief would allow the organization to redirect resources currently spent combating the specific challenged conduct to other activities that would advance its mission, [i.e.,

redirect the expenditure of money or property].

*Rodriguez v. City of San Jose,* 930 F.3d 1123, 1134 (9th Cir. 2019).

Federal cases awarding damages for the costs organizational plaintiffs incur in diverting resources because of a frustration of mission further establish that this injury is economic in nature. In *Fair Housing of Marin*, 285 F.3d at 902, the defendant was found liable at the district court. On appeal, defendant challenged both the organizational plaintiff's standing and the damages award. *Id.* The Ninth Circuit held that plaintiff had "direct standing to sue because it showed a drain on its resources from both a diversion of its resources and frustration of its mission." *Id.* at 905. The court upheld damage awards for both "diversion of resource damages" and "frustration of mission" damages. *Id.* Put in economic terms, "the value of one's own time needed to set things straight is a loss from an opportunity-cost perspective." *Dieffenbach v. Barnes & Noble, Inc.* 887 F.3d 826, 828 (7th Cir. 2018) (Easterbrook, J.) (finding plaintiffs in data breach case have standing based on such injury).

Finally, the Ninth Circuit courts—and federal courts across the country—have repeatedly applied *Havens* to establish organizational standing after the Supreme Court's decision in *TransUnion*. *See, e.g., Sabra v. Maricopa Cnty. Cmty. Coll. Dist.*, 44 F.4th 867, 879 (9th Cir. 2022); *Na Po'e Kokua v. Bank of Am. Corp.*, No. CV 22-00238-JMS-WRP, 2023 WL 2042923, at *3 (D. Haw. Feb. 16, 2023); *California v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, No. 20-CV-06761-EMC, 2023 WL 1873087, at *13–14 (N.D. Cal. Feb. 9, 2023); *La Unión del Pueblo Entero v. Abbott*, No. 5:21-CV-0844-XR, 2022 WL 3052489 (W.D. Tex. Aug. 2, 2022); *People for the Ethical Treatment of Animals, Inc. v. Banks*, No. 4:20-cv-02913, 2022 WL 4021938 (S.D. Tex. Sept. 2, 2022); *Housing Rights Initiative v. Compass, Inc.*, No. 21-cv-2221 2023 WL 1993696 (S.D.N.Y. Feb. 14, 2023); *Fair Housing Justice Center, Inc. v. 203 Jay St. Associates*, LLC, No. 21-CV-1192, 2022 WL 3100557 (E.D.N.Y. Aug. 4, 2022). This non-exhaustive list provides representative examples of courts applying *Havens* after the Supreme Court's decision in

*TransUnion* to determine if organizational plaintiffs have alleged such a personal stake in the outcome of the controversy as to warrant federal court jurisdiction.

**B.    California's Consumer Protection Statutes Require that a Plaintiff Suffer Economic Harm Satisfying Article III.**

California's consumer protection statutes also require that a plaintiff—an individual or an organization—suffer a particularized, traditional, tangible harm to have standing.[1] The UCL provides: "[a]ctions for relief pursuant to this chapter shall be prosecuted . . . by a person who has suffered injury in fact and has lost money or property as a result of the unfair competition." Bus. & Prof. Code §17204. The only difference between standing under the UCL and similar statutes and Article III standing is that unlike an Article III plaintiff, a UCL plaintiff must show that they lost money or property, i.e., that they suffered an "economic injury." *Southern California Housing Rights Center*, 426 F.Supp.2d at 1068-69 (concluding that "[c]ases decided since Proposition 64 changed the language of Business and Professions Code section 17204 have concluded a plaintiff suffers an injury in fact for purposes of standing under the UCL when he or she has . . .

---

[1] Organizations are permissible plaintiffs under the UCL and FAL. *In Animal Legal Defense Fund v. HVFG LLC*, No. 12-05809, 2013 WL 3242244 (N.D. Cal. June 25, 2013), plaintiff Animal Legal Defense Fund (ALDF), a non-profit organization, brought a UCL claim against a foie gras producer, "challeng[ing] a business practice inimical to [ALDF's] purpose and against which [ALDF] expends its resources, thus reducing the money and property it would otherwise have for other projects." 2013 WL 3242244 at *3. The court found the plaintiff to be a "permissible plaintiff under [the UCL and FAL]." *Id*. ("If a competitor has standing by reason of money or property spent to combat a proscribed business practice, as a competitor surely does, then why should a public interest organization not have standing for the same reason?") (emphasis added) (citing *S. Cal. Hous. Rights Ctr.v. Los Feliz Towers Homeowners Ass'n*, 426 F. Supp. 2d 1061, 1068-79 (C.D. Cal. 2005). The Northern District further stated that "even after the passage of Proposition 64, an advocacy organization has standing under Section 17200 when it diverts resources in response to challenged unlawful activity." *Id*.

expended money due to the defendant's acts of unfair competition.").[2] *Southern California Housing Rights Center* in turn found that the plaintiff had standing because it presented evidence of actual injury based on loss of financial resources. 426 F.Supp.2d at 1069.

In *Southern California Housing Rights Center v. Krug*, 564 F.Supp.2d 1138, 1152 (C.D. Cal. 2007) (citations omitted), the court analogized "diversion of resource damages" to the "'opportunity costs' or the activities [an organizational plaintiff] had to forego to address defendant's action." As directly applicable here, examples of "diversion of resources damages" included "the staff time spent investigating" the defendants' practices; the costs of conducting tests; and the cost of a survey. *Id.*; *see also Project Sentinel v. Komar*, No. 119CV00708DADEPG, 2021 WL 1346025, at *15 (E.D. Cal., Apr. 12, 2021), *report and recommendation adopted sub nom. Project Sentinel v. Komar*, No. 119CV00708DADEPG, 2021 WL 2284462 (E.D. Cal., June 4, 2021), *on reconsideration in part sub nom. Project Sentinel v. Komar*, No. 119CV00708DADEPG, 2021 WL 3051991 (E.D. Cal., July 20, 2021) (citing cases to find that "staff time," "testing expenses," and "community outreach expenses" constituted "diversion of resource damages" and upholding damage awards); *Petconnect Rescue, Inc. v. Salinas*, No. 20-CV-00527-H-DEB, 2021 WL 5178647 at *4 (S.D. Cal., Nov. 8, 2021) (finding that plaintiffs had UCL standing because "Organizational Plaintiffs incurred economic injury when they fielded inquiries from the public as the organizations' staff would otherwise be dedicated to the organizations' ordinary activities"); *National Coalition Government of Union of*

---

[2] Defendants' Reply in support of their Motion to Dismiss provides a cursory—and inaccurate—reference to *California Medical Assn. v. Aetna Health of California, Inc.,* 63 Cal.App.5th 660, 667 (2021) ("*CMA*"), review granted & nonpub. den. (No. S269212). Notably, the Court of Appeals decision that is on review stated that an organization producing evidence of economic injury to itself would have UCL standing, *CMA*, 63 Cal.App.5th 667, but found that a membership organization that diverts resources to assist its members cannot use that direct organizational injury as a basis for UCL standing. That is not at issue here, because Farm Forward incurred a personalized economic injury sufficient to find UCL and Article III standing.

*Burma v. Unocal, Inc.,* 176 F.R.D. 329, 342 (C.D. Cal. 1997) (characterizing plaintiff organization's diversion of resources as a "financial injury"); *Carijano v. Occidental Petroleum Corp.* 686 F.3d 1027, 1032 (9th Cir. 2012) (mem.) (conc. opn. of Wardlaw, J., denying rehg. en banc) (stating that plaintiff organization could show "economic harm" sufficient for UCL standing by "produc[ing] evidence of the manner in which [defendant's] conduct forced it to divert resources from its central mission . . . ."). )

The UCL's requirement for standing—that the plaintiff must have lost money or property—can be met when an organization diverts or expends economic resources. As the California Supreme Court has recognized, the legislative history does not "define or limit the concept of 'lost money or property.'" *Kwikset Corp. v. Superior Court*, 51 Cal.4th 310, 323 (2011). The "plain import" of this requirement is only that the plaintiff "must [] demonstrate some form of economic injury." *Id*. This showing can be made in "innumerable ways" and need not result in a calculable, out-of-pocket loss of cash. *Id.*

## C. Farm Forward Suffered Particularized and Concrete Economic Injury.

Article III organizational standing and the UCL's requirement that the plaintiff must have suffered a loss of "money or property," Bus. & Prof. Code, § 17204, requires that UCL plaintiffs like Farm Forward demonstrate particularized economic harm, not just political or other non-economic impact on the organization's stated policies or purposes. First, Farm Forward suffered an economic injury when it relied on Whole Foods' representations about its Beef Products and Farm Forward spent its own resources to promote Whole Foods products as "better" choices. FAC ¶¶ 82-84. Second, after Farm Forward suspected and ultimately concluded that Whole Foods' "No Antibiotics, Ever" advertising was misleading, Farm Forward devoted resources to investigating and mitigating the harm of that misleading advertising. FAC ¶ 88.

To be sure, Farm Forward alleges that it has expended staff time and other resources

to investigate and respond to Whole Foods' misleading advertising. The misleading advertising caused Farm Forward to expend "additional resources that they would not otherwise have expended, and in ways that they would not have expended them." *Friends of the Earth v. Sanderson Farms, Inc.*, 992 F.3d 939, 942 (9th Cir. 2021) (citing *Nat'l Council of La Raza*, 800 F.3d at 1040). This allegation suffices to establish that Plaintiff has suffered an injury in fact. *Id.* Like the organizational plaintiff in *Havens*, Farm Forward's work is multifaceted. In other words, it participates in multiple campaigns and actions. The time and resources that Plaintiff spent investigating and counteracting Whole Foods' conduct were time and resources that it could not spend on these other activities. Farm Forward incurred a "perceptible opportunity cost," which constitutes an injury in fact. *Nnebe*, 644 F.3d at 157.

That all this work—both the work Farm Forward first did alongside Whole Foods to promote its meat as "better" choices, and the later work it did combating Whole Foods' misleading marketing—is included within Farm Forward's "normal" organizational activities does not deprive it of standing, so long as Whole Foods' conduct has affected the balance of resources allocated across the organization's activities as a whole. *See Moya v. U.S. Dep't of Homeland Sec.*, 975 F.3d 120, 130 (2d Cir. 2020) (rejecting a similar argument). In other words, just because Farm Forward's mission is to end factory farming "does not mean that any resources spent on [ending factory farming] means it is going about its 'business as usual.'" *California v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 2023 WL 1873087, at *13–14. An organizational plaintiff simply must show that it has redirected resources to "combat the *specific challenged conduct*." *Rodriguez*, 930 F.3d at 1134 (emphasis added). For example, as the Ninth Circuit has explained:

> In *East Bay Sanctuary Covenant v. Trump*, 909 F.3d 1219 (9th Cir. 2018), *as amended by* 932 F.3d 742, 2018 U.S. App. LEXIS 37150, 2018 WL 8807133 (9th Cir. December 7, 2018), the plaintiff organizations created "education and outreach initiatives regarding the [challenged] rule." *Id.* at 1242. In

*National Council of La Raza v. Cegavske*, 800 F.3d 1032 (9th Cir. 2015), to counteract alleged voter registration violations, civil rights groups "expend[ed] additional resources" that "they would have spent on some other aspect of their organizational purpose." *Id.* at 1039. In these cases, the plaintiffs were not "simply going about their 'business as usual,'" *id.* at 1040-41, but had altered their resource allocation *to combat the challenged practices, see also Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1018 (9th Cir. 2013) (finding organizational standing where the plaintiffs "had to divert resources to educational programs to address its members' and volunteers' concerns about the [challenged] law's effect"); *Fair Hous. Council of San Fernando Valley v. Roommate.com, LLC*, 666 F.3d 1216, 1219 (9th Cir. 2012) (finding organizational standing where the plaintiff, in response to the defendant's challenged practices, "started new education and outreach campaigns targeted at discriminatory roommate advertising"); *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 943-44 (9th Cir. 2011) (finding organizational standing where resources directed toward "assisting day laborers during their arrests and meeting with workers about the status of the [challenged] ordinance would have otherwise been expended toward [the advocacy group's] core organizing activities"); *Smith*, 358 F.3d at 1105 (finding organizational standing where complaint was dismissed without leave to amend and plaintiff alleged it "divert[ed] its scarce resources from other efforts" so it could "monitor the [subject] violations and educate the public regarding the discrimination"); *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 905 (9th Cir. 2002) (finding organizational standing where plaintiff alleged it had expended thousands of dollars to "redress[ ] the impact" of defendant's discrimination and, as a result, was unable "to undertake other efforts to end unlawful housing practices"); *El*

*Rescate Legal Servs., Inc. v. Exec. Office of Immigration Review*, 959 F.2d 742, 748 (9th Cir. 1991) (finding organizational standing where plaintiffs "expend[ed] resources in representing clients they otherwise would spend in other ways").

*California v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 2023 WL 1873087, at *13–14 (quoting *Am. Diabetes Ass'n v. United States Dep't of the Army*, 938 F.3d 1147, 1154-55 (9th Cir. 2019)) (emphasis added).

That a plaintiff has previously engaged in a particular kind of activity—such as working to end factory farming—does not mean that the plaintiff is going about its "business as usual" if it engages in that substantive work *in response to the defendant's conduct*, so long as the uptick in that activity causes a diversion of resources away from the organization's affairs." *California v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 2023 WL 1873087, at *13–14 (citing *Nat'l Council of La Raza v. Cegavske*, 800 F.3d 1032, 1040-41 (9th Cir. 2015)) (emphasis in original). Here, Farm Forward "has not alleged that [it] is simply going about [its] business as usual unaffected by [Whole Foods'] conduct." *Id.*; *Sabra v. Maricopa Cty. Cmty. Coll. Dist.*, 44 F.4th 867, 878-80 (9th Cir. 2022); *cf. Fair Hous. Council*, 666 F.3d at 1219; *compare Am. Diabetes*, 938 F.3d at 1155 (noting that "the only resource the Association claims it diverted as a result of the New Policy [being challenged] is the time one of its two staff attorneys took to handle a single intake call"; this was just business as usual because Association's staff attorneys "dedicate a portion of their time to taking calls, and one [person] used that service" – there was no showing that, "as a result of the New Policy, the Association had altered or intended to alter its resource allocation to allow its attorneys to take a higher volume of calls or separately address the New Policy").

In *Friends of the Earth v. Sanderson Farms, Inc.*, 992 F.3d 939 (9th Cir. 2021), the Ninth Circuit distinguished between organizations that disseminated literature or started new campaigns in response to the challenged action and those that merely continued their

existing operations without change. *Id.* at 942. There, the organizational plaintiffs sought to enjoin Sanderson Farms' misleading advertisements, but after extensive discovery and depositions, the record demonstrated that even after they became aware of those advertisements, plaintiffs "simply continued doing what they were already doing," campaigning against the general use of antibiotics in animal agriculture, rather than responding more directly to the defendant's allegedly false advertising. *Id.* at 943 ("The question, then, is whether the (plaintiffs') activities were 'business as usual' and a continuation of existing advocacy, or whether they were an affirmative diversion of resources to combat Sanderson's representations.")). The Ninth Circuit concluded that the plaintiffs lacked UCL standing, but only because the evidence in the record showed that they had not diverted any organizational resources to *combat the effects of those advertisements*. *Id.* at 945.

Here, Farm Forward engaged in affirmative resource diversion because of the challenged advertising. And had Farm Forward not investigated Whole Foods' misleading marketing and made public its findings, the organization would have suffered injury to its reputation, and lost the support of both the public and the highest animal welfare farmers and ranchers, many of whom had expressed frustration with Whole Foods, and frustration with Farm Forward for their ongoing support of Whole Foods' certifier. FAC ¶ 94. Therefore, Farm Forward had to choose between diverting its resources to investigate and expose Whole Foods—economic injury—or losing the support of farmers, ranchers, and the public—reputational injury—making it clear that Farm Forward was forced into acting. *See, e.g., Rodriguez*, 930 F.3d at 1136 (must find the issue "requires" diverting resources); *La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1088 n.4 (9th Cir. 2010) (must be "forced"); *Ctr. for Biological Diversity v. Bernhardt, No.* 19-CV-05206-JST, 2020 WL 4188091, at *4-5 (N.D. Cal. May 18, 2020), at *4–5. Farm Forward's stake in the outcome is both personal and individual; Farm Forward acted in response to Whole Foods' challenged conduct to prevent injury to the

organization.

Defendants contend that Farm Forward's investigation and its campaign exposing Whole Foods were volitional and routine, and as a result, could not have constituted an injurious diversion of resources. Defs.' Reply, ECF No. 50 at 8. The Supreme Court, rejected that argument in 2022, stating: "we have made clear that an injury resulting from the application or threatened application of an unlawful enactment remains fairly traceable to such application, even if the injury could be described in some sense as willingly incurred." *Federal Election Commission v. Ted Cruz for Senate*, 142 S.Ct. 1638, 1647 (2022) (citing *Havens*). Not only does *Federal Election Commission* illustrate that voluntary acts suffice for standing, but it also cited *Havens* as its source for that point, underscoring the Court's confirmation that *Havens* is valid after *TransUnion*.

Farm Forward meets all the elements of the Ninth Circuit's longstanding test for organizational standing, which stems from *Havens* and is still good law and constitutionally viable following *TransUnion*. In fact, the *TransUnion* Court's analysis twice relied on *Havens* without any indication that the *Havens* holding should be questioned or modified. First, Whole Foods' actions frustrated Farm Forward's mission. Whole Foods advertises its Beef Products as "No Antibiotics, Ever" when "the meat comes from factory and other farms that administer antibiotics to cattle." FAC ¶ 87. This conflicted with Farm Forward's open and public endorsement of Whole Foods' meat. FAC ¶ 87. In other words, Farm Forward was promoting a product—and using its own financial resources to do so—that conflicted with its stated mission. Whole Foods misrepresented its Beef Products both to Whole Foods and to the public, undermining Farm Forward's work to promote "better" and "best" choices for consumers, and its mission to end factory farming. FAC ¶ 87. Second, Farm Forward seeks injunctive relief against Whole Foods, preventing Whole Foods from advertising its Beef Products in such a misleading way, and mandating that Whole Foods undertake a corrective campaign of notification at its own expense. FAC ¶ 173(D). Third, this relief would allow Farm Forward to redirect its

resources—spent on combating Whole Foods' false and deceptive marketing and business practices—on other activities that would advance its mission, such as its pandemics campaign. FAC ¶ 92. "Such concrete and demonstrable injury to the organization's activities—with the consequent drain on the organization's resources—constitutes far more than simply a setback to the organization's abstract social interests[.]" *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982); *see also TransUnion LLC v. Ramirez*, ——— U.S. ———, 141 S. Ct. 2190, 2204, 210 L.Ed.2d 568 (2021) ("If a defendant has caused [ ] monetary injury to the plaintiff, the plaintiff has suffered a concrete injury in fact[.]").

Thus, Farm Forward has sufficiently alleged injury-in-fact under *Havens* and *TransUnion*.

DATED: March 27, 2023                   Respectfully submitted,


/s/ *Paige M. Tomaselli*
Paige M. Tomaselli (SBN 237737)
Dylan D. Grimes (SBN 302981)
**GRIME LAW LLP**
730 Arizona Avenue
Santa Monica, CA 90401
Telephone: (310) 747-5095
ptomaselli@grimelaw.com
dgrimes@grimelaw.com



/s/ *Gretchen Elsner*
Gretchen Elsner
**ELSNER LAW & POLICY, LLC**
314 South Guadalupe Street, Suite 123
Santa Fe, NM 87501
Telephone: (505) 303-0980
gretchen@elsnerlaw.org

*Attorneys for Plaintiffs*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

**CERTIFICATE OF SERVICE**

I hereby certify that on March 27, 2023, I electronically filed the foregoing document using the Court's CM/ECF system, which will send notification of the filing of this document to the e-mail addresses registered in the CM/ECF system, as denoted on the Electronic Mail Service List.

Dated: March 27, 2023                    Respectfully submitted,

/s/ *Paige M. Tomaselli*
Paige M. Tomaselli (Bar ID CA 237737)
GRIME LAW, LLP
730 Arizona Avenue
Santa Monica, CA 90401
ptomaselli@grimelaw.com
Telephone: (310) 747-5095