BRIAN R. BLACKMAN (SBN 196996)
bblackman@blaxterlaw.com
J.T. WELLS BLAXTER (SBN 190222)
wblaxter@blaxterlaw.com
ERIN W. KEEFE (SBN 240639)
ekeefe@blaxterlaw.com
DAVID P. ADAMS (SBN 312003)
dadams@blaxterlaw.com
BLAXTER | BLACKMAN LLP
601 Montgomery Street, Suite 1110
San Francisco, California 94111
Telephone: (415) 500-7700

Attorneys for defendants WHOLE
FOODS MARKET SERVICES, INC.;
WHOLE FOODS MARKET CALIFORNIA,
INC.; and MRS. GOOCH'S NATURAL FOOD
MARKETS, INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SARA SAFARI, PEYMON KHAGHANI, on behalf of themselves and all others similarly situated, and FARM FORWARD, on behalf of the general public,<br><br>Plaintiffs,<br><br>v.<br><br>WHOLE FOODS MARKET SERVICES, INC., a Delaware corporation, WHOLE FOODS MARKET CALIFORNIA, INC., a California corporation, MRS. GOOCH'S NATURAL FOOD MARKETS, INC., doing business as Whole Foods Market, a California Corporation,<br><br>Defendants. | Case No. 8:22-CV-01562-JWH (KESx)<br><br>**JOINT STIPULATION REGARDING DEFENDANTS' MOTION TO STAY (L.R. 37-2)**<br><br>Date:      July 11, 2023<br>Time:     10:00 A.M.<br>Place:    411 West Fourth Street<br>            Courtroom 6D, 9th Floor<br>            Santa Ana, California 92701<br><br>The Honorable Karen E. Scott<br><br>Complaint Filed:     August 23, 2022<br>Discovery Cutoff:    Not Set<br>Pretrial-Conference:  Not Set<br>Trial Date:         Not Set |

## **<u>TABLE OF CONTENTS</u>**

I.     DEFENDANTS' INTRODUCTORY STATEMENT ............................................................ 1

II.    PLAINTIFFS' INTRODUCTORY STATEMENT ............................................................ 2

III.   DISPUTED ISSUE ONE: DEFENDANTS' MOTION TO STAY ...................................... 6

     1.    Defendants' Contentions .......................................................................... 6

         i.    Statement of Facts and Allegations. ............................................ 6

         ii.    Legal Standard ............................................................................ 9

         iii.   The Court Should Stay Discovery Pending a Decision on Defendants' Motion to Dismiss and Subsequent Pleading Challenges ....... 11

         iv.   Defendants' Proposed Solution ................................................. 16

     2.    Plaintiffs' Contentions ........................................................................... 16

         i.    Defendants Fail to Satisfy the Standard for a Stay ..................... 17

         ii.    Defendants' Stay Request Is Suspect and Inequitable ............... 18

         iii.   Defendants Must Initiate Document Production ......................... 19

IV.   DISPUTED ISSUE TWO: PLAINTIFFS' MOTION TO COMPEL ................................ 23

     1.    L.R. 37-1 Compliance ............................................................................ 23

         i.    Plaintiffs' Position on Plaintiffs' Motion to Compel ................. 23

         ii.    Plaintiffs' Proposed Resolution ................................................. 42

# I.    DEFENDANTS' INTRODUCTORY STATEMENT

In this action, plaintiffs Sara Safari, Peymon Khaghani, and Farm Forward (collectively "Plaintiffs") allege that defendants' Whole Foods Market Services, Inc. ("WFM Services"), Whole Foods Market California, Inc. ("WFM CA"), and Mrs. Gooch's Natural Food Markets, Inc.'s ("Mrs. Gooch's"; collectively "Defendants") falsely advertise beef products sold at Whole Foods Market stores in California under the slogan "No Antibiotics Ever."  Plaintiffs claim their testing of numerous beef products, purchased from Whole Foods Market stores across the country, found antibiotic residue in a single sample purchased from a Whole Foods Market store in San Francisco.  Based on this lone sample, Plaintiffs contend that all beef products sold at Whole Foods Market stores in California contain antibiotics and/or that Defendants do not have sufficient processes in place to ensure antibiotics are not used in the raising of the cattle used in the beef products sold at Whole Foods Market stores.

Defendants moved to dismiss Plaintiffs' First Amended Complaint ("FAC") in January 2023 on the grounds that Sara Safari and Peymon Khaghani (the "Individual Plaintiffs") lack Article III standing and failed to allege their fraud-based claims with sufficient particularity, and because Farm Forward lacked federal and statutory standing to sue under California's false advertising laws.  The Court ordered supplemental briefing on Article III standing issues in March and heard extensive argument on the motion in April 2023.  At the conclusion of the hearing, the Court indicated it was inclined to grant Defendants' motion with leave to amend and suggested the parties stipulate to continue the current case schedule to accommodate any amendment and subsequent pleading challenges.

In the months that Defendants' motion (and Defendants' earlier motion to dismiss Plaintiffs' initial complaint) has been pending, both sides have served extensive written discovery, including interrogatories and document requests.  The

parties' document discovery will require the location, review and production of a significant number of documents, including electronically stored information ("ESI") that will likely cost tens of thousands, possibly hundreds of thousands, of dollars to locate and produce. Defendants, therefore, seek an order staying discovery on the grounds that Defendants' pending motion to dismiss will likely dispose of the current claims or, at the very least, narrow the issues to address through discovery under Plaintiffs' FAC and any subsequent amended pleading. Continuing to push forward on discovery without knowing the scope of the potential claims, if any, that will survive Defendants' pleadings challenges, unnecessarily burdens both parties by forcing them to engage in fact finding regarding issues and claims that may not survive the pleading stage. It will also burden the Court with resolving a number of discovery issues tied to the breadth and scope of Plaintiffs' claims that will likely be resolved by its ruling on Defendants' motion, thus posing the risk of potentially inconsistent rulings between this Court and the district court. Accordingly, Defendants respectfully request that the Court stay discovery until Defendants' pending motion to dismiss—and any subsequent Rule 12 motion—is resolved and the surviving claims, if any, and defense have been fixed through amended pleadings.

## II.    PLAINTIFFS' INTRODUCTORY STATEMENT

Defendants promise "No Antibiotics, EVER" in their meat supply chain. *See* First Amended Complaint (FAC) 35 ¶ 1. On top of advertising the "No Antibiotics, Ever" standard, Defendants promised consumers, "[i]f it doesn't meet our standards, we won't sell it," misleading consumers into thinking that Defendants have verified compliance with their standard. FAC ¶ 45. Contrary to those promises, antibiotics are administered to the cattle that become Whole Foods beef products and Defendants do not verify compliance with their promised standard.

Key facts supporting those contentions, as alleged in the FAC (ECF No. 35), analyzed in the Opposition to the Motion to Dismiss (EFC No. 48), and discussed with Judge Holcomb at the April 7, 2023 hearing on Defendant's Motion (ECF No. 59), include:

1.    Farm Forward, the public interest organization plaintiff, tested the meat products using two different independent laboratories. One laboratory found monensin sodium, an antibiotic, in a Beef Product marketed as GAP Step 4 and USDA Certified Organic, and purchased from Whole Foods in San Francisco. Monensin sodium is marketed as a growth-promoting pharmaceutical. Another laboratory found fenbendazole, an antiparasitic pharmaceutical, in five Beef Product samples purchased from Whole Foods in Salt Lake City and Chicago. All five Beef Product samples were marketed as GAP certified and four of these Beef Products were marketed as GAP Step 4. FAC ¶¶ 60-61.

2.    FoodID, a third party, tested 699 "raised without antibiotics" cattle, and expected that zero animals would test positive for antibiotics. FAC ¶ 62. But 42% of feedyards providing "raised without antibiotics" cattle had at least one animal test positive. FAC ¶ 62(a). When FoodID separately analyzed the evidence of antibiotics residue in Global Animal Partnership (GAP) rated cattle, the certification program used by Whole Foods, FoodID found that approximately 26% of GAP cattle came from a lot where at least one animal tested positive, and 22% of GAP certified cattle came from a lot where two animals tested positive for antibiotics. FAC ¶ 62(c). As the scientists stated in their peer-reviewed journal article, "both animals testing positive from a lot would suggest a *systemic* problem" in the supply chain. FAC ¶ 62 (emphasis added).

3.    Defendants knew that they were not verifying their beef suppliers to determine if their "No Antibiotics, Ever," claim was true. In 2017, Farm Forward brought to Defendants' attention a pharmaceutical testing method that Whole Foods

could use to verify Whole Foods' promises to consumer purchasers. Defendants' Executive Leader of Meat and Poultry, Ms. Anne Malleau dismissed the opportunity without proposing an alternative, commenting that the "the risk management piece was not well thought out. One of them had all of the risk being assumed by a retailer...." FAC ¶ 69.

After a scheduling conference with counsel on December 13, 2022, Judge Holcomb set the class certification motion deadline for October 6, 2023 (ECF No. 45).

Plaintiffs served discovery requests on February 10, 2023, **four months ago**. As of this writing, Defendants have failed to substantively respond to **any** of Plaintiffs' requests, failed to produce documents (other than a 2-page organizational chart marked confidential), failed to answer interrogatories, and delayed responding to requests to meet and confers over their failure to participate in discovery. Declaration of Gretchen Elsner ("Elsner Decl.") Ex. A (letter from P. Tomaselli to Defendants dated June 6, 2023). The requests to which Defendants have failed to respond:

1.    Plaintiffs served thirty (30) Requests for Production on February 10, 2023 and Defendant Whole Foods Market Services, Inc. served objections on March 13, 2023. Keefe Decl., Exs. 3, 4. The parties met and conferred on April 3, 2023, and Plaintiffs followed-up in writing on April 28, 2023, to detail Plaintiffs' concerns. Keefe Decl. Ex. 7. As of this writing, Defendants have not responded to Plaintiffs' letter (other than to say they will respond to the letter "in due course," Keefe Decl. Ex. 8) and Defendant has not produced any responsive documents.

2.    Plaintiffs served two interrogatories, the same two interrogatories, to each of the three Defendants, on April 28, 2023. Defendants served objections, without any responses or any verification by Defendants, on May 30, 2023. Elsner Decl. Exs. B, C, D. The next day, on May 31, 2023, Plaintiffs requested a meet and

confer. When Defendants did not respond, Plaintiffs asked again on June 6 for a meet and confer and provided a letter detailing Plaintiffs' concerns. Elsner Decl. Ex. A. Defendants have now offered June 15 or 16, 2023, to discuss their lack of response to the two interrogatories.

3.    Plaintiffs circulated a draft ESI Protocol to Defendants on November 21, 2022. As of this writing, even though Plaintiffs accepted all of Defendants' substantive edits to the draft ESI Protocol (provided nearly six months after Plaintiffs circulated their draft ESI Protocol), Defendants have not consented to Plaintiffs submitting the stipulation and accompanying order to the Court.

As Defendants concede below, Defendants served discovery requests to Plaintiffs, to which Plaintiffs have responded.

1.    Plaintiff Farm Forward responded to interrogatories on April 20, 2023, Elsner Decl. Ex. E, and began its rolling production of documents that same day. Elsner Decl. ¶ 6.

2.    Plaintiffs Sara Safari and Peymon Khaghani responded to interrogatories on May 22, 2023. Keefe Decl. Ex. 5, 6.

3.    Plaintiffs served more than 650 pages of documents on June 6, 2023. Elsner Decl. ¶ 7.

Defendants pending motion for stay is simply a delay tactic to avoid complying with this Court's Scheduling Order, ECF No. 45, and Defendants' discovery obligations under the Federal Rules of Civil Procedure. This Court should deny Defendants' Motion to Stay, and instead grant Plaintiffs' Motion to Compel responses to the two interrogatories that Plaintiffs served, and order Defendants to begin a rolling production of documents. Defendants' delay tactics are a violation of Federal Rule 37. Fed. R. Civ. P. 37.

## III.    DISPUTED ISSUE ONE: DEFENDANTS' MOTION TO STAY

The parties dispute whether the Court should stay discovery pending resolution of Defendants' pending motion to dismiss and subsequent pleading challenges.

### 1.  DEFENDANTS' CONTENTIONS

i.    **Statement of Facts and Allegations.**

1.    **Plaintiffs' Allegations and Defendants' Motion to Dismiss.**

The Individual Plaintiffs allege they purchased unidentified "Beef Products" on numerous occasions from their local Whole Foods Market stores in Northern and Southern California over the last several years.  Declaration of Erin Keefe ("Keefe Decl."), ¶2, Ex. 1 [ECF No. 35], ¶¶10-11 & 17-18.  Plaintiffs contend Defendants' representations that their beef products contain "No Antibiotics, Ever" and "No antibiotics or growth hormones, ever" are false and misleading.  *Id.* at ¶2, Ex. 1, ¶¶1 & 41-57.

Plaintiffs claim that testing by plaintiff Farm Forward found that a single beef product sold at Whole Foods Market contained antibiotic and other pharmaceutical residues.  *Id.* at ¶3, Ex. 1, ¶¶1-2 & 59-61.  The Individual Plaintiffs contend they have been injured because they would not have purchased or would not have paid as much for the beef products had they known the cattle used in the products were raised with antibiotics.  *Id.* at ¶3, Ex. 1, ¶¶15 & 22.  Farm Forward alleges it has been injured by expending resources in the alleged development and promotion of animal welfare standards and Whole Foods Market's meat products, and its subsequent investigation and marketing campaign to correct Defendants' alleged misstatements.  *Id.* at ¶3, Ex. 1, ¶¶15 & 22.

Based on these allegations, Plaintiffs assert claims of unlawful and deceptive business practices and advertising in violation of California's Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, et seq. ("CLRA"), Unfair Competition Law,

Cal. Bus. & Prof. Code §§17200, et seq. ("UCL"), and False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, et seq. ("FAL"), breach of express warranty, unjust enrichment, fraudulent concealment and intentional misrepresentation.  *Id.* at ¶4, Ex. 1, ¶¶106-172.  Plaintiffs seek to bring these claims on behalf of a class of all purchasers of beef products at Whole Foods Market stores in California during the statutory period.  *Id.* at ¶4, Ex. 1, ¶95.

On January 10, 2023, Defendants filed a Motion to Dismiss Plaintiffs' FAC in its entirety on numerous grounds, including the grounds that the Individual Plaintiffs' failure to identify what beef products they purchased from Defendants prevented them from satisfying Rule 9(b)'s particularity requires and from adequately alleging a particularized and concrete injury, or economic injury, so as to establish Article III standing to sue.  Keefe Decl., ¶5, Ex. 2, [ECF No. 46].  Defendants also argued that Farm Forward's UCL and FAL claims failed because it lacked organizational standing to sue Defendants. *Ibid.*

On March 14, 2023, the Court requested supplemental briefing by both parties to address issues raised in the Motion to Dismiss.  *See* ECF No. 54.  Plaintiffs and Defendants filed their supplemental briefing on March 27, 2023.  *See* ECF Nos. 55 & 57.  The Court then heard extended argument on Defendants' Motion to Dismiss on April 7, 2023.  At the end of the hearing, Judge John W. Holcomb indicated that he was inclined to grant Defendants' Motion to Dismiss with leave to amend.  Keefe Decl., ¶6.  Plaintiffs' counsel represented during the hearing that Farm Forward would not be amending any allegations related to its standing in the FAC.  *Ibid.*

### 2.    Plaintiffs' Discovery.

On February 10, 2023, Plaintiffs served their Requests for Production, Set One, on WFM Services.  Keefe Decl., ¶7, Ex. 3 [Plaintiffs Requests for Production, Set One].  Many of the requests (1, 4, 5, 7, 8, 9, 10, 11, 12, 13, 14, 17, 18, 19, 20, 21, 22, 23, 24, 27, 28, 29) implicated documents (such as product labels, supplier

and marketing agreements, internal communications, sales, etc.) related to *all* beef products sold across all Whole Foods Market stores in California during the class period. *Ibid.* WFM Services served timely responses on March 13, 2023, objecting to many of these requests on the grounds that they were overly broad and unduly burdensome because they called for production of documents related to all Defendants' beef products. Keefe Decl., ⁋8, Ex. 4 [WFM Services' Response to Plaintiffs Requests for Production, Set One]. WFM Services also agreed to meet and confer with Plaintiffs to determine what products Plaintiffs purchased, and then use this information to provide responsive documents to Plaintiffs' discovery requests (i.e., information narrowed to the specific products for which Plaintiffs established standing). *Ibid.* WFM Services also agreed to meet and confer with Plaintiffs to determine appropriate ESI protocols and search terms to locate responsive documents. *Ibid.*

On March 29, 2023, Defendants propounded written discovery to Plaintiffs asking Plaintiffs to identify by date, store, product type, product brand name, UPC number and purchase price each and every beef product Plaintiffs purchased at Whole Foods Market stores in California during the statutory period. Farm Forward responded to these requests and disclosed the beef products that it purchased from Whole Foods Market stores and tested. Keefe Decl., ⁋9. The Individual Plaintiffs, however, served responses on May 22, 2023, that did not identify the specific beef products they purchased. Keefe Decl., ⁋9, Exs. 5-6 [Individual Plaintiffs Responses to Defendants' Interrogatories, Set One]. Defendants also served Farm Forward with document requests that will likely require extensive ESI searches to locate responsive information. Keefe Decl., ¶9.

On April 28, 2023, Plaintiffs sent WFM Services a meet and confer letter regarding WFM Services' Responses to Plaintiffs' Requests for Production, Set One. Keefe Decl., ⁋10, Ex. 7 [April 28, 2023 Letter]. That same day, Plaintiffs also

served Plaintiffs' Interrogatories, Set One, on Defendants seeking to have each Defendant identify all of its beef suppliers for beef sold in Whole Foods Market stores in California.  Keefe Decl., ⁋10.

Defendants replied on May 12, 2023, informing Plaintiffs that, for the reasons set forth in this motion, Defendants intended to move to stay and asking if Plaintiff would stipulate to this motion, and if not, meet and confer with Defendants.  Keefe Decl., ⁋11, Ex. 8 [May 12, 2023 Letter].  On May 22, 2023, Plaintiffs sent a reply letter to Defendants contending that a stay was not needed and setting a time for the parties to meet and confer.  Keefe Decl., ¶11, Ex. 9 [May 22, 2023 Letter].  On May 26, 2023, the counsel for the parties met and conferred by phone but were unable to resolve their differences.  Keefe Decl., ⁋11.

## ii.    Legal Standard

A trial court is vested with the discretion to stay proceedings before it. *Ryan v. Gonzales*, 568 U.S. 57, 74, (2013) ("A court's decision to grant a stay is "'generally left to the sound discretion of district courts."'"), quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).  The power to stay "is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co*., 299 U.S. 248, 254 (1936).

"'Where it is proposed that a pending proceeding be stayed, the competing interests which will be affected by the granting or refusal to grant a stay must be weighed.'" *Lockyer v. Mirant Corp*., 398 F.3d 1098, 1110 (9th Cir. 2005), quoting *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962).  "'Among these competing interests are [1] the possible damage which may result from the granting of a stay, [2] the hardship or inequity which a party may suffer in being required to go forward, and [3] the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to

result from a stay.'" *Id.*, quoting *CMAX*, 300 F.2d at 268. "The proponent of a stay bears the burden of establishing its need." *Clinton v. Jones*, 520 U.S. 681, 708 (1997).

In the context of discovery stays, Federal Rule of Civil Procedure 26(c) provides that a court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." A party seeking a stay of discovery must demonstrate "a particular and specific need for the protective order, as opposed to ... stereotyped or conclusory statements." *Skellerup Indus. Ltd. v. City of Los Angeles*, 163 F.R.D. 598, 600 (C.D. Cal. 1995) (citations and internal quotation marks omitted). The court's decision to stay discovery pending the resolution of a potentially dispositive motion is within its discretion. *Wood v. McEwen*, 644 F.2d 797, 802 (9th Cir. 1981) (reviewing court's decision to stay discovery for abuse of discretion).

Although the Ninth Circuit has not established a clear standard for district courts to apply when determining whether to stay proceedings pending the resolution of a potentially dispositive motion, California district courts often apply a two-part test in which "it is appropriate to stay discovery if (1) 'the pending motion [is] potentially dispositive of the entire case, or at least dispositive on the issue at which discovery is aimed,' and (2) 'the pending, potentially dispositive motion can be decided absent additional discovery.'" *Quezambra v. United Domestic Workers of Am. AFSCME Loc. 3930*, 2019 WL 8108745, at *2 (C.D. Cal. Nov. 14, 2019), citing *Mlejnecky v. Olympus Imaging Am., Inc.*, 2011 WL 489743, at *5 (E.D. Cal. Feb. 7, 2011) (collecting cases). A second approach requires the court to "take a preliminary peek at the merits of the allegedly dispositive motion to see if on its face there appears to be an immediate and clear possibility that it will be granted." *GTE Wireless, Inc. v. Qualcomm, Inc.,* 192 F.R.D. 284, 286 (S.D. Cal. 2000) (citation and internal quotation marks omitted).

A third standard requires a "case-by-case" analysis of several factors, including:

> [T]he type of pending dispositive motion and whether it is
> a challenge as a matter of law or to the sufficiency of the
> complaint allegations; the nature and complexity of the
> action; whether counterclaims and/or cross-claims have
> been asserted; whether some or all of the defendants join
> in the request for a stay; the posture or stage of the
> litigation; the expected extent of discovery in light of the
> number of parties and complexity of the issues in the case;
> and any other relevant circumstances.

*Nguyen v. BMW of N. Am.*, LLC., 2021 WL 2284113, at *3 (S.D. Cal. June 4, 2021).

Finally, "[i]n evaluating a motion to stay, a court inevitably must balance the harm produced by a delay in discovery against the possibility that the motion will be granted and entirely eliminate the need for such discovery." *Driscoll's, Inc. v. Cal. Berry Cultivars, LLC*, 2021 WL 4942877, at *5 (E.D. Cal. Oct. 22, 2021), reconsideration denied, 2021 WL 5989711 (E.D. Cal. Dec. 17, 2021) (citation and internal quotation marks omitted).

**iii.    The Court Should Stay Discovery Pending a Decision on Defendants' Motion to Dismiss and Subsequent Pleading Challenges.**

The Court should stay discovery pending resolution of Defendants' pleading challenges because Defendants' motion has the potential to dispose of the entire case, or significantly narrow the scope of Plaintiffs' claims thereby conserving party and judicial resources, no discovery from Defendants is needed to resolve the motion, and the current discovery is unduly burdensome.

**3.    If Granted, Defendants' Pending Motion to Dismiss Will Dispose of the Entire Action or Significantly Narrow the Scope of Plaintiffs' Claims.**

Defendants' pending motion to dismiss will either result in Plaintiffs' claims being dismissed entirely (whether through dismissal based on specific attacks on Plaintiffs' claims, Defendants' arguments that Farm Forward lacks organizational standing and Individual Plaintiffs failed to identify what beef products they purchased, and thus cannot establish their fraud-based claims or Article III standing) or significantly narrowed (if the Individual Plaintiffs are granted leave to amend and identify what beef products they purchased). In the first instance, all pending discovery will be moot. In the later, discovery could be significantly narrowed based on the issues or parties dismissed by the Court and the limited number of beef products for which Plaintiffs have standing, i.e., not the entire bevy of beef products sold at Whole Foods Market stores in California during the class period.

Defendants' Motion to Dismiss will either dismiss or narrow the claims of the Individual Plaintiffs. Defendants' motion argues that the Individual Plaintiffs failure to identify what products they purchased prevents them from adequately alleging fraud under Rule 9(b)'s heightened pleading standard and from adequately alleging a particularized and concrete injury, or economic injury, so as to establish Article III standing to sue. If the Court grants Defendants' motion without leave to amend, then no discovery is warranted, and the stay will protect Defendants from the burden of responding to discovery in a case never destined to pass the pleading stage. If, on the other hand, the Court grants the motion but allows the Individual Plaintiffs leave to amend to identify what products they purchased, then the scope of this case will be limited to these products only. This will have a direct bearing on the scope of relevant products in discovery, and the burden on Defendants to search for and produce information and documents relevant to these products.

Moreover, Plaintiffs should not be allowed to use the time during which Defendants' motion is under submission to conduct a fishing expedition into all beef products sold at Whole Foods Market stores so they can in turn identify all of those

products in an amended pleading instead of the specific products they actually purchased.  Plaintiffs are not entitled to use the discovery processes "to engage in 'fishing expeditions'" where they have no basis other than gross speculation to claim that some, most or all beef products sold at Whole Foods Market violate its antibiotic representations.  *See*, *Webb v. Trade Joe's Co.*, 999 F.3d 1196, 1204 (9th Cir. 2021); *see also Souter v. Edgewell Personal Care Co.*, No. 20-cv-1486-TWR, 2022 WL 4088614, at *5 (S.D. Cal. Sept. 6, 2022) (plaintiff cannot use discovery as a "'fishing expedition' to substantiate a claim for relief.")

Defendants' Motion to Dismiss may entirely dispose of Farm Forward's claims, or dismiss Farm Forward's FAL and UCL claims because the entity lacks organizational standing.  In their motion, Defendants contended Plaintiffs failed to show how Defendants' alleged misrepresentations forced Farm Forward to divert its resources to establish organizational standing.  Moreover, as Defendants argued in their supplemental briefing requested by the Court, organizational standing based on a theory of diversion of resources is contrary to the Supreme Court's most recent analysis of Article III standing in *TransUnion LLC v. Ramirez*, 141 S.Ct. 2190 (2021).  If Farm Forward's claims are dismissed, then no discovery is proper.  If they are paired down, then discovery will need to be paired down to address those claims which remain.

### 4.    No Discovery is Needed to Resolve the Pending Motion to Dismiss.

No discovery from Defendants is needed for the Court to resolve Defendants' Motion to Dismiss.  The relevant issues in Defendants' Motion are what products the Individual Plaintiffs purchased (needed for Plaintiffs to establish Article III standing and their fraud claim) and additional facts substantiating Farm Forward's claim that it has organizational standing because it diverted resources from its mission to address Defendants' alleged misrepresentations.  Should the Court decide to dismiss on these grounds and grant Plaintiffs leave to amend, all the relevant

additional facts needed to prevail on a subsequent pleading challenge are in the
possession of Plaintiffs, not Defendants. It is the Individual Plaintiffs who know
what beef products they purchased. Not Defendants. It is Farm Forward that
possesses the facts needed to bolster its organizational standing argument. Not
Defendants. As discussed further in the next section, none of the discovery
propounded to Defendants goes to these issues.

**5.    Plaintiffs Have Propounded Unduly Burdensome and Oppressive
Discovery.**

Plaintiffs have already propounded on Defendants 30 requests for production
as well as interrogatories. Defendants responded to Plaintiffs' request for
production as best they could, asking the Plaintiffs to identify what beef products
they purchased from Defendants so that Defendants could produce the relevant
responsive documents (supplier agreements, labels, correspondence, etc.) related to
those products. Plaintiffs, instead, insisted that Defendants respond and produce this
material as to every beef product sold in Whole Foods Market stores during the
relevant period. This production would implicate a staggering number of
documents, some of which would have to be manually pulled by different internal
teams from their various and disparate locations (e.g., product labels, supply
agreements, in-store marketing materials, etc.) and many others of which would
have to be located, reviewed and processed for production under a vast ESI terms
and connectors search through the email files of Defendants' relevant team members
(Defendant anticipate having to search the files of roughly 17 different custodians to
locate potentially responsive information). Keefe Decl., ⁋12.

Pulling and producing the former category of documents as to *every beef
product* sold in California during the relevant period would take significant
employee and attorney time, and the latter category of ESI documents possess
potentially hundreds of hours of attorney time reviewing documents for

responsiveness and privilege.  Keefe Decl., ¶12.  The costs associated with this

unfettered scope of production potentially run into the hundreds of thousands of

dollars.  *Ibid.*  The burden of responding to this fishing expedition is simply not

justified for claims that have not yet even passed the pleading stage, and which may

be significantly narrowed pending resolution of Defendants' pleading challenges.

Conversely, Plaintiffs suffer no harm if discovery is delayed until this Court

resolves Defendants' pleading challenges.  In addition, a stay would protect

Plaintiffs from responding to the document discovery demanded by Defendants that

will likely involve significant ESI expense for Plaintiffs and their counsel.

Importantly, staying discovery will both conserve judicial resources and

prevent potential inconsistent rulings. If discovery is not stayed, the parties will

likely engage in extensive motion practice regarding the proper scope of discovery

in this case where the pleadings are not settled.  This will pose a significant burden

on the Court's docket as the parties seek rulings on the discovery issues discussed in

this motion, such as whether the Individual Plaintiffs are entitled to obtain discovery

regarding products they did not purchase.

Not only will these matters burden the Court and strain judicial resources,

they will also require the Court to rule on substantive issues that overlap with those

in Defendants' Motion to Dismiss.  For instance, to rule on the issue of whether the

Individual Plaintiffs are entitled to discovery on products they did not purchase, this

Court will be called on to rule on whether Plaintiff has Article III standing to sue

regarding these products. This ruling could potentially conflict with Judge

Holcomb's eventual ruling on Defendants' Motion to Dismiss. Thus, if this Court

declines to grant Defendants' request for a stay, it not only risks wasting judicial

resources but also potential inconsistent rulings between this the magistrate and

district judges assigned to this case.

Plaintiffs will likely contend their broad and expansive discovery is proper because Courts may certify a class based on purchases of products that are substantially similar to those purchased by the named plaintiffs. *Norman v. Gerber Prod. Co.*, No. 21-CV-09940-JSW, 2023 WL 122910, at *4–5 (N.D. Cal. Jan. 6, 2023) (When determining if products not purchased by plaintiff are substantially similar, courts look whether the products were all manufactured by defendant, all contained the same misrepresentation and all had the same misleading effect). This argument fails because Plaintiffs fail to allege their claims with particularity. As a result, the Court and Defendants do not know which products they purchased and thus cannot analyze whether they are substantially similar to Defendants' other beef products (which may vary based on supplier, time, label statements, and production processes). In short, without identifying what products were purchased, Plaintiff cannot simply bootstrap all Defendants' beef products into this suit, and then use that expended scope to enlarge the size of the discovery pond for their intended fishing expedition.

iv.      **Defendants' Proposed Solution**

Defendants request that the Court issue a stay of discovery until Defendants' Motion to Dismiss, and all subsequent pleading challenges, are decided.

## 2.  <u>PLAINTIFFS' CONTENTIONS</u>

As Defendants concede, John W. Holcomb indicated that he was inclined to grant Defendants' Motion to Dismiss, at least in part, *with leave to amend*. Indeed, Judge Holcomb's statement addressed the individual consumer plaintiffs and the Court did not indicate whether it would grant or deny the motion regarding Farm Forward, the public interest organizational plaintiff. The Court referred to the exchange of Initial Disclosures, and Plaintiffs advised the Court that discovery had begun. The Court made no mention of staying discovery at this time, nor did Defendants. Defendants do not have any basis to unilaterally and without Court

permission refuse to engage in discovery and delay meet and confers. To do so is a violation of Federal Rule 37.

i.     **Defendants Fail to Satisfy the Standard for a Stay**

Defendants bear the burden of establishing the need for a stay. *Clinton v. Jones*, 520 U.S. 681, 708 (1997). Yet Defendants' reasoning is that Plaintiffs' discovery is "potentially … not proportional to the needs of the case." It is incumbent upon Defendants to illustrate which discovery is not proportional and why. Satisfying the "good cause" obligation is a challenging task. A party seeking "a stay of discovery carries the ***heavy burden*** of making a 'strong showing' why discovery should be denied." *Gray v. First Winthrop Corp.*, 133 F.R.D. 39, 40 (N.D. Cal. 1990) (citing *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir.1975) (emphasis added). Defendants have not satisfied the good cause obligation, nor can they meet this heavy burden.

A court should only stay discovery while a dispositive motion is pending "when there are no factual issues in need of further immediate exploration, and the issues before the Court are purely questions of law that are potentially dispositive." *Skellerup Indus. Ltd*., 163 F.R.D. at 601 (citing *Hachette Distribution, Inc. v. Hudson County News Co*., 136 F.R.D. 356, 358 (E.D.N.Y.1991)); *see also Luna*, (a stay is only appropriate when "the pending, potentially dispositive motion can be decided absent additional discovery."). Here, the Motion to Dismiss hearing was overwhelmingly focused on the individual Plaintiffs' standing, and the Court's standing inquiry for the individual consumers was a mixed question of law and fact. As the Court intimated at the April 7, 2023 hearing, discovery is related to, and could support, Plaintiffs' response to Defendants' current or any potential future motion to dismiss. *See Alaska Cargo Transp., Inc. v. Alaska R.R. Corp*., 5 F.3d 378, 383 (9th Cir.1993) (stating the district court would have abused its discretion in staying discovery if the discovery was relevant to the pending motion to dismiss).

### ii.    Defendants' Stay Request Is Suspect and Inequitable

Defendants have served discovery requests on Plaintiffs and received substantive responses and more than 600 pages of documents but wish for discovery obligations to be on a one-way street. If Defendants truly believed that their Motion to Dismiss (ECF No. 46, filed on January 10, 2023) merited a stay, there was ample time to seek a stay after the motion was fully briefed. Critically, absent one issue that the parties were able to resolve during meet and confer efforts in November (subject matter jurisdiction), *see* Elsner Decl., Ex. G, ECF No. 46 is nearly identical to their October 21, 2022 Motion, ECF No. 24, Elsner Decl., Ex. F. Indeed, Defense Counsel stated "we … plan to challenge the FAC on the other grounds we have discussed." Elsner Decl., Ex. H. In other words, Defendants have known the parameters of their Motion to Dismiss since October 2022, and definitively since December 30, 2022. Yet they did not seek a stay of discovery.

Instead of promptly seeking a stay, Defendants served interrogatories on March 21, 2023—three months after meet and confer efforts on the Motion to Dismiss concluded—and served requests for production on March 29, 2023. Now that Plaintiffs have responded to all of Defendants' interrogatories and requests for production in good faith and have begun their rolling document production, while Defendants have not answered the two interrogatories or produced any documents, Defendants seek a stay. Defendants' proposed motion to stay is suspect, inequitable, and untimely.

Defendants contend, above at page 15, "a stay would protect Plaintiffs from responding to the document discovery demanded by Defendants that will likely involve significant ESI expense for Plaintiffs and their counsel." While Plaintiffs appreciate Defendants' apparent concern for Plaintiffs and their counsel, Plaintiffs are not seeking protection from their discovery obligations, have substantively responded, and have timely produced their first two sets of documents.

1

2    **iii.    Defendants Must Initiate Document Production**

3    Defendants' reasons for failing to respond to the February 10, 2023 requests

4    for production for which Defendants now seek a stay lack merit. Plaintiffs addressed

5    this via letter dated April 28, 2023, Keefe Decl. Ex. 7. to which Defendants have not

6    yet substantively responded. Defendants' responses regurgitate boilerplate objections,

7    and repeatedly claim that definitions and requests are "vague, overly broad, unduly

8    burdensome, seeks information that is neither relevant to the claims" or they are not

9    "proportional." The general underpinning of this objection is that Plaintiffs have not

10   produced information on the specific products they purchased or the stores they were

11   purchased from. Yet Defendants fail to explain with specificity why the requested

12   information is not proportional to Plaintiffs' claims, and Defendants have not

13   submitted any evidentiary declarations supporting such objections. Not only does this

14   objection violate the federal discovery rules, but it also is based on a misunderstanding

15   or incomplete reading of the First Amended Complaint. First, Plaintiffs purchased

16   Beef Products and challenge Defendants' marketing of all its Beef Products; the FAC

17   is not limited to a particular cut of meat or a particular brand. Indeed, as Plaintiffs

18   discovery responses indicate, all Plaintiffs were exposed to advertising that relates to

19   all the Beef Products that Defendants sell. Further specificity is not required at this

20   stage of litigation.

21   Even if further specificity were required, Plaintiffs' discovery responses

22   confirm that Plaintiffs purchased many—if not all—the available Beef Products

23   across all categories of Beef Products—packaged, butcher, store brand, and prepared

24   foods—that Defendants sell. On April 20, 2023, Plaintiff Farm Forward produced to

25   a list of the specific products it purchased. *See* Elsner Decl., Ex. E (FF 0001-0007).

26   On May 22, 2023, Plaintiffs Safari and Khagani responded to interrogatories

27   discussing the products they purchased. Keefe Decl. Exs. 5, 6. All three Plaintiffs

28

identified the Whole Foods Market stores where they purchased Beef Products. FAC ¶¶ 11, 18, 59; Keefe Decl. Ex. 1. As Defendants know, this case challenges universal advertising representations regarding substantially similar products and therefore it is not proper to evade discovery obligations based on Defendants' attempt to narrow the case to only specific items purchased by a class representative.

It is contrary to Ninth Circuit law for Defendants to attempt to narrow this case—and especially discovery—to only specific Beef Products that Plaintiffs purchased. In this Circuit, plaintiffs are permitted to bring claims for products that they did not purchase as long as the products and alleged misrepresentations are substantially similar. *Norman v. Gerber Prod. Co.*, No. 21-CV-09940-JSW, 2023 WL 122910, at *9–10 (N.D. Cal. Jan. 6, 2023) (finding that Plaintiff sufficiently alleged that the Products she did not purchase are substantially similar to the Product she did purchase and thus had standing to challenge those products); *Miller v. Ghiradelli Chocolate Co.*, 912 F. Supp. 861, 869 (N.D. Cal. 2012); *Maisel v. S.C. Johnson & Son, Inc.*, No. 21-CV-00413-TSH, 2021 WL 1788397, at *4 (N.D. Cal. May 5, 2021) (collecting cases and stating that even diverse products that bear similar marketing have been considered "substantially similar."); *Figy v. Frito-Lay N. Am., Inc.*, 67 F. Supp. 3d 1075, 1082-83 (N.D. Cal. 2014). The test is whether there is substantial similarity between the products at issue or that the alleged misrepresentations must be similar across product lines. *Miller*, 912 F. at 869; *Astiana v. Dreyer's Grand Ice Cream, Inc.*, No. C-11-2910 EMC, 2012 WL 2990766, at *11 (N.D. Cal. July 20, 2012) ("[T]he critical inquiry seems to be whether there is sufficient similarity between the products purchased and not purchased." ); *see Anderson v. Jamba Juice Co.*, 888 F. Supp. 2d 1000, 1006 (N.D. Cal. 2012) ("If there is a sufficient similarity between the products, any concerns regarding material differences in the products can be addressed at the class certification stage."). In *Anderson v. Jamba Juice Co.*, the district court held that the plaintiff, who purchased

several flavors of at-home smoothie kits labeled "All Natural," had standing to bring
claims on behalf of purchasers of other flavors because the products were sufficiently
similar and because the "same alleged misrepresentation was on all of the smoothie
kit[s] regardless of flavor." 888 F. Supp. 2d 1000, 1006 (N.D. Cal. 2012). In contrast,
in *Miller*, the court dismissed claims on the four products the plaintiff did not purchase
because not only were the products different, baking chips, three drink powders, and
wafers but the labeling of the products was also different. *Miller*, 912 F. Supp. 2d at
870-71.

Here, the products at issue are all substantially similar because they are
comprised entirely of beef even though Defendants sell different cuts of beef and beef
from multiple—undisclosed—producers. For example, in Defendants' objections,
they argue that "although Plaintiff Sara Safari may allege facts suggesting the cut of
New York Steak she purchased at her local Whole Foods Market contained
antibiotics, these facts do not suggest that every New York Steak sold across the
country, sourced from other suppliers, at other times, contained antibiotics." As an
initial matter, this case is currently California-specific. Moreover, the relevant facts
are that Whole Foods' California Beef Products come from the same small subset of
suppliers—suppliers that Defendants refuse to disclose at their stores to consumers
and to Plaintiffs pursuant to discovery—and Whole Foods (not the individual
suppliers) ***sold all of the products***.

Defendants fail to acknowledge that Ms. Safari can purchase Country Natural
Beef Boneless Beef Ribeye Steak, Country Natural Beef Top Sirloin Steak, Country
Natural Beef Ground Beef 80% Lean / 20% Fat, Country Natural Beef Butcher Blend
Ground Beef Burgers, and Country Natural Beef Value Pack Ground Beef 80% Lean
/ 20% Fat at her Tustin, CA store. However, she can also buy a dozen or more cuts of
beef—such as ground beef, chuck roast, sirloin, stew meat, NY Steaks, Rib Eye
steaks, London broil, tenderloin, beef bones, liver, offal, and porterhouse steaks—at

the butcher counter without any identification whatsoever as to who supplied that Beef Product to Whole Foods. Ms. Safari verified that she shopped mostly at the butcher counter was not told the identity of Defendants' supplier; instead, these products are labeled only by the cut, the GAP rating, and their pasture/ organic/ grass-fed status. Thus, these products are all substantially similar in that they contain only beef sold at Whole Foods Markets throughout California.

Moreover, they are also all indisputably advertised as "No Antibiotics, Ever" in stores, on the internet, in Whole Foods' promotional videos, and elsewhere, as alleged in Plaintiffs' First Amended Complaint. Whether the products' labels also contain statements that are misleading is irrelevant at this stage due to Defendants' universal advertising of its Beef Products as "No Antibiotics, Ever." Plaintiffs plausibly alleged that the "No Antibiotics, Ever" statements are false are based on testing, scientific literature, and anecdotal evidence. *Vance v. Church & Dwight Co.,* No. 222CV00044MCEKJN, 2023 WL 2696826, at *4 (E.D. Cal. Mar. 29, 2023) ("The falsity of the advertising claims may be established by testing, scientific literature, or anecdotal evidence."). For example, in *Norman*, the Plaintiff alleged that (1) alleged independent testing from GMO Free USA, a 501(c)(3) nonprofit organization, that confirmed the presence of GMOs in ***at least one*** of Defendant's Products; (2) Plaintiff took "general, but overwhelming, statistic[s] about genetically modified crops in the United States and plausibly connect[s] [them] to the relevant ingredients found in [Defendant's] [P]roducts." 2023 WL 122910 at *9–10 (citing *In re KIND LLC "Healthy & All Natural" Litig.*, 287 F. Supp. 3d 457, 467 (S.D.N.Y. 2018)). "This is not an implausible inference to make on a motion to dismiss." *Id.; see also Ault v. J.M. Smucker Co.*, No. 13 Civ. 3409 (PAC), 2014 WL 1998235, at *5 n.4 (S.D.N.Y. May 15, 2014) (plaintiff's reliance on generalized statistics to demonstrate that vegetable oils contain GMOs allowed the court "to make a logical leap from 'some crops grown in the United States are GMO' to 'the Crisco oils contain GMO

ingredients'"). Plaintiffs have plausibly alleged that a reasonable consumer would be deceived by the "No Antibiotics, Ever" claims in the Products' marketing and thus, discovery related to all Beef Products is proportional to Plaintiffs' FAC.

None of Defendants' previously proffered reasons for avoiding discovery point to granting a stay of discovery. Instead, this Court should order Defendants to immediately respond to discovery.

## IV. DISPUTED ISSUE TWO: PLAINTIFFS' MOTION TO COMPEL

### 1. L.R. 37-1 COMPLIANCE

The Parties have formally met and conferred about Plaintiffs' Requests for Production of Documents on April 3, 2023 and Defendants' proposed motion to stay on May 26, 2023. Defendants served responses—objections—to Plaintiffs' First Set of Interrogatories on May 30, 2023. On May 31, Plaintiffs requested a meet and confer, which Defendants ignored, and Plaintiffs sent a letter on June 6, 2023 again requesting a Meet and Confer. Defendants then offered June 15 and 16, 2023. Plaintiffs reiterated their request for an earlier meet and confer on June 9, 2023, in order to meet their Local Rule 37-1 Compliance obligations. Defendants' proposed motion to stay and Plaintiffs' proposed motion to compel are directly related, and therefore the parties are filing a single Local Rule 37-2.1 Joint Stipulation to address both issues.

### i. Plaintiffs' Position on Plaintiffs' Motion to Compel

Plaintiffs request that Defendants produce documents responsive to Requests for Production 1, 2, 4 and 5, and that each Defendant answer Interrogatories 1 and 2. If Defendants persist in refusing to initiate document production regarding Document Requests 6-30, Plaintiffs will continue to meet and confer.

### Request for Production 1

REQUEST NO. 1:

Any documents identified in your initial disclosures. [typo fixed]

RESPONSE TO REQUEST NO. 1:

Defendant incorporates its general objections into this response as though stated in full.

Defendant objects on the grounds that the Requests' use of the term "documents" renders the Request vague and ambiguous. As permitted by Federal Rule of Civil Procedure Rule 26(a)(1)(ii), defendant identified categories of documents, rather than specific documents in it is Initial Disclosures. Defendant interprets this Request as seeking production of relevant documents with the categories identified in Defendant's Initial Disclosures.

Defendant objects to this Request on the grounds that it is overly broad in scope and time, unduly burdensome and oppressive, seeks information that is neither relevant to the claims and defenses raised in this action, nor reasonably calculated to lead to the discovery of admissible evidence, and exceeds the rule of proportionality in contravention of Fed. R. Civ. P. 26(b)(1). Defendant's Initial Disclosures list "1. Vendor Agreements; 2. Documents and communications regarding challenged products; 3. Sales data and other documents and records regarding product purchases and sales; 4. Product label documentation…" Each of these document categories are defined in relation to the specific beef products at issue in this action and subject to the relevancy limitations of Rule 26. Plaintiffs, however, have not identified the beef products sold in California that they purchased nor the product that allegedly tested positive for antibiotic residue. The burden associated with pulling documents for every beef product sold at a Whole Foods Market store across the United States over a four-year period is immense and outweighs the marginal, if any, relevance of these documents.

Whole Foods Market stores across the country source from different beef vendors. As such, the relevant documentation for a given Beef Product pertains to the vendor who sourced the specific product which Plaintiffs purchased and/or

tested. For example, although Plaintiff Sara Safari may allege facts suggesting the cut of New York Steak she purchased at her local Whole Foods Market contained antibiotics, these facts do not suggest that every New York Steak sold across the country, sourced from other suppliers, at other times, contained antibiotics.

Defendant's documentation relating to Beef Products that Plaintiffs did not purchase or test, and for which Plaintiffs alleges no facts to suggest the presence of antibiotics, are not relevant. Defendant will limit its response to documents within the identified categories relating to the beef products Plaintiffs purchased in California and the beef product that allegedly tested positive for antibiotic residue during the statutory period. Defendant will meet and confer with Plaintiffs to identify the specific Beef Products they purchased and the one that allegedly tested positive for antibiotic residue.

Further, the final category of documents listed in Defendant's Initial Disclosures is "5. Exemplars of in-store and website marketing materials and statements relating to antibiotic use in beef products." Defendant separately objects to production of all documents on the grounds that this demand is overly broad in scope, unduly burdensome and oppressive, seeks information that is neither relevant to the claims and defenses raised in this action, nor reasonably calculated to lead to the discovery of admissible evidence, and exceeds the rule of proportionality in contravention of Fed. R. Civ. P. 26(b)(1). Although Plaintiffs alleged that Defendant made a plethora of different antibiotics related advertising statements in their operative First Amended Complaint ("FAC"), Plaintiffs only allege that they relied on the phrases "No Antibiotics Ever" and "No antibiotics or added growth hormones, ever" in the FAC. See ECF No. 35 ¶¶12, 19, 83. Accordingly, Defendant will limit production of "Exemplars of in-store and website marketing materials and statements relating to antibiotic use in beef products" to those materials that are available from the stores where Plaintiffs purchased their beef products and contain

the phrases "No Antibiotics Ever" and "No antibiotics or added growth hormones, ever" during the statutory period.

Defendant objects to this Request on the grounds that it seeks trade secret, proprietary commercial information or other highly confidential and competitively sensitive business information protected from discovery by the trade secret privilege and Defendants' and their vendors' and suppliers' rights of privacy. Defendant will only produce the confidential business information referenced above subject to the protections and limitations of the Stipulated Protective Order entered in this action. Defendant objects to this Request on the grounds that several of the document categories identified in Defendants' Initial Disclosure might arguably cover communications and documents protected against disclosure by the attorney client privilege and attorney work product doctrine. In particular, communications and documents developed, created, sent or received by counsel as part of and in anticipation of this litigation. Defendant will not produce privileged documents and information. Defendant will produce a privilege log that identifies any such privileged documents or information withheld from production that were created prior to the litigation.

Subject to and without waiving the foregoing objections, once Plaintiffs identify the specific beef products they purchased from Whole Foods Market during the statutory period, Defendant will produce documents within the categories identified in its Initial Disclosures relating to those beef products. Defendant will meet and confer with Plaintiffs to identify these specific Beef Products and then conduct a reasonable and diligent search for responsive material. Defendant will also produce, to the extent possible, exemplars of in-store and website marketing materials and statements relating to antibiotic use in beef products that reference or contain the marketing phrases "No Antibiotics Ever" and "No antibiotics or added growth hormones" and displayed on the Whole Foods market website or used in the

California stores where Plaintiffs purchased their beef products during the statutory period.

**Plaintiffs' Position:** As Plaintiffs previously stated to Defendants via the April 28, 2023 letter to which Defendants never responded, Request for Production 1 asks for "any documents in your initial disclosures." Defendants objected to this Request on relevancy grounds by claiming that the burden associated with compiling documents for every beef product sold at Whole Foods Market stores across the United States over a four-year period is immense and outweighs the marginal, if any, relevance of these documents. This response ignores the purpose of 26(a)(i)(A)(ii), which is to provide "a copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment."

Additionally, Defendants stated that they intend to "limit [their] response to documents within the identified categories relating to the beef products Plaintiffs purchased in California and the beef product that allegedly tested positive for antibiotic residue during the statutory period." As explained above, this does not account for the sufficient similarity in products and advertising at this stage of the litigation. Defendants' objection fails to account for Plaintiffs' allegations in their First Amended Complaint. Plaintiffs allege that Defendants advertise *all* of their Beef Products as "No Antibiotics, Ever" and that if any Beef Product fails to meet Defendants' standards, Defendants will not sell it. Defendants cannot re-write Plaintiffs' allegations to limit this case to the products that Plaintiffs purchased and/ or tested. *See Norman,* 2023 WL 122910, at *9–10 (citing, 912 F. Supp. 2d at 869).

**Request for Production 2**

REQUEST NO. 2:

Your Operating Agreements discussing the relationships between Whole

Food Market Services, Inc.; Whole Food Market California, Inc.; Mrs. Gooch's Natural Foods Market, Inc.; Whole Food Market Group, Inc.; Whole Foods Market Distribution, Inc.; WFM Private Label, Inc.; and any other Whole Foods entity participating in the purchase and sale of Beef Products.

RESPONSE TO REQUEST NO. 2:

Defendant incorporates its general objections into this response as though stated in full.

Defendant objects on the grounds that the Requests' use of the phrases "Your Operating Agreements," "participating in the purchase and sale of Beef Products" and "any other Whole Foods entity" render the Request vague and ambiguous. Defendant interprets this Request as seeking formal written documents setting forth the operation of various Whole Foods Market companies involved in the purchase or sale of beef products and will use this interpretation to inform the remainder of its response.

Defendant objects to this Request on the grounds that it is overly broad in scope and time, unduly burdensome and oppressive, seeks information that is neither relevant to the claims and defenses raised in this action nor reasonably calculated to lead to the discovery of admissible evidence, and exceeds the rule of proportionality in contravention of Fed. R. Civ. P. 26(b)(1). Plaintiffs' claims relate to the purchase and sale of Beef Products from Whole Foods Market stores in California. This Request is not tailored to the claims or defenses asserted in this action. Plaintiff have not alleged any facts under which they might seek to pierce the corporate veil and hold affiliated entities responsible for Defendant's alleged actions nor facts under which to pursue claims based on purchase and sales made outside of California. Any marginal relevance operation agreements might have is outweighed by privacy and confidentiality concerns, and the burden and expense of locating and producing such materials.

Defendant objects to this Request on the grounds that it seeks trade secret, proprietary commercial information or other highly confidential and competitively sensitive business information protected from discovery by the trade secret privilege and Defendants' and its affiliated companies' rights of privacy.

Defendant objects to this Request to the extent that it seeks documents or information protected against discovery by the attorney client privilege and attorney work product doctrine.

Subject to and without waiving the foregoing objections, Defendant will produce the current organization chart for the Whole Foods Market affiliated companies.

**Plaintiffs' Position:** In Defendants response to Request for Production 2, which asks for "operating agreements discussing the relationship between" various Whole Foods entities, Defendants responded that they will "produce the current organization chart for the Whole Foods Market affiliated companies." It is not clear if this is the entirety of Defendants' response, but if it is, it is not sufficient.

In general, under the Federal Rules of Civil Procedure, any matter relevant to a claim or a defense is discoverable. Fed. R. Civ. P. 26(b)(1). The broad scope of discovery under Rule 26(b)(1) encompasses any matter that bears upon, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case. *I.C. by & Through Chaudhri v. Zynga Inc.,* No. 20-CV-01539-YGR, 2021 WL 51718, at *1 (N.D. Cal. Jan. 6, 2021). Whether Defendants and/or other Whole Foods' entities have operating agreements that discuss how Beef Products should be marketed, or who oversees marketing, clearly bears upon, or reasonably could lead to other matters that could bear on, Plaintiffs' false advertising, unfair competition, and related claims. To the extent that Defendants object on confidentiality or privacy grounds, there is a Protective Order in place to protect Defendants' confidential information.

Defendants further object that this request is not "tailored to the claims or defenses asserted in this action." To streamline discovery at this stage in the litigation, Plaintiffs are willing to narrow this request to:

> Your Operating Agreements discussing the relationships between Whole Food Market Services, Inc.; Whole Food Market California, Inc.; Mrs. Gooch's Natural Foods Market, Inc.; Whole Food Market Group, Inc.; Whole Foods Market Distribution, Inc.; WFM Private Label, Inc.; and any other Whole Foods entity participating in the purchase and sale of Beef Products in California Whole Foods' stores during the statutory period.

Defendants have not responded to Plaintiffs' offer to narrow the request.

**Defendants' Contentions:**

**<u>Request for Production 4</u>**

REQUEST NO. 4:

Distribution agreements regarding the Beef Products for the entities listed in Request for Production No. 2 during the Class Period.

RESPONSE TO REQUEST NO. 4:

Defendant incorporates its general objections into this response as though stated in full.

Defendant objects on the grounds that the Requests' use of the phrases "Distribution agreements" and "regarding the Beef Products for the entities listed in Request for Production No. 2" render the Request vague and ambiguous. Defendant interprets this Request as seeking any vendor or supply agreements relating to the sale of Beef Products at WFMCA and Mrs. Gooch's.

Defendant objects to this Request on the grounds that it is overly broad in scope and time, unduly burdensome and oppressive, seeks information that is neither relevant to the claims and defenses raised in this action nor reasonably

calculated to lead to the discovery of admissible evidence, and exceeds the rule of proportionality in contravention of Fed. R. Civ. P. 26(b)(1). Plaintiffs' claims relate to the purchase and sale of Beef Products from Whole Foods Market stores in California. This Request is not tailored to the claims or defenses asserted in this action. Plaintiffs have not alleged that they purchased any beef products from the Whole Foods Market website.

Whole Foods Market stores across the country source from different beef vendors. As such, the relevant documentation for a given Beef Product pertains to the vendor who sourced the specific product which Plaintiffs purchased and/or tested. For example, although Plaintiff Sara Safari may allege facts suggesting the cut of New York Steak she purchased at her local Whole Foods Market contained antibiotics, these facts do not suggest that every New York Steak sold across the country, sourced from other suppliers, at other times, contained antibiotics. Documents relating to the supply of Beef Products that Plaintiffs did not purchase or test, and for which Plaintiffs alleges no facts to suggest the presence of antibiotics, are irrelevant. Accordingly, the burden and expense of pulling these documents outweighs any marginal relevance they might have.

Defendant objects to this Request on the grounds that it seeks trade secret, proprietary commercial information or other highly confidential and competitively sensitive business information protected from discovery by the trade secret privilege and Defendants' and their vendors' and suppliers' rights of privacy. Defendant will only produce the confidential business information referenced above subject to the protections and limitations of the Stipulated Protective Order entered in this action. Defendant objects to this Request to the extent that it seeks document or information protected against discovery by the attorney client privilege and attorney work product doctrine. Defendant will not produce privileged documents and information. Defendant will produce a privilege log that identifies any such

privileged documents or information withheld from production that were created prior to the litigation.

Subject to and without waiving the foregoing objections, once Plaintiffs identify the specific beef products they purchased from Whole Foods Market during the statutory period, Defendant will produce available supply agreements relating to those beef products subject to the protections and limitations of the Stipulated Protective Order entered in this action.

**Plaintiffs' Position:** Defendants' response appears to indicate that distribution agreements are vendor specific. Therefore, Plaintiffs agree to narrow this request to:

Distribution agreements regarding the Beef Products sold in California Whole Foods' stores for the entities listed in Request for Production No. 2 during the statutory period.

Defendants have not responded to Plaintiffs' offer to narrow the request.

**Request for Production 5**

REQUEST NO. 5:

Marketing agreements regarding the Beef Products for the entities listed in Request for Production No. 2 during the Class Period. Marketing agreements includes any agreements by or between the entities listed in RFP 2 addressing which entity is responsible for disseminating statements to potential consumers regarding the Beef Products. [typo fixed]

RESPONSE TO REQUEST NO. 5:

Defendant incorporates its general objections into this response as though stated in full.

Defendant objects to this Request on the grounds that its use of the phrases "Marketing agreements" and "regarding the Beef Products for the entites [sic] listed in Request for Production No. 2 during the Class Period" render the Request vague and ambiguous.

Defendant objects to this Request on the grounds that it is overly broad in scope and time, unduly burdensome and oppressive, seeks information that is neither relevant to the claims and defenses raised in this action nor reasonably calculated to lead to the discovery of admissible evidence, and exceeds the rule of proportionality in contravention of Fed. R. Civ. P. 26(b)(1). Plaintiffs' claims relate to the purchase and sale of Beef Products from Whole Foods Market stores in California. This Request is not tailored to the claims or defenses asserted in this action.

Whole Foods Market stores across the country source from different beef vendors. As such, the relevant documentation for a given Beef Product pertains to the vendor who sourced the specific product which Plaintiffs purchased and/or tested. For example, although Plaintiff Sara Safari may allege facts suggesting the cut of New York Steak she purchased at her local Whole Foods Market contained antibiotics, these facts do not suggest that every New York Steak sold across the country, sourced from other suppliers, at other times, contained antibiotics. Documents relating to the supply of Beef Products that Plaintiffs did not purchase or test, and for which Plaintiffs alleges no facts to suggest the presence of antibiotics, are irrelevant. Accordingly, the burden and expense of pulling these documents outweighs any marginal relevance they might have.

Further, Plaintiffs only allege that they reviewed and relied on the phrases "No Antibiotics Ever" and "No antibiotics or added growth hormones, ever" in the FAC. See ECF No. 35 ¶¶12, 19, 83. Defendant will limit production of "Exemplars of in-store and website marketing materials and statements relating to antibiotic use in beef products" to the phrases "No Antibiotics Ever" and "No antibiotics or added growth hormones, ever."

Defendant objects to this Request on the grounds that it seeks trade secret, proprietary commercial information or other highly confidential and competitively

sensitive business information protected from discovery by the trade secret privilege and Defendants' and their vendors' and suppliers' rights of privacy. Defendant will only produce the confidential business information referenced above subject to the protections and limitations of the Stipulated Protective Order entered in this action. Defendant objects to this Request to the extent that it seeks document or information protected against discovery by the attorney client privilege and attorney work product doctrine. Defendant will not produce privileged documents and information. Defendant will produce a privilege log that identifies any such privileged documents or information withheld from production that were created prior to the litigation.

Subject to and without waiving the foregoing objections, once Plaintiffs identify the specific beef products they purchased from Whole Foods Market during the statutory period, Defendant will produce available supply agreements relating to those specific beef products subject to the protections and limitations of the Stipulated Protective Order entered in this action.

**Plaintiffs' Position:** During the April 3 meet and confer, Plaintiffs clarified that this request seeks marketing agreements between the Whole Foods' entities listed in RFP 2, whereas Defendants interpreted this request to seek marketing agreements with suppliers. Defendants indicated that they were "not sure if such a thing exists (i.e., internal marketing agreements)," and of this writing, as not confirmed whether internal marketing agreements exist and when Defendants will produce them.

**Plaintiffs' First Set of Interrogatories to All Defendants**

Nearly identical interrogatories were served to all three Defendants; only the WFM Services' response is copied below, which is nearly identical to the co-Defendant responses.

INTERROGATORY NO. 1:

Identify all WFM Services' beef suppliers for beef sold to consumers in California during the class period.

RESPONSE TO INTERROGATORY NO. 1:

Defendant objects on the grounds that the Interrogatory's use of the term "beef" and the phrase "beef suppliers" are vague, ambiguous and overly broad in scope. The term "beef" is not defined and could refer to any number of different types and/or kinds of meat products. Defendant will interpret this term to mean the types and kinds of meat products Plaintiffs purchased from Whole Foods Market stores in California as identified in their written discovery responses. The phrase "beef suppliers" could be interpreted to refer to any entity involved in the chain of distribution. Defendant will interpret this phrase to mean the brand name and/or farm or ranch that raised the cattle used in the beef products Plaintiffs purchased from a Whole Foods Market store in California as identified in their written discovery responses.

Defendant objects to this Interrogatory on the grounds that it is overly broad in scope, unduly burdensome and oppressive, seeks information that is neither relevant to the claims and defenses raised in this action nor reasonably calculated to lead to the discovery of admissible evidence, and exceeds the rule of proportionality in contravention of Fed. R. Civ. P. 26(b)(1). Whole Foods Market sells numerous different beef products and different brands of beef products. Plaintiffs purchased and/or tested specific beef products from the Whole Foods Market stores in California that form the basis for their alleged claims in this action. Plaintiffs, however, have steadfastly refused to identify the brand name or supplier of those products. Beef products sold at Whole Foods Market that Plaintiffs neither purchased nor tested are not relevant to their asserted claims. Plaintiffs are not entitled to use the discovery processes "to engage in 'fishing expeditions'" where they have no basis other than gross speculation to claim that some, most or all beef

products sold at Whole Foods Market violate its antibiotic representations. See, Webb v. Trade Joe's Co., 999 F.3d 1196, 1204 (9th Cir. 2021); see also Souter v. Edgewell Personal Care Co., No. 20-cv-1486-TWR, 2022 WL 4088614, at *5 (S.D. Cal. Sept. 6, 2022) (plaintiff cannot use discovery as a "'fishing expedition' to substantiate a claim for relief.") Defendants' Motion to Dismiss addresses, among other things, these issues and the uncertainty of Plaintiffs' claims. Defendants intend to move to stay discovery in this matter on the grounds that the scope of the pleadings, and by extension discovery, is uncertain. See Luna v. Girgis, No. 21-cv-09765-FWS-AFM, 2022 WL 3012167, at *1–3 (C.D. Cal. June 30, 2022) (granting stay of discovery pending decision on motion to dismiss).

Defendant objects on the grounds that the Interrogatory seeks trade secret, proprietary commercial information or other highly confidential and competitively sensitive business information protected from discovery by the trade secret privilege and Defendant's and its vendors' and suppliers' rights of privacy. Responding to this interrogatory necessarily requires Defendant identify the suppliers of private label beef products sold in California. This information is not generally known nor publicly available and constitutes highly confidential and commercially sensitive and competitive business information.

INTERROGATORY NO. 2:

Identify all WFM Services' beef suppliers for beef sold to consumers in California during the class period that was marketed as a Whole Foods Market store brand. This includes Whole Foods Market private label brand, whether that is Whole Foods 365 brand or any other private brand. This includes beef available for purchase online or in any part of Whole Foods Market, including at the meat/butcher counter or as prepared food.

RESPONSE TO INTERROGATORY NO. 2:

Defendant objects on the grounds that the Interrogatory's use of the term "beef" and the phrases "beef suppliers" and "Whole Foods Market private label brand" are vague, ambiguous and overly broad in scope. The term "beef" is not defined and could refer to any number of different types and/or kinds of meat products. Defendant will interpret this term to mean the types and kinds of meat products Plaintiffs purchased from Whole Foods Market stores in California as identified in their written discovery responses. The phrase "beef suppliers" could be interpreted to refer to any entity involved in the chain of distribution. Defendant will interpret this phrase to mean the brand name and/or farm or ranch that raised the cattle used in the beef products Plaintiffs purchased from a Whole Foods Market store in California as identified in their written discovery responses. Whole Foods Market stores sell specific private label brands – i.e., Whole Foods Market, 365 Everyday Value, and 365 by Whole Foods Market. Defendant will interpret the phrase "Whole Foods Market private label brand" to refer to products branded under one of these specific Whole Foods Market private labels.

Defendant objects to this Interrogatory on the grounds that it is overly broad in scope, unduly burdensome and oppressive, seeks information that is neither relevant to the claims and defenses raised in this action nor reasonably calculated to lead to the discovery of admissible evidence, and exceeds the rule of proportionality in contravention of Fed. R. Civ. P. 26(b)(1). Plaintiffs have not alleged or stated in their verified written discovery that they purchased beef product from Whole Foods market online. Thus, the suppliers of beef products sold by Whole Foods Market online are not relevant to Plaintiffs' claims and exceed the rule of proportionality. Moreover, Whole Foods Market stores sell numerous different beef products and different brands of beef products. Plaintiffs purchased and/or tested specific beef products from the Whole Foods Market stores in California that form the basis for their alleged claims in this action. Plaintiffs, however, have steadfastly refused to

identify the brand name or supplier of those products. Further, they have not alleged nor stated in their verified discovery responses that they purchased a Whole Foods Market private label beef product. Beef products sold at Whole Foods Market that Plaintiffs neither purchased nor tested are not relevant to their asserted claims. Plaintiffs are not entitled to use the discovery processes "to engage in 'fishing expeditions'" where they have no basis other than gross speculation to claim that some, most or all beef products sold at Whole Foods Market violate its antibiotic representations. See, Webb v. Trade Joe's Co., 999 F.3d 1196, 1204 (9th Cir. 2021); see also Souter v. Edgewell Personal Care Co., No. 20-cv-1486-TWR, 2022 WL 4088614, at *5 (S.D. Cal. Sept. 6, 2022) (plaintiff cannot use discovery as a "'fishing expedition' to substantiate a claim for relief.") Defendants' Motion to Dismiss addresses, among other things, these issues and the uncertainty of Plaintiffs' claims. Defendants intend to move to stay discovery in this matter on the grounds that the scope of the pleadings, and by extension discovery, is uncertain. See Luna v. Girgis, No. 21-cv-09765-FWS-AFM, 2022 WL 3012167, at *1–3 (C.D. Cal. June 30, 2022) (granting stay of discovery pending decision on motion to dismiss).

Defendant objects on the grounds that the Interrogatory seeks trade secret, proprietary commercial information or other highly confidential and competitively sensitive business information protected from discovery by the trade secret privilege and Defendant's and its vendors' and suppliers' rights of privacy. Responding to this interrogatory necessarily requires Defendant identify the suppliers of private label beef products sold in California. This information is not generally known nor publicly available and constitutes highly confidential and commercially sensitive and competitive business information.

**Plaintiffs' Position:** Defendants seek a stay to protect them from answering the two interrogatories propounded by Plaintiffs. Plaintiffs' two interrogatories were

simple. Plaintiffs asked Defendants to (1) identify the beef suppliers for beef sold to
California consumers and (2) identify the beef suppliers for beef sold to California
consumers marketed as a Whole Foods Market store brand (private label or private
brand). Plaintiffs served the same two interrogatories to each of the three
Defendants. All three Defendants refused to answer these simple questions –
questions that should be easy for any Whole Foods butcher counter employee to
answer when asked by any Whole Foods' shopper. Indeed, customers commonly
seek this information when shopping at this "premium" store, and butchers regularly
answer or ask the meat buyer to come to the butcher counter.

Instead of answering the question, all three Defendants provided meritless
objections without indicating any good faith attempt to comply with Fed. R. Civ. P.
26 and 33. Defendants, who are in the grocery business and sell beef, feigned lack of
understanding for the terms "beef" and "beef suppliers" and tried to narrow the
common sense understanding. A supplier is not limited to the brand name of the
farm or ranch that raised the cattle; supplier includes the entities who supplied the
beef products to Defendants—such as the distributor—as well as the companies that
may have participated in the finishing, slaughtering, and processing of the beef
products supplied to Defendants by a distributor. Defendants understand how beef
gets from ranchers to Whole Foods stores. Defendants have contracts or other
documents that they can rely on to easily provide Plaintiffs with this information;
and while potentially confidential, it would readily be covered by the already
executed Protective Order (ECF No. 44, signed and entered by U.S. Magistrate
Judge Karen Scott on December 14, 2022).

Defendants vaguely suggest they will unreasonably limit their answers,
should they ever provide any, regarding suppliers. Defendants may not evade their
discovery obligations with impermissible limitations. Plaintiffs purchased many
Whole Foods beef products during the class period, so many in fact that it there is a

high probability that *all* Defendants' suppliers are relevant and related to the purchases the named Plaintiffs made. This request is entirely proportional to the needs of the case. The individual consumers, Sara Safari and Peymon Khaghani, responded to Defendants' interrogatories on May 22, 2023. Defendants inquired as to which products Plaintiffs purchased. Plaintiff Safari purchased from Whole Foods' butcher counter and the open refrigerator case and purchased round beef, stew beef, braising roasts of all varieties, steaks, roast beef sandwiches made to order to order at the Whole Foods deli counter, pizza from the Whole Foods pizza station, and Mongolian beef from the Whole Foods Chinese foods station. Keefe Decl., Ex. 5. Plaintiff Khaghani purchased ground beef and steaks from Whole Foods butcher counter, pre-packaged beef from the store refrigerator case, roast beef sandwiches from the deli counter, and beef meatballs and Mongolian beef from the prepared foods section of the store.

Plaintiffs' two interrogatories are also not "overly broad in scope, unduly burdensome[, or] oppressive." As explained above, that Whole Foods fails to disclose what it is selling at its butcher counter and prepared food section automatically requires them to produce information on all beef products, because it is relevant to the claims raised in this action and is absolutely reasonably calculated to lead to the discovery of admissible evidence. This information is also directly proportional to the needs of the case. Defendants' objections directly conflict with Rule 26(b)(1)'s advisory notes. *See* Fed. R. Civ. P. 26 advisory committee notes (2015 Amendment) (restoration of the "proportionality calculation to Rule 26(b)(1)" was not "intended to permit the opposing party to refuse discovery simply by making a boilerplate objection that it is not proportional").

Defendants dishonestly state that Plaintiffs refused to name the supplier of the beef purchased for testing: "Plaintiffs purchased and/or tested specific beef products from the Whole Foods Market stores in California that form the basis for their

alleged claims in this action. Plaintiffs, however, have steadfastly refused to identify the brand name or supplier of those products." Plaintiffs refer Defendants to documents produced on April 20, 2023 and Bates stamped FF0001 – FF0007, which identifies the beef purchased for testing. Finally, this objection misses the mark because Defendants' "No Antibiotics, Ever" advertising applies to all products and all suppliers.

Defendants' position is also hypocritical. Defendants claim, for example:

> Responding to this interrogatory necessarily requires Defendant identify the suppliers of private label beef products sold in California. This information is not generally known *nor publicly available* and constitutes highly confidential and commercially sensitive and competitive business information.

Yet in the same document, Defendants assert:

> Plaintiffs … have steadfastly *refused to identify* the brand name or supplier of those products.

If Defendants' beef supplier information is not publicly available—and is in fact a "trade secret"—then why do Defendants contend that Plaintiffs should be able to identify Defendants' suppliers? Especially when the Plaintiffs purchase from the butcher counter and prepared foods section, as both Individual Plaintiffs verified that they did. Whole Food shoppers, like the class representatives here, purchased beef products at Whole Foods because they trusted and relied on Whole Foods' promises, which covered *all* beef products sold by Whole Foods. All beef products are sold as "No antibiotics, ever" to trusting consumers. Based on Defendants' promise to consumers regarding the high quality of all its beef products—that were *never* raised with antibiotics if sold at Whole Foods—it seems that Defendants should be eager to publicize their honest and compliant beef suppliers. Indeed, that is the very promise that is the subject of the lawsuit.

Additionally, if Defendants are unsatisfied with Plaintiffs' responses to discovery, Defendants can follow the known process for raising those concerns (identify the request and response, request to meet and confer). It is not proper to rely on a vague dislike for Plaintiffs' discovery responses as a reason for evading Defendants' own discovery obligations.

Defendants' other objections appear to be boilerplate and without merit. Again, Defendants are prohibited from objecting based on "trade secrets" when the Court has already signed a protective order. If correctly marked "confidential" there is no avenue by which competitors will view the information. Defendants clearly just recycled language from outdated correspondence, because to claim that they cannot produce the very specific information Plaintiffs seek because the parties require a protective order ignores the existence of the order signed by the Court on December 12, 2022. ECF No. 44. When Defendants state the following, Defendants' objections becomes inapplicable based on ECF No. 44:

> To ensure that the parties are permitted reasonable necessary uses of such material in preparation for and in the conduct of trial, to address their handling at the end of the litigation and serve the ends of justice, a protective order for such information is justified in this matter.

Defendants must identify, with verification, who supplies the beef Defendants sell to California consumers.

**ii.    Plaintiffs' Proposed Resolution**

If Defendants were acting in good faith to comply with the Court's Scheduling Order, and Rules 26, 33 and 34, they would have responded to the two interrogatories and started a rolling production. Instead, Defendants have flouted the Scheduling Order and the Rules of Federal Civil Procedure by engaging in self-help of dilatory tactics long before requesting a stay. For all these reasons, Defendant's requested stay must be denied, and Defendants should be ordered to begin a rolling

1    production of documents in response to request served on February 10, more than

2    four months ago, and respond to the two interrogatories served on April 28.

3         Plaintiffs are amenable to attending an informal telephonic conference for this

4    discovery dispute, as contemplated by Judge Karen Scott's procedures.

5

6         IT IS SO STIPULATED.

7    Dated:  June 12, 2023                    BLAXTER | BLACKMAN LLP

8

9                                        By _____
                                              /s/ David P. Adams
10                                            BRIAN R. BLACKMAN
                                              J.T. WELLS BLAXTER
11                                            DAVID P. ADAMS
                                              Attorneys for Defendants WHOLE
12                                            FOODS MARKET SERVICES, INC.,
                                              WHOLE FOOD SMARKATE
13                                            CALIFORNIA, INC. AND MRS.
                                              GOOCH'S NATURAL FOOD
14                                            MARKETS, INC.

15

16   Dated:  June 12, 2023

17                                        GRIME LAW LLP

18

19                                       By _____
                                              /s/ Paige M. Tomaselli
20                                            PAIGE M. TOMASELLI
                                              DYLAN D. GRIMES
21
                                              ELSNER LAW & POLICY, LLC
22                                            GRETCHEN ELSNER

23                                            Attorneys for Plaintiffs
                                              SARA SAFARI, PEYMON
24                                            KHAGHANI and FARM FORWARD

25

26

27

28

1

## **<u>ATTESTATION</u>**

2      I, David P. Adams, am the ECF User whose identification and password are

3 being used to file JOINT STIPULATION REGARDING DEFENDANTS'

4 MOTION TO STAY (L.R. 37-2).  In compliance with Civil L.R. 5-4.3.4(a)(2)(i), I

5 attest that Paige M. Tomaselli concurred in this filing.

6

7                                          /s/*David P. Adams*

8                                          David P. Adams

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28