Paige M. Tomaselli (SBN 237737)
Dylan D. Grimes (SBN 302981)
**GRIME LAW LLP**
730 Arizona Avenue
Santa Monica, CA 90401
Telephone: (310) 747-5095
ptomaselli@grimelaw.com
dgrimes@grimelaw.com

Gretchen Elsner (*pro hac vice*)
**ELSNER LAW & POLICY, LLC**
314 South Guadalupe Street, Suite 123
Santa Fe, NM 87501
Telephone: (505) 303-0980
gretchen@elsnerlaw.org

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SARA SAFARI, PEYMON KHAGHANI, on behalf of themselves and all others similarly situated, FARM FORWARD, on behalf of the general public,<br><br>Plaintiffs,<br><br>v.<br><br>WHOLE FOODS MARKET SERVICES, INC., a Delaware corporation, WHOLE FOODS MARKET CALIFORNIA, INC., a California corporation, MRS. GOOCH'S NATURAL FOOD MARKETS, INC., doing business as Whole Foods Market, a California Corporation,<br><br>Defendants. | Case No. 8:22-CV-01562-JWH (KESx)<br><br>PLAINTIFF FARM FORWARD'S MOTION FOR RECONSIDERATION<br><br>Date: September 29, 2023<br>Time: 9:00 a.m.<br>Place: 411 West Fourth Street<br>       Santa Ana, California 92701<br><br>Complaint Filed:    August 23, 2022<br>Discovery Cutoff:   Not Set<br>Pretrial-Conference: Not Set<br>Trial Date:         Not Set<br><br>The Honorable John W. Holcomb The Honorable Karen E. Scott |

# TABLE OF CONTENTS

**INTRODUCTION** ................................................................................................ 1

**PROCEDURAL HISTORY**............................................................................... 1

**STANDARD OF REVIEW** ............................................................................... 2

**ARGUMENT**...................................................................................................... 3

I.  A Diversion of Resources in Response Defendants' Conduct Confers Standing, Including Resource Diversions Consistent with Plaintiff's Mission. ....................................................................................................... 4

II. Where the Organization's Mission Has Been Impaired or Threatened, the Diversion of Resources is Traceable Defendants' Conduct.............................. 7

III. *Havens* is Still Binding Precedent. ...................................................... 9

**CONCLUSION** ................................................................................................ 11

# TABLE OF AUTHORITIES

**Cases**

*Alliance for Hippocratic Medicine, et al., v. Food & Drug Administration, et al*, No. 23-10362 (5th Cir. April 12, 2023) (unpublished) .................................................. 2

*Alliance for Hippocratic Medicine, et al., v. U.S. Food and Drug Administration, et al.*, No. 2:22-CV-223-Z (N.D. Texas, April 7, 2023) ................................................ 1

*California Medical Association v. Aetna Health Care of California*, 532 P.3d 250 (July 17, 2023) .................................................................................................... 3, 4

*California Medical Association v. Aetna Health of California, Inc.*, 63 Cal.App.5th 660 (2021) ................................................................................................. passim

*City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882 (9th Cir. 2001) ............................................................................................................... 2

*Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936 (9th Cir. 2011) ...................................................................................................... 6, 8

*East Bay Sanctuary Covenant v. Trump*, 909 F.3d 1219 (9th Cir. 2018) ..................... 6

*Fair Hous. Council of San Fernando Valley v. Roommate.com, LLC*, 666 F.3d 1216 (9th Cir. 2012) ........................................................................................................ 6

*Fair Hous. of Marin v. Combs*, 285 F.3d 899, 905 (9th Cir. 2002)…………………..6

*Federal Election Commission v. Ted Cruz for Senate*, 142 S.Ct. 1638 (2022) ........ 9

*Frederick S. Wyle P.C. v. Texaco, Inc.*, 764 F.2d 604 (9th Cir. 1985) ........................ 3

*Havens Realty Corp. v. Coleman,* 455 U.S. 363 (1982) ............................... 1,2,7, 9,10

*Keene Corp. v. International Fidelity Ins. Co.*, 561 F. Supp. 656 (N.D. Ill. 1982) ...... 3

*La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest,* 624 F.3d 1083 (9th Cir. 2010) ........................................................................................................ 6

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ..................................................... 8

*Nnebe v. Daus*, 644 F.3d 147, 157 (2d Cir. 2011) ......................................................... 6

*Pyramid Lake Paiute Tribe v. Hodel*, 882 F.2d 364 n.5 (9th Cir. 1989) ....................... 3

*Rodriguez v. City of San Jose*, 930 F.3d 1123 (9th Cir. 2019) ....................................... 6

*S. California Hous. Rts. Ctr. v. Los Feliz Towers Homeowners Ass'n*, 426 F. Supp. 2d 1061 (C.D. Cal. 2005) ............................................................................................. 10

*Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005 (9th Cir. 2012) ......................... 3

*Spann v. Colonial Village, Inc.,* 899 F.2d 24 (D.C. Cir. 1990) ..................................... 6

*TransUnion, LLC v. Ramirez*, ____ U.S. ____, 141 S.Ct. 2190 (2021) ................ 1,9,10

**Other Authorities**

*Landmark California Ruling Empowers Nonprofits, Unions and Advocacy Groups to Combat Unfair Business Practices*, July 28, 2023 ................................................... 1

**Rules**

Local Rule 7-18 ............................................................................................................. 1, 3

# INTRODUCTION

Pursuant to Local Rule 7-18, Farm Forward respectfully asks this Court to partially reconsider its July 24, 2023 Order Granting in Part and Denying in Part Defendants' Motion to Dismiss ("Order") as it relates to Farm Forward. ECF No. 78. After the Motion was briefed and argued, and just days before this Court issued its Order, the California Supreme Court published a landmark decision on organizational standing under California's consumer protection statutes. The new authority directly supports Farm Forward's standing in this case.[1] ECF No. 73-1. This Court has paid careful attention to Article III standing throughout this litigation. Plaintiff Farm Forward respectfully requests that the Court continue its diligent review and reconsider its decision on organizational standing in light of this new authority.

# PROCEDURAL HISTORY

On January 10, 2023, Defendants moved to dismiss Plaintiffs' complaint on standing grounds. ECF No. 46. Plaintiffs opposed Defendants' motion on February 9, 2023, ECF No. 48, and Defendants replied, ECF No. 50. On March 14, 2023, this Court ordered supplemental briefing on standing. ECF No. 54, and the parties submitted their supplementals brief on March 28, 2023. ECF Nos. 56, 57.

On April 7, 2023, this Court heard oral argument on Defendants' Motion to Dismiss. ECF No. 59. After this Court heard argument, Plaintiffs submitted three decisions to this Court for consideration. *See* ECF Nos. 60, 73. First, on April 13, 2023, Plaintiffs submitted *Alliance for Hippocratic Medicine, et al., v. U.S. Food and Drug Administration, et al.*, No. 2:22-CV-223-Z (N.D. Texas, April 7, 2023). ECF No. 60-1. This decision addresses *TransUnion, LLC v. Ramirez*, ____ U.S. ____, 141 S.Ct. 2190 (2021) and *Havens Realty Corp. v. Coleman,* 455 U.S. 363 (1982). Plaintiffs

---

[1] National Law Review, *Landmark California Ruling Empowers Nonprofits, Unions and Advocacy Groups to Combat Unfair Business Practices*, July 28, 2023, available at https://www.natlawreview.com/article/landmark-california-ruling-empowers-nonprofits-unions-and-advocacy-groups-to-combat

simultaneously submitted *Alliance for Hippocratic Medicine, et al., v. Food & Drug Administration, et al*, No. 23-10362 (5th Cir. April 12, 2023) (unpublished). ECF No. 60-2. The Fifth Circuit decision affirms organizational standing for the association and addresses *Havens*. In this Court's Order, ECF No. 75, n. 2, the Court lists the documents it considered in making its decision. The Court does not mention this supplemental authority on organizational standing, ECF Nos. 60, 60-1, 60-2.

On July 17, 2023, just days before this Court's Order, the California Supreme Court published a landmark decision on organizational standing, *California Medical Association v. Aetna*. Farm Forward submitted this supplemental authority the same day it was published. ECF Nos. 73, 73-1. While this Court cited what it considered in its Order, ECF No. 75, n. 2, the Court did not identify this supplemental authority on organizational standing in its Order.

## STANDARD OF REVIEW

"As long as a district court has jurisdiction over [a] case, then it possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient." *City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 885 (9th Cir. 2001). Under the Local Rules of this Court :

> A motion for reconsideration of an Order on any motion or application may be made only on the grounds of (a) a material difference in fact or law from that presented to the Court that, in the exercise of reasonable diligence, could not have been known to the party moving for reconsideration at the time the Order was entered, or (b) the emergence of new material facts or a change of law occurring after the Order was entered, or (c) a manifest showing of a failure to consider material facts presented to the Court before

the Order was entered. No motion for reconsideration may in any manner repeat any oral or written argument made in support of, or in opposition to, the original motion.

L.R. 7-18. "'[T]he major grounds that justify reconsideration involve an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Pyramid Lake Paiute Tribe v. Hodel*, 882 F.2d 364, 369 n.5 (9th Cir. 1989) (quoting 18 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 4478, at 790); *see Frederick S. Wyle P.C. v. Texaco, Inc.*, 764 F.2d 604, 609 (9th Cir. 1985); *see also Keene Corp. v. International Fidelity Ins. Co.*, 561 F. Supp. 656, 665 (N.D. Ill. 1982) (reconsideration available "to correct manifest errors of law or fact or to present newly discovered evidence").

## ARGUMENT

Under *California Medical Association v. Aetna Health Care of California*, 532 P.3d 250 (July 17, 2023), the California Supreme Court held that the California Unfair Competition Law's ("UCL's") standing requirements are satisfied when an organization, in furtherance of a bona fide, preexisting mission, incurs costs to perceived unfair competition that threatens that mission, so long as those expenditures are independent of costs incurred in UCL litigation or preparations for such litigation. When an organization has incurred such expenditures, it has "suffered injury in fact" and "lost money or property as a result of the unfair competition." *California Medical Association v. Aetna Health Care of California*, 532 P.3d 250 (July 17, 2023) ("*California Medical Association*"), ECF No. 71-3 at 3 (Slip Op. at 2). When taken in the light most favorable to Farm Forward, as this Court is required to do at this stage of the litigation, *Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1014 (9th Cir. 2012); *see also California Medical Association*, ECF No. 71-1 at 37 (Slip Op. 36), Farm Forward's resource expenditures are sufficient to confer Article III standing as explained by *California Medical Association v. Aetna*.

I.     **A Diversion of Resources in Response Defendants' Conduct Confers Standing, Including Resource Diversions Consistent with Plaintiff's Mission.**

*California Medical Association v. Aetna* addressed the diversion of resources prong of the organizational standing test. California Medical Association (CMA) is a nonprofit organization, founded in 1856, that advocates on behalf of California physicians. CMA's established mission, which it carries out through "'legislative, legal, regulatory, economic, and social advocacy'" includes "the protection of the public health and the betterment of the medical profession." ECF No. 73-1 at 4 (Slip Op. 3) (citing *California Medical Association v. Aetna Health of California, Inc.*, 63 Cal.App.5th 660, 664 (2021)). CMA "has been especially active in advocacy and education on issues involving health insurance companies' interference with the sound medical judgment of physicians providing care to enrollees." *Id.*

Consistent with its mission, CMA devoted time to addressing an Aetna policy that frustrated its mission, and CMA eventually sued Aetna under the UCL regarding that policy. ECF No. 73-1 at 5-6 (Slip Op. 4-5). CMA alleged that its diverted time "would other have been devoted to serving [CMA]'s membership in other respects." ECF No. 73-1 at 6 (Slip Op. 5) There, the Court of Appeals concluded, much like this Court did here with Farm Forward, that CMA engaged in "business as usual."

> If CMA's expenditure of resources in this manner sufficed to establish standing, the appellate court reasoned, then any organization acting consistently with its mission to help its members through legislative, legal and regulatory advocacy could claim standing based on its efforts to address its members' injuries.

ECF No. 73-1 at 7 (Slip Op. 6). In reversing the Court of Appeals, the California Supreme Court rejected the notion that a diversion of resources consistent with an organization's mission deprives an organization of standing. Critically, the Supreme Court clarifies that a "diversion" does not need to differ from an organization's

"mission" to count as an injury in fact. Instead, it is enough that an organization diverts "salaried staff time and other office resources." This constitutes "the loss of 'money or property' within the meaning of section 17204 [of the UCL]." In support, the court continues that "[e]very organization, including CMA, has finite resources to devote to its mission. If the organization uses staff time for a particular project, for example, it must either pull those hours from a different project or augment its staff." *Id*.

In analyzing CMA's organizational standing, the Supreme Court posed two questions:

> The first is whether diversion of staff time can qualify as an "injury in fact" and loss of "money or property" within the meaning of section 17204. The second is whether an organization that chose to divert staff time to counteract the defendant's business practice can be said to have lost that staff time "as a result of" (ibid.) that practice.

ECF No. 73-1 at 9 (Slip Op. 8). The California Supreme Court concluded that, even when diverting resources to address Aetna's policy in a way that was consistent with CMA's mission to advocate for physicians, CMA met the standard:

> Even if, as here, the personnel involved are paid on a salaried basis rather than by the hour, their time clearly holds economic value to the organization. When staff are diverted to a ***new project undertaken in response to an unfair business practice***, the organization loses the value of their time, which otherwise would have been used to benefit the organization in other ways.

ECF No. 73-1 at 12 (Slip Op. 11). Likewise, Farm Forward's mission is to end factory farming, and when Farm Forward diverted resources to address Whole Foods' false advertising in a way that was consistent with Farm Forward's mission, it too has satisfied standing requirements.

Here, Farm Forward pled that it diverted resources and started a new campaign that was a "departure" from its work supporting Defendants' programming. FAC ¶¶

80, 88, 91-92. Farm Forward does not plead its testing was "business as usual" and instead, it pleads that it went out of its way to develop the new campaign. *Compare id.* at 91 (alleging that the new campaign—testing and exposing Whole Foods—was a "significant departure" from working with the company to provide antibiotic free and high welfare products) *with* Order at 16 (making a factual finding that "Farm Forward's testing regime was a continuation of its organizational mission").

The California Supreme Court recognized that the UCL's standing test is analogous to federal law. Indeed, the UCL uses the Article III injury-in-fact test as the basis for UCL standing. The California Supreme Court cites several federal cases—many of which Plaintiffs cited in their briefing—that support its holding. ECF No. 73-1 at 21 (Slip Op. 20) (*California Medical Association* cites the following federal cases that Farm Forward also cited in support of their standing: *Fair Hous. Council of San Fernando Valley v. Roommate.com, LLC*, 666 F.3d 1216, 1219 (9th Cir. 2012); *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936 (9th Cir. 2011); *East Bay Sanctuary Covenant v. Trump*, 909 F.3d 1219 (9th Cir. 2018); *La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest,* 624 F.3d 1083, 1088 n.4 (9th Cir. 2010); *Spann v. Colonial Village, Inc.,* 899 F.2d 24 (D.C. Cir. 1990); *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 905 (9th Cir. 2002); *Nnebe v. Daus*, 644 F.3d 147, 157 (2d Cir. 2011); *Rodriguez v. City of San Jose*, 930 F.3d 1123, 1134 (9th Cir. 2019)).

Finally, the California Supreme Court, which was reviewing an order granting a motion for summary judgment, stated that:

> Viewing the evidence submitted on Aetna's motion for summary judgment in the light most favorable to CMA and drawing all reasonable inferences in CMA's favor, as we must (Weiss v. People ex rel. Department of Transportation, supra, 9 Cal.5th at p. 864), we conclude the evidence established a triable issue of fact as to standing to sue under the UCL.

ECF No. 73-1 at 37 (Slip Op. 36). Here, at a minimum, Farm Forward's allegations establish triable issues of fact as to standing to sue under the UCL. Indeed, this Court recites Farm Forward's allegations as follows:

> Farm Forward also avers that it suffered financial losses as a result of Whole Foods improper actions and that it devoted significant staff time and organizational resources to address Whole Foods' false advertising. Those expenditures included at least $80,000 in purchasing Whole Foods' products, shipping those products to testing laboratories, and paying laboratory-testing fees. Farm Forward alleges that in addition to the resources that it expended on its information campaign, it also had to reallocate resources from other initiatives to address its Whole Foods investigation. As part of its public awareness campaign, Farm Forward spent $12,000 on a consumer survey concerning Whole Foods and its meat advertising claims. If Farm Forward had not undertaken the corrective initiatives described above, it claims that it would have suffered reputational injuries with its supporters.

ECF No. 75 at 5 (citing FAC ¶¶ 88-9, 92, 93, 94).

As the California Supreme Court confirmed in *California Medical Association v. Aetna*, these facts must be viewed "in the light most favorable to [Farm Forward]" and the Court must draw "all reasonable inferences in [Farm Forward's] favor." ECF No. 73-1 at 37 (Slip Op. 36).

## II. Where the Organization's Mission Has Been Impaired or Threatened, the Diversion of Resources is Traceable Defendants' Conduct.

*California Medical Association v. Aetna* also addresses traceability. There, the court explained that, while the UCL's traceability requirement was not borrowed from federal standing law, the closeness of the factual contexts "makes cases applying *Havens* somewhat helpful in understanding how causation works for organizational

standing" under the UCL. To satisfy the traceability requirement, "there must be a causal connection between the injury and the conduct complained of — the injury has to be 'fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court.'" ECF No. 73-1 at 31 n. 9 (Slip Op. 30) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). "Where the organization's mission has been impaired or threatened, courts have deemed the diversion of resources traceable to the defendant's conduct." *Id.* (citing *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach,* 657 F.3d 936, 943 (9th Cir. 2011) (organization assisting day laborers established sufficient "causal connection" between city's antisoliciting ordinance and organization's diversion of resources) (further citations omitted). The Supreme Court concluded that the efforts CMA took to help its members deal with Aetna's policy, to persuade Aetna to stop enforcing its policy, and to spur regulatory action against the policy were caused by Aetna's policy. ECF No. 73-1 at 31 n. 9 (Slip Op. 30).

      The "UCL does not require that the defendant's conduct be the proximate cause of the diversion of resources, but even if the UCL imported a proximate cause requirement from tort law," Farm Forward alleges that Whole Foods' conduct (falsely advertising its beef products) was the cause of Farm Forward's diversion of resources. FAC ¶ 80. This Court's conclusion that Farm Forward's actions "are no longer traceable to Whole Foods' conduct when Farm Forward 'had a similar incentive to engage in many of the countermeasures that it is now taking'" conflicts with *California Medical Association* and Farm Forward's allegations. Farm Forward alleges that it worked with Whole Foods to promote Whole Foods' products and in fact, it spent its own resources for a decade to do just that. FAC ¶ 81. The countermeasures that Farm Forward alleges are diversions and traceable to Whole Foods' conduct are in direct response to Whole Foods' misrepresentations. FAC ¶ 56. In other words, Farm Forward alleges it would have had no need to "test" Whole Foods' beef products or

"expose confusion and misrepresentations among consumers," FAC ¶ 88, had Whole Foods not misrepresented its products to Farm Forward and the public. There is no intervening act breaking the causal chain, and there would be no incentive to "expose" Whole Foods without Whole Foods misrepresentations. ECF No. 73-1 at 31 n. 9 (Slip Op. 30); *Federal Election Commission v. Ted Cruz for Senate*, 142 S.Ct. 1638, 1647 (2022) (citing *Havens*) ("[W]e have made clear that an injury resulting from the application or threatened application of an unlawful enactment remains fairly traceable to such application, even if the injury could be described in some sense as willingly incurred.") (emphasis added). While *Federal Election Commission* involved individual standing, it stands for the proposition that a plaintiff can willingly incur injury and still have standing. *Compare id. with* Order at 17 ("Because Farm Forward's testing program was a continuation of its existing mission to end factory farming, it fails to meet the Ninth Circuit's requirement for organizational standing."). In other words, that Farm Forward had an incentive to end factory farming in no way breaks the causal chain for standing when it diverted resources to counteract Defendants' unlawful acts. And that it chose to divert resources to counteract Defendants' unfair competition does not defeat organizational standing.

### III.   *Havens* is Still Binding Precedent.

The California Supreme Court relied heavily on *Havens* in its 2023 decision finding standing for an organization under the UCL. It also cites to *TransUnion* to describe the broad range of injuries that can be concrete, in contrast to the UCL's strict loss of money or property focus. ECF No. 73-1 at 11 (Slip Op. 10) (citing *TransUnion, LLC v. Ramirez*, ____ U.S. ____, 141 S.Ct. 2190, 2204 (2021) ("As a matter of federal law, an injury can only be concrete – i.e., real and not abstract – even if the injury is personal instead of economic; even certain intangible injuries qualify as injury in fact."). That is to say, the California Supreme Court recognized the concrete injury standard set forth by *TransUnion* and found that the diversion of resources injury that

is the basis of organizational standing under the UCL is a concrete economic injury. Had the California Supreme Court determined that *Havens* organizational standing was no longer relevant and resource diversions were no longer cognizable injuries under Article III after *TransUnion*, it could not have found for CMA and instead, would have dismissed on standing grounds.

Instead, the California Supreme Court cites *Havens* nineteen times in support of its conclusion that an organization can claim injury in its diversion of limited resources to respond to a threat to its own mission. ECF No. 73-1 at 18 (Slip Op. 17). Farm Forward alleged that Defendants threatened their mission to end factory farming, because they were selling meat—and Farm Forward was promoting Whole Foods' meat—as better and best choices for conscious consumers when in fact it was no different than factory farmed meat. FAC ¶ 80. That is a direct threat to the organization's mission and one which required Farm Forward to divert resources. FAC ¶ 94. "As *Havens* and its progeny make clear, an organization that has expended staff time or other resources on responding to a new threat to its mission, diverting those resources from other projects, has suffered an economic injury in fact." ECF No. 73-1 at 24 (Slip Op. 23). And both history and tradition and Article III empower federal courts to hear cases that allege an economic injury. ECF No. 73-1 at 14 18 (Slip Op. 13) (Under the heading 'economic injury' the California Supreme Court states "CMA 'lost money or property' (§ 17204) when its personnel were diverted from other activities that would also have served its goal of assisting its physician members."); *S. California Hous. Rts. Ctr. v. Los Feliz Towers Homeowners Ass'n*, 426 F. Supp. 2d 1061, 1069 (C.D. Cal. 2005) (same).

//
//
//
//

# CONCLUSION

Plaintiff Farm Forward respectfully requests that this Court reconsider its decision in light of *California Medical Association v. Aetna.*

DATED: August 7, 2023

Respectfully submitted,

/s/ *Paige M. Tomaselli*
Paige M. Tomaselli (SBN 237737)
Dylan D. Grimes (SBN 302981)
**GRIME LAW LLP**
730 Arizona Avenue
Santa Monica, CA 90401
Telephone: (310) 747-5095
ptomaselli@grimelaw.com
dgrimes@grimelaw.com

/s/ *Gretchen Elsner*
Gretchen Elsner (pro hac vice)
**ELSNER LAW & POLICY, LLC**
314 South Guadalupe Street, Suite 123
Santa Fe, NM 87501
Telephone: (505) 303-0980
gretchen@elsnerlaw.org
Attorneys for Plaintiffs