Paige M. Tomaselli (SBN 237737)
Dylan D. Grimes (SBN 302981)
GRIME LAW LLP
730 Arizona Avenue
Santa Monica, CA 90401
Telephone: (310) 747-5095
ptomaselli@grimelaw.com
dgrimes@grimelaw.com

Gretchen Elsner (*pro hac vice*)
ELSNER LAW & POLICY, LLC
314 South Guadalupe Street, Suite 123
Santa Fe, NM 87501
Telephone: (505) 303-0980
gretchen@elsnerlaw.org

David F. Sugerman (*pro hac vice*)
Nadia H. Dahab (*pro hac vice*)
SUGERMAN DAHAB
707 SW Washington Street, Suite 600
Portland, OR 97205
Telephone (503) 228-6474
david@sugermandahab.com
nadia@sugermandahab.com

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **SARA SAFARI, PEYMON KHAGHANI**, on behalf of themselves and all others similarly situated, and **FARM FORWARD**, on behalf of the general public,<br><br>Plaintiffs,<br><br>v.<br><br>**WHOLE FOODS MARKET SERVICES, INC.**, a Delaware corporation, **WHOLE FOODS MARKET CALIFORNIA, INC**., a California corporation, **MRS. GOOCH'S NATURAL FOOD MARKETS, INC.**, doing business as Whole Foods Market, a California Corporation,<br><br>Defendants. | Case No. 8:22-CV-01562-JWH (KES)<br><br>**PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFF FARM FORWARD'S MOTION FOR RECONSIDERATION**<br><br>Date: September 29, 2023<br>Time: 9:00 AM<br>Place: 411 West Fourth Street, Courtroom 9D, 9th Floor, Santa Ana, California 92701<br><br>The Honorable John W. Holcomb<br>The Honorable Karen E. Scott<br><br>Complaint Filed:   August 23, 2022<br>Discovery Cutoff:   Not Set<br>Pretrial-Conference: Not Set<br>Trial Date:        Not Set |

# INTRODUCTION

Farm Forward seeks reconsideration of this Court's order, *see* ECF No. 75 (entered July 24, 2023), on the basis of the evolving law on organizational standing. In *California Medical Association v. Aetna Health Care of California*, 532 P.3d 250 (July 17, 2023), the California Supreme Court issued a landmark decision on organizational standing as it applies to California's Unfair Competition Law (UCL) – the same law on which Farm Forward's claims are based. That decision addresses federal constitutional requirements for Article III standing and relies on two U.S. Supreme Court cases that this Court previously requested that the parties address. *See* ECF No. 54 (ordering parties to address *TransUnion, LLC v. Ramirez* and *Havens Realty Corp. v. Coleman*).

It is undisputed that, "[a]s long as a district court has jurisdiction over [a] case, then it possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient." *City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 885 (9th Cir. 2001). This Court has inherent authority to reconsider its order with the benefit of the California Supreme Court analysis on organizational standing in UCL cases. Farm Forward requests that the Court exercise that authority here.

# ARGUMENT

## I. *California Medical Association* Makes Clear that the Injury-in-Fact Analysis for UCL Standing and Article III Standing Are Nearly the Same.

When organizations seek to enforce the UCL, standing requirements are nearly the same in state and federal court, which makes sense. Defendants incorrectly contend that *California Medical Association* "does not examine the issue of Article III standing or the viability of the diversion of resources theory of organizational standing post *TransUnion, LLC v. Ramirez*." ECF No. 93, at 4. Defendants further

claim that "*California Medical Association v. Aetna* is a California case that does not analyze Article III standing whatsoever." *Id.* at 12. But a plain reading of *California Medical Association* demonstrates that the Supreme Court addressed Article III standing, and also determined that a diversion-of-resources injury is a viable organizational standing theory post-*TransUnion*.

The Court expressly observed that the UCL and Art. III standards are harmonious: the UCL's "'injury in fact' requirement is borrowed from federal constitutional law and overlaps to a considerable degree with the 'lost money or property' inquiry." *Cal. Med. Ass'n*, 532 P.3d at 257. The Court continued:

> The phrase "injury in fact" is borrowed from, and was intended to incorporate aspects of, the federal constitutional law of standing. (See Voter Information Guide, Gen. Elec., supra, text of Prop. 64, § 1, subd. (e), p. 109 [declaring intent to limit standing to plaintiffs who have been "injured in fact under the standing requirements of the United States Constitution"].) To establish a case or controversy within the scope of the federal judicial power (U.S. Const., art. III, § 2), a plaintiff in federal court "must show (1) an injury in fact, (2) fairly traceable to the challenged conduct of the defendant, (3) that is likely to be redressed by the requested relief." (*Federal Election Commission v. Cruz* (2022) U.S. [142 S.Ct. 1638, 1646].)

*Id.* at 257–58; *see also id.* at 258 ("As a matter of federal law, an injury can be concrete—*i.e.*, ''real,' and not 'abstract''—even if the injury is personal instead of economic; even certain intangible injuries qualify as injury in fact." (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016); *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2022)). California's UCL incorporates the Article III injury-in-fact requirement, without "borrow[ing] the traceability and redressability requirements of the federal standing inquiry." *Cal. Med. Ass'n* at 257.

1	State and federal courts rely on the same principles to determine if an organization has standing to enforce a consumer protection statute. In *California Medical Association*, the California Supreme Court acknowledged that, "[w]hile the exact question of UCL standing presented here is one of first impression in this court, it has been addressed by other courts applying California law, and closely analogous questions of federal standing have been addressed by the federal courts." *Id.* at 259. As an example, the California Supreme Court cited a case from this district, *Southern California Housing Rights Center v. Los Feliz Homeowners Association*, 426 F. Supp. 2d 1061 (C.D. Cal. 2005), demonstrating that the Article III and UCL standing requirements overlap. The Article III standing analysis of *Southern California Housing Rights Center* was adopted by the California Supreme Court in its seminal case, *Kwikset Corp. v. Superior Court*, 246 P.3d 877 (2011), which addressed standing to sue under the UCL.

The California Supreme Court's analysis in *California Medical Association*—which addressed standing to sue under the same statute that Farm Forward asserts here—applies to this case. This Court should consider the decision in analyzing Farm Forward's standing under Article III.

**II.   A Diversion of Resources in Response to a Threat to the Organization's Mission, Even When the Diversion is Consistent with an Organization's Mission, Supports Organizational Standing.**

Organizational diversion of resources includes a "diversion of resources in response to a threat to its mission." *Cal. Med. Ass'n*, 532 P.3d at 260. Defendants incorrectly state that *California Medical Association* "also does not examine the issue, considered in the Court's order, of whether an alleged diversion of resources merely constitutes business as usual, which does not qualify as a diversion of resources under Article III."

But the Court addressed exactly that point. There, the California Medical Association (CMA), an entity that advocates on behalf of physicians, devoted its resources to the betterment of the medical profession. *Id*. at 255. The fact that CMA diverted resources to challenging the Aetna policy, which it had done in furtherance of its mission, did not disqualify that diversion as "business as usual." As the California Supreme Court held, the challenge to the Aetna policy was "diversion of resources in response to a threat to its mission":

> CMA may not have incurred additional out-of-pocket costs in responding to Aetna's allegedly illegal practices; its employees were salaried and would have been paid regardless. But the economic value CMA received from their labor was reduced. CMA "lost money or property" (§ 17204) when its personnel were diverted from other activities that would also have served its goal of assisting its physician members.

*Id.* at 259–60.

So, too, with Farm Forward. In the operative complaint in this case, Farm Forward alleges that it "expended significant resources addressing Whole Foods' misinformation, which has resulted in the organization having fewer resources to devote to its mission of ending factory farming." FAC ¶ 80. Contrary to this Court's order, the question is not whether "Farm Forward's testing program was a continuation of its existing mission to end factory farming," ECF No. 75, at 17; Farm Forward would always spend its time and money in furtherance of its mission to end factory farming. Instead, the question is whether the antibiotics testing program and related activities were a "diversion of resources in response to a threat to its mission." It was a diversion of resources in response to a threat to its mission, as alleged in the FAC:

- Whole Foods' misrepresentations, both to Farm Forward and to the public, directly undermined Farm Forward's activities to convince the public to make a "better choice" consistent with Farm Forward's mission to end factory farming. FAC ¶ 87
- Farm Forward expended significant staff time and organizational resources to address Whole Foods' false advertising and to expose the confusion and misimpressions among consumers that Whole Foods had caused and continues to cause. FAC ¶ 88
- To properly inform its members, supporters, and social media followers, Farm Forward invested in and initiated a new campaign designed to expose Whole Foods' (and other companies') false advertising of meat. FAC ¶ 91

Farm Forward's alleged diversion of resources is analogous to the diversion of resources suffered by the plaintiff in *California Medical Association* – a diversion of resources injury in defense of the organization's mission, not a departure from the mission. The California Supreme Court determined that these allegations are sufficient for organizational standing, and therefore this Court's decision merits reconsideration.

### III.   Courts Continue to Rely on *Havens* and Its Progeny after *TransUnion*.

In its order, this Court questioned the constitutional viability of organizational standing, specifically inquiring whether *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982), remains good law after *TransUnion*. ECF No. 75 at 14-15.

Since the U.S. Supreme Court decided *Havens* in 1982, it has been cited more than 1,500 times. And since the U.S. Supreme Court decided *TransUnion* in 2021, *Havens* has been cited dozens of times by courts across the country. Indeed, *Havens*

is still consistently cited by the federal courts in the Ninth Circuit. *See, e.g.*, *E. Bay Sanctuary Covenant v. Biden*, 2023 WL 4729278, -- F. Supp. 3d -- (N.D. Cal. July 25, 2023) (citing *Havens* and finding organizational standing). In *Fellowship of Christian Athletes v. San Jose Unified School District*, 46 F.4th 1075 (9th Cir. 2022), *Havens* was cited in both the majority and dissent, without suggesting that it was no longer the law. And in *Sabra v. Maricopa County Community College District*, 44 F.4th 867 (9th Cir. 2022), the Ninth Circuit cited *Havens* in both the majority and the concurrence, ultimately concluding that the plaintiff had standing.

Finally, as recently as April 2023, the Fifth Circuit ruled that physician associations had *Havens* standing to sue the FDA regarding the abortion pill, mifepristone. *All. for Hippocratic Med. v. Food & Drug Admin.*, 2023 WL 2913725 (5th Cir. Apr. 12, 2023) (unpublished); *see also* ECF No. 60-2 (attached as supplemental authority). Consistent with the California Supreme Court's diversion-of-resources analysis, the Fifth Circuit stated, "Plaintiff associations have also suffered independent injuries because FDA's actions have frustrated their organizational efforts to educate their members and the public on the effects of mifepristone." The Fifth Circuit affirmed the district court's order, which had relied on both *Havens* and *TransUnion*. *All. for Hippocratic Med. v. U.S. Food & Drug Admin.*, No. 2:22-CV-223-Z, 2023 WL 2825871 (N.D. Texas, Apr. 7, 2023); *see also* ECF No. 60-1 (attached as supplemental authority).

*Alliance for Hippocratic Medicine* is particularly useful in clarifying whether "*TransUnion* calls into question the circumstances under which courts may properly grant organizational standing." ECF. No. 75 at 18. In *Alliance for Hippocratic Medicine*, the district court, after discussing how courts assess whether an organizational plaintiff's injury has a close relationship to a harm traditionally recognized as the basis for a lawsuit at common law (consistent with the test in *TransUnion*) concluded that the harm resulting from unsafe drugs is similar to harm

actionable under the common law and that the evidence of injury required to satisfy the *TransUnion* standard is minimal. *Id*. at *7 n.14 (citing *Campaign Legal Ctr. v. Scott*, 49 F.4th 931, 940 (5th Cir. 2022) (Ho., J. concurring)). That analysis, affirmed by the Fifth Circuit, answered this Court's question by noting that defendants' reliance on *Spokeo v. Robins*, 578 U.S. 330 (2016), was "unavailing," and deciding that "Plaintiffs only need to show the type of harm allegedly suffered is similar in kind to a *type* of harm that the common law has recognized as actionable." *All. for Hippocratic Med.*, No. 2:22-CV-223-Z, 2023 WL 2825871, at *7 n.14 (N.D. Tex. Apr. 7, 2023) (italics in original, internal quotes omitted). Farm Forward has satisfied that standard here.

## CONCLUSION

Defendants oppose reconsideration but correctly state that "The Court did not analyze Farm Forward's standing under the UCL." ECF No. 93 at 8. Farm Forward agrees with Defendants that this Court did not analyze Farm Forward's standing under the UCL, the statute from which Farm Forward's cause of action against Defendants arises. Therefore, Farm Forward respectfully requests that the Court do so in light of *California Medical Association v. Aetna Health Care of California.*

Dated:  September 20, 2023                ELSNER LAW & POLICY, LLC

By:  */s/ Gretchen Elsner*
Gretchen Elsner (admitted pro hac vice)
314 South Guadalupe Street, Suite 123
Santa Fe, NM 87501
Telephone: (505) 303-0980
gretchen@elsnerlaw.org

| | |
|---|---|
| 1 | GRIME LAW, LLP |
| 2 | Paige M. Tomaselli (SBN 237737) |
|   | Dylan D. Grimes (SBN 302981) |
| 3 | 730 Arizona Avenue |
| 4 | Santa Monica, CA 90401 |
|   | Telephone: (310) 747-5095 |
| 5 | ptomaselli@grimelaw.com |
| 6 | dgrimes@grimelaw.com |

SUGERMAN DAHAB
David F. Sugerman (*pro hac vice*)
Nadia H. Dahab (*pro hac vice*)
707 SW Washington St. Ste. 600
Portland, OR 97205
Tel: (503) 228-6474
david@sugermandahab.com
nadia@sugermandahab.com

*Attorneys for Plaintiffs*
SARA SAFARI, PEYMON KHAGHANI
and FARM FORWARD