BRIAN R. BLACKMAN (SBN 196996)
bblackman@blaxterlaw.com
J.T. WELLS BLAXTER (SBN 190222)
wblaxter@blaxterlaw.com
ERIN W. KEEFE (SBN 240639)
ekeefe@blaxterlaw.com
DAVID P. ADAMS (SBN 312003)
dadams@blaxterlaw.com
BLAXTER | BLACKMAN LLP
601 Montgomery Street, Suite 1110
San Francisco, California 94111
Telephone: (415) 500-7700

Attorneys for defendants WHOLE FOODS MARKET SERVICES, INC.; WHOLE FOODS MARKET CALIFORNIA, INC.; and MRS. GOOCH'S NATURAL FOOD MARKETS, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SARA SAFARI, PEYMON KHAGHANI, on behalf of themselves and all others similarly situated, and FARM FORWARD, on behalf of the general public,

Plaintiffs,

v.

WHOLE FOODS MARKET SERVICES, INC., a Delaware corporation, WHOLE FOODS MARKET CALIFORNIA, INC., a California corporation, MRS. GOOCH'S NATURAL FOOD MARKETS, INC., doing business as Whole Foods Market, a California Corporation,

Defendants.

Case No. 8:22-CV-01562-JWH (KESx)

**JOINT STIPULATION REGARDING DEFENDANTS' MOTION TO COMPEL (L.R. 37-2)**

Date: October 31, 2023
Time: 10:00 AM
Place: 411 West Fourth Street
Courtroom 6D, 9th Floor
Santa Ana, California 92701

The Honorable Karen E. Scott

Complaint Filed: August 23, 2022
Discovery Cutoff: Not Set
Pretrial-Conference: Not Set
Trial Date: Not Set

# TABLE OF CONTENTS

I. DEFENDANTS' INTRODUCTORY STATEMENT ... 1
II. PLAINTIFFS' INTRODUCTORY STATEMENT ... 4
III. Disputed issues ... 7
a. REQUEST FOR PRODUCTION NO. 2 ... 7
1. Defendants' Position ... 9
2. Plaintiff's Position ... 13
b. REQUEST FOR PRODUCTION NO. 3 ... 16
1. Defendants' Position ... 17
2. Plaintiff's Position ... 18
c. REQUEST FOR PRODUCTION NO. 5 ... 21
1. Defendants' Position ... 22
2. Plaintiff's Position ... 25
d. REQUEST FOR PRODUCTION NO. 6 ... 27
1. Defendants' Position ... 28
2. Plaintiff's Position ... 28
e. REQUEST FOR PRODUCTION NO. 7 ... 29
1. Defendants' Position ... 30
2. Plaintiff's Position ... 30
f. REQUEST FOR PRODUCTION NO. 8 ... 31
1. Defendants' Position ... 32
2. Plaintiff's Position ... 32
g. REQUEST FOR PRODUCTION NO. 9 ... 32
1. Defendants' Position ... 33
2. Plaintiff's Position ... 34

h. REQUEST FOR PRODUCTION NO. 10 .......... 34

1. Defendants' Position .......... 35

2. Plaintiff's Position .......... 35

i. REQUEST FOR PRODUCTION NO. 23 .......... 36

1. Defendants' Position .......... 37

2. Plaintiff's Position .......... 37

j. REQUEST FOR PRODUCTION NO. 36 .......... 38

1. Defendants' Position .......... 39

2. Plaintiff's Position .......... 39

## I. DEFENDANTS' INTRODUCTORY STATEMENT

Defendants' Whole Foods Market Services, Inc. ("WFM Services"), Whole Foods Market California, Inc. ("WFM CA"), and Mrs. Gooch's Natural Food Markets, Inc.'s ("Mrs. Gooch's"; collectively "Defendants") move for an order compelling Plaintiff Peymon Khaghani ("Khaghani") to provide further amended responses and production of documents to Defendants' Requests for Production, Set One.

In this action, plaintiffs Khaghani, Sara Safari, and Farm Forward (collectively "Plaintiffs") allege that Defendants falsely advertise beef products sold at Whole Foods Market stores in California under the slogan "No Antibiotics Ever." Defendants propounded written discovery to Khaghani seeking: (1) production of Khaghani's credit card statements showing purchases of meat products from Whole Foods Market and other retailers and restaurants during the statutory period (RFP Nos. 2 and 3); and (2) documents supporting Khaghani's contentions in his First Amended Complaint ("FAC"). *See* RFP Nos. 5-10, 23, 25-26, and 36. Khaghani refused to respond to most of these requests, stating he would consider producing credit card statements showing purchases at Whole Foods Markets if, after his review, their production would not be too burdensome. These documents are discoverable, and the Court should order Khaghani to provide further amended responses and production of documents.

**Credit Card Statements.** Khaghani's credit card statements reflecting meat purchases during the statutory period are relevant and discoverable.

Credit card statements reflecting purchases at Whole Foods Market stores are discoverable because they will show when Khaghani made purchases at Whole Foods Market stores in San Francisco. This material is relevant because Khaghani's standing is predicated on alleged purchases from Whole Foods Market stores in San Francisco during the timeframe when Plaintiffs allegedly found beef containing

antibiotics in this supply chain. *See* Adams Decl. ¶3, Ex. 2 [ECF No. 75], at 14, citing ECF No. 35, at ¶¶18, 60. Defendants have the right to obtain discovery that bears on the credibility of these allegations. Khaghani's responses to Defendants' interrogatories on this topic contained little detail regarding the dates and locations of these purchases, and the only place left for Defendants to obtain this information is Khaghani's credit card statements.

Khaghani claims that he will consider producing credit card statements showing purchases at Whole Foods Market, *if* he determines that producing them will not be unduly burdensome. This position does not comply with Fed. R. Civ. Proc. 34(b)(2)'s requirement that a party respond to a request for production by stating whether they will produce documents, and if not, what documents he or she is withholding. Defendant is entitled to a firm answer on whether Khaghani will comply or not at the time responses are due. Khaghani's uncertain "wait and see" approach delays discovery and does not comply with Rule 34. Plaintiff must provide an amend code-complaint answer to this request.

Further, if Khaghani were to stand on his burden objection, it would fail. The only burden Khaghani has identified is that of redacting non-Whole Foods Market purchases. This objection fails because Khaghani is not entitled to make such redactions because he has not asserted a privacy objection in response to this request. Moreover, any privacy concerns are addressed by the parties' stipulated protective order. Responsive documents must be produced as maintained in the regular course of business under Fed. R. Civ. Proc. 34(b)(2)(E)(i), and Khaghani's unilateral redactions would violate this rule and risk obscuring responsive material. Even if Khaghani were entitled to make such redactions, the burden is minimal and proportional to the needs of this case. Further, the fact that the credit card statements are not itemized makes no difference either. Non-itemized transactions will show *when* he made purchases at Whole Foods Market and other stores.

While Khaghani equivocates that he *may* produce credit card statements showing purchases at Whole Foods Markets, he refuses to produce credit card statements showing meat purchases from other sources. This material must also be produced. Khaghani's purchases of meat from other retailers and restaurants during the statutory period will bear on whether he considers Defendants' antibiotic-free statements to be material in his purchases. If Khaghani's credit card history reflects purchases of meat from retailers and restaurants who do not advertise their meat as antibiotic-free, this will show that he never relied on or cared about Defendants' antibiotics claims when purchasing beef from Whole Foods Market stores.

**Contention Discovery.** Khaghani refuses to respond to Defendants' requests for documents supporting his contentions in the FAC on the grounds that identifying and producing responsive documents would call for disclosure of attorney work product. Not so. Contention interrogatories are clearly allowed under the plain text of Fed. R. Civ. Pro. § 33(a)(2) and applicable case law. Khaghani does not distinguish this case law, but instead relies on case law dealing with attorney work product in other contexts. None of Khaghani's cases deal with contention discovery.

Further, Khaghani's argument that contention discovery should be delayed allowing him time to identify documents supporting his contentions also fails. While Khaghani may find additional documents supporting his contentions during the course of discovery, he manifestly must have documents supporting his contention that Defendants falsely advertise their beef as antibiotic-free. Without such documentation, he would not be able to make the key allegations that support his FAC. This is foundational discovery in this case, and Khaghani identifies no good reason why it should be delayed. Khaghani may always supplement his responses later to identify and produce newly discovered documents supporting his claims.

## II. PLAINTIFFS' INTRODUCTORY STATEMENT

Defendants promise "No Antibiotics, EVER" in their meat supply chain. *See* First Amended Complaint (FAC), ECF No. 35, ¶ 1. On top of advertising the "No Antibiotics, Ever" standard, Defendants promised consumers, "[i]f it doesn't meet our standards, we won't sell it," misleading consumers into thinking that Defendants have verified compliance with their standard. FAC ¶ 45. Consumers choose to pay more for meat at Whole Foods in reliance on this promise. Nevertheless, antibiotics are administered to the cattle that become Whole Foods beef products and Defendants do not verify compliance with their promised standard.

Antibiotics use in Defendants' beef products has been the subject of two testing campaigns, a scientific journal article, and news articles from multiple, high-profile news outlets. For example, Farm Forward tested meat products using two different independent laboratories. One laboratory found monensin sodium, an antibiotic, in a Beef Product certified by Whole Foods' third-party certifier (Global Animal Partnership or "GAP") and purchased from Whole Foods in San Francisco. Monensin sodium is marketed as a growth-promoting pharmaceutical. Another laboratory found fenbendazole, an antiparasitic pharmaceutical, in five Beef Product samples purchased from Whole Foods in Salt Lake City and Chicago. All five Beef Product samples were marketed as GAP-certified. FAC ¶¶ 60-61. Farm Forward publicized its findings on antibiotics use in Whole Foods' meat.[1]

FoodID—a third-party testing organization—tested 699 "raised without antibiotics" cattle and expected that zero animals would test positive for antibiotics. FAC ¶ 62. But 42% of feedyards providing "raised without antibiotics" cattle had at least one animal test positive. FAC ¶ 62(a). When FoodID separately analyzed antibiotics residue in GAP-certified cattle, FoodID found that approximately 26% of

---

[1] *See, e.g.*, ECF Nos. 46-3 and 46-4 (Publicly available blog posts from Farm Forward from April 2022 and attached to Defendants' Motion to Dismiss).

GAP cattle came from a lot where at least one animal tested positive, and 22% of GAP-certified cattle came from a lot where two animals tested positive for antibiotics. FAC ¶ 62(c). As the scientists stated in their peer-reviewed journal article, "both animals testing positive from a lot would suggest a ***systemic*** problem" in the supply chain. FAC ¶ 62 (emphasis added).

Plaintiff Khaghani challenged Defendants' advertising statements because, had he known that Whole Foods does not effectively verify its promise to consumers and that cattle used in Whole Foods Beef Products were raised with antibiotics, he would not have purchased the Products or would not have paid what he did for them. FAC ¶¶ 7, 22. Despite Plaintiffs having served discovery requests in February 2023, Defendants have argued that Plaintiff Khaghani does not have standing to bring claims for any products he did not purchase, and they have undertaken an investigation into their supply chain, the results of which (or the facts on which they are based) have not yet been disclosed. Nevertheless, Defendants now move to compel Plaintiff Khaghani to produce four years of financial transactions that are not related to this litigation as well as attorney work product before Defendants disclose the fundamental information about their supply chain. This asymmetrical discovery approach is not consistent with Rule 26.

Defendants' motion to compel centers around two categories of information to which Plaintiff Khaghani has objected: (1) complete and unredacted credit card statements for all purchases—whether at grocery stores, restaurants, other retailers, or for items not even conceivably relevant to this litigation, and (2) attorney work product. It is ***only*** these two categories of documents where Khaghani has objected to responding to the requests as currently written. Tomaselli Decl. ¶¶ 8, 9, Exhibit B.

**Credit Cards.** Defendants misrepresent the status of the credit card dispute. Plaintiffs are currently conducting their investigation into Plaintiff Khaghani's credit card statements and data contained therein that may be responsive to Defendants'

requests. Tomaselli Decl. ¶ 9, Exhibit B at 7 ("Plaintiffs intend to produce responsive transactions … Plaintiffs have not yet completed [their] collection."). In response to Defendants' misguided argument that credit card statements are the only way to get additional information about when Plaintiff Khaghani visited Whole Foods and which locations he visited, Plaintiffs have agreed to produce statements reflecting transactions with Whole Foods only. Khaghani will produce credit card transactions with Whole Foods because of their relevance—albeit marginal—to this case. Khaghani already responded to interrogatories to state that he predominantly purchases groceries with cash.

Yet, Defendants do not stop there. They claim that *all* credit card transactions—every transaction on the same statement that includes any retailer that sells meat—are relevant and should also be produced. For example, Defendants argue that if Plaintiff Khaghani has a credit card statement that lists Burger King, that is relevant because the credit card statement contains information regarding whether Whole Foods' "No Antibiotics Ever" promise was material to what he purchased at Burger King. That, however, is irrelevant to whether Whole Foods misrepresented their products, and Khaghani relied on those misrepresentations, when he paid a premium to purchase Whole Foods' claimed "no antibiotics, ever" meat. Additionally, the credit card statements do not contain an itemized list of products that Plaintiff purchased; in that respect, they are unhelpful and will not provide the information that Defendants seek.

Compelling a plaintiff to produce information that has no bearing on his actual purchase decisions is outside the scope of discovery under Rule 26.

**Contention Discovery.** Contrary to Defendants statement, Khaghani has not refused to produce documents that support his contentions that Whole Foods' beef supply chain contains meat raised with antibiotics. Indeed, Plaintiff agrees that the documents are discoverable, but not in response to the requests as written. As

currently phrased—to the extent that the requests seek production of a specific compilation of documents that counsel believes support Plaintiff's claims—the requests seek attorney work product. To avoid the production of work product, Plaintiff suggested that Defendants simply rephrase the requests. Tomaselli Decl. ¶ ¶ 8, 9, Exhibit B at 7 ("Khaghani again suggested that the RFPs can simply be reworded because, as drafted, they seek attorney work product. Plaintiffs believe that doing so [rewording to not seek attorney work product] will avoid the need for motion practice and judicial intervention. Defendants apparently have chosen not to do so.").

As to any other materials that Defendants reference herein, Defendants' proposed motion to compel is premature, as Plaintiff Khaghani is in the middle of his investigation and document review pursuant to the recent meet and confer discussions, and he has informed Defendants on numerous occasions that he will produce responsive, non-privileged documents within his possession, custody, or control. Plaintiffs have timely responded—and will continue to timely respond—to Defendants' discovery requests and have provided—and will continue to provide—amended responses pursuant to meet and confer efforts. To date, Plaintiffs have produced 699 pages, while Defendants have produced nothing in response to RFPs served as early as February 2023. Tomaselli Decl. ¶¶ 2, 4, Exhibit A. Nevertheless, Defendants are moving to compel when Plaintiff Khaghani's search efforts are ongoing.

## III. DISPUTED ISSUES

### A. REQUEST FOR PRODUCTION NO. 2

**REQUEST FOR PRODUCTION NO. 2:**

All DOCUMENTS, including but not limited to receipts, order summaries, credit or debit card statements, advertising statements, and product labels,

RELATING TO YOUR purchase of any beef products from Whole Foods Market during the CLASS PERIOD.

**PLAINTIFF'S AMENDED RESPONSE:**

Plaintiff objects to this request to the extent that it seeks documents protected from disclosure by the attorney-client privilege, work-product doctrine, or any other applicable privilege from disclosure in litigation. Plaintiff further objects to this request as overbroad and unduly burdensome, specifically to the extent that it seeks Plaintiff's credit or debit card statements from the last four years and those credit card statements reflect transactions that bear no relation to the claims or defenses in this case. Furthermore, such statements, to the extent that they exist, would not contain an itemized list of products that Plaintiff purchased and therefore would not confirm whether Plaintiff purchased Whole Foods beef products at any particular time. And as Plaintiff stated in response to Defendants' interrogatories, Plaintiff generally makes purchases at Whole Foods Market stores using cash, not credit. In Plaintiff's view, then, Defendants' request for credit or debit card statements is not proportional to the needs of the case and is unlikely to lead to the discovery of admissible evidence.

Finally, Plaintiff objects to the request as vague with respect to the phrases "order summaries" and "advertising statements." With respect to the latter, Plaintiff assumes for the purpose of this response that the phrase "advertising statements" refers to Defendants' advertisements of the beef products that are the subject of Plaintiff's claims. Plaintiff does not understand the meaning of the phrase "order summaries."

Without waiving the foregoing general and specific objections, Plaintiff agrees to produce receipts, advertising statements, or product labels relating to Plaintiff's purchase of any beef products from Whole Foods Markets during the CLASS PERIOD in Plaintiff's possession, custody, or control. Plaintiff will not

produce credit or debit card statements reflecting any transactions other those made at a Whole Foods Market store. Plaintiff agrees to conduct a reasonably diligent search to determine whether any such statements exist and to confer further with Defendants once that search is complete.

**1. Defendants' Position**

During the parties' September 20, 2023 meet and confer, Khaghani's counsel stated that Khaghani was searching for responsive credit card statements that he would consider producing them, *if* the burden of redacting non-Whole Foods Market purchases was not too high. Declaration of David Adams [Adams Decl.], ⁋9, Ex. 7, p.2.

This response is does not comply with Fed. R. Civ. Proc. 34. A party responding to RFPs "must either state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons." Fed. R. Civ. Proc. 34(b)(2)(B). If any documents are withheld on the grounds of an objection, the response must specify the documents that are withheld. *Id.* at 34(b)(2)(C). Defendant is entitled to a firm answer on whether Khaghani will comply or not at the time responses are due. Khaghani's uncertain "wait and see" approach delays discovery and does not comply with Rule 34. Khaghani must provide an amended code-complaint answer to this request.

Further, should Khaghani eventually choose to stand on his burden objection, it would fail because his credit card statements are relevant, and Khaghani's unsubstantiated burden objection does not pass the balancing test of Fed. R. Civ. Pro. 26(b)(2)(B).

To begin with, good cause exists for the production of Khaghani's credit card statements because they are relevant to his shopping history and thus relevant to his claims in this matter. *Amy Evans v. DSW Inc.*, No. CV 16-3791-JGB (SPX), 2017

WL 9480800, at *5 (C.D. Cal. Aug. 24, 2017) (granting motion to compel production of credit card statements in product liability consumer deception case).

In *Amy Evans*, a consumer plaintiff alleged that the defendant clothing manufacturer falsely advertised that its products were cheaper than comparable products. *Id.* at **1-2. Defendant propounded requests for production seeking the plaintiff's credit card statements, "to probe plaintiff's shopping history, preferences, and habits to determine the credibility of plaintiff's claims that she was misled by the "Compare At" advertised prices." *Id.* at *2. The plaintiff refused to produce the credit card statements on the grounds they were "not relevant, [were] disproportionate to the needs of the case, and [were] an unnecessary invasion of privacy." *Id.* at *4.

The court ordered the plaintiff to produce the responsive credit card statements on the grounds that "Plaintiff's credit card statements do contain information relating to plaintiff's shopping habits, which is relevant to her claims that she was deceived by the alleged false advertisement." *Ibid.*[2] The Court noted that the "plaintiff has identified no particular burden she will face in having to obtain and produce her old credit card statements." *Ibid.*

Here, Khaghani claims that production of credit card statements is not proportional to the needs of this case because the statements contain transactions with no relation to the claims in this case, which require burdensome redaction. This argument fails for multiple reasons.

Khaghani has not asserted a privacy objection with respect to non-Whole Foods Market transactions, and any claim to redact these transactions on privacy grounds is waived.

---

[2] The Court did, however, rule that the plaintiff need not produce credit card statements for cards not used to purchase the defendants' products or similar products. *Ibid.* This ruling is of significance here, because Defendants do not seek production of credit card statements that were not used to purchase meat products.

Even if Khagahni had asserted a privacy objection, privacy is not a valid ground for withholding production in this instance where Khaghani's purchasing habits are at issue and the parties have entered into a stipulated protective order. *See Amy Evans*, 2017 WL 9480800, at *5 (ordering consumer plaintiff to produce credit card statements because she put them at issue by bringing action and because the plaintiff's right to privacy was protected by stipulated protective order).

Further, unilateral redactions risk withholding responsive material and violate the rule that, "A party must produce documents as they are kept in the usual course of business." Fed. R. Civ. Proc. 34(b)(2)(E)(i).

Importantly, even if Khaghani had grounds to redact these documents, which he does not, Khaghani has not carried his burden to show that producing the documents constitutes a burden. Fed. R. Civ. Pro. 26(b)(2)(B). Even *if* Khaghani made purchases from Whole Foods Market with his credit card every month (which he claims is unlikely), the burden of redacting several years of credit card statements is minimal "considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. Proc. 26(b)(1). Khaghani should be ordered to produce unredacted responsive credit card statements.

Khaghani also argues that production of these documents would not be relevant because (1) the statements would not be itemized, and thus not probative as to what meat products Khaghnai purchased at a given time; and (2) Khaghani generally did not use a credit card at Whole Foods Markets, so his purchases would not contain responsive information. These arguments do not prevent production here.

First, while Khaghani's credit card statements may not specify exactly what items were purchased in each transaction, they will contain relevant information regarding his shopping habits such as the date and location of any purchases at Whole Foods Market. This material is relevant in this case. Khaghani's standing is predicated on alleged purchases from the Whole Foods Market stores in San Francisco during the time Plaintiffs allegedly found beef containing antibiotics in this supply chain. *See* Adams Decl. ¶3, Ex. 2 [ECF No. 75], at 14, citing ECF No. 35, at ¶¶18, 60. Defendants have the right to obtain discovery that bears on the credibility of these allegations.

Indeed, production of Khaghani's credit card statements is especially important here where his responses to Defendants' interrogatories provide no detail regarding his purchase history from Whole Foods during this time. Adams Decl., Ex. 4 [Khaghani's Responses to Interrogatories, Set One], at pp. 2-3 (stating that Khaghani purchased vaguely-defined beef products during a two-year time frame with no purchase dates, and no purchase receipts). Khaghani's counsel confirmed during the parties' meet and confer that Khaghani did not keep receipts from his purchases during this time frame and could give no further detail other than what was provided in his interrogatory responses. *Id.* at ¶4. Khaghani's credit card statements are, therefore, the only viable source for this key information in this case. Khaghani must produce them.

Second, the fact that Khaghani claims that his relevant purchases from Whole Foods Market were made in cash is irrelevant. If Khaghani conducts a search of his credit card statements and finds no responsive statements because he only made purchases in cash, then he can state that no responsive documents exist in his discovery response. He cannot, however, skirt his duty to conduct a search for responsive documents by objecting that responsive documents are unlikely to exist.

**2. Plaintiff's Position**

Defendants' discovery requests—specifically, their requests for four years of unredacted and largely irrelevant credit card statements—are outside the scope of discovery under Rule 26. While Defendants ask for information regarding Khaghani's Whole Foods' beef purchases, their argument, and their meet-and-confer explanations, illustrate that they are seeking much more: his entire credit card history during the CLASS PERIOD. Khaghani's credit card history is not relevant to his claims that Defendants falsely advertised their products.

To support this request, Defendants assert two general arguments. First, credit card statements are necessary to show that he shopped at certain Whole Foods stores. And second, the statements *may* shed some light on Khaghani's shopping habits. Neither of these arguments is correct, and neither compels disclosure.

First, as Plaintiffs' counsel made plain at the September 20, 2023, meet and confer, and reiterated in writing, Plaintiff Khaghani will produce responsive Whole Foods transactions—which, if they exist, will undoubtedly illustrate the stores Khaghani shopped at—notwithstanding the minimal relevance of non-itemized statements and the fact that Khaghani has already stated that he predominantly paid with cash when shopping at Whole Foods. Tomaselli Decl. ¶ 9, Exhibit B at 7. Plaintiffs' counsel also confirmed they had not yet completed the collection of Khaghani's documents and therefore counsel could not provide a further response on their burden objection because their understanding of Khaghani's burden was not yet complete. *Id.* Instead of waiting for Plaintiffs to complete their investigation, Defendants served the instant joint statement the very same day as the most recent meet and confer. Tomaselli Decl. ¶ 9 (serving this statement on September 25, 2023, within hours of the most recent meet and confer). As Plaintiffs have not yet completed their investigation into Plaintiff Khaghani's responsive documents, Defendants' motion is premature.

Second, to the extent that Defendants argue that credit card statements must be produced because they may shed some light on Plaintiff Khaghani's shopping habits, Khaghani offers two responses. One, Plaintiff Khaghani's shopping habits at stores other than Whole Foods are not relevant to his claims in this case. As Plaintiff alleges in his complaint, Plaintiff paid a premium at Whole Foods for its "No Antibiotics, Ever" promise. That he may or may not have done so elsewhere—at stores that do not make such promises—is not relevant to his claims against Whole Foods.

And two, there are less invasive means of discovery available to Defendants to obtain the information sought. Defendants have not attempted to obtain this discovery by less invasive means, such as by propounding interrogatories. Defendants have similarly not explained why they have not issued a Rule 45 subpoena to their parent company Amazon regarding online or Prime Membership purchases, "which are likely to yield far more definitive information than credit card statements would." *Cody v. SoulCycle Inc.*, No. CV1506457GHKJEMX, 2017 WL 8811607, at *2 (C.D. Cal. Feb. 17, 2017). "Also, credit statements will contain other irrelevant and personal information requiring [Khaghani] to search through years of statements to find evidence of purchases" at Whole Foods. *Id.* Obtaining at least some of the data from its parent company "would avoid much unnecessary work, and obviate any disproportionality objection." *Id.*

Finally, Khaghani has not waived his right to assert a privacy objection where Defendants are clearly requesting transactions that do not relate to Khaghani's Whole Foods purchases and are therefore not responsive to this request or relevant to the claims in this case.[3] Even if Khaghani produced his credit card statements in

---

[3] To the extent that Defendants argue that Khaghani waived the privacy objection, Khaghani did not waive his constitutional right to privacy. Instead, in order to avoid further dispute and advance the case, he agreed—in response to Defendants' request that Plaintiff *withdraw* his privacy objection—that the Stipulated Protective Order

full, illustrating which other retailers he shopped at with a credit card, the credit card statements will not show what he purchased there. If Defendants are permitted to conduct their fishing expedition, this would force Khaghani to disclose his personal and financial information, which is not relevant to any issue in this case. There is no compelling need for Khaghani to provide this information in this format that could overcome Khaghani's right to privacy. Plaintiff's confidentiality and privacy concerns far outweigh Defendants' interest in obtaining a complete history of Khaghani's purchasing habits, *Pertile v. General Motors*, LLC, 15-cv-00518, 2016 WL 1059450, at *2–*5 (D. Colo. Mar. 17, 2016) (finding defendant's confidentiality concerns outweighed plaintiff's need for the otherwise relevant information); *see also Hensen v. Turn, Inc*., 15-cv-0497, 2018 WL 5281629 (N.D. Cal. Oct. 22, 2018) (holding privacy concerns outweighed the defendant's interest in obtaining complete web browsing history on the plaintiff's mobile devices), especially when such information can be obtained by less burdensome and invasive means, such as requesting this information through an interrogatory.

Defendants' discovery request seeks information that is not consistent with Rule 26, is not relevant to the claims in this case, and that, in any event, can be obtained through less invasive means. In all events, Defendants' motion is premature (because Plaintiffs have not completed their investigation) and unnecessary (because Plaintiffs have agreed to produce statements reflecting Whole Foods transactions). Their motion should be denied.

---

would prevent disclosure of relevant, responsive documents, but stated that Khaghani would still redact irrelevant and non-responsive confidential information. Tomaselli Decl., Exhibit B at 4.

**B. REQUEST FOR PRODUCTION NO. 3**

**REQUEST FOR PRODUCTION NO. 3:**

All DOCUMENTS, including but not limited to receipts, order summaries, credit or debit card statements, advertising statements, and product labels, RELATING TO YOUR purchase of any meat products during the CLASS PERIOD.

**PLAINTIFF'S AMENDED RESPONSE:**

Plaintiff objects to this request to the extent that it seeks documents protected from disclosure by the attorney-client privilege, work-product doctrine, or any other applicable privilege from disclosure in litigation. Plaintiff further objects to this request as overbroad and unduly burdensome, particularly to the extent that it seeks Plaintiff's credit or debit card statements from the last four years and those credit card statements reflect transactions that bear no relation to the claims or defenses in this case. Such statements, to the extent that they exist, would not contain an itemized list of products that Plaintiff purchased, and therefore would not confirm whether Plaintiff purchased meat products at any particular time. Furthermore, as Plaintiff stated in response to Defendants' interrogatories, Plaintiff generally makes purchases at Whole Foods Market stores using cash, not credit or debit. In Plaintiff's view, then, Defendants' request for credit card statements is not proportional to the needs of the case and is unlikely to lead to the discovery of admissible evidence.

Finally, Plaintiff objects to the request as vague with respect to the phrases "order summaries" and "advertising statements." With respect to the latter, Plaintiff assumes for the purpose of this response that the phrase "advertising statements" refers to Defendants' advertisements of meat products in any Whole Foods Market store. Plaintiff does not understand the meaning of the phrase "order summaries."

Without waiving the foregoing general and specific objections, Plaintiff agrees to produce receipts, advertising statements, or product labels relating to Plaintiff's purchase of any meat products from Whole Foods Market stores during

the CLASS PERIOD in Plaintiff's possession, custody, or control. Plaintiff will not produce credit or debit card statements reflecting any transactions other those made at a Whole Foods Market store. Plaintiff agrees to conduct a reasonably diligent search to determine whether any such statements exist and to confer further with Defendants once that search is complete.

**1. Defendants' Position**

Khaghani improperly refuses to produce credit card statements, and improperly refuses to produce responsive documents related to purchases at stores other than Whole Foods Market.

As explained in the proceeding section, credit card statements for purchases at Whole Foods Markets are relevant and proportional to the needs of this case, their production is not unduly burdensome, and is not stymied by Khaghani's right to privacy. *Amy Evans*, 2017 WL 9480800, at *5 (granting motion to compel production of credit card statements in product liability consumer deception case).

Similarly, Khaghani cannot claim that purchases of meat products from stores other than Whole Foods Market are irrelevant. A consumer deception plaintiff must produce information regarding purchases from other retailers when the plaintiff's shopping habits are at issue. *Amy Evans*, 2017 WL 9480800, at *4 ("Even so, defendant has persuasively argued that a picture of plaintiff's shopping history, particularly at other shoe and apparel retailers, may be relevant to determining plaintiff's likelihood of deception."); *Sperling v. Stein Mart, Inc.*, No. EDCV151411BROKKX, 2017 WL 90370, at *3 (C.D. Cal. Jan. 10, 2017) (plaintiff's shopping history at other retailors is relevant and discoverable in false advertising case).

Here, Khaghani's purchases of meat products from sources other than Whole Foods Market stores are relevant because they may bear on whether Defendants' challenged "No Antibiotics Ever" statements were material to Khaghani's purchases

at Whole Foods Market. If Khaghani purchased meat products that were not advertised as antibiotic-free, this shows that he didn't really care about the presence of antibiotics in his meat to begin with, and thus was not harmed if the meat he purchased contained antibiotics.

Khaghani's credit card purchases of meat products from other retailers and restaurants, while not itemized, will still be useful in determining whether Khaghani purchased meat not advertised as antibiotic-free. For instance, if Khaghani's credit card statements show a $3.49 charge every morning at Hamburger Chain X, Hamburger Chain X sells a beef breakfast sandwich for $3.49, and Hamburger Chain X does not advertise its meat as antibiotic-free, then this evidence would tend to show that Khaghani purchased and consumed meat without regard for its antibiotic content. Khaghani must produce his credit card statements that reflect such purchases.

**2. <u>Plaintiff's Position</u>**

Defendants claim a right to receive all credit card statements that contain meat purchases—whether at a restaurant, store, online retailer, or elsewhere—because they may bear on Khaghani's allegations regarding motivation. Yet credit card statements do not reflect items purchased, only stores shopped at, and thus will have no bearing on what Khaghani purchased at other businesses and why. What they will show is Plaintiff Khaghani's private and personal information that has no relevance to the claims in this case. Plaintiff Khaghani's private information will not identify shopping habits or products purchased, and therefore, it is not the least burdensome—or even a reliable—way to obtain the information.

As explained above, to the extent that Defendants argue that credit card statements must be produced because they may shed some light on Plaintiff Khaghani's shopping habits, Plaintiff offers two responses. One, Plaintiff Khaghani's shopping habits at stores other than Whole Foods are not relevant to his

claims in this case. As Plaintiff alleges in his complaint, Plaintiff paid a premium at Whole Foods for its "No Antibiotics, Ever" promise. That he may or may not have done so elsewhere—at stores that do not make such promises—is not relevant to his claims against Whole Foods.

And two, there are less invasive means of discovery available to Defendants to obtain the information sought. Defendants have not attempted to obtain this discovery by less invasive means, such as by propounding interrogatories. Defendants have similarly not explained why they have not issued a Rule 45 subpoena to their parent company Amazon regarding online or Prime Membership purchases, "which are likely to yield far more definitive information than credit card statements would." *Cody v. SoulCycle Inc*., No. CV1506457GHKJEMX, 2017 WL 8811607, at *2 (C.D. Cal. Feb. 17, 2017). "Also, credit statements will contain other irrelevant and personal information requiring [Khaghani] to search through years of statements to find evidence of purchases" at Whole Foods. *Id.* Obtaining at least some of the data from its parent company "would avoid much unnecessary work, and obviate any disproportionality objection." *Id.*

Finally, even if Khaghani produced his credit card statements in full, illustrating which other retailers he shopped at, the credit card statements will not show what he purchased there or why. If Defendants are permitted to conduct their fishing expedition, this would force Khaghani to disclose his personal and financial information, which is not relevant to any issue in this case. There is not a compelling need for this information in this format that could overcome Khaghani's right to privacy. Plaintiffs' confidentiality and privacy concerns far outweigh Defendants' interest in obtaining a complete history of Plaintiff's purchasing habits, *Pertile v. General Motors*, LLC, 15-cv-00518, 2016 WL 1059450, at *2–*5 (D. Colo. Mar. 17, 2016) (finding defendant's confidentiality concerns outweighed plaintiff's need for the otherwise relevant information); *see also Hensen v. Turn,*

*Inc*., 15-cv-0497, 2018 WL 5281629 (N.D. Cal. Oct. 22, 2018) (holding privacy concerns outweighed the defendant's interest in obtaining complete web browsing history on the plaintiff's mobile devices), especially when such information can be obtained by less burdensome and invasive means, such as requesting this information through an interrogatory.

Defendants' example—that Khaghani could have a credit card transaction at Hamburger Chain X that could only be a beef breakfast sandwich—falls far short of showing that Defendants' request seeks relevant information or that their motion should be allowed. First, again, the credit card statements are not itemized, and Defendants do not explain how they reasonably or reliably could conclude that Plaintiff had purchased a particular menu item simply by taking the final purchase price (including tax, tip, and delivery) of a credit transaction and matching that price to the price of a particular menu item and its advertising over a 4-year period. *See supra* (claiming that a credit card statement could help Defendants identify whether a party purchased a $3.49 sandwich). As explained in Plaintiffs' Position on RFP No. 2, If Defendants want to know which retailers Plaintiff Khaghani shops and what he purchases there—again, the items purchased will not show up on a credit card statement—they can serve an interrogatory. The credit card statements will not provide Defendants with the information they claim to seek.

Additionally, the cases that Defendants cite are distinguishable because those cases specifically discuss the relevance of credit card statements in cases alleging deception from "compare at" pricing. *See, e.g., Sperling v. Stein Mart, Inc*., 2017 WL 90370*4 (C.D. Cal.); *Evans v. DSW, Inc*., 2017 WL 9480800 (C.D. Cal.). There, shopping habits could be relevant and proportional because knowledge of the cost of the same items at other stores bears on whether the plaintiff has been misled by the "compare at" advertising. Here, Defendants articulate the justification for their discovery request by referencing factors such as Khaghani's motivation for

purchasing. However, Khaghani need not show "Defendants' representations were the only cause or even the predominant or decisive factor influencing their conduct." *Khan v. Boohoo.com USA, Inc.*, No. CV2003332GWJEMX, 2021 WL 3882970, at *2 (C.D. Cal. July 19, 2021) citing *In Re Tobacco II Cases*, 46 Cal.4th 298, 326-37 (2009).

Defendants' discovery request seeks information that is not consistent with Rule 26, is not relevant to the claims in this case, and that, in any event, can be obtained through less invasive means. In all events, Defendants' motion not only is premature (because Plaintiffs have not completed their investigation) and unnecessary (because Plaintiffs have agreed to produce statements reflecting Whole Foods transactions). Their motion should be denied.

**C. REQUEST FOR PRODUCTION NO. 5**

**REQUEST FOR PRODUCTION NO. 5:**

All DOCUMENTS and COMMUNICATIONS supporting YOUR contention that the beef products sold at Whole Foods Market stores were raised using antibiotics, including but not limited to monensin sodium.

**PLAINTIFF'S AMENDED RESPONSE:**

Plaintiff objects to this request to the extent that it seeks documents protected from disclosure by the attorney-client privilege and the work-product doctrine. Generally speaking, "the selection and compilation of documents by counsel . . . in preparation for pretrial discovery falls within the highly-protected category of opinion work product." *Sporck v. Peil*, 759 F.2d 312, 316 (3d Cir. 1985); *see also United States v. Vega*, 2023 WL 4983240, at *4 (C.D. Cal. May 6, 2023); *Kalter v. Keyfactor, Inc.*, 2022 WL 16985062, at *3 (S.D. Cal. Nov. 16, 2022); *Williams v. Cty. of San Diego*, 2018 WL 4961523, at *5 (S.D. Cal. Oct. 15, 2018); *McKie v. Sears Prot. Co.*, 2011 WL 1670910, at *2 (D. Or. May 3, 2011). Likewise, the U.S. Supreme Court has held that "[a]t its core, the work-product doctrine shelters the

mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." *United States v. Nobles*, 422 U.S. 225, 238 (1975). On that ground, Plaintiff will not produce documents responsive to this request. Defendants are free to rephrase the request so that it does not seek the production of work product.

In addition to the foregoing, Plaintiff objects that this request as overbroad because it is not limited to the CLASS PERIOD. This request also improperly includes a contention interrogatory; even if proper to serve contention requests for production, the contention requests and interrogatories are premature for this stage of the litigation. Fed. R. Civ. P. 33(a)(2) ("the court may order that the interrogatory need not be answered until designated discovery is complete, or until a pretrial conference or some other time.").

**1. Defendants' Position**

Khaghani refuses to produce responsive documents on the grounds that the processes of identifying and producing documents that support his contentions call for the disclosure of attorney-work product. This argument relies on distinguishable case law, while ignoring directly applicable contrary authority.

Contention discovery – i.e., written discovery that asks the responding party to identify documents supporting contentions – is directly authorized under the Federal Rules of Civil Procedure. For instance, Federal Rule of Civil Procedure Rule 33 states that "An interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact, but the court may order that the interrogatory need not be answered until designated discovery is complete, or until a pretrial conference or some other time." Fed. R. Civ. Pro. 33(a)(2).

Accordingly, courts have regularly considered the specific question of whether contention discovery is proper, and regularly held that it is. *See Cable &*

*Computer Tech., Inc. v. Lockheed Saunders, Inc.*, 175 F.R.D. 646, 652 (C.D. Cal. 1997) ("Applying the foregoing principles, this Court prefers to consider contention interrogatories in the same manner it would consider any interrogatory, placing the burden on the party opposing discovery rather than shifting the burden to the proponent of the contention interrogatories to justify their propoundment."); *Kolker v. VNUS Med. Techs., Inc.*, No. C 10-0900 SBA PSG, 2011 WL 5057094, at *6 (N.D. Cal. Oct. 24, 2011) ("The court agrees with Covidien that Kolker cannot claim a privilege over the identity or description of witnesses or documents that may be used to support Kolker's allegations."); *U.S. ex rel. O'Connell v. Chapman Univ.*, 245 F.R.D. 646, 649 (C.D. Cal. 2007) (allowing contention rogs)

Khaghani claims that this request is improper because it calls for him to identify and produce documents supporting his contentions and thus discloses attorney-work product. Khaghani, however, fails to distinguish Fed. R. Civ. Prov. 33, *Cable & Computer Tech*, *Kolker*, or *U.S. ex rel. O'Connell v. Chapman Univ*. Khaghani, instead, relies on distinguishable case law which does not address, either directly or obliquely, the propriety of contention discovery, and instead discusses work product protections in other contexts. *Sporck v. Peil*, 759 F.2d 312, 316 (3d Cir. 1985) (requests was for documents shown to a witness by counsel before deposition, not for documents supporting contentions); *United States v. Vega*, 2023 WL 4983240, at *4 (C.D. Cal. May 6, 2023) (criminal subpoena for records related to officer's conduct for purposes of motion to suppress evidence. Disclosures would have disclosed what documents were relevant for impeachments purposes of officers. Request did not seek documents supporting contentions); *Kalter v. Keyfactor, Inc*., 2022 WL 16985062, at *3 (S.D. Cal. Nov. 16, 2022) (request was for documents used to prepare interrogatory responses, not for documents supporting contentions); *Williams v. Cty. of San Diego*, 2018 WL 4961523, at *5 (S.D. Cal. Oct. 15, 2018) (request was for documents reviewed to prepare for case,

not for documents supporting contentions); *McKiev. Sears Prot. Co*., 2011 WL 1670910, at *2 (D. Or. May 3, 2011) (request was for documents used to prepare interrogatory responses, not for documents supporting contentions). None of these cases deal with contention discovery, and none of them address or distinguish Defendants' authority.

When asked during the parties' August 31, 2023 meet and confer call how Khaghani justified reliance on this distinguishable case law, while ignoring directly controlling case law, Khaghani's attorney failed to provide any explanation other than simply stating that Khaghani believed the weight of conflicting authority support this position. Adams Decl., ¶7. This is simply not the case.

Importantly, Khaghani agrees to produce documents to Request Nos. 25 and 26 despite objecting on the grounds that this request is contention discovery. Adams Decl., Ex. 8, at pp. 16-17. Khaghani's selective decision to stand on this objection indicates that it is illegitimate.

Finally, the Court should disregard Khaghani's request to defer production of responsive documents. While it may be proper in some circumstances to defer responses to contention discovery until the responding party has had a chance to gather responsive evidence during discovery, here, the responsive evidence – i.e., documents supporting Khaghani's contention that Defendants' beef products contain antibiotics - is necessarily in the hands of Khaghani. Khaghani alleges that these documents exist in his FAC. *See* Adams Decl., Ex. 1, at ¶¶60-61. Khaghani, is of course, entitled (and required) to supplement his responses if he discovers new documents supporting this contention during the course of discovery. However, Khaghani should be required to produce what he possesses now. These are foundational documents underpinning the central allegations in this case, and Defendants are entitled to their production.

**2. Plaintiff's Position**

Defendants promise "No Antibiotics, EVER" in their meat supply chain. *See* First Amended Complaint (FAC) 35 ¶ 1. On top of advertising the "No Antibiotics, Ever" standard, Defendants promised consumers, "[i]f it doesn't meet our standards, we won't sell it," misleading consumers into thinking that Defendants have verified compliance with their standard. FAC ¶ 45. Contrary to those promises, antibiotics are administered to the cattle that become Whole Foods beef products and Defendants do not verify compliance with their promised standard.

Key facts supporting those contentions, as alleged in the FAC (ECF No. 35), are the publicly available documents cited in FAC's more than fifty footnotes. Plaintiff Khaghani will produce those documents, but the meet and confer efforts illustrate that this is not what Defendants seek. Defendants seek Plaintiffs' counsel's attorney work product: counsel's selection of documents that, in counsel's view, support each of the statements alleged in the complaint. In response, Plaintiffs correctly stated that they would not provide this work product in response to a document request—contention or otherwise.

Plaintiffs cannot be expected to produce attorney work product. "The work product doctrine is a 'qualified' privilege that protects 'from discovery documents and tangible things prepared by a party or his representative in anticipation of litigation.'" *In re Bofi Holding, Inc. Sec. Litig*., No. 15-CV-2324-GPC-KSC, 2021 WL 3700749, at *5 (S.D. Cal. July 27, 2021) (citing *United States v. Sanmina Corp.*, 968 F.3d 1107, 1119 (9th Cir. 2020) (citations omitted); *see also* Fed. R. Civ. P. 26(b)(3)). During meet and confer efforts, Plaintiffs explained that other than the documents cited in the FAC, the contention interrogatories largely implicate attorney work product, and that this motion could be avoided if Defendants would simply rephrase the relevant RFPs to avoid seeking potentially responsive but

protected attorney work product. Defendants refused and instead, served the instant joint stipulation. Tomaselli Decl., Exhibit B at 7.

Circuit and district courts have held that "the selection and compilation of documents by counsel . . . in preparation for pretrial discovery falls within the highly-protected category of opinion work product." *Sporck v. Peil*, 759 F.2d 312, 316 (3d Cir. 1985); *see also United States v. Vega*, 2023 WL 4983240, at *4 (C.D. Cal. May 6, 2023); *Kalter v. Keyfactor, Inc.*, 2022 WL 16985062, at *3 (S.D. Cal. Nov. 16, 2022); *Williams v. Cty. of San Diego*, 2018 WL 4961523, at *5 (S.D. Cal. Oct. 15, 2018); *McKie v. Sears Prot. Co.*, 2011 WL 1670910, at *2 (D. Or. May 3, 2011). Those courts have reached that conclusion based on U.S. Supreme Court guidance providing that "[a]t its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." *United States v. Nobles*, 422 U.S. 225, 238 (1975).

Work product is precisely what Defendants' requests seek—a specific compilation of documents that Plaintiff Khaghani and his counsel believe to support the allegations of their complaint. Because Plaintiff's responses would constitute work product, and because of the protections afforded work product under the discovery rules, the Court should deny Defendants' motion. *In re Bofi Holding, Inc. Sec. Litig*., 2021 WL 3700749, at *6 (S.D. Cal. July 27, 2021)(citing Fed. R. Civ. P. 26(b)(3)(A)(ii) (work product not discoverable absent a showing of "substantial need and that the information is not otherwise obtainable); *see also Schoenmann v. Fed. Deposit Ins. Corp.*, 7 F. Supp. 3d 1009, 1014 (N.D. Cal. 2014) (finding that communications between a party, its counsel, and a nonparty witness were protected work product)).

Even if the Court disagrees that Defendants' requests seek work product, the requests are premature. Defendants in this case have not even begun to produce documents in response to Plaintiffs' RFPs, which Plaintiffs served in February 2023.

Tomaselli Decl. ¶ 2. Plaintiffs thus cannot be expected to martial every piece of evidence supporting the contention that Whole Foods' beef products are raised in a supply chain that administers antibiotics at this phase of the litigation. *See In re eBay Seller Antitrust Litig.*, 2008 WL 5212170, at 81 (N. D. Cal. Dec. 11, 2008) ("[C]ourts tend to deny contention interrogatories filed before substantial discovery has taken place, but grant them if discovery almost is complete."); *see also Securities & Exchange Comm'n v. Moshayedi*, 2013 WL 12172127, at *1 (C.D. Cal. Mar. 21, 2013) (citing *Nelson v. Cap. One Bank*, 206 F.R.D. 499, 501 (N.D. Cal. 2001); *In re Convergent Techs.*, 108 F.R.D. 328, 332 – 340 (N.D. Cal. 1985)) (finding contention requests both premature and require counsel to disclose legal theories and work product).

Defendants have not met the standard to overcome Plaintiffs' attorney-work product objection.

**D. <u>REQUEST FOR PRODUCTION NO. 6</u>**

**<u>REQUEST FOR PRODUCTION NO. 6:</u>**

All DOCUMENTS and COMMUNICATIONS supporting YOUR contention that the beef products sold at Whole Foods Market stores were raised using pharmaceuticals, including but not limited to fenbendazole.

**<u>PLAINTIFF'S AMENDED RESPONSE:</u>**

Plaintiff objects to this request to the extent that it seeks documents protected from disclosure by the attorney-client privilege and the work-product doctrine. Generally speaking, "the selection and compilation of documents by counsel . . . in preparation for pretrial discovery falls within the highly-protected category of opinion work product." *Sporck v. Peil*, 759 F.2d 312, 316 (3d Cir. 1985); see also United States v. Vega, 2023 WL 4983240, at *4 (C.D. Cal. May 6, 2023); *Kalter v. Keyfactor, Inc.*, 2022 WL 16985062, at *3 (S.D. Cal. Nov. 16, 2022); *Williams v. Cty. of San Diego*, 2018 WL 4961523, at *5 (S.D. Cal. Oct. 15, 2018); *McKie v.*

*Sears Prot. Co.*, 2011 WL 1670910, at *2 (D. Or. May 3, 2011). Likewise, the U.S. Supreme Court has held that "[a]t its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." *United States v. Nobles*, 422 U.S. 225, 238 (1975). On that ground, Plaintiff will not produce documents responsive to this request. Defendants are free to rephrase the request so that it does not seek the production of work product.

In addition to the foregoing, Plaintiff objects that this request as overbroad because it is not limited to the CLASS PERIOD. This request also improperly includes a contention interrogatory; even if proper to serve contention requests for production, the contention requests and interrogatories are premature for this stage of the litigation. Fed. R. Civ. P. 33(a)(2) ("the court may order that the interrogatory need not be answered until designated discovery is complete, or until a pretrial conference or some other time.").

**1. Defendants' Position**

Defendants contend that Khaghani must provide an amended response and produce documents for the reasons stated in Defendants' position regarding Khaghani's response to Request for Production No. 5 above.

**2. Plaintiff's Position**

Khaghani will produce relevant, responsive, proportional non-privileged documents that are not attorney work product, and in fact, Plaintiffs have already produced 699 pages of documents to Defendants. Defendants are already in receipt of third-party subpoena responses relevant to Plaintiffs' allegations. The subpoena responses include one from FoodID, served on Defendants in 2022, detailing the source material for FoodID's peer-reviewed study published in the publicly available Science magazine, and cited in the FAC. Defendants have not met the standard to overcome Plaintiffs' attorney-work product objection. Khaghani is not

required to provide an amended response and produce documents for the reasons stated in Plaintiffs' position regarding Khaghani's response to Request for Production No. 5 above. As explained above, Plaintiffs suggested that Defendants simply rephrase the requests so that they do not seek attorney work product; Defendants have refused to do so.

## E. REQUEST FOR PRODUCTION NO. 7

**REQUEST FOR PRODUCTION NO. 7:**

All DOCUMENTS and COMMUNICATIONS RELATING TO YOUR contention that YOU believed all beef products sold at Whole Foods Market were derived from cattle raised without pharmaceuticals.

**PLAINTIFF'S AMENDED RESPONSE:**

Plaintiff objects to this request to the extent that it seeks documents protected from disclosure by the attorney-client privilege and the work-product doctrine. Generally speaking, "the selection and compilation of documents by counsel . . . in preparation for pretrial discovery falls within the highly-protected category of opinion work product." *Sporck v. Peil*, 759 F.2d 312, 316 (3d Cir. 1985); *see also United States v. Vega*, 2023 WL 4983240, at *4 (C.D. Cal. May 6, 2023); *Kalter v. Keyfactor, Inc*., 2022 WL 16985062, at *3 (S.D. Cal. Nov. 16, 2022); *Williams v. Cty. of San Diego*, 2018 WL 4961523, at *5 (S.D. Cal. Oct. 15, 2018); *McKie v. Sears Prot. Co*., 2011 WL 1670910, at *2 (D. Or. May 3, 2011). Likewise, the U.S. Supreme Court has held that "[a]t its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." *United States v. Nobles*, 422 U.S. 225, 238 (1975). On that ground, Plaintiff will not produce documents responsive to this request. Defendants are free to rephrase the request so that it does not seek the production of work product.

In addition to the foregoing, Plaintiff objects that this request as overbroad because it is not limited to the CLASS PERIOD. This request also improperly includes a contention interrogatory; even if proper to serve contention requests for production, the contention requests and interrogatories are premature for this stage of the litigation. Fed. R. Civ. P. 33(a)(2) ("the court may order that the interrogatory need not be answered until designated discovery is complete, or until a pretrial conference or some other time.").

**1. Defendants' Position**

Defendants contend that Khaghani must provide an amended response and produce documents for the reasons stated in Defendants' position regarding Khaghani's response to Request for Production No. 5 above.

**2. Plaintiff's Position**

Khaghani will produce relevant, responsive, proportional non-privileged documents that are not attorney work product, and in fact, Plaintiffs have already produced 699 pages of documents to Defendants. Defendants are already in receipt of third-party subpoena responses relevant to Plaintiffs' allegations. The subpoena responses include one from FoodID, served on Defendants in 2022, detailing the source material for FoodID's peer-reviewed study published in the publicly available Science magazine, and cited in the FAC. Defendants have not met the standard to overcome Plaintiffs' attorney-work product objection. Khaghani is not required to provide an amended response and produce documents for the reasons stated in Plaintiffs' position regarding Khaghani's response to Request for Production No. 5 above. As explained above, Plaintiffs suggested that Defendants simply rephrase the requests so that they do not seek attorney work product; Defendants have refused to do so.

**F. REQUEST FOR PRODUCTION NO. 8**

**REQUEST FOR PRODUCTION NO. 8:**

All DOCUMENTS and COMMUNICATIONS supporting YOUR contention that the cattle in Whole Foods Market's supply chain are raised under crowded and unsanitary conditions.

**PLAINTIFF'S AMENDED RESPONSE:**

Plaintiff objects to this request to the extent that it seeks documents protected from disclosure by the attorney-client privilege and the work-product doctrine. Generally speaking, "the selection and compilation of documents by counsel . . . in preparation for pretrial discovery falls within the highly-protected category of opinion work product." *Sporck v. Peil*, 759 F.2d 312, 316 (3d Cir. 1985); *see also United States v. Vega*, 2023 WL 4983240, at *4 (C.D. Cal. May 6, 2023); *Kalter v. Keyfactor, Inc.*, 2022 WL 16985062, at *3 (S.D. Cal. Nov. 16, 2022); *Williams v. Cty. of San Diego*, 2018 WL 4961523, at *5 (S.D. Cal. Oct. 15, 2018); *McKie v. Sears Prot. Co*., 2011 WL 1670910, at *2 (D. Or. May 3, 2011). Likewise, the U.S. Supreme Court has held that "[a]t its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." *United States v. Nobles*, 422 U.S. 225, 238 (1975). On that ground, Plaintiff will not produce documents responsive to this request. Defendants are free to rephrase the request so that it does not seek the production of work product.

In addition to the foregoing, Plaintiff objects that this request as overbroad because it is not limited to the CLASS PERIOD. This request also improperly includes a contention interrogatory; even if proper to serve contention requests for production, the contention requests and interrogatories are premature for this stage of the litigation. Fed. R. Civ. P. 33(a)(2) ("the court may order that the interrogatory

need not be answered until designated discovery is complete, or until a pretrial conference or some other time.").

**1. Defendants' Position**

Defendants contend that Khaghani must provide an amended response and produce documents for the reasons stated in Defendants' position regarding Khaghani's response to Request for Production No. 5 above.

**2. Plaintiff's Position**

Khaghani will produce relevant, responsive, proportional non-privileged documents that are not attorney work product, and in fact, Plaintiffs have already produced 699 pages of documents to Defendants. Defendants are already in receipt of third-party subpoena responses relevant to Plaintiffs' allegations. The subpoena responses include one from FoodID, served on Defendants in 2022, detailing the source material for FoodID's peer-reviewed study published in the publicly available Science magazine, and cited in the FAC. Defendants have not met the standard to overcome Plaintiffs' attorney-work product objection. Khaghani is not required to provide an amended response and produce documents for the reasons stated in Plaintiffs' position regarding Khaghani's response to Request for Production No. 5 above. As explained above, Plaintiffs suggested that Defendants simply rephrase the requests so that they do not seek attorney work product; Defendants have refused to do so.

**G. REQUEST FOR PRODUCTION NO. 9**

**REQUEST FOR PRODUCTION NO. 9:**

All DOCUMENTS and COMMUNICATIONS supporting YOUR contention that the cattle in Whole Foods Market's supply chain are raised under factory farm conditions.

**PLAINTIFF'S AMENDED RESPONSE:**

Plaintiff objects to this request to the extent that it seeks documents protected from disclosure by the attorney-client privilege and the work-product doctrine. Generally speaking, "the selection and compilation of documents by counsel . . . in preparation for pretrial discovery falls within the highly-protected category of opinion work product." *Sporck v. Peil*, 759 F.2d 312, 316 (3d Cir. 1985); *see also United States v. Vega*, 2023 WL 4983240, at *4 (C.D. Cal. May 6, 2023); *Kalter v. Keyfactor, Inc.*, 2022 WL 16985062, at *3 (S.D. Cal. Nov. 16, 2022); *Williams v. Cty. of San Diego*, 2018 WL 4961523, at *5 (S.D. Cal. Oct. 15, 2018); *McKie v. Sears Prot. Co.*, 2011 WL 1670910, at *2 (D. Or. May 3, 2011). Likewise, the U.S. Supreme Court has held that "[a]t its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." *United States v. Nobles*, 422 U.S. 225, 238 (1975). On that ground, Plaintiff will not produce documents responsive to this request. Defendants are free to rephrase the request so that it does not seek the production of work product.

In addition to the foregoing, Plaintiff objects that this request as overbroad because it is not limited to the CLASS PERIOD. This request also improperly includes a contention interrogatory; even if proper to serve contention requests for production, the contention requests and interrogatories are premature for this stage of the litigation. Fed. R. Civ. P. 33(a)(2) ("the court may order that the interrogatory need not be answered until designated discovery is complete, or until a pretrial conference or some other time.").

**1. Defendants' Position**

Defendants contend that Khaghani must provide an amended response and produce documents for the reasons stated in Defendants' position regarding Khaghani's response to Request for Production No. 5 above.

**2. Plaintiff's Position**

Khaghani will produce relevant, responsive, proportional non-privileged documents that are not attorney work product, and in fact, Plaintiffs have already produced 699 pages of documents to Defendants. Defendants are already in receipt of third-party subpoena responses relevant to Plaintiffs' allegations. The subpoena responses include one from FoodID, served on Defendants in 2022, detailing the source material for FoodID's peer-reviewed study published in the publicly available Science magazine, and cited in the FAC. Defendants have not met the standard to overcome Plaintiffs' attorney-work product objection. Khaghani is not required to provide an amended response and produce documents for the reasons stated in Plaintiffs' position regarding Khaghani's response to Request for Production No. 5 above. As explained above, Plaintiffs suggested that Defendants simply rephrase the requests so that they do not seek attorney work product; Defendants have refused to do so.

**H. REQUEST FOR PRODUCTION NO. 10**

**REQUEST FOR PRODUCTION NO. 10:**

All DOCUMENTS and COMMUNICATIONS supporting YOUR contention that DEFENDANTS do not take the necessary steps to ensure that the beef products sold at Whole Foods Market are raised antibiotic free.

**PLAINTIFF'S AMENDED RESPONSE:**

Plaintiff objects to this request to the extent that it seeks documents protected from disclosure by the attorney-client privilege and the work-product doctrine. Generally speaking, "the selection and compilation of documents by counsel . . . in preparation for pretrial discovery falls within the highly-protected category of opinion work product." *Sporck v. Peil*, 759 F.2d 312, 316 (3d Cir. 1985); *see also United States v. Vega*, 2023 WL 4983240, at *4 (C.D. Cal. May 6, 2023); *Kalter v. Keyfactor, Inc.*, 2022 WL 16985062, at *3 (S.D. Cal. Nov. 16, 2022); *Williams v.*

*Cty. of San Diego*, 2018 WL 4961523, at *5 (S.D. Cal. Oct. 15, 2018); *McKie v. Sears Prot. Co.*, 2011 WL 1670910, at *2 (D. Or. May 3, 2011). Likewise, the U.S. Supreme Court has held that "[a]t its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." *United States v. Nobles*, 422 U.S. 225, 238 (1975). On that ground, Plaintiff will not produce documents responsive to this request. Defendants are free to rephrase the request so that it does not seek the production of work product.

In addition to the foregoing, Plaintiff objects that this request as overbroad because it is not limited to the CLASS PERIOD. This request also improperly includes a contention interrogatory; even if proper to serve contention requests for production, the contention requests and interrogatories are premature for this stage of the litigation. Fed. R. Civ. P. 33(a)(2) ("the court may order that the interrogatory need not be answered until designated discovery is complete, or until a pretrial conference or some other time.").

**1. Defendants' Position**

Defendants contend that Khaghani must provide an amended response and produce documents for the reasons stated in Defendants' position regarding Khaghani's response to Request for Production No. 5 above.

**2. Plaintiff's Position**

Khaghani will produce relevant, responsive, proportional non-privileged documents that are not attorney work product, and in fact, Plaintiffs have already produced 699 pages of documents to Defendants. Defendants are already in receipt of third-party subpoena responses relevant to Plaintiffs' allegations. The subpoena responses include one from FoodID, served on Defendants in 2022, detailing the source material for FoodID's peer-reviewed study published in the publicly available Science magazine, and cited in the FAC. Defendants have not met the

standard to overcome Plaintiffs' attorney-work product objection. Khaghani is not required to provide an amended response and produce documents for the reasons stated in Plaintiffs' position regarding Khaghani's response to Request for Production No. 5 above. As explained above, Plaintiffs suggested that Defendants simply rephrase the requests so that they do not seek attorney work product; Defendants have refused to do so.

**I. REQUEST FOR PRODUCTION NO. 23**

**REQUEST FOR PRODUCTION NO. 23:**

All DOCUMENTS and COMMUNICATIONS RELATING TO YOUR contention that "Whole Foods charges—and consumers pay—a substantial price premium for Beef Products based on the claim that the cattle that become these Products were not given any antibiotics," as alleged in paragraph 7 of YOUR FAC.

**PLAINTIFF'S AMENDED RESPONSE:**

Plaintiff objects to this request to the extent that it calls for documents protected from disclosure by the attorney-client privilege and the work-product doctrine. Generally speaking, "the selection and compilation of documents by counsel . . . in preparation for pretrial discovery falls within the highly-protected category of opinion work product." *Sporck v. Peil*, 759 F.2d 312, 316 (3d Cir. 1985); *see also United States v. Vega*, 2023 WL 4983240, at *4 (C.D. Cal. May 6, 2023); *Kalter v. Keyfactor, Inc.,* 2022 WL 16985062, at *3 (S.D. Cal. Nov. 16, 2022); *Williams v. Cty. of San Diego*, 2018 WL 4961523, at *5 (S.D. Cal. Oct. 15, 2018); *McKie v. Sears Prot. Co*., 2011 WL 1670910, at *2 (D. Or. May 3, 2011). Likewise, the U.S. Supreme Court has held that "[a]t its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." *United States v. Nobles*, 422 U.S. 225, 238 (1975). On that ground, Plaintiff will not produce documents

responsive to this request. Defendants are free to rephrase the request so that it does not seek the production of attorney-work product.

In addition to the foregoing, Plaintiff objects that this request as overbroad because it is not limited to the CLASS PERIOD and duplicative of Request No. 22. Additionally, this request improperly includes a contention interrogatory; even if proper to serve contention requests for production, the contention requests and interrogatories are premature for this stage of the litigation. Fed. R. Civ. P. 33(a)(2) ("the court may order that the interrogatory need not be answered until designated discovery is complete, or until a pretrial conference or some other time.").

**1. Defendants' Position**

Defendants contend that Khaghani must provide an amended response and produce documents for the reasons stated in Defendants' position regarding Khaghani's response to Request for Production No. 5 above.

**2. Plaintiff's Position**

Khaghani will produce relevant, responsive, proportional non-privileged documents that are not attorney work product, and in fact, Plaintiffs have already produced 699 pages of documents to Defendants. Defendants are already in receipt of third-party subpoena responses relevant to Plaintiffs' allegations. The subpoena responses include one from FoodID, served on Defendants in 2022, detailing the source material for FoodID's peer-reviewed study published in the publicly available Science magazine, and cited in the FAC. Defendants have not met the standard to overcome Plaintiffs' attorney-work product objection. Khaghani is not required to provide an amended response and produce documents for the reasons stated in Plaintiffs' position regarding Khaghani's response to Request for Production No. 5 above. As explained above, Plaintiffs suggested that Defendants simply rephrase the requests so that they do not seek attorney work product; Defendants have refused to do so.

**J. <u>REQUEST FOR PRODUCTION NO. 36</u>**

**<u>REQUEST FOR PRODUCTION NO. 36:</u>**

All DOCUMENTS and COMMUNICATIONS RELATING TO YOUR contention that DEFENDANTS knew their representations about the beef product sold at Whole Foods Market were false or misleading.

**<u>PLAINTIFF'S AMENDED RESPONSE:</u>**

Plaintiff objects to this request to the extent that it calls for documents protected from disclosure by the attorney-client privilege and the work product doctrine. Generally speaking, "the selection and compilation of documents by counsel . . . in preparation for pretrial discovery falls within the highly-protected category of opinion work product." *Sporck v. Peil*, 759 F.2d 312, 316 (3d Cir. 1985); *see also United States v. Vega*, 2023 WL 4983240, at *4 (C.D. Cal. May 6, 2023); *Kalter v. Keyfactor, Inc.*, 2022 WL 16985062, at *3 (S.D. Cal. Nov. 16, 2022); *Williams v. Cty. of San Diego*, 2018 WL 4961523, at *5 (S.D. Cal. Oct. 15, 2018); *McKie v. Sears Prot. Co.*, 2011 WL 1670910, at *2 (D. Or. May 3, 2011). And the U.S. Supreme Court has held that "[a]t its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." *United States v. Nobles*, 422 U.S. 225, 238 (1975). On that ground, Plaintiff will not produce documents responsive to this request. Defendants are free to rephrase the request so that it does not seek the production of attorney-work product.

In addition to the foregoing, Plaintiff objects that this request as overbroad because it is not limited to the CLASS PERIOD. Additionally, this request improperly includes a contention interrogatory; even if proper to serve contention requests for production, the contention requests and interrogatories are premature for this stage of the litigation. Fed. R. Civ. P. 33(a)(2) ("the court may order that the

interrogatory need not be answered until designated discovery is complete, or until a pretrial conference or some other time.”).

**1. Defendants’ Position**

Defendants contend that Khaghani must provide an amended response and produce documents for the reasons stated in Defendants’ position regarding Khaghani’s response to Request for Production No. 5 above.

**2. Plaintiff’s Position**

Khaghani will produce relevant, responsive, proportional non-privileged documents that are not attorney work product, and in fact, Plaintiffs have already produced 699 pages of documents to Defendants. Defendants are already in receipt of third-party subpoena responses relevant to Plaintiffs’ allegations. The subpoena responses include one from FoodID, served on Defendants in 2022, detailing the source material for FoodID’s peer-reviewed study published in the publicly available Science magazine, and cited in the FAC. Defendants have not met the standard to overcome Plaintiffs’ attorney-work product objection. Khaghani is not required to provide an amended response and produce documents for the reasons stated in Plaintiffs’ position regarding Khaghani’s response to Request for Production No. 5 above. As explained above, Plaintiffs suggested that Defendants simply rephrase the requests so that they do not seek attorney work product; Defendants have refused to do so.

IT IS SO STIPULATED.

Dated: September 25, 2023 BLAXTER | BLACKMAN LLP

By *_/s/ David P. Adams_*

BRIAN R. BLACKMAN
J.T. WELLS BLAXTER
DAVID P. ADAMS

Attorneys for Defendants WHOLE FOODS MARKET SERVICES, INC., WHOLE FOOD SMARKATE CALIFORNIA, INC. AND MRS. GOOCH'S NATURAL FOOD MARKETS, INC.

Dated: October 4, 2023

**GRIME LAW LLP**

By *_/s/ Paige M. Tomaselli_*

PAIGE M. TOMASELLI
DYLAN D. GRIMES

GRETCHEN ELSNER
**ELSNER LAW & POLICY, LLC**

NADIA DAHAB
DAVID SUGERMAN
**SUGERMEN DAHAB**

*Attorneys for Plaintiffs*
SARA SAFARI, PEYMON KHAGHANI and FARM FORWARD



**ATTESTATION**

I, David Adams, am the ECF User whose identification and password are being used to file foregoing. In compliance with Civil L.R. 5-4.3.4(a)(2)(i), I attest that Paige M. Tomaselli concurred in this filing.

*/s/ David Adams*

DAVID ADAMS