Paige M. Tomaselli (SBN 237737)
Dylan D. Grimes (SBN 302981)
**GRIME LAW LLP**
730 Arizona Avenue
Santa Monica, CA 90401
Telephone: (310) 747-5095
ptomaselli@grimelaw.com
dgrimes@grimelaw.com

Gretchen Elsner (*pro hac vice*)
**ELSNER LAW & POLICY, LLC**
314 South Guadalupe Street, Suite 123
Santa Fe, NM 87501
Telephone: (505) 303-0980
gretchen@elsnerlaw.org

David F. Sugerman (*pro hac vice*)
Nadia H. Dahab (*pro hac vice*)
**SUGERMAN DAHAB**
707 SW Washington Street, Suite 600
Portland, OR 97205
Telephone (503) 228-6474
david@sugermandahab.com
nadia@sugermandahab.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### SOUTHERN DIVISION

| | |
|---|---|
| SARA SAFARI, PEYMON KHAGHANI, on behalf of themselves and all others similarly situated,<br><br>         Plaintiffs,<br><br>    v.<br><br>WHOLE FOODS MARKET SERVICES, INC., a Delaware corporation, WHOLE FOODS MARKET CALIFORNIA, INC., a California corporation, MRS. GOOCH'S NATURAL FOOD MARKETS, INC. doing business as Whole Foods Market, a California Corporation,<br><br>         Defendants. | Case No. 8:22-CV-01562-JWH-KES<br><br>**SECOND AMENDED CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Sara Safari and Peymon Khaghani ("Plaintiffs"), individually and on behalf of all others similarly situated, file this Class Action Complaint against Whole Foods Market Services, Inc.; Whole Foods Market California, Inc.; Mrs. Gooch's Natural Foods Markets, Inc. (collectively, "Whole Foods" or "Defendants").

## NATURE OF THE ACTION

1. This consumer class action concerns Whole Foods' false and deceptive "No Antibiotics, Ever" promise for its beef supply chain and reinforces this promise by stating that "if it does not meet our standards, we won't sell it." Whole Foods was informed that there was a systemic antibiotic use problem in its "raised without antibiotics" beef supply chain, but it rejected the opportunity to investigate the accuracy of its "No Antibiotics, Ever" claims, in part because, according to Whole Foods, "the repercussions for having a positive result were beyond ridiculous[.]"

2. Testing has shown that Whole Foods' beef supply chain is tainted by cattle that were raised with antibiotics. Whole Foods has been aware of this fact since at least 2020. Unreceptive to testing the cattle in its supply chain, Whole Foods knowingly and intentionally concealed that its supply chain was tainted while continuing to affirmatively misrepresent that its beef (Beef Products or Products) was "No Antibiotics, Ever" when it had not verified this and similar "raised without antibiotics" promises. These promises were not limited to any product, supplier, brand, certification, or section of the store.

3. In 2020, Food In Depth ("FoodID"), an independent, third-party, testing organization, conducted an extensive antibiotics testing program of "raised without antibiotics" cattle at a Slaughterhouse One, a facility that supplied Whole Foods' stores in both Northern and Southern California during the class period.[1] FoodID's evidence of antibiotics use in Whole Foods' Certifier's beef reveals Whole Foods' "No Antibiotics,

---

[1] The name of the slaughterhouse is confidential pursuant to the Stipulated Protective Order, ECF No. 44. Plaintiffs will refer to the facility throughout as "Slaughterhouse One." The name of the Slaughterhouse is known to all counsel.

Ever" promise for what it is: a marketing scheme designed to increase profits at the expense of conscientious consumers. The study found that over the seven-month testing period, approximately 26% of Whole Foods' Certifier's cattle came from a lot where at least one animal tested positive, and 22% of Whole Foods' Certifier's cattle came from a lot where two animals tested positive for antibiotics. Whole Foods' certifying entity and certification program, Global Animal Partnership (GAP), was developed by and is used almost exclusively by Whole Foods. FoodID's testing led scientists to suggest that there was *systemic problem* in Whole Foods' certifying entity's beef supply chain.[2] The results of FoodID's testing indicate that at least one out of every five head of cattle at Slaughterhouse One that were in Whole Foods' certification program had been raised with antibiotics. FoodID notified Whole Foods. Both Plaintiffs purchased Beef Products from Whole Foods entities that sourced beef from this tainted supply chain.

4.     Farm Forward, a public interest organization, also conducted testing at retail locations in California and across the country. This testing provided a second data set showing that antibiotics (and similar anti-parasitic drugs prohibited by Whole Foods for use in their beef supply chain) are present in Whole Foods' beef supply chain. Farm Forward also informed Whole Foods in 2022 of the systemic problem of antibiotics use in its supply chain. Whole Foods again declined to investigate antibiotics use in its beef supply chain.

5.     Whole Foods has knowingly and intentionally promised consumers that Whole Foods has higher standards through its various promises and representations about antibiotics use and verification, including but not limited to (1) promising  "No Antibiotics, Ever" at its stores and on its website; (2) creating its own certifying entity with 100+ baseline standards; (3) identifying "No antibiotics, ever" as one of  these baseline standards; (4) stating that if "an animal needs antibiotic treatment, it is separated

[2] Lance Price et al., *Policy Reforms for Antibiotic Use Claims In Livestock*, 376 Science (Supp. 2022), *available at* https://www.science.org/doi/10.1126/science.abj1823.

from those bought by [its] Meat department," (5) and assuring "transparency and traceability to farm or ranch" and a system that "tracks animals from birth to slaughter." Whole Foods asserts that these promises include "not only the fresh and frozen meat in [its] meat departments but also all meat used in [its] prepared foods cases and all meat used in [its] store brand products that contain meat."

6.     As consumers become more conscientious about their purchasing decisions, consumers value, and are willing to pay more for, meat with certain attributes, including meat advertised as "No Antibiotics, Ever." Meat raised without antibiotics is important to consumers. Antibiotics are administered to animals through feed and water. Administering antibiotics to farmed animals creates serious risks. It contributes to the development of antibiotic-resistant infections in humans because the practice creates resistant bacteria in the animals and the end product: the meat consumers eventually ingest.[3] The resistant bacteria cause infections in humans that cannot be treated with existing antibiotics.[4] According to a 2018 Consumer Reports study, 43% of Americans always or often looked for meat or poultry marketed as "raised without antibiotics." Six out of 10 consumers were willing to pay more for meat raised without antibiotics. Even five years ago at the time of the study, 32% of Americans knew someone who had a bacterial infection where antibiotics were ineffective in curing an illness; 43% of Americans were highly concerned that feeding antibiotics to animals may diminish the effectiveness of antibiotics in humans and an additional 34% were somewhat concerned.[5]

---

[3] Lisa L. Gill, *Is Our Meat Safe to Eat?*, 87 Consumer Rep. 31, 36 (2022).

[4] Lesley Stahl, *Is overuse of antibiotics on farms worsening the spread of antibiotic-resistant bacteria?*, CBS News (Jan. 5, 2020), https://www.cbsnews.com/news/is-overuse-of-antibiotics-on-farms-worsening-the-spread-of-antibiotic-resistant-bacteria-60-minutes-2020-01-05/.

[5] Consumer Reports Survey Group, *Natural and Antibiotics Labels Survey* 8 (2018), *available at* https://advocacy.consumerreports.org/wp-content/uploads/2018/10/2018-Natural-and-Antibiotics-Labels-Survey-Public-Report-1.pdf.

7.    Plaintiffs allege Defendants' "No Antibiotics, Ever" representations are false, misleading, deceptive, unfair, fraudulent, and unlawful under California's Consumers Legal Remedies Act ("CLRA"), Civil Code Section 1750, et seq., Unfair Competition Law ("UCL"), Business and Professions Code Sections 17200, et seq., and the False Advertising Law ("FAL"), 17500, et seq. Plaintiffs also allege that Defendants have been unjustly enriched and have breached their express warranties about the Products. Defendants' false and deceptive representations are uniformly advertised both in their stores and online. Through its false and deceptive advertising, Defendants have misled Plaintiffs and other reasonable consumers into buying the Products at stores throughout California based on their material misrepresentations that all cattle in their beef supply chain are raised without antibiotics. Plaintiffs overpaid for and were economically harmed as a result of Defendants' misleading promotion of their Beef Products. Plaintiffs would not have purchased Beef Products or would not have paid the prices that they did had they known the truth that Whole Foods does not effectively verify its "No Antibiotics, Ever" representation.

8.    Plaintiffs seek an injunction requiring Whole Foods to correct and clarify its past and ongoing misrepresentations and omissions, and to remove the misrepresentations. In the alternative, Plaintiffs seek an injunction to ensure that Whole Foods' Beef Products conform with how it markets them. Plaintiffs, on behalf of the Class, further seek to recover their overpayments for Beef Products due to Whole Foods' false advertising.

## PARTIES

### A.    Plaintiffs

### Sara Safari

9.    Plaintiff Sara Safari is a citizen and resident of Tustin, California.

10.    Since approximately 2010 and within the applicable class period, Ms. Safari regularly purchased Beef Products at Whole Foods. She most recently purchased Beef Products from Whole Foods in or around June 2022.

11.     Ms. Safari purchased the Products at Whole Foods' retail stores, including its store located at 2847 Park Avenue in Tustin, California, and Whole Foods' Woodland Hills, California store.

12.     Ms. Safari saw and relied on Whole Foods' representations concerning its Beef Products in-store, on its website, and in the online marketplace including the Whole Foods' store page on Amazon. She saw and relied upon Whole Foods' representations from approximately 2010 to approximately June 2022, including every time she grocery shopped at Whole Foods. From approximately 2018 to June 2022, Ms. Safari shopped approximately weekly in person at Whole Foods in Tustin and was exposed to and relied on the signs in the Whole Foods meat department promising no antibiotics ever. Ms. Safari saw and relied on Whole Foods' "No Antibiotics, Ever" and "No antibiotics or added growth hormones, ever" slogans before purchasing the Beef Products.

13.     Ms. Safari purchased a wide variety of Beef Products in the meat department—butcher counter and open refrigerator—including ground beef, stew beef, braising roasts of all varieties, and steaks (rib eye, New York steak, and filet mignon). Ms. Safari purchased Beef Products at the prepared food counter, including roast beef sandwiches, pizza made with beef, and Mongolian beef.

14.     Ms. Safari purchased the Beef Products at a premium price because, based on Whole Foods' representations, she believed that all Beef Products made available for purchase from Whole Foods derived from cattle raised without antibiotics. Whole Foods' global representations about its meat supply chain were not specific or limited to any Product, supplier, brand, certification, department or section of the store, or online marketplace. Safari, like other reasonable consumers, understood that Whole Foods' "No Antibiotics, Ever," promise included every Product supplier, brand, certification, department, or section of the store, or online marketplace. Choosing meat raised without antibiotics is important to Ms. Safari because she does not want to fund or support a farming model that uses antibiotics—or any animal drugs—as part of raising the animals

in crowded, unsanitary conditions. Ms. Safari also does not want to fund or support this farming model because it contributes to the rise of antibiotic-resistant bacteria, subjecting her to antibiotic resistant bacterial infections.

15. Whole Foods never disclosed to Ms. Safari that its supply chain contains Beef Products from cattle raised with antibiotics or that it does not take the necessary steps to ensure that all Beef Products it sells are not raised with antibiotics.

16. Had Ms. Safari known that cattle used in Whole Foods Beef Products' supply chain were raised with antibiotics, or had Ms. Safari known that Whole Foods did not verify its "No Antibiotics, Ever" promises, she would not have purchased from Whole Foods' supply chain, or she would not have purchased the Products, or would not have paid what she did for them.

### Peymon Khaghani

17. Plaintiff Peymon Khaghani was a citizen and resident of Tustin, California at the commencement of this action.

18. Since approximately 2010 and within the applicable limitations period, Mr. Khaghani purchased Beef Products at Whole Foods on numerous occasions. He most recently purchased Beef Products from Whole Foods in or around June 2022.

19. Mr. Khaghani purchased the Products at Whole Foods' retail stores, including its store located at 2847 Park Avenue in Tustin, California from approximately June 2020 to June 2022. Mr. Khaghani shopped every three weeks in person at Whole Foods in Tustin and was exposed to and relied on the signs in the Whole Foods meat department promising no antibiotics ever. In spring 2020 and before, Mr. Khaghani purchased the Products from the Whole Foods stores located at 450 Rhode Island Street in San Francisco, 2001 Market Street in San Francisco, and 20955 Stevens Creek Boulevard in Cupertino, California. In those locations, Mr. Khaghani was also exposed to and relied on the signs in Whole Foods' meat departments promising no antibiotics ever.

20. At each of the above listed stores, Plaintiff Khaghani purchased a wide range

of Products from Whole Foods. Plaintiff Khaghani preferred purchasing from Whole Foods' butcher counters, though he sometimes purchased pre-packaged, vac- and plastic-wrapped beef from a Whole Foods refrigerator case. Plaintiff Khaghani purchased ground beef, rib eye steak, New York steak, skirt steak, and filet mignon steak from Whole Foods Market. For special occasions, Plaintiff may have purchased other cuts of beef. Plaintiff also purchased items from the prepared food section of Whole Foods, such as beef meatballs and Mongolian beef, as well as roast beef sandwiches from the deli.

21.     Mr. Khaghani saw and relied on Whole Foods' representations concerning its Beef Products in-store, on its website, and in the online marketplace including the Whole Foods' store page on Amazon. Mr. Khaghani also relied on Whole Foods' marketing emails for multiple years. He saw and relied upon Whole Foods' representations from approximately 2010 to approximately June 2022, including every time he shopped at Whole Foods. Mr. Khaghani saw and relied on Whole Foods' "No Antibiotics, Ever" and "No antibiotics or added growth hormones, ever" slogans before purchasing the Beef Products, as well as various signs that deceived Mr. Khaghani into believing that Whole Foods verifies its promises such as "[o]ur meat department requires [...]. No added hormones or antibiotics ever;" "how animals are raised matters;" "committed to transparency and traceability to farm or ranch;" "Base-level certification requires: 100+ animal welfare standards;" "every farm and ranch audited and certified;" "Raised to our standards;" "standards that aren't standards anywhere else;" and "love what's in every bite, and what isn't."

22.     Mr. Khaghani purchased the Beef Products at a premium price because, based on Whole Foods' representations, he believed that all Beef Products made available for purchase from Whole Foods were derived from cattle raised without antibiotics or other animal drugs. Whole Foods' global representations about its meat supply chain were not specific or limited to any Product, supplier, brand, certification, department or section of the store, or online marketplace. Khaghani, like other reasonable consumers,

understood that Whole Foods' "No Antibiotics, Ever," promise included every Product supplier, brand, certification, department, or section of the store, or online marketplace. Choosing "raised without antibiotics" meat is important to Mr. Khaghani because he does not want to fund or support a farming model that uses antibiotics (or any animal drugs) as part of raising the animals in crowded, unsanitary conditions. Mr. Khaghani also does not want to fund or support a farming model that contributes to the rise of antibiotic-resistant bacteria.

23.     Whole Foods never disclosed to Mr. Khaghani that its supply chain contains Beef Products from cattle raised with antibiotics or that it does not take the necessary steps to ensure that all Beef Products it sells are not raised with antibiotics. Had Mr. Khaghani known that cattle used in Whole Foods' supply chain or Beef Products were raised with antibiotics, or had Mr. Khaghani known that Whole Foods did not verify its "No Antibiotics, Ever" promises, he would not have purchased from Whole Foods' supply chain, would not have purchased the Products, or would not have paid what he did for them.

**B.     Defendants**

**Whole Foods Market Services, Inc.**

24.     Defendant Whole Foods Market Services, Inc. ("WFM Services") is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in Austin, Texas. WFM Services is responsible for the content and the design of Whole Foods' website and actively or constructively knows that the website directs California customers to Whole Foods's California stores, shows California customers local sales specific to their California stores, shows California customers listings for Whole Foods' products, including the Beef Products marketed as "No Antibiotics, Ever," and allows California customers to purchase those Products online for delivery or in-store pick up. WFM Services participates in distributing and selling products and provides products and services to customers in California when they visit a

Whole Foods' website, use a Whole Foods or Amazon mobile device app, or visit a store.

## Whole Foods Market California, Inc.

25.     Defendant Whole Foods Market California, Inc. is a corporation organized and existing under the laws of the state of California. Its principal place of business and headquarters is maintained at 6401 Hollis Street, Emeryville, California.

26.     Whole Foods Market California, Inc. owns and operates Whole Foods stores in Northern California and sells the Products in its retail stores throughout northern California.

## Mrs. Gooch's Natural Foods Market, Inc.

27.     Defendant Mrs. Gooch's Natural Food Markets, Inc. is a corporation organized and existing under the laws of the state of California. Its principal place of business and headquarters is maintained at 207 Goode Avenue, Glendale, California.

28.     Mrs. Gooch's Natural Food Markets, Inc., doing business as Whole Foods Market, owns and operates Whole Foods stores in the Southern Pacific Region, which includes Orange County. Mrs. Gooch's Natural Foods Market, Inc. sells the Products in its retail stores throughout southern California.

## JURISDICTION AND VENUE

29.     This Court has jurisdiction over this lawsuit under the Class Action Fairness Act, 28 U.S.C. § 1332, because this is a proposed class action in which: (1) there are at least 100 class members; (2) the combined claims of class members exceed $5,000,000, exclusive of interest, attorneys' fees, and costs; and (3) Plaintiffs and Defendant Whole Foods are domiciled in different states.

30.     This Court has personal jurisdiction over Whole Foods because the relevant transactions with Whole Foods giving rise to Plaintiffs' claims occurred in California, and Whole Foods has sufficient minimum contacts in California to render the exercise of jurisdiction by this Court proper. Additionally, the representations and omissions at issue were directed to California residents. Many of the relevant representations and

omissions—and the transactions made based on those representations and omissions—occurred in Whole Foods' California stores, were made directly to California residents via online marketing, and involved Beef Products purchases in California.

Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## FACTUAL ALLEGATIONS

### A. Raised Without Antibiotics

31.    "No Antibiotics, Ever" and "raised without antibiotics" mean more than just the end product has zero detectible antibiotics from antibiotic residue; they mean that the cattle were raised without the use of antibiotics.

32.    When a retailer claims that a product is "raised without antibiotics" or "no antibiotics ever," the statement promises that the cattle were not administered antibiotics at any point in their lives. If an animal becomes sick and the use of antibiotics is necessary to treat illness, that animal can no longer be advertised and sold as "raised without antibiotics."

### B. Consumer Demand for Meat Raised Without Antibiotics

33.    What Whole Foods tells consumers about the beef it sells matters. According to *Superbugs in Stock: Which Grocery Chains Are Acting to Eliminate Routine Antibiotic Use in Their Meat Supply*, published in October 2022, "Grocery companies are a primary source of meat products consumed in American households and the main source for consumers for information about these products....Most U.S. consumers are demanding meat and poultry raised without the routine use of antibiotics, and 40 percent of consumers 'always' or 'often' purchase meat and poultry raised without antibiotics at the supermarket." While some companies that sell animal products have policies in place regarding antibiotics use, "the language in these policies" "can give the public the false impression that companies have implemented meaningful change when that often is not the case. This type of language is indicative of 'greenwashing': making unsubstantiated

or misleading claims that lead consumers to believe their products or behaviors are more sustainable or values-based than they actually are."[6]

34. In recent years, transparency about the administration of antibiotics to animals has become increasingly important to meat consumers. According to a 2018 study by the Food Marketing Institute, "'[r]aised in the U.S.' and 'antibiotic-free' are the two most requested items for expanded assortment at the primary meat store."[7] The same study found that, at the same time that conventional meat sales had decreased, "meat with special production claims, such as organic, grass-fed or antibiotic-free, had dollar gains of 25.9 percent and volume growth of 38.3 percent over 2017.[8] Nearly two-thirds of shoppers who have seen a claim of "antibiotic-free," "hormone-free" or "humanely-raised" are more likely to buy the advertised item instead of a conventional counterpart.[9] Consumers, who do not have the expertise to know what pharmaceuticals (commonly referred to by the Food and Drug Administration as "drugs" or "animal drugs") are used to raise animals for meat, generally understand "no antibiotics" and "no hormones" representations to communicate that no routine, subtherapeutic drugs of any kind were used to raise the animals and that no drug residues of any kind could remain in the meat because they were not used when raising the animals.

35. The use of antibiotics in animal farming—raising animals with antibiotics in water or feed—contributes to the development of antibiotic-resistant bacteria, which can

---

[6] Food Animals Concerns Trust and Keep Antibiotics Working et al, *Superbugs in Stock: Which grocery chains are acting to eliminate routine antibiotic use in their meat supply?* (October 2022) https://www.centerforfoodsafety.org/reports/6741/superbugs-in-stock-which-grocery-chains-are-acting-to-eliminate-routine-antibiotic-use-in-their-meat-supply (last visited November 14, 2022).

[7] *Power of Meat*, Food Marketing Institute, 2018, at 5.

[8] *Id.*

[9] *Id.* at 5, 48.

infect humans.[10] Infection can occur in several ways,[11] but most relevant here, it can happen by consuming or handling meat.[12] Giving animals antibiotics contributes to the development of antibiotic-resistant bacteria. People then ingest the bacteria along with the meat, and the bacteria can cause infections. Many of these infections cannot be effectively treated with existing antibiotics because the bacteria are already antibiotic-resistant.[13]

36.     Animal welfare, too, is of increasing importance to meat consumers. According to a 2017 Hartman's Group survey, 71% of respondents agreed that "when making purchasing decisions, it's important the company avoids inhumane treatment of animals," and one of the top animal welfare practices that increase the likelihood of purchases is that the "animals [are] not given antibiotics/hormones."[14] In 2018, another survey found that "[t]hree-fourths of consumers say that they would be likely to switch to meat, eggs and dairy products with labels that guarantee that the products came from farm

---

[10] *See Antibiotic Resistance: Understanding the Connection to Antibiotic Use In Animals Raised for Food*, Mayoclinic.org, https://www.mayoclinic.org/diseases-conditions/infectious-diseases/in-depth/antibiotic-resistance/art-20135516#:~:text=cause%20untreatable%20infections.-,Antibiotic%20resistance%3A%20Understanding%20the%20connection%20to%20antibiotic%20use%20in%20animals,These%20may%20cause%20untreatable%20infections (last visited Aug. 9, 2022); Christy Manyi-Loh et al., *Antibiotic Use in Agriculture and Its Consequential Resistance in Environmental Sources: Potential Public Health Implications*, 233 Molecules 795, 796 (2018), *available at* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC6017557/.

[11] Gill, *supra* note 3, at 36 (noting antibiotic-resistant bacteria can also spread through the air, water, insects, farmworkers, and soil).

[12] Vangelis Economou & Panagiota Gousia, *Agriculture and Food Animals as a Source of Antimicrobial-Resistant Bacteria*, 8 Infect Drug Resist 49-61 (2015), available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4388096/.

[13] Stahl, *supra* note 4.

[14] Ginger Schleuter, *2017 Study Finds Consumer Familiarity With Sustainability Reached All-Time High*, Natural Products Insider, https://www.naturalproductsinsider.com/sustainability/2017-study-finds-consumer-familiarity-sustainability-reached-all-time-high (last visited Aug. 3, 2022).

animals who were raised according to higher animal welfare standards. This finding extends across demographics, including gender, age, and race."[15] In 2020, a public opinion poll found that "[t]he vast majority (89%) of Americans are concerned about industrial animal agriculture, citing animal welfare, worker safety or public health risks as a concern."[16]

37.    Buying meat raised without antibiotics and meat derived from appropriately treated animals is sufficiently important to American consumers that they are willing to pay a premium price for it. One study, for example, concluded that there is a substantial price premium for meat raised without antibiotics, as compared to conventional counterparts.[17]

38.    Beginning in 2002, Whole Foods launched a promotional campaign marketing its beef as having "No Antibiotics, Ever."[18] The reality is starkly different: Whole Foods sold Beef Products without taking effective measures to verify that the cattle in the Whole Foods supply chain were raised without antibiotics.[19]

---

[15] Lake Research Partners, Results from a Survey of American Consumers, ASPCA, https://www.aspca.org/sites/default/files/aspca-2018_animal_welfare_labelling_and_consumer_concern_survey.pdf (last visited Aug. 9, 2022).

[16] Email from Bob Meadow & Meryl O'Bryan, Lake Rsch. Partners (Feb. 1, 2019), *available at* https://www.aspca.org/sites/default/files/impact_on_public_attitudes_toward_industrial_animal_agriculture-final-111120.pdf.

[17] Lance Price et al., *Policy Reforms for Antibiotic Use Claims In Livestock*, 376 Science 130 (Supp. 2022), *available at* https://www.science.org/doi/10.1126/science.abj1823 (price premium of 20 percent or more).

[18] *See Whole Foods Market Quality Standards: Select Milestones*, Whole Foods Market, https://d39w7f4ix9f5s9.cloudfront.net/ea/2d/171463694419b8abc050017e4255/wfm-timeline-4.pdf (last visited July 12, 2022).

[19] *See* Andrew deCoriolis, *Farm Forward Finds Drugs in Certified Meat at Whole Foods*, Farm Forward (Apr. 4, 2022), https://www.farmforward.com/#!/blog/farm-forward-finds-drugs-in-certified-meat-at-whole-foods/farm-forward.

### C.     Whole Foods' Baseline Standards for its Meat Supply Chain

39.     Whole Foods' Beef Products and its supply chain are ubiquitously marketed with the prominent slogans "[n]o antibiotics or added growth hormones, ever" or "No Antibiotics, Ever."[20] For example:

> We have worked with our suppliers to make sure that the people who produce our meat have **raised their animals without the use of antibiotics**, growth hormones* or animal byproducts in the feed. This includes not only the fresh and frozen meat in our meat departments but also all meat used in our prepared foods cases and all meat used in our own store brand products that contain meat.[21]

40.     Whole Foods also prominently advertises its "high standards" on its website as it reinforces its promise not to sell products that do not meet these high standards:

> When you walk in our doors, you'll find vibrant stacks of produce, animal welfare rated meat, Responsibly Farmed and sustainable wild-caught seafood and body care products with ingredients you can trust. That's because we have experienced team members who help make it all possible. They partner with farmers and suppliers and **carefully vet our products to make sure they meet our high standards** by researching ingredients, reading labels and auditing sourcing practices — all to make shopping easier for you. **Remember, if it doesn't meet our standards, we don't sell it**.[22]

---

[20] *See Beef*, Whole Foods Market, https://www.wholefoodsmarket.com/products/meat/beef, (last visited July 12, 2022).

[21] *See* A.C. Gallo, *Our Meat: No Antibiotics, Ever*, Whole Foods Market (Jun. 25, 2012), https://www.wholefoodsmarket.com/tips-and-ideas/archive/our-meat-no-antibiotics-ever-0 (emphasis added).

[22] *Core Values*, Whole Foods Market, https://www.wholefoodsmarket.com/mission-values/core-values (last visited November 28, 2022) (emphasis added).

41.    Whole Foods has promised consumers that it is above other retailers by pledging that its Baseline Standards are: (1) "stronger than most anywhere;" (2) verifiable in that that "animal producers must meet [their] standards;" and (3) traceable because animals are tracked "from birth to slaughter." The Baseline Standards are prominently posted on their website:[23]

## Our Baseline Standards

Our baseline requirements for our Meat department are stronger than most anywhere.

No antibiotics, ever. If an animal needs antibiotic treatment, it is separated from those bought by our Meat department.

No added growth hormones through feed, injections, implants or any other method. (Federal regulations allow the use of hormones when raising cattle and lambs, but we don't.)

No animal by-products in feed, including feather meal or rendered fat.

Beef cattle, sheep and goats must spend at least two-thirds of their life on pasture.

No crates, cages or tethers permitted.

Animal producers must meet our standards for how the animals are raised, transported and slaughtered.

A traceable audit system is required that tracks animals from birth to slaughter.

Required inspections for animal welfare at slaughter, using criteria and areas of evaluation developed by Dr. Temple Grandin.

We do not sell foie gras.

---

[23] *Meat Department Quality Standards*, Whole Foods Market, https://www.wholefoodsmarket.com/quality-standards/meat-standards (last visited October 30, 2023) (red boxes added).

42. Whole Foods' baseline standards appear throughout the stores as in-store signage.



(red boxes added)

43. Whole Foods sells and has sold, during the statute of limitations, its Beef Products in California. Whole Foods makes the Products available for purchase at stores and online in California.

44. Whole Foods markets and advertises its Products in California and nationwide. It reaches consumers through, among other marketing channels, in-store signage, television advertising, print advertising, email marketing, and online marketing including on Google, Facebook, YouTube, Twitter, Amazon Prime, and its own website and blog.

### D. Whole Foods' "No Antibiotics, Ever" Advertising Misleadingly Communicates That Its Beef Products Come from a Cattle Supply Chain Raised Without Antibiotics

45. "No antibiotics ever" is one of Whole Foods' Baseline Standards. Whole Foods has had a formal policy of "[n]o antibiotics ever and animal welfare standards in [its] meat department" since 2002.[24] Since 1981, no "antibiotics [were] allowed for [its] meat department."[25]

46. Whole Foods promotes "No Antibiotics, Ever" through a widespread campaign in stores and online marketplaces, as well as on its website, blog, and online and television advertisements. "No Antibiotics, Ever" is prominently displayed in Whole Foods stores throughout California. "No Antibiotics, Ever" appears on in-store signage above or near Whole Foods meat departments.

---

[24] *See Whole Foods Market Quality Standards: Select Milestones*, *supra* note 18.
[25] *See id.*



(red boxes added)

(red boxes added)

47.     A similar slogan appears on Whole Foods' online marketplace hosted by Amazon. Whole Foods promises "No added growth hormones or antibiotics, ever."



(Image captured when filing the Original Complaint on August 23, 2022 [red boxes added]).

(Image Captured on October 31, 2023 [red boxes added]).

48.    As part of this "No Antibiotics, Ever" "baseline standard," Whole Foods promises, consistent with the definition of "raised without antibiotics," that "if an animal needs antibiotic treatment, it is separated from those bought by [its] meat department."[26]

49.    On its blog, Whole Foods promotes "No Antibiotics, Ever." For instance, Whole Foods asserts, "Our Meat: No Antibiotics, Ever[,]" "What Makes Our Meat Different[,]" and "Whole Foods Market: no antibiotics in meat departments[.]"[27] These blog posts specifically mention Whole Foods' Beef Products. For example, the "Our Meat: No Antibiotics Ever" post depicts cattle underneath the emphatic caption, "At Whole Foods Market: No Antibiotics EVER is our standard[,]" and proceeds to tout "the best-tasting beef, pork and poultry you'll find in a grocery store and no antibiotics, EVER!"[28] After repeatedly promising consumers, "No Antibiotics, Ever," Whole Foods goes one step further and assumes a duty to its customers. Whole Foods promises, "[i]f it doesn't meet our standards, we won't sell it." Whole Foods assumed a duty to verify the qualities of their meat and mislead consumers into thinking that Whole Foods verified supplier compliance with its standard.[29]

---

[26] *See Meat Department Quality Standards*, Whole Foods Market, https://www.wholefoodsmarket.com/quality-standards/meat-standards, (last visited July 12, 2022).

[27] *See* A.C. Gallo, *Our Meat: No Antibiotics, Ever*, Whole Foods Market (Jun. 25, 2012), https://www.wholefoodsmarket.com/tips-and-ideas/archive/our-meat-no-antibiotics-ever-0; Liz Fry, *Our Meat: No Antibiotics, Ever*, Whole Foods Market (Apr. 29, 2015), https://www.wholefoodsmarket.com/tips-and-ideas/archive/our-meat-no-antibiotics-ever; Theo Weening, *What Makes Our Meat Different*, Whole Foods Market (Feb. 10, 2011), https://www.wholefoodsmarket.com/tips-and-ideas/archive/what-makes-our-meat-different; *Whole Foods Market: no antibiotics in meat departments*, Whole Foods Market (Apr. 18, 2011), https://media.wholefoodsmarket.com/whole-foods-market-no-antibiotics-in-meat-departments.

[28] *See* Gallo, *supra* note 27 (emphasis in original).

[29] *See Meat Department Quality Standards*, Whole Foods Market, https://www.wholefoodsmarket.com/quality-standards/meat-standards, (last visited November 15, 2022).



## Our Meat: No Antibiotics, Ever

Have you heard the news reports about consumers' concern with antibiotics in the US meat supply? At Whole Foods Market: No antibiotics, EVER is our standard.

A.C. Gallo | June 25, 2012

50.     Whole Foods' "No Antibiotics, Ever" promotional campaign also appears in television and online video advertisements. For instance, in one television advertisement, Whole Foods prominently displays imagery of beef and cattle and its "No Antibiotics, Ever" slogan, while the viewer hears a rhyming slogan: "[a]t Whole Foods Market, we

raise our meat right with show-stopping taste in every bite."[30]



51.    Whole Foods' dissemination of "No Antibiotics, Ever" and related advertisements gives reasonable consumers the false impression that Whole Foods' Beef Products were raised without antibiotics and that all the cattle in its supply chain are verifiably raised without antibiotics. According to Whole Foods, if a sick animal is treated with antibiotics, it is removed from the "raised without antibiotics" supply chain.

52.    Consumers understand "No Antibiotics, Ever" advertising to mean that the cattle used in the meat were raised without antibiotics and that the entire supply chain adheres to the "No Antibiotics, Ever" promise. In a 2018 Consumer Reports study of 1,014 Americans, "when given a list of criteria for a label claim referencing 'no antibiotics' on meat or poultry," over three-quarters said, "no antibiotics" should mean "no antibiotics were administered to a healthy animal" and two-thirds said it should mean "no antibiotics

---

[30] *Whole Foods Market TV Spot, 'Where it Starts,'* ispot.tv (Aug. 17, 2020), https://www.ispot.tv/ad/nxX8/whole-foods-market-where-it-starts.

were administered to the animal under any circumstances."[31]

**E.    Whole Foods Reinforces Its "No Antibiotics, Ever" Promotional Campaign with its "Animal Welfare Certified" Representations**

53.     Whole Foods represents that its Beef Products are "Animal Welfare Certified." "Animal Welfare Certified" is a certification developed by Whole Foods through its GAP certification program, a standards-setting group for farmed animals used almost exclusively by in the retail context by Whole Foods. GAP is an acronym for Global Animal Partnership. All Whole Foods' Beef Products are certified to be "raised without the use of antibiotics[.]"[32] Given this standard and the fact that poor animal welfare (crowded, unsanitary conditions) necessitates antibiotics use, Whole Foods' "Animal Welfare Certified" representations reinforce that Whole Foods beef supply chain has higher animal welfare standards and that cattle are raised without antibiotics or other animal drugs.

54.     Whole Foods was integral to creating the entity that it uses to certify and advertise Whole Foods products. In approximately 2007, Whole Foods formed the GAP entity. Whole Foods shared employees with GAP, including executives, and influenced the GAP standards that Whole Foods uses to certify meat sold by Whole Foods. Whole Foods still maintains close control over GAP: Whole Foods' Executive Leader of Meat and Poultry was GAP's executive director during the class period.

55.     GAP/Animal Welfare Certified meat is sold throughout Whole Foods' stores. The products are advertised as GAP/Animal Welfare Certified, via in-store signage, online advertising, and circulars. Consumers pay more for Products that are GAP Animal

---

[31] Consumer Reports Survey Group, *Natural and Antibiotics Labels Survey* 8 (2018), *available at* https://advocacy.consumerreports.org/wp-content/uploads/2018/10/2018-Natural-and-Antibiotics-Labels-Survey-Public-Report-1.pdf.

[32] *See* Global Animal Partnership Homepage, https://globalanimalpartnership.org/ (last visited July 12, 2022).

Welfare Certified, in part because administering antibiotics to animals marketed under Whole Foods' GAP/Animal Welfare Certified program is strictly prohibited.

56. Public interest organization Farm Forward worked with Whole Foods for more than a decade to develop Whole Foods' Baseline Standards as well as the Whole Foods' animal welfare certification system. Farm Forward became concerned because Whole Foods was not verifying these promises. When Farm Forward became concerned that Whole Foods' supply chain was tainted with antibiotics, it approached Whole Foods with a testing method that could verify if Whole Foods' supply chain was following its baseline standard regarding antibiotic use. Whole Foods refused. Farm Forward stopped working with Whole Foods, and instead, blew the whistle on Whole Foods' unverified claims. Farm Forward tested Whole Foods' meat by purchasing meat samples from Whole Foods stores and sending the samples to laboratories for testing. The laboratories tested for evidence of prohibited drugs that compensate for poor animal welfare at the farm. This testing revealed that Whole Foods' Beef Products were raised with antimicrobial drugs including antibiotics and antiparasitics. Cattle raised with routine, nontherapeutic administration of antibiotics are typically *not* raised with higher animal welfare standards, because the antibiotics are used to compensate for crowded, unsanitary conditions and to promote faster growth. Hence, Whole Foods' "Animal Welfare Certified" marketing reinforces Whole Foods' "No Antibiotics, Ever" marketing, to mislead prospective purchasers into believing that the meat made available for purchase by Whole Foods was raised without the use of antibiotics. As a result of Whole Foods' deceptive certification to buttress its "No Antibiotics, Ever" promise, Whole Foods sells more Beef Products and at higher prices.

57. Even consumers unfamiliar with Whole Foods' certification interpret the "Animal Welfare Certified" label as meaning the Beef Product was raised without antibiotics. According to a 2017 Hartman's Group survey, 71% of respondents said that "when making purchasing decisions, it's important the company avoids inhumane

treatment of animals," and one of the top welfare practices making a purchase more likely is that the "animals [are] not given antibiotics/hormones."[33] In short, a reasonable consumer upon seeing Whole Foods' "Animal Welfare Certified" label—particularly in combination with its "No Antibiotics, Ever" advertising—is left with the false impression that the Beef Product was raised without antibiotics or other pharmaceuticals.[34]

### F. Whole Foods' Supply Chain Tested Positive for Antibiotics

58. Testing has shown a systemic antibiotics use problem in Whole Foods' supply chain, and that the "raised without antibiotics" cattle in Whole Foods' supply chain are not reliably raised without antibiotics. Whole Foods' failure to verify its claims and disclose that cattle used in its Beef Products were administered antibiotics is false, misleading, and contrary to its pervasive "No Antibiotics, Ever" promotional campaign

---

[33] Schleuter, *supra* note 14.

[34] Since at least 2017, Whole Foods has known of deficiencies in GAP's ability to verify whether the Beef Products were raised without antibiotics. GAP, a separate entity on paper, is not independent of Whole Foods. Instead, it was founded *by* Whole Foods in approximately 2008. *See* Glob. Animal P'ship, *2018 Impact Report* 12 (2018), *available at* https://globalanimalpartnership.org/flipbook/2018-impact-report/?page=1, at 12. It relies on monetary donations from its corporate partners, including Whole Foods, *See Changing the Way Food is Raised*, Global Animal Partnership, https://globalanimalpartnership.org/#:~:text=Global%20Animal%20Partnership%20is%20one,and%20creating%20long%2Dlasting%20change. (last visited July 19, 2022); *When it Comes to Retail, G.A.P. Means Business*, Global Animal Partnership, https://globalanimalpartnership.org/businesses/ (last visited July 19, 2022). and the majority of GAP's leadership consists of current or former Whole Foods employees. *Our Leadership*, Global Animal Partnership, https://globalanimalpartnership.org/about/leadership/ (last visited Aug. 5, 2022). GAP is not an independent entity, it does not have an office or a physical address (its corporate address for service of process is a UPS Store in Texas), and it does not have independent leadership. It is an entity developed by Whole Foods to support Whole Foods' marketing. Anne Malleau, who wrote the email quoted above, was both Whole Foods' Executive Leader of Meat and Poultry and the Executive Director of GAP at the same time during the statutory period. *See Anne Malleau*, Linkedin.com, https://www.linkedin.com/in/annemalleau/ (last visited July 19, 2022).

and "Animal Welfare Certified" representation.

59.    To determine whether antibiotic-treated animals (animals administered antibiotics in water or feed) were making their way into the "raised without antibiotic" supply chain, FoodID developed and conducted a process to test cattle urine at the slaughterhouse. FoodID tested 699 head of cattle at Slaughterhouse One: a slaughterhouse that supplies Whole Foods stores in Southern and Northern California. All cattle in the study were eligible to be marketed as "No Antibiotics, Ever" or "raised without antibiotics" and a subset of these cattle also were part of Whole Foods' supply chain.[35] FoodID's sample size represented approximately 12% of the U.S. "raised without antibiotics" market during the testing period (38,219 cattle were in the study; 699 cattle were tested). FoodID tested cattle urine over a seven-month period in 2020. An average of two animals from each lot were tested. Given the "raised without antibiotics" claims, FoodID stated that "the prevalence of animals testing positive for antibiotics was expected to be zero. Thus, any animal[] testing positive would indicate a deviation from RWA [raised without antibiotics] protocols and both animals testing positive from a lot would suggest a systemic problem."[36]

60.    FoodID found that:

a.    42% of feedyards providing "raised without antibiotics" cattle had at least one animal test positive for antibiotics.[37]

b.    Approximately 15% of the "raised without antibiotics" cattle processed at Slaughterhouse One came from a lot that tested positive for antibiotics.[38]

---

[35] Price, *supra* note 2, at 131.

[36] *Id.*

[37] *Id.*; *see also* Laura Reiley, *Some Beef 'Raised Without Antibiotics' Tests Positive for Antibiotics in Study*, Washington Post (Apr. 7, 2022), https://www.washingtonpost.com/business/2022/04/07/antibiotics-found-in-natural-meat/.

[38] Price, *supra* note 2, at 131.

c. Approximately 26% of the Whole Foods' GAP certified cattle came from a lot where at least one animal tested positive for antibiotics, and 22% of the Whole Foods GAP-certified cattle came from a lot where both animals tested positive for antibiotics.[39]

61. The results of FoodID's testing indicate that at least one out of every five Whole Foods' GAP certified head of cattle had been raised with antibiotics in direct contradiction to Whole Foods' claim of no antibiotics, ever. FoodID's testing reveals that a significant portion of Whole Foods' certified beef was raised with antibiotics during a seven-month period in 2020.

62. FoodID published this study in a peer-reviewed journal article in *Science* on April 8, 2022.

63. In 2021 and 2022, Farm Forward tested samples of meat products purchased at six different Whole Foods locations in San Francisco, Virginia, Chicago, and Salt Lake City. This chemical testing revealed that meat products, including Beef Products, were raised with antibiotics and antiparasitics.

64. Farm Forward tested the meat products using two different independent laboratories. One laboratory found monensin sodium, an antibiotic, in a Beef Product purchased from Whole Foods in San Francisco. Monensin sodium is marketed as a growth-promoting pharmaceutical.[40]

65. Another laboratory found fenbendazole, an antiparasitic pharmaceutical, in five Whole Foods' brand Beef Product samples purchased from Whole Foods in Salt Lake City and Chicago.

66. In August 2022, *Consumer Reports* published a study where 351 packages of

---

[39] Lance Price et al., *Policy Reforms for Antibiotic Use Claims In Livestock*, 376 Science (Supp. 2022), *available at* https://www.science.org/doi/10.1126/science.abj1823.

[40] *Rumensin$^{TM}$ 100 Premix*, Elanco, https://www.elanco.com.au/products-services/dairy-cattle/products/dairy-rumensin (last visited August 14, 2022).

ground meat were tested and found "deadly bacteria in ground beef" resistant to at least one antibiotic.[41] As part of the study, *Consumer Reports* also purchased 75 packages of ground chicken from Whole Foods and other stores. The testing showed that four of nine packages of Whole Foods' ground chicken contained salmonella resistant to at least one antibiotic.[42] The presence of antibiotic-resistant bacteria in meat or poultry provides further evidence of antibiotics use in Whole Foods' supply chain.[43]

### G. Whole Foods Knew that Cattle in its "No Antibiotics, Ever" Supply Chain Were Raised With Antibiotics

67.     Whole Foods had knowledge of the falsity of "No Antibiotics, Ever" meat marketing. At least two entities, FoodID and Farm Forward, have alerted Whole Foods to antibiotics use in Whole Foods supply chain.

68.     One, FoodID conducted its cattle urine study at Slaughterhouse One that supplies Whole Foods in Northern and Southern California. FoodID tested cattle that were purportedly "raised without antibiotics," including cattle in Whole Foods' certification program. The testing results indicated that the cattle had been raised with antibiotics. Once FoodID had the testing results, FoodID notified Whole Foods. The FoodID study findings were the subject of conference calls with Whole Foods' executives, including Anne Malleau, Executive Leader of Meat and Poultry. Two, in April 2022, Farm Forward notified Whole Foods that Farm Forward's study had found antibiotic and pharmaceutical residue in Whole Foods' Beef Products. Specifically, on April 15, 2022, Farm Forward notified John Mackey, Whole Foods' CEO, of the results of Farm Forward and FoodID's investigations discussed above. Mr. Mackey did not respond to Farm Forward. Instead, he *unsubscribed* from Farm Forward's email list (after having been a board member and mailing list recipient for over a decade).

---

[41] Gill, *supra* note 3, at 31.

[42] *Id.* at 36–37.

[43] *Id.* at 37.

69. Before *Science* published the FoodID test results in April 2022, and before Farm Forward published its testing results in April 2022, Whole Foods was made aware of testing that could verify if Whole Foods beef supply chain was truthfully marketed as "No Antibiotics, Ever." In 2017, Farm Forward brought to Ms. Malleau's attention a pharmaceutical testing method that Whole Foods could use to verify Whole Foods' promises to consumer purchasers. Ms. Malleau dismissed the opportunity without proposing an alternative, stating in part:

> [I]nteresting concept; however, there's no mention of #s for statistical significance or # that's practically relevant. I bring this up because I've been approached with this concept or similar ones and the risk management piece was not well thought out. One of them had all of the risk being assumed by a retailer (and there's no way ANY retailer would sign onto that), the other was such insignificant numbers, and the repercussions for having a positive result were beyond ridiculous (meaning it was all a sham IMO)[.]

70. After rejecting the opportunity to conduct its own testing, and after being presented with testing results contrary to its advertising, Whole Foods continued to affirmatively market its products "No Antibiotics, Ever" and as adhering to the baseline standards even though it was presented evidence of a systemic antibiotics use problem in its supply chain. Even though Whole Foods knew as early as 2017 that testing existed that could verify whether cattle in its supply chain were raised with antibiotics or similar drugs, Whole Foods failed to act but continued its deceptive marketing campaign. Despite its actual and constructive knowledge that cattle in its supply chain were raised with antibiotics and similar antimicrobial drugs, Whole Foods has continued its "No Antibiotics, Ever" promotional messaging.

71. At no point did Whole Foods obtain federal approval of its false and misleading "No Antibiotics, Ever" campaign. The federal government does not test any

of Whole Foods' Beef Products to determine if the cattle were raised with antibiotics and similar antimicrobial drugs. Whole Foods' "No Antibiotics, Ever" advertising violates 21 U.S.C. § 602, 9 C.F.R. § 317.8, and other federal laws prohibiting false or misleading marketing of food products because the Products so advertised are *not* reliably raised without antibiotics or similar drugs.

72.     Plaintiffs' claims do not impose, directly or indirectly, any requirement about premises, facilities, or operations that is in addition to, or different than, the requirements of any federal law or regulation. Nor do Plaintiffs' claims impose, directly or indirectly, any requirement about marking, labeling, packaging, or ingredients found by the USDA Secretary to unduly interfere with the free flow of beef products in commerce, or that is in addition to, or different than, the requirements of any federal law or regulation. Plaintiffs challenge Whole Foods' universal advertising campaign of "No Antibiotics, Ever" combined with the "Baseline Standards" that deceive consumers into believing that Whole Foods verifies this promise with tracing, auditing, and testing.

## H.     Consumer Plaintiffs and Class Members Overpaid as a Result of Whole Foods' False Advertising

73.     Whole Foods' affirmative misrepresentations and omissions described above have enabled Whole Foods to charge a significant premium for its Beef Products, some of which are sold for as much as $31.99 per pound.[44] By way of example, in comparison, similar beef products without antibiotic-free claims from other grocers sell for $24.99 per pound.[45]

74.     Plaintiffs and Class members were exposed to Whole Foods' representations

---

[44] *Beef Tenderloin Steak (Filet Mignon)*, Whole Foods Market, https://www.wholefoodsmarket.com/product/meat-beef-tenderloin-steak-filet-mignon-b07811nqgn (last visited Aug. 5, 2022).

[45] *USDA Choice Beef Tenderloin Filet Mignon Steak*, Safeway, https://www.safeway.com/shop/product-details.188020017.html (last visited Aug. 5, 2022).

at issue that falsely and misleadingly communicate that the cattle used in its beef supply chain are raised without antibiotics or similar drugs.

75.     Because of Whole Foods' false advertising, Plaintiffs and Class members thought they were purchasing Beef Products derived from cattle raised without antibiotics and similar antimicrobial drugs, and reasonable consumers did not expect the Beef Products were derived from cattle so raised.

76.     Absent Whole Foods' misleading representations and omissions that cattle in its beef supply chain are raised without antibiotics or similar drugs, Plaintiffs and Class members would not have purchased the Products or would not have purchased them at the price they paid.

## CLASS ACTION ALLEGATIONS

77.     Under Federal Rules of Civil Procedure 23(a), (b)(2), (b)(3), and/or (c)(4), Plaintiffs bring this lawsuit as a class action on behalf of themselves and all other persons similarly situated, on behalf of the following Class:

> All persons who purchased a Beef Product from Whole
> Foods in California between 2017 and the present.

78.     Excluded from the Class are Defendants, their officers, directors, and managerial employees, any individuals employed by counsel for the parties in this action, any Judge to whom this case is assigned and their staff and immediate family members, and anyone who serves on a jury that decides any issues in this case. Plaintiffs reserve the right to modify the Class definition(s) based on discovery and further investigation.

79.     Numerosity. While the exact number of Class members is not known at this time, the Class is so numerous that joinder of all members is impractical. Thousands of Californians purchase Beef Products each week. The identities of Class members are available through information and records in the possession, custody, or control of Whole Foods; notice of this action can be readily given to the Class.

80.     Typicality. Plaintiffs' claims are typical of the claims of the Class. Plaintiffs,

like all Class members, purchased at least one Beef Product from Whole Foods in California since 2017, and were injured by the same wrongful acts, practices, and omissions. Plaintiffs, like all Class members, were exposed to the same widespread marketing campaign and saw the same misrepresentations, including at the point of purchase. The claims of Plaintiffs thus arise from the same course of conduct that gives rise to the claims of every other Class member.

81. <u>Adequacy of Representation</u>. Plaintiffs are members of the Class and will fairly and adequately represent and protect the other members' interests. Plaintiffs have no interests adverse to the interests of other Class members. Plaintiffs' counsel are competent and experienced in consumer protection and other class action litigation and will pursue this action vigorously.

82. <u>Predominant Common Issues of Law and Fact</u>. Common questions of fact and law exist with respect to all Class members and predominate over any questions affecting only individual members. The common questions include, without limitation:

a. Whether Whole Foods advertised, marketed, promoted, and/or sold its Beef Products as having "No Antibiotics, Ever;"

b. Whether Whole Foods' Beef Products were "raised without antibiotics;"

c. Whether Whole Foods' advertising campaign related to Beef Products was unfair, unlawful, false, misleading and/or deceptive;

d. Whether claims in Whole Foods' advertising campaign related to Beef Products were material;

e. Whether Whole Foods knew or should have known that its Beef Products in its supply chain were not raised without antibiotics;

f. Whether Whole Foods had a duty to disclose to consumers that its Beef Products derived from a supply chain where cattle were raised with antibiotics;

g. Whether Whole Foods failed to disclose to consumers that its Beef

Products derived from a supply chain where cattle were raised with antibiotics;

h. Whether Whole Foods' false advertising and deceit caused injury to Plaintiffs and Class members; and

i. The amount by which Whole Foods' false advertising and deceit inflated the prices that Plaintiffs and Class members paid for Beef Products.

83. <u>Superiority</u>. A class action is superior to all other alternatives for the fair and efficient adjudication of this controversy. Absent a class action, all or nearly all members of the Class would have no effective remedy because their individual claims are far smaller than the cost of litigating them, making the filing of individual actions infeasible. Class treatment will conserve judicial resources, avoid waste and the risk of inconsistent rulings, and promote efficient adjudication before a single Judge.

84. Whole Foods has acted or refused to act on grounds generally applicable to the entire class, making injunctive and corresponding declaratory relief appropriate with respect to the Class as a whole.

## TOLLING OF THE STATUTES OF LIMITATIONS

85. All applicable statutes of limitations have been tolled by Whole Foods' fraudulent concealment and denial of the facts set forth in this complaint.

86. Whole Foods was and remains under a continuing duty to verify its own claims and to disclose to Plaintiffs and Class members its practice of marketing Beef Products derived from cattle given antibiotics or other pharmaceuticals as "Animal Welfare Certified" and as containing "No Antibiotics, Ever."

87. As a result of Whole Foods' fraudulent concealment, not until shortly before this class action commenced could Plaintiffs and Class members have reasonably discovered Whole Foods' practice of marketing Beef Products derived from cattle given antibiotics or other pharmaceuticals as "Animal Welfare Certified" and as containing "No Antibiotics, Ever."

# FIRST CAUSE OF ACTION

## Violation of the Consumers Legal Remedies Act ("CLRA"),

## Cal. Civ. Code § 1750 *et seq.*

### (By Plaintiffs on Behalf of the Class)

88.     Plaintiffs incorporate and reallege the foregoing allegations of fact.

89.     Whole Foods is a "person" within the meaning of California Civil Code sections 1761(c) and 1770 and provided "goods"—Beef Products—within the meaning of sections 1761(a) and 1770.

90.     Plaintiffs and Class members are "consumers," under California Civil Code section 1761(d), because they bought the Products for personal, family, or household purposes.

91.     The conduct alleged in this complaint constitutes unfair methods of competition and unfair and deceptive acts and practice in violation of the CLRA.

92.     As alleged more fully above, the unlawful conduct includes Whole Foods' false representations to Plaintiffs and Class members that Whole Foods' beef supply chain verifiably contains only Beef Products that are made from cattle raised without antibiotics. Testing has shown the opposite is true—Whole Foods' supply chain includes Beef Products raised with antibiotics or other animal drugs.

93.     Whole Foods made false representations concerning the Beef Products in its advertising and marketing materials at stores, in television advertisements, in online materials, and on the products themselves, among other places.

94.     By engaging in such conduct, Whole Foods has violated California Civil Code sections 1770(a)(2), (a)(3), (a)(4), (a)(5), (a)(7), and (a)(9).

95.     Whole Foods was under a duty to disclose that its Beef Products were not, in fact, raised without antibiotics because it made partial, materially misleading representations about the Beef Products despite having superior knowledge of the supply chain and Beef Products' origins, nature, and history, including through communications

with its suppliers. Whole Foods' duty to disclose that the cattle used in its beef supply chain were raised with antibiotics arises in consequence of its "No Antibiotics, Ever" campaign. Whole Foods has not qualified, clarified, or otherwise corrected its "No Antibiotics, Ever" marketing even though the cattle in Whole Foods' supply chain were administered antibiotics.

96.     Whole Foods had ample means and opportunities to disclose to Plaintiffs and Class members that the cattle for its Beef Products were raised with antibiotics, including through in-store signage and online statements or by removing the "No Antibiotics, Ever" marketing from these places. Whole Foods did not disclose or otherwise qualify or correct its misrepresentations.

97.     Whole Foods' relevant misrepresentations and omissions were material and important to a reasonable consumer's decision whether to purchase a Beef Product.

98.     Each Plaintiff reasonably relied to their detriment upon Whole Foods' deceptive marketing of the Beef Products when they purchased those Products.

99.     Plaintiffs and Class members would not have purchased the Beef Products or would not have paid the prices they did, had they known that the cattle used in Whole Foods' supply chain were raised with antibiotics or other animal drugs.

100.    Plaintiffs seek injunctive relief in the form of an order requiring Whole Foods to cease these deceptive acts and practices and to correct its misleading promotions related to antibiotics use in the beef it sells.

101.    Plaintiffs would like to buy Whole Foods' Beef Products in the future if and when they are produced as advertised by Whole Foods. Plaintiffs do not currently intend to do so because they cannot rely on the accuracy of Whole Foods' representations in deciding whether to purchase Whole Foods' Beef Products, and Plaintiffs cannot independently or easily determine whether any of Whole Foods' Beef Products are raised with antibiotics.

102.    Pursuant to California Civil Code section 1782(a), on their own behalf and

on behalf of the Class, each Plaintiff sent a CLRA notice letter to Whole Foods on August 23, 2022. These notices were sent via certified mail, return receipt requested, to Whole Foods' principal place of business. The notices advised Whole Foods that it is in violation of the CLRA and must remedy the conduct, representations, and omissions at issue. Whole Foods has not remedied the conduct, representations, and omissions at issue.

103. Plaintiffs and the Class seek damages pursuant to Cal. Civ. Code § 1780(a) as a result of Whole Foods' use or employment of a method, act, or practice declared unlawful by Cal. Civ. Code § 1770. Plaintiffs and the Class seek to recover actual damages, compensatory damages, injunctive relief, restitution of property, punitive damages, and any other relief that the Court deems proper. Pursuant to Cal. Civ. Code § 1752, the CLRA provisions are not exclusive, and the remedies provided are in addition to any other procedures or remedies for any violation or conduct provided for in any other law.

104. In accordance with California Civil Code section 1780(d), Consumer Plaintiffs' CLRA venue declarations were submitted to the Court in ECF No. 12 (Safari) and 13 (Khaghani).

## SECOND CAUSE OF ACTION

### Violation of the Unfair Competition Law ("UCL"),

### Cal. Bus. & Prof. Code § 17200 *et seq.*

### (By Plaintiffs on Behalf of the Class)

105. Plaintiffs incorporate and reallege the foregoing allegations of fact.

106. Whole Foods engaged in unlawful, unfair, and or fraudulent acts and practices violative of the UCL, California Business and Professions Code section 17200 *et seq.*, by advertising its Beef Products as "No Antibiotics, Ever" when in fact, the cattle used in Whole Foods' beef supply chain were raised with antibiotics or similar drugs.

107. Whole Foods' conduct is unlawful because it violates 21 U.S.C. § 602 and its implementing regulations, which deem food misbranded when its label contains a

statement that is "false or misleading in any particular[.]" 21 U.S.C. § 601. Whole Foods' conduct also is unlawful because it violates 9 C.F.R. § 317.8 and related food regulations providing that "no product . . . shall bear any false or misleading marking[.]"

108. Further, Whole Foods' conduct is unlawful because it violates the CLRA, Cal. Civ. Code § 1750 *et seq*., and the False Advertising Law, California Business and Professions Code section 17500 *et seq.*, for the reasons stated in the First and Third Causes of Action in this complaint.

109. Whole Foods' conduct is unfair because, violating the legislative declared public policy mandating truth in advertising, Whole Foods' supply chain includes Beef Products raised with antibiotics or similar drugs while advertising the Products as having "No Antibiotics, Ever."

110. Whole Foods' conduct is unfair, moreover, because it is unethical, oppressive, unscrupulous, and/or substantially injurious to Plaintiffs and Class members. The harm to Plaintiffs resulting from Whole Foods' conduct outweighs any legitimate benefit Whole Foods derived from the conduct.

111. Plaintiffs could not reasonably have avoided injury as a result of Whole Foods' unfair, unlawful and fraudulent conduct. Consumer Plaintiffs and Class members did not know, and had no reasonable means of discovering, that Whole Foods' advertisements were false and misleading prior to purchasing a Beef Product.

112. Whole Foods' misrepresentations and omissions with regard to the Beef Products constitute fraudulent business practices in violation of the UCL because, among other things, they are likely to deceive reasonable consumers. Among other falsehoods, Whole Foods marketed its Products as having "No Antibiotics, Ever" when in fact, cattle in Whole Foods' supply chain and used in the Beef Products were raised with antibiotics or other pharmaceuticals.

113. Plaintiffs reasonably relied to their detriment upon Whole Foods' unfair and fraudulent marketing of the Beef Products when they purchased those Products.

114. All Whole Foods' unlawful and unfair conduct, fraudulent misrepresentations, and inadequate disclosures occurred in the course of Whole Foods' business and were part of a generalized course of conduct. Whole Foods' conduct at issue was designed to and did induce Plaintiffs and Class members to purchase a Beef Product.

115. As a direct and proximate result of Whole Foods' violations of the UCL, Plaintiffs suffered injury in fact. Plaintiffs and Class members lost money or property because they would not have purchased a Beef Product, or would not have paid the prices they did, had they known that, contrary to Whole Foods' promotional messaging, cattle in Whole Foods' supply chain and used in the Beef Products were raised with antibiotics.

116. Plaintiffs lack an adequate remedy at law and seek restitution and injunctive relief according to proof. Plaintiffs will ask the Court to order Whole Foods to cease these acts of unfair competition and to correct its unfair, unlawful, and fraudulent marketing campaign related to antibiotics in the beef it sells.

117. Plaintiffs would like to buy Whole Foods' Beef Products in the future if and when they are produced as advertised by Whole Foods. Plaintiffs do not currently intend to do so because they cannot rely on the accuracy of Whole Foods' representations in deciding whether to purchase Whole Foods' Beef Products, and Plaintiffs cannot independently or easily determine whether the particular Beef Products in Whole Foods' supply chain are raised with antibiotics.

### THIRD CAUSE OF ACTION

**Violation of the False Advertising Law ("FAL"),**

**Cal. Bus. & Prof. Code § 17500 *et seq.***

**(By Plaintiffs on Behalf of the Class)**

118. Plaintiffs incorporate and reallege the foregoing allegations of fact.

119. Whole Foods publicly disseminated untrue or misleading advertising in violation of the FAL, California Business and Professions Code section 17500 *et seq.*

120. Whole Foods violates the FAL by using false and misleading statements, and

material omissions, to promote the sale of its Beef Products. Whole Foods represents through advertisements, in-store signage, print advertisements, and online content that the Beef Products are made from cattle raised without antibiotics. Those representations are false and misleading because cattle in Whole Foods' supply chain is raised with antibiotics.

121.   Plaintiffs reasonably relied to their detriment upon Whole Foods' false and misleading advertising of the Beef Products when they purchased those Products. The general public is and was likely to be deceived by Whole Foods' false and misleading advertising of the Beef Products as "No Antibiotics, Ever."

122.   As a direct and proximate result of Whole Foods' false advertising, Plaintiffs suffered injury in fact. Plaintiffs and Class members would not have purchased the Beef Products or would not have paid the prices they did, had they known that the cattle in Whole Foods' supply chain were raised with antibiotics or other animal drugs and there is no meaningful way for consumers to tell which products are raised with antibiotics.

123.   Plaintiffs lack an adequate remedy at law and seek restitution and injunctive relief according to proof.

## FOURTH CAUSE OF ACTION

### Violation of Cal. Com. Code § 2313 (breach of express warranty)

### (By Plaintiffs on Behalf of the Class)

124.   Plaintiffs incorporate and reallege the foregoing allegations of fact.

125.   Defendants provided Plaintiffs and Class Members with an express warranty in the form of written affirmations of fact promising and representing that the Beef Products were raised without antibiotics, specifically stating, "No Antibiotics, Ever," "No antibiotics or added growth hormones, ever," and "At Whole Foods Market: No Antibiotics EVER is our standard," and "[i]f it doesn't meet our standards, we won't sell it."

126.   These affirmations in the paragraph above were not couched as "belief" or

"opinion," and were not "generalized statements of quality not capable of proof or disproof."

127. These affirmations of fact became part of the basis for the bargain and were material to the Plaintiffs' and Class Members' transactions.

128. Plaintiffs and Class Members reasonably relied upon Defendants' affirmations of fact and justifiably acted in ignorance of the material facts omitted or concealed when they decided to buy Defendants' Products.

129. Within a reasonable time after they knew or should have known of Defendants' breach, Defendants were placed on notice of its breach by the CLRA letter Plaintiffs sent, allowing Defendants to cure their breach, which it did not do.

130. Defendants breached the express warranty because the Products are not "No Antibiotics, Ever" products.

131. As a direct and proximate result of Defendants' breach of express warranty, Plaintiffs and Class Members were damaged in an amount to be proven at trial.

## FIFTH CAUSE OF ACTION

### Unjust Enrichment

### (By Plaintiffs on Behalf of the Class)

132. Plaintiffs incorporate and reallege the foregoing allegations of fact.

133. Plaintiffs and Class members conferred benefits on Whole Foods by purchasing Beef Products, and Whole Foods acknowledged and appreciated these benefits.

134. The Beef Products that Plaintiffs and Class members purchased did not have the "raised without antibiotics" characteristic that Whole Foods represented they had. Contrary to Whole Foods' representations, Beef Products it sells come from cattle raised with antibiotics.

135. Under these circumstances, equity and good conscience militate against permitting Whole Foods to retain the profits and benefits from its wrongful conduct. They

should accordingly be disgorged or placed in a constructive trust so that Consumer Plaintiffs and Class members can obtain restitution.

## SIXTH CAUSE OF ACTION

### Fraudulent Concealment

### (By Plaintiffs on Behalf of the Class)

136.   Plaintiffs incorporate and reallege the foregoing allegations of fact.

137.   Whole Foods fraudulently concealed and suppressed material facts regarding the Beef Products and its supply chain. Despite advertising these Products as Animal Welfare Certified and having "No Antibiotics, Ever," Whole Foods knew when it marketed and sold these Products that the cattle from which they derive were raised with antibiotics or other pharmaceuticals. Whole Foods failed to disclose these facts to consumers at the time it marketed and sold the Products. Whole Foods knowingly and intentionally engaged in this concealment to falsely assure consumers that its Beef Products were "raised without antibiotics" in order to boost its sales, revenues, competitive position, and profits.

138.   Whole Foods' fraudulent concealment was uniform across all Class members: Whole Foods concealed from all purchasers the fact that its meat suppliers administered antibiotics to the cattle. Plaintiffs and Class members had no reasonable means of knowing that Whole Foods' representations were false and misleading, or that Whole Foods had omitted to disclose material details relating to the Products. Plaintiffs and Class members did not and could not reasonably discover Whole Foods' concealment on their own.

139.   Whole Foods had a duty to disclose that its Beef Products were not, in fact, raised without antibiotics or other animal drugs because it made partial, materially misleading representations about the Beef Products despite having superior knowledge of their origins, nature, and history. Whole Foods' duty to disclose that the cattle in its beef supply chain were raised with antibiotics arises in consequence of its "No Antibiotics,

Ever" promotional campaign. Whole Foods has neither qualified nor corrected its "No Antibiotics, Ever" even though the cattle in its beef supply chain were administered antibiotics.

140.   These omitted and concealed facts were material because a reasonable consumer would rely on them in deciding to purchase Whole Foods' Beef Products and because they substantially reduced the value of the Products that Plaintiffs and Class members purchased. Whether Whole Foods' Beef Products come from cattle raised with antibiotics was an important factor in Plaintiffs' and Class members' decisions to purchase these Products. Plaintiffs and Class members relied on Whole Foods' misleading representations and concealment, trusting Whole Foods not to sell them food that was not as represented.

141.   Plaintiffs and Class members were unaware of these omitted material facts and would have paid less for Beef Products, or would not have purchased them at all, had they known of the concealed and suppressed facts. Plaintiffs and Class members did not receive the benefit of their bargain due to Whole Foods' fraudulent concealment. Whole Foods was in exclusive control of the material facts and such facts were not reasonably known or knowable to the public, Plaintiffs, or Class members.

142.   Plaintiffs and Class members relied to their detriment upon Whole Foods' fraudulent misrepresentations and material omissions regarding the Beef Products' nature and origins in deciding to purchase them.

143.   As a direct and proximate result of Whole Foods' deceit and fraudulent concealment, including its intentional suppression of the true facts, Plaintiffs and Class members suffered damages in an amount to be proven at trial.

144.   Plaintiffs therefore seek injunctive relief to correct and prevent Whole Foods' fraudulent concealment relating to the nature and origins of its Beef Products.

145.   In addition, Whole Foods' fraudulent acts and omissions were carried out maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard

of Plaintiffs' and Class members' rights, with the aim of enriching Whole Foods, justifying an award of punitive damages in an amount sufficient to deter such wrongful conduct in the future.

<u>**SEVENTH CAUSE OF ACTION**</u>

**Intentional Misrepresentation**

**(By Plaintiffs on Behalf of the Class)**

146.   Plaintiffs incorporate and reallege the foregoing allegations of fact.

147.   Defendant, with knowledge of the falsity of representations, materially and intentionally misrepresented its Beef Products and its supply chain to consumers through its advertising and communications, some of which are reproduced above.

148.   Defendant, through company representatives who handled meat buying, marketing, and communications, authorized, implemented, and coordinated the production and distribution of the aforementioned advertisements via in-store signage, television advertising, print advertising, email marketing, and online marketing including on Google, Facebook, YouTube, Twitter, Amazon Prime, and its own website and blog, with knowledge of their inclusion of intentional misrepresentations.

149.   These intentional misrepresentations include, but are not limited to:

   a)  "No Antibiotics, Ever"

   b)  "No antibiotics or added growth hormones, ever"

   c)  "At Whole Foods Market: No Antibiotics EVER is our standard"

   d)  "If it doesn't meet our standards, we won't sell it."

150.   These advertisements and intentional misrepresentations were made to potential consumers, including Plaintiffs and the Class, throughout the time periods, 2017-2022, and within the applicable statute of limitations.

151.   These advertisements and intentional misrepresentations were received and viewed by Plaintiffs and the Class in Defendant's stores and online.

152.   Defendants intended to induce reliance in Plaintiffs and the Class when

Defendants misrepresented its Beef Products. Plaintiffs and the Class justifiably relied on the accuracy of Defendants' representations.

153. Defendants' misrepresentations caused Plaintiffs and the Class to purchase a product they would not have otherwise purchased and/or at a price that they would have otherwise paid, resulting in damage to Plaintiff and the Class.

## JURY TRIAL DEMANDED

154. Plaintiffs and the Class respectfully seek a jury trial on all issues so triable.

## PRAYER FOR RELIEF

Plaintiffs, on behalf of themselves and the Class, respectfully ask that the Court:

A. Certify the Class under Rule 23 of Federal Rules of Civil Procedures and appoint Plaintiffs and their undersigned counsel to represent the Class; and

B. Award active damages or restitution, statutory damages, compensatory damages, exemplary damages, punitive damages, and pre- and post-judgment interest as provided by law.

C. Declare that Whole Foods violated California consumer protection law;

D. Enter injunctive relief through an Order, *inter alia*, enjoining Whole Foods from continuing its unlawful, unscrupulous, misleading and deceptive practices and mandating that Whole Foods undertake a corrective campaign of notification at its expense;

E. Award reasonable attorneys' fees and costs of litigation as permitted by law, including California Civil Code section 1780 and California Code of Civil Procedure section 1021.5; and

F. Order such other and further relief as may be just and proper.

DATED: October 31, 2023          Respectfully submitted,

/s/   *Paige M. Tomaselli*
Paige M. Tomaselli (SBN 237737)
Dylan D. Grimes (SBN 302981)
**GRIME LAW LLP**
730 Arizona Avenue
Santa Monica, CA 90401
Telephone: (310) 747-5095
ptomaselli@grimelaw.com
dgrimes@grimelaw.com

Gretchen Elsner (*pro hac vice*)
**ELSNER LAW & POLICY, LLC**
314 South Guadalupe Street, Suite 123
Santa Fe, NM 87501
Telephone: (505) 303-0980
gretchen@elsnerlaw.org

David F. Sugerman (*pro hac vice*)
Nadia H. Dahab (*pro hac vice*)
**SUGERMAN DAHAB**
707 SW Washington Street, Suite 600
Portland, OR 97205
Telephone (503) 228-6474
david@sugermandahab.com
nadia@sugermandahab.com

*Attorneys for Plaintiffs*