GRIME LAW LLP
DYLAN D. GRIMES (SBN 302981)
PAIGE M. TOMASELLI (SBN 237737)
730 Arizona Avenue
Santa Monica, CA 90401
Telephone: 310/747-5095
ptomaselli@grimelaw.com
dgrimes@grimelaw.com

ELSNER LAW & POLICY, LLC
GRETCHEN ELSNER
314 South Guadalupe Street, Suite 123
Santa Fe, NM 87501
Telephone: 505/303-0980
gretchen@elsnerlaw.org

ROBBINS GELLER RUDMAN
 & DOWD LLP
AELISH M. BAIG (201279)
TAEVA C. SHEFLER (291637)
ALAINA L. GILCHRIST (335807)
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA 94104
Telephone: 415/288-4545
415/288-4534 (fax)
aelishb@rgrdlaw.com
tshefler@rgrdlaw.com
agilchrist@rgrdlaw.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| SARA SAFARI, et al., on Behalf of Themselves and All Others Similarly Situated,<br><br>                              Plaintiffs,<br><br>      vs.<br><br>WHOLE FOODS MARKET SERVICES, INC., a Delaware corporation, et al.,<br><br>                              Defendants. | Case No. 8:22-CV-01562-JWH-KES<br><br><u>CLASS ACTION</u><br><br>PLAINTIFFS' MOTION TO CERTIFY CLASS, APPOINT CLASS REPRESENTATIVE, AND APPOINT CLASS COUNSEL<br><br>DATE:    April 8, 2025<br>TIME:    10:00 a.m.<br>JUDGE:   Hon. John W. Holcomb<br>CTRM:    9d, 9th floor |

**[REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL]**

# TABLE OF CONTENTS

Page

NOTICE OF MOTION AND MOTION .................................................................... 8

MEMORANDUM OF POINTS AND AUTHORITIES........................................... 9

I.      INTRODUCTION AND FACTUAL BACKGROUND ............................... 9

II.     THE PROPOSED CLASS .......................................................................... 12

        A.      The Proposed Class.......................................................................... 12

III.    ARGUMENT ............................................................................................... 13

        A.      Legal Standard ................................................................................. 13

        B.      The Class Satisfies Rule 23(a) ........................................................ 14

                1.      Numerosity ............................................................................ 14

                2.      Commonality ......................................................................... 15

                3.      Typicality............................................................................... 16

                4.      Adequacy of Class Representatives........................................ 17

        C.      The Class Satisfies Rule 23(b)(2) ................................................... 18

        D.      The Class Satisfies Rule 23(b)(3) ................................................... 18

                1.      Common Issues Predominate ................................................. 18

                        a.      California Fraud Claims: CLRA, UCL and FAL.......... 21

                        b.      Violation of Cal. Comm. Code §2313 (Breach of
                                Express Warranty).......................................................... 28

                        c.      Unjust Enrichment......................................................... 29

                        d.      Fraudulent Concealment ............................................... 30

                        e.      Intentional Misrepresentation........................................ 30

                2.      A Class Action Is the Superior Method of Adjudicating
                        the Claims Asserted ................................................................ 31

        E.      The Class is Based on Objective Criteria and Is Ascertainable ........ 32

        F.      In the Alternative, the Court Can Certify Plaintiffs' Claims
                Under Rule 23(c)(4).......................................................................... 32

IV.     CONCLUSION ........................................................................................... 33

4879-8443-5966.v1

# TABLE OF AUTHORITIES

**Page**

## CASES

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
  568 U.S. 455 (2013) ............................................. 15

*Augustine v. Talking Rain Beverage Co., Inc.*,
  386 F. Supp. 3d 1317 (S.D. Cal. 2019) ............................................. 17

*Banks v. R.C. Bigelow, Inc.*,
  2023 WL 4932894 (C.D. Cal. July 31, 2023) ........................................ 16, 29, 31

*Banks v. R.C. Bigelow, Inc.*,
  2024 WL 3330554 (C.D. Cal. July 8, 2024) ............................................. 31

*Banks v. R.C. Bigelow, Inc.*,
  536 F. Supp. 3d 640 (C.D. Cal. 2021) ............................................. 29

*Beck-Ellman v. Kaz USA, Inc.*,
  283 F.R.D. 558 (S.D. Cal. 2012) ............................................. 30

*Bellinghausen v. Tractor Supply Co.*,
  303 F.R.D. 611 (N.D. Cal. 2014) ............................................. 32

*Briseno v. ConAgra Foods, Inc.*,
  844 F.3d 1121 (9th Cir. 2017) ............................................. 33

*Broomfield v. Craft Brew All., Inc.*,
  2018 WL 4952519 (N.D. Cal. Sept. 25, 2018) ............................................. 22

*Bruno v. Quten Rsch. Inst., LLC*,
  280 F.R.D. 524 (C.D. Cal. 2011) ............................................. 16, 32

*Daniel v. Ford Motor Co.*,
  806 F.3d 1217 (9th Cir. 2015) ............................................. 24

*DZ Rsrv. v. Meta Platforms, Inc.*,
  96 F.4th 1223 (9th Cir. 2024) ............................................. 12, 14, 19, 21

*Edwards v. First Am. Corp.*,
  798 F.3d 1172 (9th Cir. 2015) ............................................. 15

- 3 -

1

2                                                                                              **Page**

3

*Ehret v. Uber Techs., Inc.*,
   148 F. Supp. 3d 884 (N.D. Cal. 2015) ............................................................... 27

*Ellis v. Costco Wholesale Corp.*,
   657 F.3d 970 (9th Cir. 2011) .......................................................... 14, 15, 16, 18

*Ellsworth v. U.S. Bank, N.A.*,
   2014 WL 2734953 (N.D. Cal. June 13, 2014) .................................................. 30

*Falcone v. Nestle USA, Inc.*,
   2024 WL 4868298 (S.D. Cal. Sept. 26, 2024) ...........................................*passim*

*Farar v. Bayer AG*,
   2017 WL 5952876 (N.D. Cal. Nov. 15, 2017)................................................... 16

*Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.*,
   326 F.R.D. 592 (N.D. Cal. 2018) ............................................................... 23, 26

*Guido v. L'Oreal, USA, Inc.*,
   2013 WL 3353857 (C.D. Cal. July 1, 2013) ..................................................... 28

*Hadley v. Kellogg Sales Co.*,
   2019 WL 3804661 (N.D. Cal. Aug. 13, 2019)................................................... 24

*Hadley v. Kellogg Sales Co.*,
   324 F. Supp. 3d 1084 (N.D. Cal. 2018) ......................................................*passim*

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998)..................................................................... 18, 20

*Hinojos v. Kohl's Corp.*,
   718 F.3d 1098 (9th Cir. 2013)............................................................................ 23

*In re ConAgra Foods, Inc.*,
   90 F. Supp. 3d 919 (C.D. Cal. 2015)............................................................ 26, 33

*In re Facebook, Inc. Internet Tracking Litig.*,
   956 F.3d 589 (9th Cir. 2020) ............................................................................ 30

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

4879-8443-5966.v1

**Page**

*In re First All. Mortg. Co.*,
   471 F.3d 977 (9th Cir. 2006) ...................................................................... 21, 32

*In re Lidoderm Antitrust Litig.*,
   2017 WL 679367 (N.D. Cal. Feb. 21, 2017) .............................................. 33

*In re Mercedes-Benz Tele Aid Contract Litig.*,
   257 F.R.D. 46 (D.N.J. 2009) ...................................................................... 30

*In re NJOY, Inc. Consumer Class Action Litig.*,
   120 F. Supp. 3d 1050 (C.D. Cal. 2015) ..................................................... 21

*In re Tobacco II Cases*,
   46 Cal. 4th 298 (2009) ............................................................................... 26

*Johnson v. Gen. Mills, Inc.*,
   275 F.R.D. 282 (C.D. Cal. 2011) ............................................................... 21

*Jt. Eq. Comm. of Invs of Real Est. Partners, Inc. v.*
   *Coldwell Banker Real Est. Corp.*,
   281 F.R.D. 422 (C.D. Cal. 2012) ............................................................... 32

*Krommenhock v. Post Foods, LLC*,
   334 F.R.D. 552 (N.D. Cal. Mar. 2020) ................................................*passim*

*Kumar v. Salov N. Am. Corp.*,
   2016 WL 3844334 (N.D. Cal. July 15, 2016) ............................................ 28

*Larson v. Trans Union, LLC*,
   2015 WL 3945052 (N.D. Cal. June 26, 2015) ............................................ 18

*Lytle v. Nutramax Lab'ys*,
   114 F.4th 1011 (9th Cir. 2024) ................................................ 26, 28, 29, 33

*Makaeff v. Trump Univ., LLC*,
   2014 WL 688164 (S.D. Cal. Feb. 21, 2014) .............................................. 28

*Marsh v. First Bank of Del.*,
   2014 WL 554553 (N.D. Cal. Feb. 7, 2014) ................................................ 15

4879-8443-5966.v1

**Page**

*Morgan v. AT&T Wireless Servs., Inc.*,
  177 Cal. App. 4th 1235 (2009) ........................................................................ 28

*Painters and Allied Trades Dist. Council 82 Health Care Fund v.*
  *Takeda Pharm. Co. Ltd.*,
  674 F. Supp. 3d 799 (C.D. Cal. 2023) ............................................................ 26

*Parsons v. Ryan*,
  754 F.3d 657 (9th Cir. 2014) ............................................................................ 19

*People v. First Fed. Credit Corp.*,
  104 Cal. App. 4th 721 (2002) ............................................................................ 29

*Pettit v. Procter & Gamble Co.*,
  2017 WL 3310692 (N.D. Cal. Aug. 3, 2017) .................................................. 23

*Rodriguez v. URS Midwest, Inc.*,
  2023 WL 6373877 (C.D. Cal. Aug. 15, 2023) ........................................ 14, 15

*Ruiz Torres v. Mercer Canyons Inc.*,
  835 F.3d 1125 (9th Cir. 2016) ................................................................... 20, 28

*Schumacher v. Tyson Fresh Meats, Inc.*,
  221 F.R.D. 605 (D.S.D. 2004) ........................................................................ 30

*Sloan v. Gen. Motors LLC*,
  2020 WL 1955643 (N.D. Cal. Apr. 23, 2020) ................................................ 26

*Stearns v. Ticketmaster Corp.*,
  655 F.3d 1013 (9th Cir. 2011) ........................................................................ 26

*True Health Chiropractic, Inc. v. McKesson Corp.*,
  896 F.3d 923 (9th Cir. 2018) ............................................................................ 33

*Tyson Foods, Inc. v. Bouaphakeo*,
  577 U.S. 442 (2016) ................................................................................... 19, 20

*Walker v. Life Ins. Co. of the Southwest*,
  2012 WL 7170602 (C.D. Cal. Nov. 9, 2012) ........................................... 17, 31

4879-8443-5966.v1

**Page**

*Walker v. Life Ins. Co. of the Southwest*,
    953 F.3d 624 (9th Cir. 2020) ................................................................. 26

*Zakaria v. Gerber Prods. Co.*,
    2016 WL 6662723 (C.D. Cal. Mar. 23, 2016) ........................................ 17, 20

*Zeiger v. WellPet LLC*,
    2021 WL 756109 (N.D. Cal. Feb. 26, 2021) ................................................ *passim*

**STATUTES, RULES, AND REGULATIONS**

California Business & Professions Code
    §17205 ................................................................................................. 29

California Commercial Code
    §2313 ................................................................................................. 12, 29

Consumer Legal Remedies Act ("CLRA"),
    Cal Civ. Code §1750, *et seq.* ................................................................. *passim*

False Advertising Law ("FAL"),
    Cal. Bus. & Prof. Code, §17500 *et seq.* ................................................ *passim*

Unfair Competition Law ("UCL"),
    Cal. Bus. & Prof. Code, §17200 *et seq.* ................................................ *passim*

Federal Rules of Civil Procedure
    Rule 23 ................................................................................................. 15, 33
    Rule 23(a) ............................................................................................ *passim*
    Rule 23(a)(1) ....................................................................................... 16
    Rule 23(a)(2) ....................................................................................... 16
    Rule 23(b) ............................................................................................ 14
    Rule 23(b)(2) ....................................................................................... *passim*
    Rule 23(b)(3) ....................................................................................... *passim*
    Rule 23(c)(4) ....................................................................................... 33, 34
    Rule 23(g) ............................................................................................ 34

4879-8443-5966.v1

# NOTICE OF MOTION AND MOTION

TO:    ALL PARTIES AND THEIR ATTORNEYS OF RECORD

PLEASE TAKE NOTICE that on April 8, 2025, at 10:00 a.m., before the Honorable John W. Holcomb, United States District Judge, at the Ronald Reagan Federal Building and U.S. Courthouse, 411 West Fourth Street, Santa Ana, California 92701, Courtroom 9D, 9th Floor, Plaintiffs, Dr. Sara Safari ("Safari") and Mr. Peymon Khaghani ("Khaghani") (collectively, "Plaintiffs"), will and do hereby move the Court, pursuant to Federal Rules of Civil Procedure 23(a), (b)(2), and (b)(3), for an order certifying the following class:

> All persons who purchased any beef product from Whole Foods in California from August 23, 2018 to the present (the "Class Period").

The Class is limited to individuals who purchased Whole Foods beef products in stores or online.  The proposed Class excludes any individuals who purchased Whole Foods meat products only secondarily from non-retailers (*e.g.*, from a friend). In addition, excluded from the proposed Class are Defendants, their employees, officers, directors, legal representatives, heirs, successors, parents, and wholly or partly owned subsidiaries or affiliated companies; Class counsel and their employees; and the judicial officers and their immediate family members and associated court staff assigned to this case.

Plaintiffs will also move the Court to appoint them as Class Representatives (for the class specified above) and to appoint Elsner Law & Policy, LLC, Grime Law LLP, and Robbins Geller Rudman & Dowd LLP as Co-Lead Class Counsel.

This motion is based upon this Notice of Motion; the incorporated Memorandum of Law; the Declarations of Aelish M. Baig ("Baig Decl."), Dr. Sara Safari ("Safari Decl."), and Peymon Khaghani ("Khaghani Decl."); the Expert Declarations of Bruce Silverman ("Silverman Rpt."), Dr. Jonathan Riddle ("Riddle Rpt."), and Dr. Elizabeth Howlett ("Howlett Rpt."); and any further briefing or argument that may be presented to the Court.

4879-8443-5966.v1

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION AND FACTUAL BACKGROUND

Whole Foods promises consumers beef advertised as "No Antibiotics, Ever," "if it doesn't meet our standards, we won't sell it," and "Animal Welfare Certified," which for Whole Foods means certified by GAP (Global Animal Partnership) – an organization that Whole Foods leads consumers to believe is independent of Whole Foods. The Whole Foods Defendants (Whole Foods Market Services, Inc., Whole Foods Market California, Inc., and Mrs. Gooch's Natural Food Markets, Inc., collectively, "Whole Foods" or "Defendants") know how important these promises are to consumers.

Whole Foods' internal documents show the "No Antibiotics, Ever" attribute is ███ ████████████████████████████████████████ Ex. 1.[1]

Whole Foods knows shoppers are willing to pay more for that attribute, according to its own surveys.[2] Whole Foods capitalizes on the profitability of this consumer concern by prominently displaying "No Antibiotics, Ever" messaging at the butcher counter, on the refrigerator cases, above the hot bars, at checkout, and in large overhead signs. Ex. 7 (photos of signage from more than 20 Whole Foods stores throughout California). Whole Foods requires ████████████████████ Ex. 8 at 1, 9, 25-31 ███████████████. The marketing appears in every store, online, in email ads, and on social media. The message has been used by Whole Foods since 2002, is fundamental to Whole Foods' brand, differentiates it as a premium supermarket, and allows it to charge more for its beef products than other grocery

---

[1]    Unless otherwise noted, all emphasis is added and citations are omitted. All "Ex. " citations are to the Baig Decl. All "SAC" citations are to Plaintiffs' Second Amended Class Action Complaint (ECF 108).

[2]    Ex. 2 at 3; Ex. 3 at 1; Ex. 4; Ex. 5 (consumer surveys); *see also* Ex. 6 at 67, Amazon (Whole Foods' corporate parent) Form 14-A Proxy Statement referring to "risk to [Whole Foods] in light of the public's increasing desire to pay more for meat . . . advertised to be from animals who were treated humanely."

1  stores.  SAC, ¶73; *see also, e.g.*, Ex. 3; Ex. 9; Ex. 10 (screenshot of Instagram ad);
2  Khaghani Decl., ¶8 and Ex. A to the Khaghani Decl.

3  Despite the importance of the "No Antibiotics, Ever" promise to consumers,
4  and the centrality of the promise to Whole Foods' "trust what you put on your table"
5  brand and beef sales for more than two decades, Whole Foods does not effectively
6  verify whether it is selling beef derived from cattle that were administered antibiotics.
7  In 2020, testing by an independent third party revealed a systemic antibiotics use
8  problem in Whole Foods' supply chain: approximately 26% of Whole Foods' "GAP
9  Certified" cattle came from a lot where at least one animal tested positive for
10  antibiotics.[3]   The study's results were peer-reviewed and published in Science
11  Magazine.   In 2024, USDA also tested and "found antibiotic residues in
12  approximately 20% of samples tested from the 'Raised Without Antibiotics' market."[4]

13  The "No Antibiotics, Ever" campaign deceives consumers, as does "GAP (or
14  Animal Welfare) certified."  Instead of GAP being an independent certifier, Whole
15  Foods created and controlled GAP.[5]  GAP does not test the meat and does not
16  adequately ensure that the cattle are raised without antibiotics or that the beef
17  complies with Whole Foods' other standards, as evidenced by the testing finding
18  antibiotics in Whole Foods' beef supply chain.  Ex. 11 at 4; Ex. 14; Ex. 15, Silverman
19  Rpt., ¶116.

20  Truth in antibiotics advertising has repercussions far beyond the grocery store
21  aisles.  "Widespread antibiotic use in human medicine and livestock production has

---

[3]   Ex. 11; ECF 108, SAC, ¶¶61-62.

[4]   *See also* Ex. 12, U.S. Department of Agriculture, *USDA Releases Updated Guideline to Strengthen Substantiation of Animal-Raising and Environment-Related Claims on Meat and Poultry Labels* (finding "antibiotic residues in approximately 20%" of the "raised without antibiotics" market).

[5]   Ex. 13 (excerpt from Sara Shields deposition at 1, 57:18-58:9, 60:9-13, certification page).

helped fuel the growth of antibiotic-resistant bacteria . . . ."[6]  Further, "[t]he World
Health Organization, the U.S. Centers for Disease Control and Prevention and many
other public health experts agree that we may soon be living in a world where
antibiotics are no longer a match for drug-resistant bacteria, often called superbugs
. . . ."  *Id.*  Millions of Americans are infected every year with these superbugs.  *Id.*
Consumers must be given truthful information about antibiotics use in animal
agriculture so they can make an informed decision on the type of food system they
support with their grocery dollars.

Plaintiffs are two consumers who trusted the Whole Foods brand and relied
upon the "No Antibiotics, Ever" marketing when they purchased Whole Foods beef
products in California within the proposed Class Period.[7]  They seek to be certified as
class representatives for claims that Whole Foods violated California's Consumer
Legal Remedies Act, Cal Civ. Code §1750, *et seq.* ("CLRA"); the Unfair Competition
Law Cal. Bus. & Prof. Code, §17200 *et seq.* ("UCL"); the False Advertising Law Cal.
Bus. & Prof. Code, §17500 *et seq.* ("FAL"); Cal. Com. Code §2313 (breach of express
warranty),  unjust  enrichment,  fraudulent  concealment,  and  intentional
misrepresentation.  They are represented by proposed class counsel capable of and
committed to prosecuting this litigation vigorously to its end.

Certification is proper because Plaintiffs' claims and supporting evidence
readily meet Federal Rules of Civil Procedure 23(a), (b)(2), and (b)(3) requirements as
set forth below.  Accordingly, Plaintiffs respectfully request that the Court grant their
class certification motion in its entirety.  *DZ Rsrv. v. Meta Platforms, Inc.*, 96 F.4th
1223, 1232 (9th Cir. 2024) (pending appeal).

---

[6]  Ex. 16, Antibiotic Resistance Action Center, Milken Institute of Public Health,
"What is Antibiotic Resistance?"

[7]  Ex. 17, Forbes, *Whole Foods Knows its Customers.  Do You Know Yours?*, June
18, 2023 ("Whole Foods customers are more likely to live in California.  Twenty
percent of Whole Foods visits took place in California, more than double the
percentage of any other state.").

4879-8443-5966.v1

## II.    THE PROPOSED CLASS

### A.    The Proposed Class

Plaintiffs' claims are appropriate for classwide resolution because the key legal question of Defendants' liability turns on Defendants' conduct, not the conduct or experiences of individual Class members.   For example, Plaintiffs' California consumer fraud claims turn on whether Defendants' representations were deceptive and material to a reasonable consumer, an objective standard that presents common, not individualized, questions.  *See generally* Silverman Rpt.  Aggregate damages, restitution, and disgorgement will be calculated using common evidence.  *See generally* Ex. 18, Howlett Rpt. and Ex. 19, Riddle Rpt.  Common issues lie at the heart of the Class's claims.

Moreover, resolving Plaintiffs' economic loss claims through a class action is vastly superior to individual litigations.  The individual value of Class members' economic loss claims – the amount they overpaid for beef products – is unlikely to provide sufficient motivation for the filing of costly and time-consuming individual lawsuits.

Plaintiffs seek certification of the following Class of purchasers of Whole Foods beef for both monetary and injunctive relief:

> All persons who purchased any beef product from Whole Foods in California from August 23, 2018 to the present.[8]

---

[8]    The Class is limited to individuals who purchased Whole Foods beef products from brick and mortar or online retailers.  Damages, restitution, and disgorgement amounts will be based on retailer purchases and prices.  The proposed Class excludes any individuals who purchased Whole Foods meat products only secondarily from non-retailers (*i.e.*, from a friend).  In addition, Defendants, their employees, officers, directors, legal representatives, heirs, successors, parents, and wholly- or partly-owned subsidiaries or affiliated companies; Class counsel and their employees; and the judicial officers and their immediate family members and associated court staff assigned to this case are excluded from the Class.

1    Whole Foods is responsible for misleading and overcharging its customers and
2    should be held accountable to the hundreds of thousands of purchasers injured as a
3    result of their conduct.

4    **III.    ARGUMENT**

5        **A.    Legal Standard**

6        To certify a class, Plaintiffs must meet "each of the four requirements of
7    Federal Rule of Civil Procedure 23(a) and at least one of the requirements of Rule
8    23(b)." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 979-80 (9th Cir. 2011). *See*
9    *also Rodriguez v. URS Midwest, Inc.*, 2023 WL 6373877, at *4-*5 (C.D. Cal. Aug. 15,
10   2023) (same). Rule 23(a) requires plaintiffs to demonstrate that: "(1) the class is so
11   numerous that joinder of all members is impracticable; (2) there are questions of law
12   or fact common to the class; (3) the claims or defenses of the representative parties are
13   typical of the claims or defenses of the class; and (4) the representative parties will
14   fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). Rule
15   23(b)(3) requires that "questions of law or fact common to class members
16   predominate over any questions affecting only individual members, and that a class
17   action is superior to other available methods for fairly and efficiently adjudicating the
18   controversy." Fed. R. Civ. P. 23(b)(3). Establishing the requirements of Rules 23(a)
19   and 23(b)(3) are sufficient for certification of a damages class.

20       Further establishing the requirements of Rule 23(b)(2), which requires a
21   showing that "the party opposing the class has acted or refused to act on grounds that
22   apply generally to the class, so that final injunctive relief or corresponding declaratory
23   relief is appropriate respecting the class as a whole," allows additionally for the
24   certification of an injunctive relief class. *DZ Rsrv.*, 96 F.4th at 1232 (addressing
25   certification of damages class under Rule 23(b)(3) and injunction class under Rule
26   23(b)(2)); *Falcone v. Nestle USA, Inc.*, 2024 WL 4868298, at *3 (S.D. Cal. Sept. 26,
27   2024) (certifying class both for damages under Rule 23(b)(3) and injunctive relief
28

- 13 -

1 under Rule 23(b)(2))[9]; Second Amended Complaint ("SAC"), ECF 108, ¶¶8, 84,
2 154(D).

3      At the class certification stage, Plaintiffs need not establish they will succeed on
4 the merits at trial.  Rule 23 "grants courts no license to engage in free-ranging merits
5 inquiries at the certification stage." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568
6 U.S. 455, 466 (2013).  Instead, courts are "merely to decide a suitable method of
7 adjudicating the case and should not 'turn class certification into a mini-trial' on the
8 merits." *Edwards v. First Am. Corp.*, 798 F.3d 1172, 1178 (9th Cir. 2015) (quoting
9 *Ellis*, 657 F.3d at 983 n.8).  The possibility that Plaintiffs may not prove their
10 allegations is an insufficient reason "'for declining to certify a class which apparently
11 satisfies Rule 23.'" *Marsh v. First Bank of Del.*, 2014 WL 554553, at *4 (N.D. Cal.
12 Feb. 7, 2014).

13      As shown below, Plaintiffs meet each of the Rule 23(a), 23(b)(2), and 23(b)(3)
14 requirements.  And because the elements of each of their claims will be proven
15 through evidence that is common to the class, certification of a damages class and an
16 injunction class is appropriate.

17     **B.**    **The Class Satisfies Rule 23(a)**

18         **1.**    **Numerosity**

19      "No magic number automatically satisfies the numerosity inquiry, although 40
20 or more members will generally satisfy the requirement." *Rodriguez*, 2023 WL
21 637877, at *6.  Whole Foods holds itself out as "the world's leader in natural and
22 organic foods" with approximately 500 stores nationwide, 100 stores in California,
23 and well over 40 shoppers who purchased beef during the relevant time period.[10]  The

---

25 [9]   *Nestle*, 2024 WL 48682989, at *14 ("[A]ll class members were subject to the
26 Sustainability Representations [misrepresentations at issue].  The requested injunction,
27 to remove the Sustainability Representations from product labels unless Defendant
can trace the cocoa to assure compliance, would provide relief to each class member
equally.").

28 [10]  Whole Foods sales data shows ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
*E.g.*, Ex. 20 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

4879-8443-5966.v1

1  proposed Class of Whole Foods beef purchasers "is so numerous that joinder of all
2  members is impracticable." Fed. R. Civ. P. 23(a)(1).

3  ## 2. Commonality

4  Each of Plaintiffs' claims also satisfies the requirement that there be "questions
5  of law or fact common to the class." Fed R. Civ. P. 23(a)(2). The commonality
6  requirement has "'been construed permissively' and '[a]ll questions of fact and law
7  need not be common to satisfy the rule.'" *Ellis*, 657 F.3d at 981;[11] *Banks v. R.C.*
8  *Bigelow, Inc.*, 2023 WL 4932894 (C.D. Cal. July 31, 2023) (same). "Even a single
9  common question will do" when it is "apt to drive the resolution of the litigation."
10 *Farar v. Bayer AG*, 2017 WL 5952876, at *5 (N.D. Cal. Nov. 15, 2017). As set forth
11 below, each of Plaintiffs' claims involve common questions whose common answers
12 will drive resolution of the claims.

13 ***Statutory Fraud Claims (CLRA, UCL, and FAL)***: Courts frequently analyze
14 these claims together for purposes of class certification. *Bruno v. Quten Rsch. Inst.,*
15 *LLC*, 280 F.R.D. 524, 535 (C.D. Cal. 2011) ("[T]he claims at issue here arise from the
16 same facts, namely the purchase of products that were marketed with alleged material
17 misrepresentations. These same facts give rise to the same legal theories or liability
18 under the UCL, FAL, CLRA, and breach of warranty claims."); *see also Nestle,* 2024
19 WL 4868298, at *7 (issue of whether there were alleged misrepresentations could "be
20 resolved in one stroke for all class members" because it was "a central element of both
21 the UCL and CLRA claims."); *Zeiger v. WellPet LLC*, 2021 WL 756109, at *25 (N.D.
22 Cal. Feb. 26, 2021) ("whether reasonable consumers would be misled by the
23 actionable . . . Statements and omissions" was common question); *Hadley v. Kellogg*
24 *Sales Co.*, 324 F. Supp. 3d 1084, 1093 (N.D. Cal. 2018) (same).

25
26 Ex. 21 (███████████████); Ex. 22 (February 6, 2023 Business Insider Article reporting one
27 in ten consumers shop at Whole Foods).

28 [11]  Unless otherwise noted, all emphasis is added and citations are omitted.

- 15 -

4879-8443-5966.v1

*Unjust Enrichment Claim*: California Plaintiffs' unjust enrichment claim includes common questions such as whether Whole Foods received benefits through its fraudulent marketing, whether the retention of those benefits would be unjust, and whether the benefits Whole Foods received were at the expense of Class members.

*Breach of Express Warranty*: The "No Antibiotics, Ever" marketing is a description of the goods and express warranty that was part of the bargain. *Augustine v. Talking Rain Beverage Co., Inc.*, 386 F. Supp. 3d 1317, 1332 (S.D. Cal. 2019) ("'Statements made by a manufacturer through its advertising efforts can be construed as warranty statements.'"). Whether this warranty was breached is a common question for the entire Class.

*Fraudulent Concealment*: Plaintiffs' fraudulent concealment claim includes the common questions of whether Defendants "concealed or suppressed [the] material fact" that their meat did in fact contain antibiotics, whether Defendants had a duty to disclose this fact, whether they intentionally concealed this fact, whether Plaintiffs were aware of this act and would have acted differently had they known this fact, and whether Plaintiffs sustained damage. *Walker v. Life Ins. Co. of the Southwest*, 2012 WL 7170602, at *4 (C.D. Cal. Nov. 9, 2012).

*Intentional Misrepresentation*: The intentional misrepresentation claim involves common questions such as whether Whole Foods intentionally and knowingly misrepresented that its beef was in fact "No Antibiotics, Ever," whether Plaintiffs relied or presumptively relied on this claim and whether Plaintiffs suffered damages. *See Zakaria v. Gerber Prods. Co.*, 2016 WL 6662723, at *5 (C.D. Cal. Mar. 23, 2016) (granting class certification on intentional misrepresentation claim "when similar misrepresentations were allegedly made to all class members").

### 3.    Typicality

"'The test for typicality "is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of

- 16 -

conduct.""" *Ellis*, 657 F.3d at 984.  The test is "permissive" and only requires that the Plaintiffs' claims are "reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1021 (9th Cir. 1998).  Each of Plaintiffs' core liability and injury claims are "reasonably co-extensive" with those of absent class members.  *See Krommenhock v. Post Foods, LLC*, 334 F.R.D. 552, 562 (N.D. Cal. Mar. 2020) (typicality satisfied where plaintiffs and "each class member paid a premium" for the products at issue); *Hadley*, 324 F. Supp.3d at 1118 (same).  Plaintiffs allege that Whole Foods misled beef product purchasers.  Those theories of liability and injury are the same for Plaintiffs and Class members; thus plaintiffs' claims are typical of those of the class. *See* Khaghani Decl., ¶20 (stating he is pursuing all claims "on behalf of all similarly situated persons"); Safari Decl., ¶16 (same).

### 4.    Adequacy of Class Representatives

Plaintiffs are adequate class representatives where: (1) neither named plaintiffs nor their counsel have any conflicts of interest with other class members; and (2) the named plaintiffs and their counsel will prosecute the action vigorously on behalf of the class.  *Ellis*, 657 F.3d at 985.  The adequacy requirement aims "to ensure that the interests of the named representatives align with those of the rest of the class." *Larson v. Trans Union, LLC*, 2015 WL 3945052, at *11 (N.D. Cal. June 26, 2015).  Each Plaintiff has the same goal as members of the proposed Class (*i.e.*, holding Whole Foods accountable for its deceptive marketing regarding antibiotics use and failure to verify the accuracy of that marketing).  Plaintiffs' interests are aligned with, and not in conflict with, those of the Class members.  Plaintiffs have fulfilled their duties as class representatives, vigorously prosecuted the case to date, and will continue to do so. *See* Khaghani Decl., ¶¶20-21; Safari Decl., ¶¶16-17.  Each of the Plaintiffs has dedicated substantial time and effort to this litigation by reviewing pleadings; responding to discovery; searching for, collecting, and producing documents; and preparing to sit for depositions, among other things. *Id.*  Plaintiffs have selected

- 17 -

1  proposed Class counsel who will prosecute the action vigorously on behalf of the

2  Class and are willing to devote the necessary resources to do so.  Baig Decl., ¶¶2-5.

3    **C.    The Class Satisfies Rule 23(b)(2)**

4         Certification under Fed. R. Civ. P. 23(b)(2) is appropriate where "the party

5  opposing the class has acted or refused to act on grounds that apply generally to the

6  class, so that final injunctive relief or corresponding declaratory relief is appropriate

7  respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).  "These requirements are

8  unquestionably satisfied when members of a putative class seek uniform injunctive or

9  declaratory relief from policies or practices that are generally applicable to the class as

10  a whole."  *Parsons v. Ryan*, 754 F.3d 657, 688 (9th Cir. 2014).  The Court need not

11  examine "the viability or bases of the class members' claims for relief", and Plaintiffs

12  need not establish that there are issues "common to the class [to] satisfy a Rule

13  23(b)(3)-like predominance test."  *Id.*; *see also Nestle*, 2024 WL 4868298 (same).

14  Here injunctive relief is appropriate.  Defendants continue to market their beef as "No

15  Antibiotics, Ever" storewide.[12]  Plaintiffs seek an injunction requiring the removal of

16  misrepresentations or verification of accuracy going forward, which would generally

17  be applicable to the class as a whole.  SAC, ¶8; *DZ Reserve v. Meta Platforms, Inc.*,

18  96 F.4th 1223, 1232 (2024); *Nestle*, 2024 WL 4868298, at *3.

19    **D.    The Class Satisfies Rule 23(b)(3)**

20      **1.    Common Issues Predominate**

21         "When 'one or more of the central issues in the action are common to the class

22  and can be said to predominate, the action may be considered proper under Rule

23  23(b)(3) even though other important matters will have to be tried separately, such as

24  . . . some affirmative defenses peculiar to some individual class members.'"  *Tyson

25  Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453-54 (2016).  The predominance inquiry

26  _____

27  [12]   Indeed, a City of San Francisco report on its antibiotics reporting ordinance ████████████

28  ████████████████████████████████████████  Ex. 23.

- 18 -

is holistic and "'asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues.'" *Id.* at 453; *see also Hanlon*, 150 F.3d at 1022 (same). "[M]ore important questions apt to drive the resolution of the litigation are given more weight . . . over individualized questions which are of considerably less significance to the claims of the class." *Ruiz Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1134 (9th Cir. 2016).

Here, common questions – whether Whole Foods marketing was likely to mislead a reasonable consumer, whether the misrepresentations and omissions were material to a reasonable consumer, and whether Whole Foods has been unjustly enriched – will drive the resolution of the Class claims over any individual issues. *See WellPet*, 2021 WL 756109, at *26 (common questions "central" to the litigation, such as "whether the statements and omissions would be material to a reasonable consumer" predominated over individual issues). Questions of consumer deception, materiality, and unfairness are judged by objective standards, and will thus be proven or disproven using common evidence. *See Post Foods*, 334 F.R.D. at 564-65, 575 (discussing the objective nature of the key inquires under the CLRA, UCL, and FAL). *See also Zakaria*, 2016 WL 6662723, at *13-*14 (finding predominance analysis the same for fraudulent misrepresentation and CLRA claims and granting class certification on breach of express warranty claim when it would be addressed with common evidence). The extent to which Whole Foods was unjustly enriched is also a common question because it turns on the nature of Whole Foods' beef products and Defendants' marketing conduct. And for each claim, Plaintiffs have proposed a sufficiently reliable damages model. Howlett Rpt., ¶¶19, 34-37; Riddle Rpt., ¶¶24, 31, 33. In short, the key issues in the litigation are common to the Class and the predominance requirement is met.

The fact that Whole Foods' "No Antibiotics, Ever" marketing campaign included multiple different advertising formats is no impediment to certification. As

the Ninth Circuit has explained, "[t]he class action mechanism would be impotent if a defendant could escape much of his potential liability for fraud by simply altering the wording or format of his misrepresentations across the class of victims." *In re First All. Mortg. Co.*, 471 F.3d 977, 992 (9th Cir. 2006); *see also DZ Rsrv.*, 96 F.4th at 1236 (pending appeal) (same); *In re NJOY, Inc. Consumer Class Action Litig.*, 120 F. Supp. 3d 1050, 1106 (C.D. Cal. 2015) (same).  Instead of fixating on whether the representations were identical, the focus is on the "'underlying scheme'" which "'transcends the specific details of'" the communications to class members and rejects a "'talismanic rule'" that defeats class certification "'unless [the] representations are all but identical.'" *First All.*, 471 F.3d at 991.  *See also Nestle*, 2024 WL 4868298, at *6 (granting class certification even though there were "59 different product labels . . . [because] every label . . . included at least one of the [false] representations"); *Johnson v. Gen. Mills, Inc.*, 275 F.R.D. 282, 288-89 (C.D. Cal. 2011) (granting class certification where consumers were "exposed to different mixes of packages and advertisements . . . [because the] packaging and marketing communicated a persistent and material message that YoPlus promotes digestive health").

Plaintiffs' expert Bruce Silverman's report establishes that Whole Foods' advertising had the kind of unifying "underlying scheme" likely to convey similar messages to a reasonable consumer, rendering minor variations in specific ads irrelevant for purposes of class certification.  Silverman Rpt., ¶¶36-37, 42-43, 67, 72-73, 97 ("the evidence is overwhelming" that Defendants' various advertisements around antibiotics "would be important to a reasonable consumer in deciding whether to purchase one or more of Defendants' beef products.").  He further underscores the importance of the marketing to Whole Foods' overall brand.  *Id.*, ¶¶40, 97, 104, 129-133, 136 (The "No Antibiotics, Ever" and "GAP Certified" messages "are two of the most important ways it differentiates not just beef products, but itself from its less quality conscious competitors.").  The various "No Antibiotics, Ever" advertisements for Whole Foods products all convey to a reasonable consumer the central message

- 20 -

that Whole Foods' beef is raised without antibiotics. *Id.*, ¶¶97-99, 117. Variations in the manner in which Whole Foods' beef marketing has conveyed its central themes reinforce the core marketing messages and increase the effectiveness of the advertising. *Id.*, ¶¶77-78, 80-81, 97.

Any complexity created by variations among the advertisements distributed to the Class "does not mean predominance is undermined. . . . These arguments [] show only that plaintiffs have a complex case to prove." *Post Foods*, 334 F.R.D. at 566; *see id.* at 560, 563 (rejecting defendant's argument that "consideration of each combination of labels and recipes," 45 different statements that appeared on 31 different products, created individualized issues). Given the common nature of the other elements of California Plaintiffs' statutory fraud claims, variations among classwide advertisements do not present individualized issues that would overwhelm common ones.

### a. California Fraud Claims: CLRA, UCL and FAL

Plaintiffs' statutory fraud claims – brought under the CLRA, UCL, and FAL – involve overlapping legal and factual questions and courts, therefore, "often analyze the three statutes together" at class certification. *Hadley*, 324 F. Supp. 3d at 1089; *see also Broomfield v. Craft Brew All., Inc.*, 2018 WL 4952519, at *10 (N.D. Cal. Sept. 25, 2018) (same). Because the elements of the claims focus primarily on Defendants' conduct, turn on objective standards for liability, and do not present individualized questions of reliance or injury, they are well-suited to classwide resolution.

***Consumer Deception and Materiality***: Under the CLRA, UCL, and FAL, whether a defendant's conduct is deceptive is quintessentially a common question. A misrepresentation or omission is deceptive if it "'has a capacity, likelihood or tendency to deceive or confuse the public,'" which is an "objective test [that] focuses on the 'reasonable consumer.'" *Hadley*, 324 F. Supp. 3d at 1095. Similarly, a statement or omission is material if "a reasonable consumer would attach importance

- 21 -

to it *or* if the maker of the representations knows or has reason to know that its recipient regards or is likely to regard the matter as important in determining his choice of action." *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1107 (9th Cir. 2013) (quotation omitted). "[B]ecause deception and materiality under the FAL, CLRA, and UCL are objective questions, they are ideal for class certification because they will not require the court to investigate class members' individual interaction with the [challenged] product[s]." *Hadley*, 324 F. Supp. 3d at 1115 (internal citation and quotation omitted); *see also WellPet*, 2021 WL 756109, at *16 & *27 (inquiry into what a reasonable consumer would believe" is an issue "to be resolved at trial"); *Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.*, 326 F.R.D. 592, 613 (N.D. Cal. 2018) ("'materiality is judged according to an objective standard'" and is the same for all consumers).

The objective nature of the deception and materiality inquiries has two important implications. First, extrinsic evidence, such as expert reports or consumer surveys, is not necessary to prove that the public is likely to be deceived under the CLRA, UCL, or FAL. *Post Foods*, 334 F.R.D. at 565. Second, a plaintiff "has no burden to establish that there is a uniform understanding among putative class members as to the meaning of" the challenged marketing, "or that all or nearly all of [the class members] shared any specific belief." *Pettit v. Procter & Gamble Co.*, 2017 WL 3310692, at *3 (N.D. Cal. Aug. 3, 2017). The objective nature of the inquiries thus means that common issues inherently predominate.

Plaintiffs have nonetheless provided ample record evidence supporting the conclusion that the challenged misrepresentations and omissions were likely to deceive and were material to a reasonable consumer. Plaintiffs' expert, Bruce Silverman, analyzed Whole Foods marketing based on his five decades of work experience in marketing and consumer perceptions, and reviewed internal Whole Foods documents. Silverman Rpt., ¶7; *Hadley v. Kellogg Sales Co.*, 2019 WL 3804661, at *24 (N.D. Cal. Aug. 13, 2019) (rejecting *Daubert* challenge to expert that

relied on his marketing experience).  Whole Foods' key marketing strategy was to convey that the "No Antibiotics, Ever" message was an important component of Defendants' overall brand as having strict quality standards.  Silverman Rpt., ¶¶80, 97, 129-130, 136.  The result of those efforts, and the "No Antibiotics, Ever" promise used in Whole Foods marketing materials, was that reasonable consumers would conclude Whole Foods beef was raised without antibiotics and that Whole Foods had taken effective measures to ensure the accuracy of its marketing promise. *Id*., ¶¶97-99, 104.

With respect to materiality, a misrepresentation is material where safety is involved.  *See Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1225 (9th Cir. 2015) ("Alleged defects that create 'unreasonable safety risks' are considered material."). Here, Plaintiffs have adequately alleged that administering antibiotics to farmed animals creates serious risks because it contributes to the development of antibiotic-resistant infections in humans by creating resistant bacteria in the animals and the end product.  SAC, ¶6 and nn.3-4 & 6; *see also* Ex. 24, Milken Institute School of Public Health August 30, 2024 Statement ("Antibiotic resistance has become the third leading cause of death globally.");[13] Ex. 25, Centers for Disease Control, "2019 Antibiotics Resistance Threats Report (antibiotic resistant bacteria causes over "3 million infections and 48,000 deaths" in the U.S. alone each year, an average of 132 per day).

Moreover, Defendants' documents support a reasonable consumer would find the challenged misrepresentations material.  Whole Foods' surveys indicate that: (i) 70% of Boomers surveyed were "more concerned about . . . antibiotics in meat and dairy products" than in 1980, Ex. 2; (ii) ███████████████████████████ ███████████████████████████████████████████ Ex. 4; (iii) ███████████

---

[13]  "Statement from Lance B. Price Founder of the Antibiotic Resistance Action Center on USDA's Updated Guidelines to Strengthen Meat and Poultry Guidelines," August 30, 2024.

1    ███████████████████████████████████████████████

2    ███████ Ex. 5; and (iv) ███████████████████████████

3    ███████████████████████████████████████████████

4    ███████ Ex.3.  A 2019 internal Whole Foods survey of over 1,000 shoppers found

5    "[q]uality [k]ing" and "[t]hey'll pay more for it"; that "[t]ransparency in food sourcing

6    is important to more than 65 percent of millennials, particularly for fresh meat"; and

7    that it is because of this elevated concern that Whole Foods purportedly "prohibit[ed]

8    antibiotics" in its meat.  *Id.*  And the fact that Whole Foods has maintained this

9    marketing campaign for approximately twenty years further supports it deemed it

10    valuable consideration for consumers.  *See Post Foods*, 334 F.R.D. at 566 (with

11    respect to materiality, the jury could weigh "evidence of why [the defendant] decided

12    to use the statements and how to place them on the Products").

13        Silverman's expert testimony explained that beef raised without antibiotics is

14    important and material in consumers' decision-making.  Specifically, he opines that

15    Whole Foods' messages would be important to a reasonable consumer in deciding

16    which beef products to purchase and that the "No Antibiotics, Ever" and "GAP

17    Certified" marketing claims "were intended to respond to issues that were of great

18    importance to consumers, so much so that its customers are willing to pay a premium"

19    for Defendants' products marketed in this way.  Silverman Rpt., ¶¶42-67; *see Post

20    Foods*, 334 F.R.D. at 563 (in support of class certification, plaintiffs offered expert

21    testimony concerning how the defendant "used the Challenged Statements to drive

22    sales and market shares").  Like the plaintiffs in *Post Foods*, Plaintiffs here have

23    submitted  evidence  that  is  more  than  sufficient  to  support  class  certification.

24    Specifically, they have relied on experts who offered opinions on whether the "No

25    Antibiotics, Ever" messaging is material to consumers.  *See Post Foods,* 334 F.R.D. at

26    579.  Defendants' own surveys ███████████████████████ and all

27    are common to the Class.  *See* Exs. 2-5.  Indeed, ███████████████

28    ███████████████████████████████████ Ex. 26 at 9.

*Reliance*: "To state a claim under either the UCL or the FAL, 'it is necessary only to show that "members of the public are likely to be deceived."'" *Painters and Allied Trades Dist. Council 82 Health Care Fund v. Takeda Pharm. Co. Ltd.,* 674 F. Supp. 3d 799, 838 (C.D. Cal. 2023). If "material misrepresentations have been made to the entire class, an inference of reliance arises as to the class." *Lytle v. Nutramax Lab'ys*, 114 F.4th 1011, 1034 (9th Cir. 2024). "Thus, a California class suing under the state's consumer protection statutes need not show individualized reliance if it can establish the materiality of [the marketing] to a reasonable consumer." *In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 983 (C.D. Cal. 2015). *See also Post Foods*, 334 F.R.D. at 563-64 (same); *Fitzhenry-Russell*, 326 F.R.D. at 612 (same); *Nutramax*, 114 F.4th at 1036 ("To establish reliance under the CLRA, a misrepresentation need not be 'the *sole* or even the *decisive* cause of the injury-producing conduct.'").

Instead, the relevant inquiry is "whether the [fraudulent statements] were used consistently through the class period, supporting an inference of classwide exposure." *Post Foods*, 334 F.R.D. at 564; *see also Nutramax Lab'ys*, 114 F.4th at 1020 (affirming class certification where contested marketing appeared consistently across different label designs and prominently on each product sold). Even a named plaintiff "is not required to plead with an unrealistic degree of specificity that the plaintiff relied on particular advertisements or statements" where the alleged fraud occurred as part of an "extensive" marketing campaign. *In re Tobacco II Cases*, 46 Cal. 4th 298, 328 (2009).[14] Where the fraud is part of an extensive and widespread marketing effort and the challenged misrepresentations and omissions are material to a reasonable consumer, "reliance is presumed." *Sloan v. Gen. Motors LLC*, 2020 WL 1955643, at *43 (N.D. Cal. Apr. 23, 2020). *See also Ehret v. Uber Techs., Inc.*, 148 F. Supp. 3d 884, 902 (N.D. Cal. 2015) ("reliance . . . can be established on a class-wide basis by

---

[14]  The Ninth Circuit has "repeatedly relied on *Tobacco II* in recognizing 'what amounts to a conclusive presumption' of reliance in UCL cases." *Walker v. Life Ins. Co. of the Southwest*, 953 F.3d 624, 630 (9th Cir. 2020) (citing *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1021 n.13 (9th Cir. 2011)).

4879-8443-5966.v1

materiality"); Silverman Rpt., ¶78 ("[I]t would be virtually impossible for a reasonable consumer to miss Defendants' 'No Antibiotics Ever' and its 'GAP Certified' messaging in its stores."). As discussed below, the challenged marketing was pervasive and deceived Plaintiffs.

A classwide presumption of reliance is warranted because Whole Foods has consistently and pervasively made deceptive statements in stores, online, and in email since 2002 and continuing today.[15] Where, as here, there is evidence that the representations were consistently made in stores, online, in emails, and social media, "the only question is whether it was objectively material to a reasonable consumer." *Post Foods*, 334 F.R.D. at 565 (collecting cases); *Ehret*, 148 F. Supp. 3d at 895 (in a mislabeling case, "exposure on a class wide basis may be deemed sufficient").

These statements were likely to deceive a reasonable consumer into believing that Whole Foods beef products were raised without antibiotics. Silverman Rpt., ¶42. The fact that there were slight variations in the signage and messaging over time is irrelevant. *See Nestle*, 2024 WL 4868298, at *6-*7 (granting motion to certify class even though there were "59 different product labels" because "'similarly misleading sales presentations' can represent a cohesive class, even though their exact wording varies"). *See also WellPet*, 2021 WL 756109, at *27 ("The law does not demand that the statements be identical for every moment of the class period.").

Defendants generated millions of marketing impressions (*i.e.*, the number of times an advertisement appears in front of a person) per year. Silverman Rpt., ¶¶37, 81, 91-92, 97. Whole Foods' "multi-media promotional campaign was uniform, highly orchestrated, concentrated and focused on its intended audience," making it

---

[15] *See, e.g.*, Ex. 7 Iphotographs of "No Antibiotics, Ever" in-store marketing throughout California); Ex. 10 (screenshot of Instagram ad); Ex. 27 (examples of packaging labels); Exs. 28-36 (examples of marketing emails); Ex. 37 (example of "No Antibiotics, Ever" online marketing); Exs. 38-41 (examples of "No Antibiotics, Ever" video marketing); Ex. 42 (timeline showing "No Antibiotics, Ever" campaign starting in 2002); Silverman Rpt., at ¶¶69-97 (thorough assessment of various Whole Foods marketing campaigns).

"highly likely" that class members were exposed. *Makaeff v. Trump Univ., LLC*, 2014 WL 688164, at *13 (S.D. Cal. Feb. 21, 2014); *Morgan v. AT&T Wireless Servs., Inc.*, 177 Cal. App. 4th 1235, 1258 (2009) (plaintiff not required to plead specific advertisements where the "advertising campaign . . . [took] place over many months, in several different media"). There is no requirement that plaintiffs prove that *every* class member was actually exposed to a misleading advertisement before a class can be certified. *See Ruiz Torres*, 835 F.3d at 1136 ("even a well-defined class may inevitably contain some individuals who have suffered no harm as a result of a defendant's unlawful conduct"); *Kumar v. Salov N. Am. Corp.*, 2016 WL 3844334, at *9 (N.D. Cal. July 15, 2016) (arguments concerning whether consumers actually saw the challenged statements go to the common question of whether a "reasonable consumer" would have been misled). This is particularly true where, as here, all class members would have paid a price premium. Howlett Rpt., ¶16; Riddle Rpt., ¶¶21-29.[16]

**Damages**: California Plaintiffs will establish classwide injury, restitution (for the UCL and FAL claims), and damages (for the CLRA claim) for the California Class through Dr. Howlett's conjoint analysis and Dr. Riddle's economic analysis. Conjoint analyses are regularly used in consumer fraud cases. *Nutramax Lab'ys*, 114 F.4th at 1031 (finding proposed conjoint analysis sufficient); *Hadley*, 324 F. Supp. 3d at 1103 (same). And a price premium theory of recovery is also readily accepted in such cases. *See WellPet*, 2021 WL 756109, at *11; *see also Hadley*, 324 F. Supp. 3d at 1104 (permitting plaintiff to use a price premium theory in a "mislabeling case under the FAL, CLRA, and UCL"); *Guido v. L'Oreal, USA, Inc.*, 2013 WL 3353857, at *11 (C.D. Cal. July 1, 2013) (same). Plaintiffs are not required to "prove that classwide damages exist in order to obtain class certification." *Nutramax Lab'ys*, 114

---

[16]  *See also* Exs. 2-5 (consumer surveys).

1   F.4th at 1025.  They only need to show that "damages *could* be calculated on a

2   classwide basis, even where such calculations have not yet been performed." *Id.*

3   There is no need to separately calculate the amount of restitution owed by each

4   Whole Foods entity named as a Defendant for their violations of the UCL.[17]  Under

5   California law, "parties may be held jointly and severally liable for unfair competition

6   and for making false and misleading statements." *People v. First Fed. Credit Corp.*,

7   104 Cal. App. 4th 721, 734 (2002) (upholding joint and several liability against

8   corporation and corporate officer under the UCL and FAL).  The UCL does not

9   displace such common law remedies.  *See* Cal. Bus. & Prof. Code §17205 ("the

10  remedies or penalties provided by this chapter are cumulative to each other and to the

11  remedies or penalties available under all other laws of this state").

### b.  Violation of Cal. Comm. Code §2313 (Breach of Express Warranty)

12
13  "'To prevail on a breach of express warranty claim under California law, a

14  plaintiff must prove that: (1) the seller's statements constitute an affirmation of fact or

15  promise or a description of the goods; (2) the statement was part of the basis of the

16  bargain; and (3) the warranty was breached.'" *Banks v. R.C. Bigelow, Inc.*, 536 F.

17  Supp. 3d 640, 650 (C.D. Cal. 2021).  "'Product advertisements, brochures, or

18  packaging can serve to create part of an express warranty.'" *Id.*  Here, Plaintiffs can

19  show that Whole Foods' "No Antibiotics, Ever" claim was an affirmative promise that

20  the cattle were raised without antibiotics and that Class members would not have paid

21  the price premium had they known the marketing was false or unverified.  As such,

22  they have met the requirements and class certification should be granted.  *See Banks*,

23  2023 WL 4932894 (granting class certification on breach of express warranty claim).

24
25
26

---

27  [17]  Each of the three Whole Foods defendants, Whole Foods Market Services, Inc.,
    Whole Foods Market California, Inc., and Mrs. Gooch's Natural Food Markets, Inc. is
28  named in each claim asserted.

- 28 -

### c.    Unjust Enrichment

Unjust enrichment requires the "receipt of a benefit and the unjust retention of the benefit at the expense of another."  *Ellsworth v. U.S. Bank, N.A.*, 2014 WL 2734953, at *27 (N.D. Cal. June 13, 2014) (quotations omitted).  The Ninth Circuit has recently clarified that "California law recognizes a right to disgorgement of profits resulting from unjust enrichment, even where an individual has not suffered a corresponding loss," and "regardless of whether a defendant's actions caused a plaintiff to directly expend his or her own financial resources."  *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589 (9th Cir. 2020).  Because unjust enrichment focuses primarily on the defendant's conduct, courts have recognized that unjust enrichment claims are well suited to class certification.  *See Beck-Ellman v. Kaz USA, Inc.*, 283 F.R.D. 558, 568 (S.D. Cal. 2012) ("[U]njust enrichment claims are appropriate for class certification as they require common proof of the defendant's conduct and raise the same legal issues for all class members."); *In re Mercedes-Benz Tele Aid Contract Litig.*, 257 F.R.D. 46, 72 (D.N.J. 2009) (finding that certification of the plaintiffs' unjust enrichment claim was appropriate because "virtually all of the legal and factual issues which will be adjudicated at trial are common to the class"); *Schumacher v. Tyson Fresh Meats, Inc.*, 221 F.R.D. 605, 612 (D.S.D. 2004) (holding that unjust enrichment claims are well suited to class certification because their "very nature . . . requires a focus on the gains of the defendants, not the losses of the plaintiffs").

Here, Defendants received benefits – sales revenues – at the expense of Class members, who paid more than they would have as a result of Defendants' unjust fraudulent marketing.  Whether Defendants received benefits, whether those benefits were received at the expense of Class members and whether the retention of those benefits would be unjust are all common issues capable of classwide resolution.  Because those common issues will drive resolution of Plaintiffs' unjust enrichment claims, certification is appropriate.

1    The amount of disgorgement owed by Whole Foods is purely a function of how

2    much money Whole Foods received, does not vary from Class member to Class

3    member, and is an inherently common issue. For Whole Foods, expert analysis can be

4    used to determine the disgorgement amount attributable to the deceptive marketing of

5    beef products by applying the price premium percentage to Whole Foods' net

6    revenues for beef products. *See generally* Howlett Rpt. & Riddle Rpt. This

7    methodology relies on common evidence and presents common issues.

8                          **d.    Fraudulent Concealment**

9    To state a claim for fraudulent concealment, Plaintiffs must allege "'(1) the

10   defendant must have concealed or suppressed a material fact, (2) the defendant must

11   have been under a duty to disclose the fact to the plaintiff, (3) the defendant must have

12   intentionally concealed or suppressed the fact with the intent to defraud the plaintiff,

13   (4) the plaintiff must have been unaware of the fact and would not have acted as he

14   did if he had known of the concealed or suppressed fact, and (5) as a result of the

15   concealment or suppression of the fact, the plaintiff must have sustained damage.'"

16   *Walker*, 2012 WL 7170602, at *4 (granting class certification on fraudulent

17   concealment claim). Here, Defendants fraudulently concealed that the supply chain

18   from which they sourced beef was not guaranteed to be raised without antibiotics, that

19   Whole Foods had no reliable verification process to form the basis of its guarantee,

20   and that beef from the supply chain sold at Whole Foods was in fact tainted with

21   antibiotics according to testing performed in 2020 and 2021. SAC, ¶¶59-64; *see* Exs.

22   11, 13.

23                          **e.    Intentional Misrepresentation**

24   "'The elements of a claim for intentional misrepresentation are (1) a

25   misrepresentation; (2) knowledge of falsity; (3) intent to induce reliance; (4) actual

26   and justifiable reliance; and (5) resulting damage.'" *Banks v. R.C. Bigelow, Inc.*, 2024

27   WL 3330554, at *3 (C.D. Cal. July 8, 2024). *See also Banks*, 2023 WL 4932894, at

28   *1 (granting class certification on intentional misrepresentation claims).

The Ninth Circuit has held that a finding of class-wide reliance, for certification purposes, does not require alleged misrepresentations to be uniform, but that plaintiffs must prove a "common course of conduct" for claims of fraud.  *First All.*, 471 F.3d 977.  *See also Jt. Eq. Comm. of Invs of Real Est. Partners, Inc. v. Coldwell Banker Real Est. Corp.*, 281 F.R.D. 422, 429 (C.D. Cal. 2012) (applying *First Alliance* to fraud and negligent misrepresentation claims).  Here, Plaintiffs more than meet this standard because Whole Foods engaged in not only a common course of conduct, but also made uniform misrepresentations that its beef was "No Antibiotics, Ever."  Class members relied on Whole Foods' misrepresentations and they would not have purchased the beef at Whole Foods, at the price paid, if they knew the marketing was false or unverified.  As such, reliance can be determined on a classwide basis.

### 2.    A Class Action Is the Superior Method of Adjudicating the Claims Asserted

Classwide adjudication is the superior method of resolving the Plaintiffs' claims because "'classwide litigation of [the] common issues will reduce litigation costs and promote greater efficiency.'"  *Bellinghausen v. Tractor Supply Co.*, 303 F.R.D. 611, 618 (N.D. Cal. 2014).  Courts examine four factors in making this determination: "(A) the class members' interests in individually controlling the prosecution . . . of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by . . . class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action."  Fed. R. Civ. P. 23(b)(3).  All four factors support class certification of Plaintiffs' claims.

"Given the small size of each class member's claim, class treatment is not merely the superior, but the only manner in which to ensure fair and efficient adjudication of the [representative] action."  *Bruno v. Quten Rsch. Inst.,* LLC, 280 F.R.D. 524, 537 (C.D. Cal. 2011).  Nor are there manageability problems that would overwhelm the substantial efficiencies gained through class litigation given the

common nature of the central issues in the litigation. *See Post Foods*, 334 F.R.D. at 566 (complexity of advertising and labeling did not defeat certification). This is particularly true in light of the "'well-settled presumption that courts should not refuse to certify a class merely on the basis of manageability concerns.'" *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1128 (9th Cir. 2017).

## E. The Class is Based on Objective Criteria and Is Ascertainable

In the Ninth Circuit, "there is no free-standing requirement above and beyond the requirements specifically articulated in Rule 23" that a class be "'ascertainable'" or that identification of class member be "'administratively feasible.'" *True Health Chiropractic, Inc. v. McKesson Corp.*, 896 F.3d 923, 929 (9th Cir. 2018). Moreover, "the possibility that an ascertainable portion of the class may be unable to recover – those not exposed to a statement with any attributable overcharge – does not in itself demonstrate that class certification was improper." *Nutramax Lab'ys*, 114 F.4th at 1026-27. To the extent there is any form of an "ascertainability" requirement in the Ninth Circuit, it considers only whether the class definition is "based on objective criteria that allow potential class members to determine whether they are included in the class." *In re Lidoderm Antitrust Litig.*, 2017 WL 679367, at *25 (N.D. Cal. Feb. 21, 2017). The proposed Class is based on objective criteria: whether the individuals purchased a beef product from Whole Foods in stores or online. No further "ascertainability" showing is required.

## F. In the Alternative, the Court Can Certify Plaintiffs' Claims Under Rule 23(c)(4)

Rule 23(c)(4) provides that "an action may be brought or maintained as a class action with respect to particular issues." Fed. R. Civ. P. 23(c)(4). Even if the Court determines that the presence of individualized issues in certain aspects of the case may preclude certification of the Class under Rule 23(b)(3), certification under Rule 23(c)(4) of the many indisputably common issues will substantially advance the resolution of Class members' claims. *In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919,

- 32 -

4879-8443-5966.v1

1  1035 (C.D. Cal. 2015) ("Rule 23(c)(4) . . . allows class treatment of common issues

2  even when not all issues may be treated on a class basis.").

3  **IV.    CONCLUSION**

4      For the foregoing reasons, Plaintiffs respectfully request that the Court certify

5  the proposed Class under Rules 23(a), 23 (b)(2), and 23(b)(3), appoint Elsner Law &

6  Policy, LLC, Grime Law LLP, and Robbins Geller Rudman & Dowd LLP as Class

7  Counsel under Rule 23(g), and appoint Plaintiffs as Class representatives.

8  DATED:  December 6, 2024                Respectfully submitted,

9                                         ROBBINS GELLER RUDMAN
                                             & DOWD LLP
10                                         AELISH M. BAIG (201279)
                                           TAEVA C. SHEFLER (291637)
11                                         ALAINA L. GILCHRIST (335807)

12

13                                              s/ Aelish M. Baig
                                           AELISH M. BAIG

14
                                           Post Montgomery Center
15                                         One Montgomery Street, Suite 1800
                                           San Francisco, CA  94104
16                                         Telephone:  415/288-4545
                                           415/288-4534 (fax)
17                                         aelishb@rgrdlaw.com
                                           tshefler@rgrdlaw.com
18                                         agilchrist@rgrdlaw.com

19                                         GRIME LAW LLP
                                           DYLAN D. GRIMES (SBN 302981)
20                                         PAIGE M. TOMASELLI (SBN 237737)
                                           730 Arizona Avenue
21                                         Santa Monica, CA  90401
                                           Telephone:  310/747-5095
22                                         ptomaselli@grimelaw.com
                                           dgrimes@grimelaw.com

23
                                           ELSNER LAW & POLICY, LLC
24                                         GRETCHEN ELSNER (*pro hac vice*)
                                           314 South Guadalupe Street, Suite 123
25                                         Santa Fe, NM  87501
                                           Telephone:  505/303-0980
26                                         gretchen@elsnerlaw.org

27                                         Attorneys for Plaintiffs

28

- 33 -