GRIME LAW LLP
DYLAN D. GRIMES (SBN 302981)
PAIGE M. TOMASELLI (SBN 237737)
730 Arizona Avenue
Santa Monica, CA 90401
Telephone: 310/747-5095
ptomaselli@grimelaw.com
dgrimes@grimelaw.com

ELSNER LAW & POLICY, LLC
GRETCHEN ELSNER
314 South Guadalupe Street, Suite 123
Santa Fe, NM 87501
Telephone: 505/303-0980
gretchen@elsnerlaw.org

ROBBINS GELLER RUDMAN & DOWD LLP
AELISH M. BAIG (201279)
TAEVA C. SHEFLER (291637)
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA 94104
Telephone: 415/288-4545
415/288-4534 (fax)
aelishb@rgrdlaw.com
tshefler@rgrdlaw.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

SARA SAFARI, et al., on Behalf of Themselves and All Others Similarly Situated,

Plaintiffs,

vs.

WHOLE FOODS MARKET SERVICES, INC., a Delaware corporation, et al.,

Defendants.

Case No. 8:22-CV-01562-JWH-KES

CLASS ACTION

PLAINTIFFS' REPLY IN SUPPORT OF PLAINTIFFS' MOTION TO CERTIFY CLASS, APPOINT CLASS REPRESENTATIVES, AND APPOINT CLASS COUNSEL

DATE: May 6, 2025
TIME: 10:00 a.m.
CTRM: 9D, Ninth Floor
JUDGE: Honorable John W. Holcomb

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION .......... 6
II. FACTUAL BACKGROUND .......... 6
III. ARGUMENT .......... 9
A. The Class Is Ascertainable and Common Issues Predominate .......... 9
B. Plaintiffs' Proffered Damages Model Is Reliable .......... 11
C. Plaintiffs' Proposed Class Representatives and Counsel Are (More Than) Adequate and Plaintiffs' Claims Are Typical .......... 16
D. Certification Under Rule 23(c)(4) Is Appropriate .......... 18
IV. CONCLUSION .......... 18

## TABLE OF AUTHORITIES

**Page**

### CASES

*Allen v. Hyland's Inc.*, 300 F.R.D. 643 (C.D. Cal. 2014) .......... 17

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455 (2013) .......... 7

*Astiana v. Ben & Jerry's Homemade, Inc.*, 2014 WL 60097 (N.D. Cal. Jan. 7, 2014) .......... 18

*Bailey v. Rite Aid Corp.*, 338 F.R.D. 390 (N.D. Cal. 2021) .......... 16

*Banks v. R.C. Bigelow, Inc.*, 2023 WL 4932894 (C.D. Cal. July 31, 2023) .......... 15

*Comcast Corp. v. Behrend*, 569 U.S. 27 (2013) .......... 12

*DKN Holdings LLC v. Faerber*, 61 Cal. 4th 813 (2015) .......... 14

*Drake v. Bayer Healthcare LLC*, 2024 WL 4204921 (S.D. Cal. Sept. 16, 2024) .......... 14

*DZ Rsrv. v. Meta Platforms, Inc.*, 96 F.4th 1223 (9th Cir. 2024), *cert. denied*, 2025 WL 76451 (U.S. Jan. 13, 2025) .......... 18

*Edwards v. First Am. Corp.*, 798 F.3d 1172 (9th Cir. 2015) .......... 7, 8

*Ellis v. Costco Wholesale Corp.*, 657 F.3d 970 (9th Cir. 2011) .......... 17

*Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.*, 326 F.R.D. 592 (N.D. Cal. 2018) .......... 11, 15

**Page**

*FTC v. Elec. Payment Sols. of Am. Inc.*, 482 F. Supp. 3d 921 (D. Ariz. 2020) ........ 14, 15

*Guido v. L'Oreal, USA, Inc.*, 2014 WL 6603730 (C.D. Cal. July 24, 2014) ........ 14

*Gunaratna v. Dennis Gross Cosmetology LLC*, 2023 WL 5505052 (C.D. Cal. Apr. 4, 2023) ........ 12

*Hadley v. Kellogg Sales Co.*, 324 F. Supp. 3d 1084 (N.D. Cal. 2018) ........ 15

*In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919 (C.D. Cal. 2015), *aff'd sub nom. Briseno v. ConAgra Foods, Inc.*, 674 F. App'x 654 (9th Cir. 2017) ........ 11, 19

*In re Dial Complete Mktg. & Sales Pracs. Litig.*, 320 F.R.D. 326 (D.N.H. 2017) ........ 15

*In re JUUL Labs., Inc., Mktg. Sales Pracs. & Prods. Liab. Litig.*, 609 F. Supp. 3d 942 (N.D. Cal. 2022) ........ 11, 12

*In re: Lenovo Adware Litig.*, 2016 WL 6277245 (N.D. Cal. Oct. 27, 2016) ........ 16

*In re Pork Antitrust Litig.*, 665 F. Supp. 3d 967 (D. Minn. 2023) ........ 10

*In re Toys R Us-Delaware, Inc. – Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 300 F.R.D. 347 (C.D. Cal. 2013) ........ 17, 18

*Jones v. ConAgra Foods, Inc.*, 2014 WL 2702726 (N.D. Cal. June 13, 2014) ........ 18

*Krommenhock v. Post Foods LLC*, 334 F.R.D. 552 (N.D. Cal. 2020) ........ 16

**Page**

*Leyva v. Medline Indus., Inc.*,
716 F.3d 510 (9th Cir. 2013) .......... 13

*Lilly v. Jamba Juice Co.*,
308 F.R.D. 231 (N.D. Cal. 2014) .......... 11

*Lytle v. Nutramax Labs., Inc.*,
114 F.4th 1011 (9th Cir. 2024),
*cert. denied*, 2025 WL 663695 (U.S. Mar. 3, 2025) .......... 12, 17

*Maldonado v. Apple Inc.*,
2021 WL 1947512 (N.D. Cal. May 14, 2021) .......... 16

*Marsh v. First Bank of Del.*,
2014 WL 554553 (N.D. Cal. Feb. 7, 2014) .......... 10

*Molock v. Whole Foods Market Inc.*,
Case No. 1:16-cv-02483-APM (Mar. 10, 2025) .......... 10

*Moore v. Apple, Inc.*,
309 F.R.D. 532 (N.D. Cal. 2015) .......... 12

*Moore v. GlaxoSmithKline Consumer Healthcare Holdings (US) LLC*,
713 F. Supp. 3d 660 (N.D. Cal. 2024) .......... 18

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
31 F.4th 651 (9th Cir. 2022),
*cert. denied sub nom.*
*StarKist Co. v. Olean Wholesale Grocery Coop., Inc.*,
143 S. Ct. 424 (U.S. 2022) .......... 10, 12, 18

*Price v. L'Oreal USA, Inc.*,
2018 WL 3869896 (S.D.N.Y. Aug. 15, 2018) .......... 15

*Pulaski & Middleman, LLC v. Google, Inc.*,
802 F.3d 979 (9th Cir. 2015) .......... 12

*Schneider v. Chipotle Mexican Grill, Inc.*,
328 F.R.D. 520 (N.D. Cal. 2018) .......... 10, 11

**Page**

*Solis v. Am. Airlines, Inc.*,
2022 WL 4359556 (C.D. Cal. Sept. 13, 2022) ..... 12

*Tyson Foods, Inc. v. Bouaphakeo*,
577 U.S. 442 (2016) ..... 13

*Valentine v. Crocs, Inc.*,
2024 WL 5339457 (N.D. Cal. Oct. 16, 2024) ..... 11

*Victorino v. FCA US LLC*,
322 F.R.D. 403 (S.D. Cal. 2017) ..... 19

**STATUTES, RULES, AND REGULATIONS**

Federal Rules of Civil Procedure
Rule 23 ..... 7, 10
Rule 23(a) ..... 7, 10
Rule 23(b)(2) ..... 7
Rule 23(b)(3) ..... 7, 12
Rule 23(c)(4) ..... 19

Federal Rules of Evidence
Rule 702 ..... 16

# I. INTRODUCTION

"Tell me what you eat and I'll tell you who you are," according to Jean Anthelme Brillat-Savarin, lawyer and author of *The Physiology of Taste*. Our food choices determine our health[1] and are a testament to our social values. Plaintiff Class Representatives and the Whole Foods beef purchaser class (the "Proposed Class") were led to believe they were paying higher prices for higher standards. Because Defendants do not meaningfully verify the "No Antibiotics, Ever" ("NAE") guaranty they make to consumers, the higher prices are real; the higher standards are not.

Plaintiffs[2] meet each of the Rule 23(a), 23(b)(2), and 23(b)(3) requirements for certification of a damages class and an injunction class on behalf of "all persons who purchased any beef product from Whole Foods in California from August 23, 2018 to the present (the "Class Period")." ECF 223-1 ("Motion" or "Mot."). Because Defendants lack arguments relevant to class certification, they focus their attacks on the merits; a premature inquiry at this stage. *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013) ("Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage."). Class certification is "merely to decide a suitable method of adjudicating the case and should not turn class certification into a mini-trial on the merits." *Edwards v. First Am. Corp.*, 798 F.3d 1172, 1178 (9th Cir. 2015).[3]

# II. FACTUAL BACKGROUND

Defendants' warranties of "No Antibiotics, Ever" and "if it doesn't meet our standards, we won't sell it" are worthless because Defendants never ensured the

---

[1] 2.8 million antimicrobial-resistant infections occur and 35,000 people die as a result every year in the U.S. *See* 2019 Antibiotic Resistance Threats Report, CDC, https://www.cdc.gov/antimicrobial-resistance/data-research/threats/index.html. Plaintiffs do not contend all these deaths are attributable to antibiotic resistant bacteria in Whole Foods' beef supply chain; the number is offered to highlight the public health threat and the importance of truth in advertising so consumers can make informed choices about antibiotics overuse and the foods they put on the dinner table.

[2] Plaintiffs are Dr. Sara Safari ("Safari") and Mr. Peymon Khaghani ("Khaghani") (collectively, "Plaintiffs"). "Whole Foods" or "Defendants" are Whole Foods Market Services, Inc., Whole Foods Market California, Inc., and Mrs. Gooch's Natural Food Markets, Inc.

[3] All internal quotations and citations are omitted, and all emphasis is added unless otherwise specified.

veracity of these claims. Defendants never meaningfully verified or systematically tested for antibiotics until 2023 – after they were informed of positive tests in their beef supply chain,[4] after this lawsuit made the news, and nearly five years after the Class Period began. Evidence common to the class includes:

***First,*** Defendants mislead the Proposed Class that certification by Global Animal Partnership ("GAP") means no antibiotics. GAP "is not a raised without antibiotics program . . . it is an animal welfare program that actually requires you to use antibiotics when it's medically indicated. . . ." Baig Decl., Ex. 45 at 244:3-7.[5] GAP both ***allows antibiotics*** and ***does not test for antibiotics***, so Defendants cannot rely on GAP certification to substantiate "No Antibiotics, Ever." *See* GAP board member Sara Shields Depo. Tr. (Baig Decl., Ex. 46) at 80:3-17 (auditors do not test if antibiotics have been administered).[6] Indeed, some GAP-certified suppliers admit antibiotic use in their operations.[7] But Defendants advertise "GAP certified" in conjunction with NAE, deceiving consumers into believing that an independent, third-party certifier has verified their NAE advertising. ECF 223-7, ¶¶107-117.

---

[4] Declaration of Aelish M. Baig in Support of Reply in Support of Plaintiffs' Motion to Certify Class ("Baig Decl."), Exs. 43 at FOODID04410-12; 44 at FOODID00885, and ECF 219-12

[5] GAP's current leadership, Jay Friedman, testified that GAP certified is an "animal welfare claim" that "is completely distinct from a raised without antibiotics claim." Baig Decl., Ex. 45 at 244:21-245:7. *See also id.* at 133:20-135:2 ("[GAP certification is] legally immaterial to a raised without antibiotics claim.").

[6] Defendants also fail to disclose that GAP is not an independent certifier. *see* ECF 249, Ex. 103 at 21:27-22:21, staffed it with Defendants' employees from inception until the Complaint in this action revealed the conflict of interest (ECF 1, ¶54). Shortly after, Defendants transferred decision-making authority to Jay Friedman, a former Whole Foods' attorney. Baig Decl., Ex. 45 at 110:3-10, 155:10-18. Friedman owns both Organic Plus Trust, which is paid approximately $500,000 a year since 2022 to manage GAP, and Earthclaims, GAP's exclusive auditor for certification as of November 2019. *Id.* at 44-45, 95, 108:13-17; Baig Decl., Exs. 47-48.

[7] *See, e.g.*, Baig Decl., Exs. 49 at GAP0000441; 50 at WFM_012278. GAP redacted the identities of the entities in the GAP program, preventing Plaintiffs from tying any specific GAP producer to Whole Foods.

[redacted] USDA, the agency tasked with reviewing meat labels, also does not verify antibiotics claims, so [redacted] is meaningless.[8]

***Third,*** three independent testing programs found antibiotic residues in Defendants' beef supply chain, which is common evidence that both Defendants' certification and meat assurance programs cannot substantiate the "No Antibiotics, Ever" guaranty: (i) the USDA sampled "raised without antibiotics" beef and in 2024 sent letters to establishments whose purportedly raised-without-antibiotics-beef tested positive for antibiotics. Baig Decl., Ex. 51. ***At least 13 of those 27 establishments that tested positive – nearly half – have participated in Whole Foods' supply chain during the Class Period;***[9] (ii) FoodID's testing in 2020 at [redacted].[10] Defendants admit they sold beef during the Class Period [redacted];[11] (iii) Farm Forward purchased beef off the shelf at a Whole Foods' store in California [redacted] in

---

[8] USDA Food Safety and Inspection Service (FSIS") Guideline on Substantiating Animal-Raising or Environment-Related Labeling Claims, FSIS-GD-2024-0006, August 2024, https://www.fsis.usda.gov/guidelines/2024-0006.

[9] Based on Whole Foods' supplier lists, vendor applications, and USDA label applications, the suppliers who tested positive and participated in Whole Foods' supply chain include [redacted]. *See* Baig Decl., Exs. 52 at WFM_026355 [redacted]; 53 at WFM_106343 [redacted]; 54 at WFM_152683 [redacted]; 55 at WFM_022711 [redacted]; 56 at WFM_0168054 [redacted]; 57 at WFM_002460 [redacted]; 58 at WFM_000604 [redacted]; 59 at WFM_016688 [redacted].

[10] Baig Decl., Ex. 60; ECF 253-10 [redacted]; Baig Decl., Exs. 61-62, 63 at 28:15-18, 181:7-182:7.

[11] Baig Decl., Ex. 64 at 2:25-3:8; Baig Decl., Ex. 65 at 2:25-3:8. Any evidence to the contrary not produced in discovery and only supplied by Defendants to oppose class certification is a merits determination and is not properly considered here.

2021.[12] ██████ . *See id.*, Ex. 67 at 12.

**III. ARGUMENT**

Consumers are likely to be misled by Defendants' "No Antibiotics, Ever" advertising, a point Defendants ***do not challenge***. Plaintiffs meet Rule 23(a)'s numerosity requirement, which is also conceded by Defendants. Instead of addressing Fed R. Civ. P. 23, Defendants attack the extent of antibiotics in their supply chain, which is a premature merits argument. *See Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 667 (9th Cir. 2022), *cert. denied sub nom. StarKist Co. v. Olean Wholesale Grocery Coop., Inc.*, 143 S. Ct. 424 (U.S. 2022) (courts should not "put the cart before the horse by requiring plaintiffs to show at certification that they will prevail on the merits"). The possibility that Plaintiffs may not prove their allegations is an insufficient reason "for declining to certify a class which apparently satisfies Rule 23." *Marsh v. First Bank of Del.*, 2014 WL 554553, at *4 (N.D. Cal. Feb. 7, 2014).[13]

**A. The Class Is Ascertainable and Common Issues Predominate**

**The Class Definition Is Clear and Ascertainable**. Contrary to Defendants' assertion, "beef products" are easily defined, as they are a comparable cluster of products, *see, e.g.*, *In re Pork Antitrust Litig.*, 665 F. Supp. 3d 967, 997 (D. Minn. 2023) ("Subdividing into different types of processed pork would be to ignore economic realities."), and courts have routinely certified classes of purchasers of food products "containing meat and/or dairy ingredients." *See, e.g.*, *Schneider v. Chipotle Mexican Grill, Inc.*, 328 F.R.D. 520, 534 (N.D. Cal. 2018). The proposed "class need not be so ascertainable that every potential member can be identified at the

---

12 ██████ Baig Decl., Ex. 66.

13 Defendants offer supplemental authority (ECF 257), *Molock v. Whole Foods Market Inc.*, Case No. 1:16-cv-02483-APM (Mar. 10, 2025), to show a lack of commonality and predominance. This case is distinguished in that it is an employment case where plaintiffs could not show any evidence that the alleged injury, lost wages, actually occurred. *Id.*, Ex. 1 at 17.

commencement of the action." *Lilly v. Jamba Juice Co.*, 308 F.R.D. 231, 237 (N.D. Cal. 2014).

**Common Deception Predominates**. The NAE marketing message is prominently displayed throughout California stores. ECF 223-7, ¶¶74-78. For deceptive marketing claims such as those asserted here, plaintiffs need not show individualized deception if the alleged misrepresentation would be material to a reasonable consumer. *Schneider*, 328 F.R.D. at 539 ("common issues predominate when plaintiffs are exposed to [a] common set of representations about a product") (alteration in original); *Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.*, 326 F.R.D. 592, 612 (N.D. Cal. 2018) ("Plaintiff's claims under the California consumer protection statutes are governed by the 'reasonable consumer' test."); *see also In re ConAgra Foods, Inc*., 90 F. Supp. 3d 919, 983 (C.D. Cal. 2015), *aff'd sub nom. Briseno v. ConAgra Foods, Inc.*, 674 F. App'x 654 (9th Cir. 2017) (individualized reliance not required if materiality of false label can be established as to reasonable consumer). Defendants have put forward no expert or evidence in rebuttal to Plaintiffs' argument that NAE representations "would be important to a reasonable consumer in deciding whether to purchase one or more of Defendants' beef products." Mot. at 20-21; *see generally* Silverman Report.

Plaintiffs need not establish a defect is substantially certain to occur to establish commonality. *Valentine v. Crocs, Inc.*, 2024 WL 5339457, at *10 (N.D. Cal. Oct. 16, 2024); *In re JUUL Labs., Inc., Mktg. Sales Pracs. & Prods. Liab. Litig.*, 609 F. Supp. 3d 942, 974 (N.D. Cal. 2022) (predominance found with analysis of misrepresentations regarding addiction and safety risks to consumers; no proof of actual addiction required).

**Common Injury Predominates**. All members of the Proposed Class are injured by Defendants' false messaging because each paid a premium for beef

promised – but not verified – to be NAE.[14] This is sufficient to show class-wide concrete, financial injury. *JUUL Labs.*, 609 F. Supp. 3d at 1000 ("[I]njury is the payment of an overcharge at the time of purchase."); *see also Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 989 (9th Cir. 2015) ("[U]nder the UCL and FAL, the focus is on the difference between what was paid and what a reasonable consumer would have paid at the time of purchase without the fraudulent or omitted information."). Defendants seek to evade liability by asking the Court to require that each class member establish s/he purchased beef with antibiotic residues – a fact consumers cannot know – and is beside the point given the core claim is that Whole Foods made the NAE claim without verification of its veracity.

As the injury is defined as the over payment, and the common deception is universal NAE marketing, standing is adequately shown at this juncture. *JUUL Labs.*, 609 F. Supp. 3d at 974; *see also Gunaratna v. Dennis Gross Cosmetology LLC*, 2023 WL 5505052, at *21 (C.D. Cal. Apr. 4, 2023); *Bumble Bee Foods*, 31 F.4th at 669 (class certified despite "potentially includ[ing] more than a *de minimis* number of uninjured class members"). Defendants' cited authority is inapt.[15]

### B. Plaintiffs' Proffered Damages Model Is Reliable

At class certification, plaintiffs need only show "damages are ***capable*** of measurement on a classwide basis." *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013). The Ninth Circuit has held that plaintiffs may "satisfy this burden through a proffer of a reliable method of obtaining evidence that will come into existence once a damages model is executed, even where the results are not yet available at the class certification stage." *Lytle v. Nutramax Labs., Inc.*, 114 F.4th 1011, 1024 (9th Cir. 2024), *cert. denied*, 2025 WL 663695 (U.S. Mar 3, 2025). Moreover, "the presence of individualized damages cannot, by itself, defeat class certification under Rule

---

[14] *See* ECF 108, ¶¶2, 5, 7, 16, 21, 23, 38, 41, 49, 51, 56, 57 n.34, 58, 69, 72, 86, 92.

[15] *See Solis v. Am. Airlines, Inc.*, 2022 WL 4359556, at *7 (C.D. Cal. Sept. 13, 2022), and *Moore v. Apple, Inc.*, 309 F.R.D. 532, 542 (N.D. Cal. 2015), neither of which are false marketing cases. ECF 253 ("Opp.") at 9.

23(b)(3)." *Leyva v. Medline Indus., Inc.*, 716 F.3d 510, 514 (9th Cir. 2013); *see also Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 452-53 (2016).

Plaintiffs' damages expert, Dr. Elizabeth Howlett, is well qualified to serve as an expert in this case. ECF 219-16, ¶¶2-8 and Ex. A. She proposes a Choice-Based Conjoint survey to calculate the price premium attributable to the NAE messaging. *Id.*, ¶¶21-37; Baig Decl., Ex. 68 ("Supp. Howlett Report"), ¶13. She has proffered: (i) the key product attributes she intends to use in the survey (percent lean/fat, "grass-fed," price, and "No Antibiotics, Ever"); (ii) the program she would use to generate the results (the Sawtooth Conjoint module, a highly respected market leader used by researchers worldwide); (iii) the target population to be tested "adults (age 18 or over) who purchased a beef product from Whole Foods in the past 12 months for personal consumption" which she describes as "a conservative choice for the target population as it would limit survey participants to those with actual experience in choosing Whole Foods beef products"; and (iv) the online platform she will use (Prolific Market Research), to obtain and screen appropriate survey participants. She further explains she would field the survey using a panel provider (anticipating it will be Prolific) and "review and analyze the data using appropriate statistical methods to identify estimated price premiums associated with the NAE marketing and write a report detailing methods, results and conclusions of the CBC survey and analysis." ECF 219-16, ¶¶32-36.

Whole Foods' assertion that Dr. Howlett's model is flawed because it [REDACTED] for [REDACTED] is unavailing. Opp. at 19. Whole Foods has presented no evidence suggesting consumers care more about antibiotics in an animal that was sold as one beef product over another.[16] Supp. Howlett Report, ¶4. Indeed, Whole Foods' own internal surveys all

[16] Nor does it follow that consumers would assign different value to NAE in prepared food products like a roast beef sandwich, beef pizza, or beef stew at the deli or hot foods bar, than steak at the butcher counter. Defendants' hypothetical suggestion [REDACTED]

suggest [redacted] ECFs 219-2, 223-3, 223-4, 223-5; Supp. Howlett Report, ¶¶6-7.

Conjoint, by its nature, "produces a generalization across the consumers" of an "average premium"; it is irrelevant to commonality and predominance. Baig Decl., Ex. 69 at 51:21-52:1; *Guido v. L'Oreal, USA, Inc.*, 2014 WL 6603730, at *23 (C.D. Cal. July 24, 2014) ("the actual results of the . . . Conjoint models . . . are irrelevant to commonality and predominance"); *Drake v. Bayer Healthcare LLC*, 2024 WL 4204921, at *8 (S.D. Cal. Sept. 16, 2024) (proposed conjoint is "tied to . . . liability"). Dr. Howlett could run more than one conjoint analysis, if the Court so required (so long as Whole Foods produces fulsome sales information broken down by the requisite subcategories of beef sold), but the weight of the record evidence at present does not suggest it is necessary or efficient to do so. Whole Foods' argument seeks to overcomplicate a relatively straightforward and widely accepted method for determining an average price premium. Supp. Howlett Report, ¶¶8-10; Baig Decl., Ex. 70 ("Supp. Riddle Report"), ¶7.

Nor is Dr. Jon Riddle's damage model of applying the price premium to class-wide purchases flawed. Defendants' argument that [redacted] is incorrect because it is well established that joint and several liability applies to economic damages in California. *DKN Holdings LLC v. Faerber*, 61 Cal. 4th 813, 821 n.7 (2015) ("The general rule followed in America is that the liability of two or more persons who jointly engage in the commission of a tort is joint and several . . . .); *FTC v. Elec. Payment Sols. of Am. Inc.*, 482 F. Supp. 3d 921, 929 (D. Ariz. 2020) ("In the Ninth Circuit, all defendants may be held jointly and severally liable for consumer

---

[redacted] and should not affect the premium on the beef. Supp. Howlett Report. ¶4.

losses.”). Plaintiffs need not reduce their damages for false marketing attributed to additional tortfeasors. *Id*.

Defendants’ assertion that Drs. Howlett and Riddle’s damages model is insufficient because [REDACTED] is similarly unpersuasive because Dr. Howlett considers supply-side factors by incorporating real-world pricing into the attributes to be used in her conjoint model (which not all models do) and by asking participants to assume all other attributes (including supply-side attributes) are constant. ECF 219-16, ¶¶27, 30; Supp. Howlett Report, ¶11; Supp. Riddle Report, ¶11. Dr. Riddle, too, considers supply-side factors by applying the price premium to real-world price and quantity sales data. ECF 223-8, ¶32; Baig Decl., Ex. 71 at 135:17-136:19; Supp. Riddle Report, ¶11.

Moreover, it is well established that conjoint analyses adequately account for supply-side factors “when (1) the prices used in the surveys underlying the analyses reflect the actual market prices that prevailed during the class period; and (2) the quantities used (or assumed) in the statistical calculations reflect the actual quantities of products sold during the class period.” *See, e.g.*, *Hadley v. Kellogg Sales Co.*, 324 F. Supp. 3d 1084, 1105 (N.D. Cal. 2018); *Price v. L’Oreal USA, Inc.*, 2018 WL 3869896, at *9 (S.D.N.Y. Aug. 15, 2018) (approving conjoint analysis and granting certification in consumer product misrepresentation case); *Banks v. R.C. Bigelow, Inc.*, 2023 WL 4932894, at *8 (C.D. Cal. July 31, 2023) (expert conducting conjoint analysis “used actual historic prices and quantities as the basis for his survey, thus sufficiently accounting for supply-side factors”). Multiple courts have permitted the use of conjoint with fixed-supply-pricing (“FSP”).[17]

[17] *In re Dial Complete Mktg. & Sales Pracs. Litig.*, 320 F.R.D. 326, 336 (D.N.H. 2017) (“The number of products Dial sold with the offending claims is known (or can easily be calculated). Those products were sold at a price determined by the intersection of demand and supply in the actual market.”); *Hadley*, 324 F. Supp. 3d at 1106 (finding “proposed conjoint analysis (1) utilizes prices that ‘mirror[] those actually observed in the market’ and that are ‘based on actual sales data,’ . . . and (2) holds quantity constant – by using the quantities of the challenged products that were actually sold during the class period.”); *Fitzhenry-Russel*, 326 F.R.D. at 606 (finding conjoint was performed in a “long-established” and “efficient” market “where retailers’ pricing [wa]s responsive to market

Plaintiffs' proposed damages methodology is well-established as a valid measure of class-wide damages in misrepresentation cases. *Bailey v. Rite Aid Corp.*, 338 F.R.D. 390, 409 (N.D. Cal. 2021) ("[W]here the injury suffered by consumers was in the form of an overpayment resulting from the alleged misrepresentation at issue, such as here, courts routinely hold that choice-based conjoint models that are designed to measure the amount of overpayment satisfy *Comcast's* requirements."). As noted in the *MyFord Touch Consumer Litigation*, public policy warrants against a strict approach to economic theory under similar circumstances:

> Assuming that fewer consumers were injured in the hypothetical world than were injured in the real world runs the risk of undercompensating the real-world injured consumers. Although the Court understands why, as a matter of economic theory, projecting an equilibrium market price requires consideration of both supply and demand curves, here the fact[s] . . . merit[] assuming that the size of the class is the same in both the hypothetical and real worlds and assessing damages on that basis. Doing otherwise might allow a defendant to profit in the real world by its wrongdoing (if proven) based on the notion that fewer people were harmed in the hypothetical world. That would not serve the remedial purpose of the damages remedy, making real-world consumers whole again.

291 F. Supp. 3d 936, 971 (N.D. Cal. Feb. 14, 2018). Here too, a fixed amount of beef was sold as "No Antibiotics, Ever," and a fixed number of consumers were economically harmed. This Court need not diverge from the multitude of courts that have approved this method.

---

forces," and that "fixed quantity" "price premium study therefore passe[d] muster under *Daubert* and Federal Rule of Evidence 702".); *see also In re: Lenovo Adware Litig.*, 2016 WL 6277245, at *21 (N.D. Cal. Oct. 27, 2016); *Maldonado v. Apple Inc.*, 2021 WL 1947512, at *21-*23 (N.D. Cal. May 14, 2021); and *Krommenhock v. Post Foods LLC*, 334 F.R.D. 552, 576 (N.D. Cal. 2020).

In any event, that Plaintiffs do not proffer a means of applying the price premium to what Defendants presume [REDACTED] [REDACTED] is an argument that goes to the weight of the model at trial, not admissibility at class certification. *See MyFord*, 291 F. Supp. 3d at 974 (Plaintiffs' damage model was sufficient at the *Daubert* stage even where it did not include real-world pricing; willingness to pay is a question of weight for the jury);[18] *Lytle*, 114 F.4th at 1028.

**C. Plaintiffs' Proposed Class Representatives and Counsel Are (More Than) Adequate and Plaintiffs' Claims Are Typical**

Plaintiffs are adequate representatives where: (1) neither named plaintiffs nor their counsel have any conflicts of interest with other class members; and (2) the named plaintiffs and their counsel will prosecute the action vigorously on behalf of the class. *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011). Plaintiffs established both in their moving papers. *See* ECF 220 (Khaghani Decl.), ¶¶20-21; ECF 221 (Safari Decl.), ¶¶16-17; ECF 219, ¶¶2-5.

Defendants mischaracterize this action as [REDACTED] Opp. at 22. Class Representatives indicated they had a past relationship with Ms. Tomaselli's firm, which led them to Ms. Elsner, who gauged their interests for being Class Representatives. ECF 248-8; ECF 248-9. This Court has routinely rejected claims of inadequacy in similar situations: *In re Toys R Us-Delaware, Inc. – Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 300 F.R.D. 347, 372-373 (C.D. Cal. 2013) (class was adequate despite representatives and counsel having a decades-long relationship, and counsel first informing them of action); *Allen v. Hyland's Inc.*, 300 F.R.D. 643, 663 (C.D. Cal. 2014) (rejecting argument that plaintiffs' counsel "solicited" representatives).

---

[18] *MyFord* also argued Plaintiffs' focus on the demand-side of the equation rendered the damages model unreliable. Judge Chen (having already certified the class) refused defendants' motion to exclude plaintiffs' damages expert at summary judgment, noting the expert considered supply by assuming it to be constant and holding (again) the challenge went to weight, not admissibility, and was thus a question for the jury. *Id.* at 970.

**Plaintiffs' Claims Are Typical of the Class**. Representative claims "need not be substantially identical" to meet typicality. *DZ Rsrv. v. Meta Platforms, Inc.*, 96 F.4th 1223, 1238 (9th Cir. 2024), *cert. denied*, 2025 WL 76451 (U.S. Jan. 13, 2025). Defendants' reliance on *Astiana v. Ben & Jerry's Homemade, Inc.*, 2014 WL 60097, at *7 (N.D. Cal. Jan. 7, 2014), is inapposite because there, plaintiff was unable to show other consumers valued the attribute claimed to be deceptively marketed; here, Whole Foods' own documents and Plaintiffs' expert show consumers care that their beef is in fact NAE. ECF 223-1 at 24; ECFs 219-2, 223-3, 223-4, 223-5 (consumer surveys); ECF 223-7, ¶¶42-67. Whole Foods' second argument that the Proposed Class is atypical as to date, location, and type of products purchased, Opp. at 20-21, is similarly unavailing[19] because typicality is satisfied when there are a variety of different products that "all contained the same allegedly misleading label and are alleged to be misleading for the same reason." *Jones v. ConAgra Foods, Inc.*, 2014 WL 2702726, at *7 (N.D. Cal. June 13, 2014); *see also Moore v. GlaxoSmithKline Consumer Healthcare Holdings (US) LLC*, 713 F. Supp. 3d 660, 676-78 (N.D. Cal. 2024) (class was typical despite that class representative "did not purchase all the Products" at issue); *Bumble Bee Foods*, 31 F.4th at 684.

**Class Counsel Is Highly Competent**. Plaintiffs' Counsel Robbins Geller Rudman & Dowd LLP ("RGRD") has extensive experience in class actions and specifically CLRA, FAL, and UCL actions. ECF 219, ¶5. RGRD has vigorously represented the proposed class by fully participating in investigating and litigating Plaintiffs' claims over the last ten months. Ms. Elsner and Ms. Tomaselli's relevant experience is detailed in the Baig Decl. to Plaintiffs' Motion (*Id.*, ¶¶3-4); additional declarations are not required. *See Toys R Us*, 300 F.R.D. at 371 (class counsel adequate without declarations of experience). Previous litigation losses or minor sanctions for producing documents in improper format do not constitute inadequacy.

---

[19] Defendants' notion that [REDACTED] is asserted with no support and is merely speculation. Opp. at 21.

*Victorino v. FCA US LLC*, 322 F.R.D. 403, 408 (S.D. Cal. 2017) ("There must be serious doubt on counsel's trustworthiness and ***no basis of confidence*** that they would prosecute the case in the interest of the class . . . .").

**D. Certification Under Rule 23(c)(4) Is Appropriate**

Defendants claim Plaintiffs have not put forth any basis for certification under Fed. R. Civ. P. 23(c)(4), misapprehending the basis for certification are the facts set forth in the Motion. Plaintiffs have standing for this claim because they have asserted they would buy beef from Whole Foods again if the NAE claims were truthful and effectively verified. ECF 220, ¶14; ECF 248-8 at 152:19-152:23; ECF 220, ¶14. Plaintiffs suggest Rule 23(c)(4) certification in the alternative if this Court finds the presence of individualized issues in specific aspects of the case. *ConAgra*, 90 F. Supp. 3d at 1035 ("Rule 23(c)(4) . . . allows class treatment of common issues even when not all issues may be treated on a class basis.").

**IV. CONCLUSION**

Plaintiffs respectfully request the Court certify the proposed Class, appointing Safari and Khaghani as Class Representatives and the Robbins Geller, Grime Law, and Elsner Law firms as Class Counsel.

DATED: April 4, 2025

Respectfully submitted,

ROBBINS GELLER RUDMAN
& DOWD LLP
AELISH M. BAIG (201279)
TAEVA C. SHEFLER (291637)

s/ Aelish M. Baig
AELISH M. BAIG

Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA 94104
Telephone: 415/288-4545
415/288-4534 (fax)
aelishb@rgrdlaw.com
tshefler@rgrdlaw.com

GRIME LAW LLP
DYLAN D. GRIMES (SBN 302981)
PAIGE M. TOMASELLI (SBN 237737)
730 Arizona Avenue
Santa Monica, CA 90401
Telephone: 310/747-5095
ptomaselli@grimelaw.com
dgrimes@grimelaw.com

ELSNER LAW & POLICY, LLC
GRETCHEN ELSNER (*pro hac vice*)
314 South Guadalupe Street, Suite 123
Santa Fe, NM 87501
Telephone: 505/303-0980
gretchen@elsnerlaw.org

Attorneys for Plaintiffs